Matthew D. Pearson, SBN 294302
*mpearson@bakerlaw.com*
Monique Matar, SBN 317145
*mmatar@bakerlaw.com*
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: (714) 754-6600
Facsimile: (714) 754-6611

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

R.C. and D.G., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,

Defendants.

Case No.: 3:24-cv-02609-JSC

The Honorable Jacqueline Scott Corley

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**

**DATE: September 12, 2024**
**TIME: 10:00 a.m.**
**COURTROOM: 8**

Action Filed: November 30, 2023
Initial CMC: August 1, 2024

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on September12, 2024, at 10:00 a.m. in Courtroom 8 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sussex Publishers, LLC ("Sussex") will and hereby does move the Court for an order dismissing Plaintiffs R.C.'s and D.G.'s Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

This motion is made on the grounds that Plaintiffs have failed to state against Sussex any plausible claims under which relief can be granted. More specifically:

1. Plaintiffs' First Cause of Action for violation of California's Confidentiality of Medical Information Act ("CMIA"), §§ 56.06, 56.10, and 56.101 should be dismissed because (1) Plaintiffs do not allege that they provided to Sussex any "medical information;" (2) the CMIA does not apply to Sussex; (3) Plaintiffs do not allege any "unauthorized viewing" under their Section 56.101 claim, and (4) Plaintiffs do not allege any "unauthorized disclosure" under their Section 56.10 claim.

2. Plaintiffs' Second Cause of Action for aiding and abetting a violation of the CMIA should be dismissed because there is no aiding and abetting liability under the CMIA.

3. Plaintiffs' Third Cause of Action for violation of the California Consumer Protection Act of 2018 ("CCPA") should be dismissed because (1) Plaintiffs have not alleged the requisite facts to establish that that the CCPA applies to Sussex and (2) Plaintiff has not alleged that their "personal information" was subject to exfiltration, theft, or disclosure, as required under the CCPA.

4. Plaintiffs' Fourth Cause of Action for aiding and abetting a violation of California Penal Code § 631 should be dismissed because (1) Plaintiffs have not alleged that anything Google did violated Section 631 and (2) Plaintiffs have not alleged that Sussex or Google acted with the requisite intent.

5. Plaintiffs' Fifth Cause of Action for violation California Penal Code § 632 should be dismissed because Plaintiffs have not alleged that Sussex recorded, without their consent, any of their confidential communications.

6. Plaintiffs' Sixth Cause of Action for invasion of privacy under the California Constitution should be dismissed because Plaintiffs have failed to allege that anything Sussex did was "highly offensive."

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Matthew D. Pearson, the Court's file and records in this action, and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Respectfully submitted,

Dated: July 22, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1
II. MOTION TO DISMISS STANDARD .......... 3
III. PLAINTIFFS' ALLEGATIONS .......... 3
IV. ARGUMENT .......... 4
  A. Plaintiffs' CMIA Claims Must Be Dismissed. .......... 4
    1. The Information Collected Through Google Analytics Is Not "Medical Information" Under the CMIA. .......... 4
      a. Information not "in possession of or derived from a provider of health care." .......... 4
      b. Information not "Individually Identifiable." .......... 7
      c. Information does not relate to Plaintiffs' "mental or physical condition, or treatment." .......... 8
    2. The CMIA Does Not Apply to Sussex. .......... 10
    3. Plaintiffs Do Not Sufficiently Allege An "Unauthorized Viewing" of Their Information. .......... 11
    4. Plaintiffs Do Not Plausibly Allege that Sussex "Affirmatively Communicated" Their Medical Information To a Third Party. .......... 133
    5. There Is No Private Right of Action For Aiding and Abetting a Violation of the CMIA. .......... 144
  B. Plaintiffs' CCPA Claim Must Be Dismissed. .......... 14
  C. Plaintiffs' CIPA § 631(a) Claim Must Be Dismissed. .......... 166
    1. Plaintiffs Have Not Alleged a Violation of the First Clause. .......... 177
    2. Plaintiffs Have Not Alleged a Violation of the Second Clause. .......... 17
    3. Plaintiff Has Not Alleged a Violation of the Third Clause. .......... 18
    4. Plaintiff's CIPA § 631(a) Aiding-and-Abetting Claim Fails for the Additional Reason That Plaintiffs Do Not Allege the Requisite Intent. . 199
  D. Plaintiff's CIPA § 632 Claim Fails. .......... 21
  E. Plaintiff's Invasion of Privacy Claim Fails. .......... 233
V. CONCLUSION .......... 244


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*American Hospital Assoc. v. Becerra*,
No., 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)................................ 8, 9

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
No. 17-CV-03903-PJH, 2018 WL 2387812 (N.D. Cal. May 25, 2018), aff'd, 933 F.3d 1088 (9th Cir. 2019)........................................................................................ 5

*Apatow v. Am. Bankers Ins. Co. of Fla.*,
No. 16-198 MWF, 2016 WL 7422288 (C.D. Cal. Dec. 21, 2016) (Fitzgerald, J.)........................................................................................................................ 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 3

*B.K. v. Desert Care Network*,
No. 223CV05021SPGPDX, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........................................................................................................... 16, 18, 19

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) .......................... 12

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023)............................................ 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 3

*Calhoun v. Google, LLC*,
645 F. Supp. 3d 916 (N.D. Cal. 2022) ........................................................................ 21

*Cody v. Ring LLC*,
No. 23-CV-00562-AMO, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024)..................... 16, 17, 18

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117(S.D. Cal. 2023)............................................................... 12, 22, 23

*D'Angelo v. FCA US, LLC*,
No. 323CV00982WQHMMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ....................... 18

*Eisenhower Med. Ctr. v. Superior Ct.*,
226 Cal. App. 4th 430 (2014)........................................................................................ 9

*Esparza v. Gen Dig. Inc.*,
No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024)..................... 16, 18

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22-c-5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ................................................... 9


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024)........................... 17

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........................................................................ 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................... 23

*In re Meagan R.*,
42 Cal. App. 4th 17 (1996)......................................................................................... 20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................ 7

*People v. Laster*,
52 Cal. App. 4th 1450 (1997)...................................................................................... 20

*People v. McCoy*,
25 Cal. 4th 1111 (2001) .............................................................................................. 20

*People v. Perez*,
35 Cal. 4th 1219 (2005) .............................................................................................. 20

*Regents of Univ. of California v. Superior Ct.*,
220 Cal. App. 4th 549 (2013), *as modified on denial of reh'g* (Nov. 13, 2013)..................... 13

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)...................................... 17

*Schulz v. Neovi*,
152 Cal. App. 4th 86 (2007)........................................................................................ 20

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ..................................................................................... 9

*Sutter Health v. Superior Ct.*,
227 Cal. App. 4th 1546 (2014)............................................................................... 11, 13

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024).......................... 22

*United States v. Hamilton*,
413 F.3d 1138 (10th Cir. 2005)..................................................................................... 7

*United States v. Matish*,
193 F. Supp. 3d 585 (E.D. Va. 2016)........................................................................... 22

*Vaccaro v. Altais*,
No. 223CV04513ODWBFMX, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023)...................... 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .................... 17

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022).................... 16

**Statutes**

Cal. Civ. Code § 56.05(j) .................... 4, 8

Cal. Civ. Code § 56.05(k) .................... 10

Cal. Civ. Code § 56.05(l) .................... 6, 10

Cal. Civ. Code § 56.06(b) .................... 5

Cal. Civ. Code § 56.06(b)(2).................... 5

Cal. Civ. Code § 56.06(d) .................... 10

Cal. Civ. Code § 56.10 .................... 1, 10, 13

Cal. Civ. Code § 56.10(a).................... 10

Cal. Civ. Code § 56.36(b) .................... 14

Cal. Civ. Code § 56.101 .................... *passim*

Cal. Civ. Code § 56.101(a) .................... 10, 12

Cal. Civ. Code § 1798.145 (c)(1)A .................... 14

Cal. Civ. Code § 1798.150 (A)(1).................... 15

Cal. Penal Code § 31 .................... 20

Cal. Penal Code § 632(a) .................... 21, 22

California Consumer Privacy Act of 2018.................... 2

California Consumer Protection Act of 2018.................... 1

California Penal Code § 631 .................... 1, 2, 18

California Penal Code § 631(a).................... *passim*

California Penal Code § 632 .................... 2, 2, 21

CCPA .................... 1, 2, 14, 15

Civil Code §§ 56.36(b) and (c) .................... 10



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

CMIA .......... *passim*

Health and Safety Code Section 1374.72 .......... 10

**Other Authorities**

CACI No. 3610 .......... 20

Fed. R. Civ. P. 12(b)(6) .......... 1, 3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

There is no shortage of class actions filed in California claiming that a healthcare provider unknowingly violated California law by installing a website tracker on its patient website. Indeed, nearly every healthcare provider operating within California has been sued.

Apparently, though, there are no more healthcare providers to sue, so plaintiffs have taken to suing ***media companies***, like Defendant, that publish magazines and websites providing information on healthcare. As Plaintiffs R.C. and D.G. (collectively, "Plaintiffs") admit, Sussex publishes both the *Psychology Today* magazine and www.psychologytoday.com (the "Site"). [Dkt. No. 1-1, ¶¶ 18-19.] The magazine, according to Plaintiffs, "make[s] psychology literature available to the general public." [*Id.* at ¶ 18.] The Site "publishes content written by clinicians, experts, and researchers from across the field of behavior and psychology" and includes "a directory that lists clinical professionals, psychiatrists and treatment centers providing mental health services." [*Id.* at ¶ 19.]

Not surprisingly, Plaintiffs do not allege that Sussex actually provides any healthcare or employes anyone who does. It doesn't. A simple review of the Site's homepage makes that clear.




BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

[*Psychology Today*, available at: https://www.psychologytoday.com/us (last visited: July 18, 2024).]

But, despite the Site's immediately apparent, non-healthcare nature, Plaintiffs filed suit, alleging that, through the use of Google Analytics[1] on its Site, Sussex "disclos[es]…***personally identifiable and sensitive medical information*** to unauthorized third parties," [*Id.* at ¶ 21 (emphasis added)], and, as a result (1) violated California's Confidentiality of Medical Information Act ("CMIA"), California Civil Code §§ 56.06, 56.101, and 56.10); (2) aided and abetted a violation of the CMIA; (3) violated the California Consumer Privacy Act of 2018 ("CCPA"); (4) aided and abetted a violation of California Penal Code § 631; (5) violated California Penal Code § 632; and (6) violated their privacy under California's Constitution.

Plaintiffs' claims are riddled with flaws. As an initial matter, as a *media* company, Sussex is not regulated by the CMIA. The CMIA is intended to protect the confidentiality of an individual's medical information, not his or her public browsing information. Even beyond that, the CMIA prohibits the unauthorized "disclosure" or "negligent release" of medical information. Sussex has *never* possessed Plaintiffs' medical information. Therefore, there is nothing it *could* disclose that would violate Plaintiffs' rights under the CMIA. The same is true with regard to the CCPA. The CCPA is intended to ensure that companies collecting the personal information of Californian's take steps to protect that information from theft and disclosure. There was no personal information here, just as there was no theft or disclosure.

These fatal flaws continue throughout Plaintiffs' Complaint. At bottom, through their Complaint, Plaintiffs are trying to jam a square peg into a round hole. They are trying to impose

---

[1] As Plaintiffs allege, Google Analytics is merely a "tool for website traffic analysis." [Dkt. No. 1-1, ¶ 28.] In other words, Google Analytics provides websites, like the Site here, with information such as the number of visitors, how the visitors got to the website (i.e., via a Google search), and which pages the visitors viewed. In Google's own words, Goole Analytics does not *identify* any visitors. As Google states, "[e]very time a user visits a webpage, the [Google Analytics] tracking code will collect ***pseudonymous*** information about how that user interacted with the page." [*How Google Analytics Works*, Google.com, available at: https://support.google.com/analytics/answer/12159447?hl=en (last visited: July 21, 2024) (emphasis added). Further, Google Analytics is not a tool used uniquely by this Site—indeed, it is utilized by more than 30 million live sites.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

on Sussex—a media publisher—the legal obligations reserved for health care providers. They have failed to do so. Their Complaint should be dismissed, in its entirety and with prejudice.

## II. MOTION TO DISMISS STANDARD

"In ruling on a motion under Rule 12(b)(6), [this] Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Apatow v. Am. Bankers Ins. Co. of Fla.*, No. 16-198 MWF (MRWX), 2016 WL 7422288, at *2 (C.D. Cal. Dec. 21, 2016) (Fitzgerald, J.). "To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and alterations omitted). The Court "need not accept as true . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (internal citation and quotation marks omitted). Indeed, the "Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief." *Id.*

## III. PLAINTIFFS' ALLEGATIONS

Plaintiffs admit that Sussex "is a private media company that owns *Psychology Today* magazine and the www.psychologytoday.com website." [Dkt. No. 1-1, No. 2.] They further admit that the Site "features therapy and health professional directories as well as hundreds of blogs and articles written by a variety of psychologists, psychiatrists, social workers, medical doctors, anthropologists, sociologists, and science journalists." [*Id.*] They do not allege that either Sussex or the Site provides any actual medical care.

Plaintiffs allege that they each visited the Site and utilized the Site's "therapist directory." [*Id.* at ¶¶ 10, 14.] They claim that, in order to locate qualified therapists, they provided the Site with certain information, including, for R.C., "personal and mental health information," the details of which R.C. refuses to disclose [*id.* at ¶10 ], and, for D.G., "city and zip code, insurance carrier, information, mental health concerns, and therapist preferences," [*id.* at ¶ 14]. They additionally claim that they sent "email communications to potential therapists directly through" the Site. [*Id.* at ¶¶ 10, 14.]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Finally, Plaintiffs allege that, while they were on the Site, Sussex had installed and was running Google Analytics, which was collecting: (1) "any information that the user may input" into the Site, (2) "what links the user clicked," (3) the user's "language setting [and[ the type of browser and the device" the user was using, and (4) "what brought the user to the site in the first place -- such as a search engine, an advertisement on which the user clicked, or an email marketing campaign." [*Id.* at ¶ 31.]

Based on these allegations, Plaintiffs claim that Sussex violated California law and invaded their privacy. They do not, however, even attempt to allege how they have been injured by anything Sussex did or did not do.

## IV. <u>ARGUMENT</u>

### A. <u>Plaintiffs' CMIA Claims Must Be Dismissed.</u>

Plaintiffs assert violations under three distinct sections of the CMIA: Sections 56.06, 56.101, 56.10. [Dkt. No. 1-1, First Cause of Action.] As discussed below, each of these claims fail for their own, specific reasons. But before even delving into those reasons, the Court must consider whether the information in question here is even governed by the CMIA. It is not.

#### 1. The Information Collected Through Google Analytics Is Not "Medical Information" Under the CMIA.

The CMIA's definition of medical information has three distinct parts: (1) "any ***individually identifiable information***, in electronic or physical form," (2) "***in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor***"[2] (3) "regarding a patient's ***medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment***. Cal. Civ. Code § 56.05(j) (emphasis added). The information that Plaintiffs allege Google Analytics collected here meets none of these requirements.

##### *a. <u>Information not "in possession of or derived from a provider of health care."</u>*

[2] Notably, Plaintiffs conspicuously omit this clause from their definition of "medical information" in the Complaint. [*See* Dkt. No. 1-1, ¶ 86.]



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Plaintiffs do not allege in the Complaint that Sussex is a "health care service plan," a "pharmaceutical company," or a "contractor." [*See generally* Dkt. No. 1-1.] Instead, they claim that, for the purposes of the CMIA, Sussex can be considered a "provider of health care" because it both (1) "offers software or hardware to consumers…that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual," Cal. Civ. Code § 56.06(b), and (2) "offers a mental health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual," *Id.* at § 56.06(d). Plaintiffs are wrong.

Sussex operates a publicly available website; it does not offer any consumer "software or hardware."[3] In fact, it does not even allow consumers to create a personal account on the Site. Consumers, including Plaintiffs, can visit the Site, browse, and, if desired, send a message to a therapist. Nothing more.

Further, even if Sussex did offer consumers "software or hardware" (it does not), that "software or hardware" would not be "designed to maintain medical information…for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual." As Plaintiffs themselves admit, the Site provides (1) "content written by clinicians, experts, and researchers from across the field of behavior and psychology" and (2) "a directory that lists clinical professionals, psychiatrists and

---

[3] The CMIA does not define either "software" or "hardware." Therefore, those terms must be given their "ordinary meaning" (i.e., their "common dictionary definitions"). *Animal Legal Def. Fund v. United States Dep't of Agric.*, No. 17-CV-03903-PJH, 2018 WL 2387812, at *6 (N.D. Cal. May 25, 2018), aff'd, 933 F.3d 1088 (9th Cir. 2019). The Merriam-Webster Dictionary defines "software" as "programs for a computer." [Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/software (last visited: July 18, 2024).] It defines "hardware" as "the physical components (such as electronic and electrical devices) of a vehicle (such as a spacecraft) or an apparatus (such as a computer)." [Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/hardware (last visited: July 18, 2024).] The site is neither a "program for a computer" nor a "physical component." If anything, computers use software (i.e., internet browsers) to access and view the Site.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

treatment centers providing mental health services." [Dkt. No,. 1-1, ¶ 19.] That is a far cry from a piece of software or hardware designed to maintain a consumer's medical information.

Similarly, the Site is not a "mental health digital service" that "allow[s]" an "individual to manage the individual's information" or "the diagnosis, treatment, or management of a medical condition of the individual." A "mental health digital service" is an "internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer." Cal. Civ. Code § 56.05(l). Plaintiffs do not allege that Sussex collected through the Site their "mental health application information," marketed "itself as facilitating mental health services," ***and*** "use[d] the information to facilitate mental health services to a consumer." [*See generally* Dkt. No. 1-1.] In fact, Plaintiffs do not allege that Sussex collects ***any information*** through the Site. [Dk. No. 1-1. ¶¶ 10 (alleging that Plaintiff R.C. "reviewed the list of results, read various therapist biographies, viewed articles, blogs and/or video, and sent email communications ***to a number of therapists*** directly through the Psychology Today," which "included personal and sensitive medical information, such as Plaintiff 's age, issues he was presenting, mental health concerns, and the types of treatment or therapy he was seeking" (emphasis added)), 14 (alleging that Plaintiff D.G., "[w]hile navigating the Psychology Today website,…provided personal information including but not limited to her city and zip code, insurance carrier information, mental health concerns, and therapist preferences," "[f]rom the list of results displayed, Plaintiff [D.G.]…click[ed] on and review[ed] the therapist biographies," and "[o]n numerous occasions, Plaintiff D.G. sent email communications ***to potential therapists*** directly through the Psychology Today website" (emphasis added).]

But, even if this Court were to somehow find that Plaintiffs did provide Sussex with their "mental health application information" (they did not), Plaintiffs still have failed to allege that Sussex "use[d] the information to facilitate mental health services to a consumer." In fact, there are ***no*** allegations in the Complaint that would suggest that Sussex uses ***any information***, let alone does so to "facilitate mental health services." At most, Plaintiffs allege that Sussex uses the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

information collected by Google Analytics to better operate the site. [Dkt. No. 1-1, ¶ 30.]

*b.* <u>*Information not "Individually Identifiable."*</u>

The CMIA explains that "[i]ndividually identifiable" means "that the medical information includes or contains any element of personal identifying information ***sufficient to allow identification of the individual***…." *Id.* (emphasis added). In certain contexts, such as when a website allows its users to log into their own, personal account, it is plausible to assume that information collected from the website is "individually identifiable." *See In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (distinguishing "users browsing through websites providing healthcare information to the public at large" from "users navigating to patient portals on healthcare providers' websites").

That, however, is not the case here. Plaintiffs do not allege that, at any point in time, they logged into the Site, nor could they. The Site does not allow visitors to log-in. Therefore, unless the information that Plaintiffs allege Google Analytics collected identified them personally, the information allegedly collected is not "individually identifiable."

None of the information that Plaintiffs allege Google Analytics collected would personally identify them. For example, Plaintiff R.C. alleges that Google Analytics collected his IP address. IP addresses, however, do not identify an individual; they identify a device, which could be and likely is used by multiple people within a household.[4] *United States v. Hamilton*, 413 F.3d 1138, 1141 n. 2 (10th Cir. 2005) ("[A]n IP address…is a unique number identifying the location of an end-user's ***computer***." (emphasis added).) R.C. also alleges that Google Analytics collected "his" general browsing information (i.e., list results, therapist biographies, articles, blogs, and/or videos). That information is no different than the generic "browsing through websites providing healthcare information to the public at large" rejected by the court in *In re Meta*. R.C. goes on to allege that he "sent email communications to a number of therapists directly through the Psychology Today website," which included his "age, issues he was presenting, mental health concerns, and the types of treatment or therapy he was seeking" and which Google Analytics

[4] Sometimes, even hundreds of users on a mobile phone network.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

allegedly "intercepted and obtained." [Dkt. No. 1-1, ¶¶ 10-11.]

While the allegation that Google Analytics ever collected or obtained the contents of Plaintiff R.C.'s email communications is demonstrably false—something Sussex has told and showed Plaintiffs time and time again—even if it were true, Plaintiff still has not alleged that any information he provided would identify *him*. Plaintiff R.C. does not allege that he provided his name, his address, his telephone number, or anything that would differentiate him from any other person of a similar age with similar symptoms.

The same is true with regard to Plaintiff D.G. She does not allege that any information collected by Google Analytics via the Site would identify *her*. Certainly, her "city and zip code, insurance carrier information, mental health concerns, and therapist preferences" do not identify her; they merely describe someone allegedly in her area with similar conditions and preferences.

*c. Information does not relate to Plaintiffs' "mental or physical condition, or treatment."*

The CMIA does not apply to medical information generally; it applies to medical information "***regarding a patient's*** medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j) (emphasis added). "Regarding a patient" is the crucial phrase.

Recently, in *American Hospital Assoc. v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024), the U.S. District Court for the Northern District of Texas analyzed whether information gathered on a publicly accessible portion of a health care provider's website could be deemed to "relate to" an individual's healthcare and held, definitively, that it could not. There, a group of hospitals challenged the validity of the Department of Health and Human Services' Bulletins that stated that the combination of an individual's IP address and his or her browsing history on a publicly accessible portion of a healthcare provider's website constitutes "individually identifiable health information" or, as that term is defined, "information that (1) 'relates to' an individual's healthcare and (2) 'identifies the individual' or provides 'a reasonable basis to believe that the information can be used to identify



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

the individual.'" *Id.* at *1.[5]

In concluding that the HHS overstepped its bounds in issuing the Bulletins, the court explained that whether and to what extent information collected through a publicly accessible website "relates to an individual's healthcare" is entirely dependent on the "visitors' subjective motive for visiting the page," something only the visitor can know. *Id.* at *12. That is, there is no way to know whether an individual was browsing the website for his own purposes, for the purposes of his friend, or just out of pure curiosity. As the Court in *Becerra* put it: "[w]ithout knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)." *Id.* at *14.[6]

The same is true here. The information allegedly collected by Google Analytics could not constitute "medical information" under the CMIA because the information is not "regarding a patient's" medical condition or history. For all Sussex (or Google Analytics for that matter) knew, Plaintiffs could have been browsing the Site and/or emailing a therapist out of curiosity or for someone else. Indeed, the only reason Sussex ever found out that Plaintiffs were on its website searching for their own medical purposes is because Plaintiffs admitted as much in their *publicly filed* complaint.

Moreover, "under the CMIA[,] a prohibited release by a health care provider must include

[5] In their Complaint, Plaintiffs heavily cite to and rely upon the HHS Bulletins invalidated by *AHA*. [Dkt. No. 1-1, ¶¶ 57-60.] Sussex brought this to Plaintiffs' attention prior to filing this Motion, but Plaintiffs refused to amend.

[6] The *Becerra* court is not alone in reaching this conclusion. Several courts, including the Ninth Circuit, have held that "the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA ... apply." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018); *see also Kurowski v. Rush Sys. for Health,* 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("By contrast, [Plaintiff's] allegations are far too vague to allow an inference to be drawn that [Defendant] was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata."); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22-c-5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (citing *Smit*h, 745 F. App'x at 9) (rejecting argument that metadata as discussed in the Revised Bulletin could be IIHI because plaintiff couldn't show "any particular health or treatment information disclosure specific as to them that [Defendant] allegedly made to any third-party whether within the portal or not").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

more than individually identifiable information but must also include information relating to medical history, mental or physical condition, or treatment of the individual." *Eisenhower Med. Ctr. v. Superior Ct*., 226 Cal. App. 4th 430, 437 (2014). In other words, that a person may have contacted a doctor about a specific condition is not enough. The information must go beyond the initial contact and include information about the actual treatment. *Id.* (finding no medical information where information only included identity of person and status as a patient).

Plaintiffs have not alleged that any information they provided via the Site constituted "medical information" under the CMIA. For that reason alone, their CMIA claims should be dismissed.

**2. The CMIA Does Not Apply to Sussex.**

Plaintiffs allege in the Complaint that Sussex's conduct "violated California Civil Code §§ 56.06, 56.101, and 56.10," and, therefore "[u]nder Civil Code §§ 56.36(b) and (c)," Sussex "is liable to Plaintiffs…for statutory damages of $1,000 per violation…" [Dkt. No. 1-1 ¶ 96.] Sections 56.06, 56.101, and 56.10, however, are not universally applicable. Section 56.10 applies only to "[a] provider of health care, health care service plan, or contractor." Cal. Civ. Code § 56.10(a). Section 56.101 applies only to a "provider of health care, health care service plan, pharmaceutical company, or contractor." Cal. Civ. Code § 56.101(a). And Section 56.06 merely expands the definition of a "provider of health care" under Sections 56.101 and 56.10.

Plaintiffs claim that Sussex is a "mental health digital service" under Section 56.06, and, therefore, a "provider of health care" under Sections 56.101 and 56.10, because the Site "offer[s] (1) a search-engine tool to find a mental healthcare provider based on specific concerns and preferences input by the user and (2) links and buttons for the user to click and, by so doing, directly call or send an email communication to a therapist of interest." [Dkt. No. 1-1, ¶ 88.]

As explained above, that is *not* what a "mental health digital service" is. Under Section 56.05(l), a "mental health digital service" is an "internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer." Cal. Civ.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Code § 56.05(l). Furthermore, under Section 56.06(d), "a mental health digital service" is only "a provider of health care subject to the requirements of this part" if it provides the service "for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual." Cal. Civ. Code § 56.06(d).

Sussex does not do, and Plaintiffs do not allege that Sussex does, any of the above. For example, Plaintiffs do not allege that Sussex collects "mental health application information."[7] At most, Plaintiffs allege that Sussex collects information derived from button clicks on the site (i.e., alleging that the Site has "links and buttons for the user to click"). [Dkt. No. 1-1, ¶ 88.] Plaintiffs also do not allege that Sussex uses this information "to facilitate mental health services to a consumer." At most, Sussex allows users, like Plaintiffs, to contact relevant therapists directly. [*Id.* (alleging that the Site allows users to "directly call or send an email communication to a therapist of interest"); *see also id.* at ¶ 37 (alleging that the Site's "searchable directory connects consumers with licensed clinicians").] Finally, Plaintiffs do not allege that the Site's "purpose" was to "allow[] the individual to manage the individual's information" or to permit the "diagnosis, treatment, or management of a medical condition of the individual." As Plaintiffs allege, the Site provides (1) "content written by clinicians, experts, and researchers from across the field of behavior and psychology" and (2) "a directory that lists clinical professionals, psychiatrists and treatment centers providing mental health services." [*Id.* at ¶ 19.] Nothing more.

Because Plaintiffs have not plausibly alleged that the Site is a "mental health digital service," they have failed to allege that Sussex is a "provider of health care" and, in turn, failed to establish that the CMIA applies to it. Plaintiffs' CMIA claim must be dismissed.

**3. Plaintiffs Do Not Sufficiently Allege An "Unauthorized Viewing" of Their Information.**

California law is settled as to what is required to state a violation of Cal. Civ. Code

[7] "'Mental health application information' means information related to a consumer's inferred or diagnosed mental health or substance use disorder, as defined in Section 1374.72 of the Health and Safety Code, collected by a mental health digital service." Cal. Civ. Code § 56.05(k).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

§ 56.101. A plaintiff must set forth, among other things, sufficient facts to plausibly allege that some unauthorized ***person*** "actually viewed" his or her confidential medical information. *See, e.g.*, *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1557 (2014) (holding that, to state a viable claim under § 56.101, the plaintiff must plead that "an unauthorized person view[ed] the [confidential] medical information"; *B.K. v. Eisenhower Med. Ctr*., No. EDCV232092JGBKKX, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) ("A plaintiff must allege . . . that the information was 'improperly viewed or otherwise accessed.'")..

The very nature of Plaintiffs' allegations here—i.e., that Sussex embedded in the Site Google Analytics code [Dkt. No. 1-1, ¶ 5], to "provide analytics services, …maintain and improve Google's own services, develop new analytics and marketing services, and measure the effectiveness of advertising on Google's and its partners' sites and applications," [*id.* at ¶ 7]—makes it implausible that any unauthorized ***person*** "actually viewed" their information. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023) ("[J]ust because medical information has been disclosed in an unauthorized manner does not mean that the information was viewed by an unauthorized person."). Indeed, it would make little, if any, sense for an actual person at Google Analytics to care about, much less view, the clicks made and filters selected by Plaintiffs on the Site. Plaintiffs cannot actually believe that there is an individual within Google Analytics who (1) receives information regarding the buttons they clicked on the Site and then (2) personally analyzes that information. If that was how Google Analytics worked, Google would never make a dime.

In truth, even accepting all of Plaintiffs' allegations as true, the process by which the information is gathered and analyzed is entirely automated, controlled by computer code that requires no human intervention. It is for this reason that Courts have dismissed § 56.101 claims in tracking cases like this one. *See, e.g.*, *B.K.*, 2024 WL 878100, at *4 (dismissing in tracking class action § 56.101(a) claim because "Plaintiffs do not allege facts showing anyone improperly viewed or accessed any medical information"); *Cousin*, 681 F. Supp. 3d at 1129 (dismissing in tracking class action § 56.101(a) claims because "that Meta *could* collect and view the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

information of a hypothetical patient d[id] not support Plaintiff's claim" (emphasis added)).) As the Court in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023), noted when dismissing a § 56.101 claim: "the information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it." *Id.* at *7. Thus, even if there was medical information being collected here (there is not), Plaintiffs would still fail to allege any *facts* to suggest than any unauthorized *person* actually viewed it. Plaintiffs' claim should be dismissed.

**4. Plaintiffs Do Not Plausibly Allege that Sussex "Affirmatively Communicated" Their Medical Information To a Third Party.**

Similar to Cal. Civ. Code § 56.101 claims, the law relating to Cal. Civ. Code § 56.10 claims is settled. In order to state a claim under § 56.10, the plaintiff must allege, among other things, that the defendant "affirmatively communicated" her information to an unauthorized third party. *See Regents of Univ. of California v. Superior Ct*., 220 Cal. App. 4th 549, 564 (2013), *as modified on denial of reh'g* (Nov. 13, 2013) (noting that a claim under § 56.101 requires "an affirmative act of communication"); *Sutter Health,* 227 Cal. App. 4th at 1555–56 (stating that, in the context of the CMIA, a "disclosure" "occurs when the healthcare provider affirmatively shares medical information with another person or entity"). It necessarily follows, therefore, that, in order for Sussex to have violated § 56.10, Sussex must have "affirmatively communicated" Plaintiffs' information to Google Analytics.

Plaintiffs, however, go to great lengths in the Complaint to explain that that is not what occurred here. For example, Plaintiffs do not allege that Sussex collected their information and thereafter sent it to Google Analytics. Instead, they allege that Google Analytics "intercept[ed]" their information "in real time and ***while it was in transit***." [Dkt. No. 1-1, ¶ 21 (emphasis added); *see also id.* at ¶ 31 (alleging that Google's code "***intercepts a user's interaction in real-time*** as the user navigates the page, including ***intercepting any information that the user may input and what links the user clicked***, and sends a second, duplicate set of transmissions to third parties' servers" (emphasis added)).] They further claim that Sussex "allowed Google ***to tap*** intentionally



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

and/or ***make unauthorized connections with the lines of internet communications*** between Defendant, on the one hand, and Plaintiffs…, on the other." [*Id.* at ¶ 130 (emphasis added).] But nowhere do Plaintiffs explain how Sussex could have "***affirmatively communicated***" their information to Google Analytics if Google Analytics "***intercepted***" it "in real time and ***while it was in transit***." Both cannot be true. Either Plaintiffs' information was intercepted before it reached Sussex, or it was disclosed by Sussex after it was in Sussex's possession. Plaintiffs have alleged the former. Therefore, they have not stated and cannot state a claim under Section 56.10. Their claim must be dismissed.

**5. There Is No Private Right of Action For Aiding and Abetting a Violation of the CMIA.**

Section 56.36(b) sets forth the grounds on which individuals, such as Plaintiffs, may bring a suit against a third party under the CMIA. Per that section, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part." Cal. Civ. Code § 56.36(b). Nowhere in that section does it allow Plaintiffs to sue Sussex for allegedly helping Google Analytics to "knowingly or willfully obtain[] medical information for financial gain" or to "knowingly and willfully obtain[], disclos[e], or us[e] medical information without written authorization," despite Plaintiffs' claims otherwise. [Dkt. No. 1-1, ¶¶ 99-100.][8]

Unlike California Invasion of Privacy Section 631(a) (discussed below), which expressly allows a defendant to be sued for aiding and abetting, the CMIA is a direct liability statute that limits a plaintiff's ability to sue under it to "negligent[] release[s] [of] confidential information or records." Cal. Civ. Code § 56.36(b). Plaintiffs' aiding and abetting claim under the CMIA must be dismissed.

**B. <u>Plaintiffs' CCPA Claim Must Be Dismissed.</u>**

In asserting a claim against Sussex under the CCPA, Plaintiffs have backed themselves into a corner. There is no dispute that, under California law, the CCPA does not apply to entities

[8] Sussex is aware of no case in which an aiding and abetting claim under the CMIA has been asserted, let alone upheld by the court.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

regulated by either the CMIA or the Health Insurance Portability and Accountability Act ("HIPAA"). See Cal. Civ. Code § 1798.145 (c)(1)A) ("This title shall not apply to any of the following: (A) Medical information governed by the Confidentiality of Medical Information Act (Part 2.6 (commencing with Section 56) of Division 1) or protected health information that is collected by a covered entity or business associate governed by the privacy, security, and breach notification rules …established pursuant to the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ….").

Here, Plaintiffs affirmatively allege that Sussex is regulated by both the CMIA and HIPAA. [See Dkt. No. 1-1, First and Second Causes of Action under the CMIA, ¶¶ 59 ("Defendant's actions clearly violate HIPAA.").][9] For that reason alone, Plaintiffs' CCPA claim should be dismissed.

It is not, however, the only reason. The CCPA's private right of action makes clear that only individuals "whose nonencrypted and nonredacted personal information…is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action." Cal. Civ. Code § 1798.150 (A)(1).

Clearly, here, there was no "theft" or "disclosure" of Plaintiffs' information. Plaintiffs expressly alleged that Sussex allowed Google Analytics to collect their information, and, as discussed above, absent an "affirmative communication," there can be no disclosure.

Plaintiffs, therefore, must allege that, as a result of Sussex allowing Google Analytics to be installed on its website, Plaintiff's information was "subject to an unauthorized access ***and exfiltration***." There was no "exfiltration" here. The Merriam-Webster Dictionary defines

[9] Although Plaintiffs allege that both the CMIA and HIPAA apply to Sussex, neither does. The CMIA and HIPAA regulate healthcare providers and, at times, the providers' contractors. Sussex provides no health care and employs no healthcare professionals. It is a media publisher; nothing more.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

"exfiltration" as "to steal (sensitive data) from a computer (as with a flash drive)."[10] As noted above, Plaintiffs do not allege that any information was "stolen." Instead, they claim that Google Analytics intercepted their information, with Sussex's permission, while it was en route to its final destination. Therefore, Plaintiffs lack a private right of action to sue Sussex under the CCPA for the conduct alleged in the Complaint.

**C. <u>Plaintiffs' CIPA § 631(a) Claim Must Be Dismissed.</u>**

California Penal Code § 631(a) imposes liability under four distinct scenarios. (*B.K. v. Desert Care Network*, No. 223CV05021SPGPDX, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) ("*Desert Care*").) Here, Plaintiffs allege that Sussex is liable under the fourth clause of § 631(a)—aiding and abetting. [*See* Dkt. No. 1-1, ¶ 133 (alleging that Sussex "willingly facilitated, aided, employed, agreed with, and conspired with unauthorized third parties to track and intercept Plaintiffs' and Class members' personal and private communications made via the Psychology Today website").] *See also Desert Care*, 2024 WL 1343305, at *6 (noting that fourth clause of § 631(a) is "an aiding and abetting provision" (quoting Cal. Penal Code § 631(a)).

Liability can only be established under the fourth clause if the plaintiff can allege a violation of one of the first three clauses. *Esparza v. Gen Dig. Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) ("With respect to the fourth clause, a plaintiff alleging a CIPA violation must adequately allege a violation under one of the first three clauses of Section 631(a)."); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (stating that, under aiding-and-abetting theory of liability, the defendant's "liability…is…based entirely on whether [a third party] violated Section 631(a) in some way"). Furthermore, "[a]s the website owner, [Sussex] was the intended recipient of plaintiff's communication" and "[p]arties to a conversation cannot eavesdrop on their own conversation, so no…part of Section 631(a)," other than aiding and abetting liability under clause four, "is applicable to [Sussex]." (*Williams*, 2022 WL 17869275, at *2.) Plaintiffs have failed to

---

[10] [Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/exfiltrate#:~:text=intransitive%20verb,%CB%8C)fil%2D%CB%88tr%C4%81%2Dsh%C9%99n (last visited: July 18, 2024).]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

allege that Google Analytics violated of any of the first three clauses of CIPA § 631(a); therefore, Plaintiffs have failed to state a claim against Sussex under the fourth clause of CIPA § 631(a).

**1. Plaintiffs Have Not Alleged a Violation of the First Clause.**

Plaintiffs cannot, as a matter of law, state a claim under the first clause of CIPA § 631(a) because the first clause of CIPA § 631(a) *does not apply to online conduct. See, e.g., Cody v. Ring LLC*, No. 23-CV-00562-AMO, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024) ("Clause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet, and so cannot support [Plaintiff's] claims."); *Williams*, 2022 WL 17869275, at *2 ("[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet."); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023) (dismissing internet-based claim under first clause of CIPA § 631(a) because "Plaintiff's desired interpretation (internet technology as a telephone or telegraph wire) directly conflicts with the statutory scheme").

**2. Plaintiffs Have Not Alleged a Violation of the Second Clause.**

"The second clause of Section 631(a) applies if a third party reads or learns the content of communications without the consent of all parties, 'while' the communication is 'in transit ... or is being sent from, or received' within California." *Cody*, 2024 WL 735667, at *4. "'While' is the key word[.]" *Valenzuela*, 674 F. Supp. 3d at 758. For the second clause to even apply, the alleged third-party eavesdropper—here, Google Analytics—must "read or learn" the content of a communication *while it is in route to the intended recipient. Id.* at 759 ("'While' implies the interception must occur contemporaneous with the sending or receipt of the message.").)

That Plaintiffs here repeatedly use in the Complaint the term "intercept" is of no consequence. Numerous courts have held that "[u]sing the word 'intercept' repeatedly is simply not enough[.]" *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also Cody*, 2024 WL 735667, at *5 (dismissing claim under second clause of CIPA § 631(a) because the plaintiff's "conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations."); *Heiting v.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *9 (C.D. Cal. Apr. 2, 2024) (dismissing claim under second clause of CIPA § 631(a) because, as it related to the "in transit" requirement, the plaintiff's "allegations merely restate the statutory language, which is insufficient under the plausibility standard"). Plaintiff must allege specific facts that make it plausible that Google Analytics is reading or learning their information while it is in transit.

Not only do Plaintiffs not allege that Google Analytics is reading or learning their information "while it is transit," but they actually allege the exact opposite. Plaintiffs claim that "[o]nce Google Analytics ***receives***," (i.e., no longer "in transit"), "views, and processes the data, it aggregates and organizes the data based on particular criteria." [Dkt. No. 1-1, ¶ 32.] If Google Analytics receives the information before it views, processes, aggregates, and organizes it, it clearly is not "reading or learning" the contents of the information while it is transit. Therefore, Plaintiffs have failed to state a violation of the second clause of CIPA § 631(a).

### 3. Plaintiff Has Not Alleged a Violation of the Third Clause.

"To state a claim for derivative liability under clause three," as Plaintiffs attempt to do here, Plaintiffs "must allege that [Google Analytics] 'use[d], or attempt[ed] to use, in any manner, or for any purpose, or to communicate in any way, any information [ ] obtained [in violation of clause one or clause two].'" *D'Angelo v. FCA US, LLC*, No. 323CV00982WQHMMP, 2024 WL 1625771, at *12 (S.D. Cal. Mar. 28, 2024) (quoting Cal. Penal Code § 631(a). Indeed, absent a violation of the first or second clauses of CIPA § 631(a), there can be no violation of the third clause. *See, e.g., Swarts*, 689 F. Supp. 3d at 744 ("A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)."); *Cody,* 2024 WL 735667, at *7 ("As [Plaintiff] failed to allege facts suggesting that [defendant] used or communicated any information obtained through a violation of the first or second clauses, she has also failed to plead a violation of the third clause.").

As detailed above, Plaintiffs here have not adequately pleaded a violation of either the first or second clause of CIPA § 631(a). Plaintiffs have, therefore, necessarily failed to allege a violation of the third clause.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Because Plaintiffs' CIPA § 631(a) claim is based, entirely, on an aiding-and-abetting theory of liability and because Plaintiffs have failed to adequately allege that Google Analytics violated CIPA § 631(a), their CIPA § 631(a) claim must be dismissed. *See Esparza*, 2024 WL 655986, at *4 ("With respect to the fourth clause, a plaintiff alleging a CIPA violation must adequately allege a violation under one of the first three clauses of Section 631(a).").)

**4. Plaintiff's CIPA § 631(a) Aiding-and-Abetting Claim Fails for the Additional Reason That Plaintiffs Do Not Allege the Requisite Intent.**

Although further reasoning is unnecessary for the Court to dismiss Plaintiffs' CIPA § 631(a) claim, it also fails because Plaintiffs have not alleged that either Sussex or Google Analytics acted with the requisite intent.

"Section 631 requires defendants to act 'willfully' or 'intentionally.'" (*Desert Care*, 2024 WL 1343305, at *7.) Therefore, where the plaintiff fails to allege sufficient facts to establish that the third-party interceptor—here, Google Analytics—acted with the requisite intent, courts have dismissed aiding and abetting claims. (*Ibid.* (dismissing claim because "Plaintiffs' allegations indicate[d] that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality").) That is the case here. That Plaintiffs allege that Sussex "acted intentionally, or, alternatively, with knowledge [of] Google's misappropriation of Plaintiffs'" information [Dkt. No. 1-1 ¶ 101], has no impact on this Court's ruling because the question is whether Sussex aided and abetted a third party (i.e., Google) who *willfully and intentionally* intercepted their communications. *See* Cal. Penal Code § 631(a).

Plaintiffs allege nothing that would suggest that anything Google did was "willful or intentional." Indeed, the most they allege is that "Google markets Google Analytics as a platform that offers 'a complete understanding of your customers across devices and platforms' to 'uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data'" and that "Google Analytics collects data from a website or application to create shareable reports that provide insights into a business, and is designed to work together with other Google solutions to provide a company with a complete understanding

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

of its marketing efforts and enhance performance." [Dkt. No. 1-1. ¶ 31.] That is not intentional criminal behavior. It is run-of-the-mill commercial behavior.

Plaintiffs must also allege that Sussex "add[ed] or embed[ded] [Google's] small piece of JavaScript measurement code into each page of its site" [Dkt. No. 1-1, ¶ 30], with the intention of allowing the unlawful interception of their communications, which Plaintiffs have not done and cannot do. As the California Supreme Court explained: "Proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—*knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends*, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) (emphasis added).[11]

That is, "an aider and abettor's mental state *must be at least that required of the direct perpetrator*." *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001) (emphasis added). Moreover, aiding and abetting is a "specific intent" crime because it "refers to defendant's intent to do some future act or achieve some additional consequence." *People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997). For such crimes, "one may knowingly assist another to commit a crime, yet lack a specific intent that the crime be committed." *Ibid*. (citations omitted). "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *In re Meagan R.*, 42 Cal. App. 4th 17, 22 (1996) (citing *Beeman*, 35 Cal. 3d at 560).

Here, Plaintiffs fail to plead facts sufficient to establish the key requirements of an aiding

[11] Even in the civil non-CIPA context, CACI No. 3610 specifies that a plaintiff must establish that the defendant gave "substantial assistance or encouragement" to the alleged wrongdoer, and that the defendant's conduct was a "substantial factor" in causing harm to the plaintiff. *Id.* "Mere knowledge that a wrongful act was [being/going to be] committed and the failure to prevent it do not constitute aiding and abetting." *Id.* In addition, a complaint must allege the aider and abettor had the specific intent to facilitate the wrongful conduct. *See Schulz v. Neovi*, 152 Cal. App. 4th 86, 95 (2007). Although Cal. Penal Code § 31 applies here as set forth herein, Plaintiff does not even meet the less stringent elements required to support a civil non-CIPA aiding and abetting claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

and abetting claim. More specifically, Plaintiffs have not pled facts showing (1) that Google had an unlawful intent to intercept Plaintiffs' information; (2) that Sussex had any knowledge of Google's allegedly unlawful intent to intercept Plaintiffs' alleged communications; (b) that Sussex harbored an intent to help Google intercept any alleged communications; (c) that Sussex had at least the same mental state as Google; (d) that Sussex knew the "full extent of [Google's alleged] criminal purpose" and gave aid or encouragement with the intent or purpose of facilitating Google's alleged commission of a crime; or (e) that Sussex engaged in conduct that assisted the achievement of the alleged crime. Plaintiffs have not alleged facts to establish the intent required under CIPA § 631(a). Therefore, Plaintiffs' claim must be dismissed for this additional reason.

### D. Plaintiff's CIPA § 632 Claim Fails.

CIPA § 632(a) makes it unlawful for a person to "intentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). Plaintiffs claim that Sussex violated CIPA § 632 because it "permitted Google to eavesdrop upon and/or record Psychology Today website users' confidential communications through an electronic amplifying or recording device." [Dkt. No. 1-1, ¶ 142.] This claim fails for several reasons.

**First**, at least one court has held that "[a] plain reading of the text [of CIPA § 632] itself makes clear that the statute only applies to communications transmitted by telephone, not internet." *Swarts*, 689 F. Supp. 3d at 747. **Second**, even if CIPA § 632(a) does apply to internet-based communications, the claim fails as a matter of law. Sussex could only violate CIPA § 632(a) if it recorded Plaintiffs' information without their consent, and clearly Sussex had Plaintiffs' consent. Plaintiffs provided Sussex with information for the express purpose of having Sussex record it and use it to provide them with web pages or therapist recommendations. [Dkt. No. 1-1, ¶ 10, 14.] *See also Calhoun v. Google, LLC*, 645 F. Supp. 3d 916, 928 (N.D. Cal. 2022) ("Consent can be [express] or implied, but any consent must be actual." (internal quotations omitted and alternation in original)). **Third**, because Plaintiffs' CIPA § 632(a) is based on aiding

and abetting, [*See* Dkt. No. 1-1, ¶ 142], Plaintiffs must allege the requisite intent on both the part of Sussex and Google. *Vaccaro v. Altais*, No. 223CV04513ODWBFMX, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) (noting that, in the context of CIPA § 632(a), "[a]n aider and abettor is one *who acts with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense*" (emphasis added)).) As explained above, Plaintiffs have not alleged that Google was acting with a "criminal purpose" or that Sussex was aware of Google's "criminal purpose" and intended to help Google in committing the criminal act. **Fourth,** Plaintiffs have not alleged that any information Google Analytics collected about them was a "confidential communication." Plaintiffs allege that Google Analytics collected their IP addresses, [Dkt. No. 1-1, ¶ 42], but "one has no reasonable expectation of privacy in an IP address when using the Internet," *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016). Plaintiffs also allege that Google Analytics collected their button clicks and the pages they viewed. [Dkt. No. 1-1, ¶ 40]. Button clicks and pages viewed on a publicly accessible website are not confidential. *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) ("[A] number of courts have found ['mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), [and] URLs of web pages visited'] [are] not something over which a consumer has an objectively reasonable expectation of privacy"). In fact, the only information that could even be considered a "confidential communication" are Plaintiffs' emails to therapists. [Dkt. No. 1-1, ¶ 39 (alleging that Google Analytics collects "a copy of any email communications sent to the therapists"). That allegation is not only demonstrably false (and, if this case is allowed to proceed, will immediately be the target of Sussex's forthcoming motion for summary judgment), but it is also contradicted by other allegations in the Complaint. For example, in the very next paragraph, Plaintiffs retreat from their allegation, alleging that "[i]f the user clicks on the telephone number or email buttons for Dr. X, the user's clicks and ***attempts to communicate*** with Dr. X are shared with Google." [*Id.* at ¶ 40 (emphasis added).] Plaintiffs have failed to state a claim under CIPA § 632(a); their claim must be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

### E. Plaintiff's Invasion of Privacy Claim Fails.

An invasion of privacy claim asserted under the California Constitution requires that the invasion be "highly offensive." *Cousin,* 681 F. Supp. 3d at 1125–26 (stating that a "claim for invasion of privacy under the California Constitution" requires a plaintiff to plead, among other things, that "'the intrusion is so serious as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive'" (cleaned up)).) California district courts have recognized the "high bar for invasion of privacy claims." (*See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1035 (N.D. Cal. 2012).)

In considering whether an invasion of a privacy interest is "highly offensive," "courts are required to consider all-inclusive factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Cousin,* 681 F. Supp. 3d at 1126 (internal quotations omitted).)

Nothing Plaintiff has alleged here would support a finding that Sussex acted in a "highly offensive" manner. First, Plaintiffs have not alleged any "harm" arising out of Sussex's complained-of conduct, let alone "serious harm." In fact, aside from alleging that the complained-of conduct occurred, Plaintiffs have alleged nothing that would even suggest that they have, in any way, been negatively impacted. Second, there was no "intrusion." Plaintiffs affirmatively provided their information to Sussex through the Site for the very purpose of Sussex obtaining it and delivering web pages, articles or therapists meeting Plaintiffs' requests. Third, to the extent that Sussex could even be considered the 'intruder" in this scenario, Sussex's motives were not nefarious. According to Plaintiff, Sussex was merely trying to gain "insights into [its] business," obtain a "complete understanding of its marketing efforts," and "enhance performance." [Dkt. No. 1-1, ¶ 30.]

Finally, and perhaps most importantly, there simply can be no "highly offensive" invasion of privacy where, as here, the plaintiff has not alleged that any *human* actually laid eyes on any information, let alone information that is both confidential and specific to him or her. An

invasion of privacy necessarily requires that the confidentiality of some information be breached. And here, having failed to allege that they ever provided any confidential information to Sussex or that any unauthorized human actually viewed it, Plaintiffs cannot allege an invasion of privacy claim. Their claim must be dismissed.

## V. **CONCLUSION**

For the foregoing reasons, Defendant Sussex Publishers, LLC respectfully requests that the Court grant its Motion to Dismiss in full and with prejudice.

Dated: July 22, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA