Matthew D. Pearson, SBN 294302
*mpearson@bakerlaw.com*
Monique Matar, SBN 317145
*mmatar@bakerlaw.com*
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: (714) 754-6600
Facsimile: (714) 754-6611

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-02609-JSC<br><br>The Honorable Jacqueline Scott Corley<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE: OCTOBER 3, 2024**<br>**TIME: 10:00 A.M.**<br>**COURTROOM 8**<br><br>Action Filed: November 30, 2023<br>FAC Filed: August 12, 2024 |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 2

II. MOTION TO DISMISS STANDARD ..... 4

III. PLAINTIFFS' ALLEGATIONS ..... 5

IV. ARGUMENT ..... 6

A. The Site Does Not Collect Or Disclose Any Medical Information. ..... 6

1. Public Browsing Information Is Not Medical Information. ..... 6

2. Google Analytics Does Not Collect Communications to Therapists or Actual Therapy Sessions. ..... 8

B. Plaintiffs' CMIA Claims Must Be Dismissed. ..... 9

1. The Information Collected Through Google Analytics Is Not "Medical Information" Under the CMIA. ..... 9

*a. Information not "in possession of or derived from a provider of health care."* ..... 9

*b. Information not "Individually Identifiable."* ..... 11

*c. Information Does Not Relate to Plaintiffs' "Mental or Physical Condition, or Treatment."* ..... 12

2. The CMIA Does Not Apply to Sussex. ..... 13

3. Plaintiffs Do Not Sufficiently Allege An "Unauthorized Viewing" of Their Information. ..... 15

4. Plaintiffs Do Not Plausibly Allege that Sussex "Affirmatively Communicated" Their Medical Information to a Third Party. ..... 16

5. There Is No Private Right of Action for Aiding and Abetting a Violation of the CMIA. ..... 17

C. Plaintiffs' CCPA Claim Must Be Dismissed. ..... 17

D. Plaintiffs' CIPA Claims Must Be Dismissed. ..... 19

1. Plaintiffs Have Not Plausibly Alleged a Violation of CIPA § 631(a). ..... 19

*a. Plaintiffs Have Not Alleged a Violation of the First Clause.* ..... 20

*b. Plaintiffs Have Not Alleged a Violation of the Second Clause.* ..... 20

*c. Plaintiff Has Not Alleged a Violation of the Third Clause.* ..... 21


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

d. *Plaintiffs Do Not Allege the Requisite Intent under CIPA § 631(a)* .......... 21

2. Plaintiffs Have Not Plausibly Alleged a Violation of CIPA § 632. .......... 23

E. Plaintiff's Invasion of Privacy Claim Fails. .......... 24

V. CONCLUSION .......... 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Hospital Assoc. v. Becerra*
No., 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)........................... 7, 8, 13

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
No. 17-CV-03903-PJH, 2018 WL 2387812 (N.D. Cal. May 25, 2018), aff'd, 933 F.3d 1088 (9th Cir. 2019)........................................................................................ 10

*Apatow v. Am. Bankers Ins. Co. of Fla.*,
No. 16-198 MWF, 2016 WL 7422288 (C.D. Cal. Dec. 21, 2016) (Fitzgerald, J.)................................................................................................................ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 4

*B.K. v. Desert Care Network*,
No. 223CV05021SPGPDX, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)................. 19, 21, 22

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024)..................... 15, 16

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023)............................................. 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 4

*Calhoun v. Google, LLC*
645 F. Supp. 3d 916 (N.D. Cal. 2022)..................................................................... 23

*Cody v. Ring LLC*,
No. 23-CV-00562-AMO, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024)........................... 20, 21

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)............................................................ 15, 16, 24, 25

*D'Angelo v. FCA US, LLC*,
No. 323CV00982WQHMMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024)....................... 21

*Eisenhower Med. Ctr. v. Superior Ct.*,
226 Cal. App. 4th 430 (2014)............................................................................ 13

*Hartley v. Univ. of Chi. Med. Ctr., No. 22-c-5891*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)................................................................. 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ........ 21

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........ 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 24

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 11, 12

*In re Nickelodeon Consumer Priv. Litig.*,
No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ........ 19

*People v. Perez*,
35 Cal. 4th 1219 (2005) ........ 22

*Regents of Univ. of California v. Superior Ct.*,
220 Cal. App. 4th 549 (2013) *as modified on denial of reh'g* (Nov. 13, 2013) ........ 16

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 20

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 7, 8

*Sutter Health v. Superior Ct.*,
227 Cal. App. 4th 1546 (2014) ........ 15, 16

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 24

*United States v. Hamilton*,
413 F.3d 1138 (10th Cir. 2005) ........ 12

*United States v. Matish*,
193 F. Supp. 3d 585 (E.D. Va. 2016) ........ 24

*Vaccaro v. Altais*
No. 223CV04513ODWBFMX, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ........ 23

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 20

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 19



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**Statutes**

Cal. Civ. Code § 56.05(j) ........ 9, 12
Cal. Civ. Code § 56.05(k) ........ 14
Cal. Civ. Code § 56.05(l) ........ 11, 14
Cal. Civ. Code § 56.06(b), and (2) ........ 10
Cal. Civ. Code § 56.06(d) ........ 14
Cal. Civ. Code § 56.10 ........ 1, 13, 16, 17
Cal. Civ. Code § 56.10(a) ........ 13
Cal. Civ. Code § 56.36(b) ........ 17
Cal. Civ. Code § 56.36(c) ........ 13
Cal. Civ. Code § 56.101 ........ 1, 13, 15, 16
Cal. Civ. Code § 56.101(a) ........ 13, 16
Cal. Civ. Code § 1798.145 (c)(1)A ........ 18
Cal. Civ. Code § 1798.150 (A)(1) ........ 18
Cal. Penal Code § 632(a) ........ 23, 24
CCPA ........ *passim*
CMIA ........ *passim*
HIPAA ........ 7, 18
Medical Information Act ........ 18
Medical Information Act, California Civil Code §§ 56.06, 56.101, and 56.10 ........ 3, 9, 13
Medical Information Act, §§ 56.06, 56.10, and 56.101 ........ 1

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1, 4
Rule 11 ........ 4



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on October 3, 2024, at 10:00 a.m. in Courtroom 8 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sussex Publishers, LLC ("Sussex") will and hereby does move the Court for an order dismissing Plaintiffs R.C.'s and D.G.'s Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

This motion is made on the grounds that Plaintiffs have failed to state against Sussex any plausible claims under which relief can be granted. More specifically:

1. Plaintiffs' First Cause of Action for violation of California's Confidentiality of Medical Information Act ("CMIA"), §§ 56.06, 56.10, and 56.101 should be dismissed because (1) Plaintiffs do not allege that they provided to Sussex any "medical information;" (2) the CMIA does not apply to Sussex; (3) Plaintiffs do not allege any "unauthorized viewing" under their Section 56.101 claim, and (4) Plaintiffs do not allege any "unauthorized disclosure" under their Section 56.10 claim.

2. Plaintiffs' Second Cause of Action for aiding and abetting a violation of the CMIA should be dismissed because there is no aiding and abetting liability under the CMIA.

3. Plaintiffs' Third Cause of Action for violation of the California Consumer Protection Act of 2018 ("CCPA") should be dismissed because (1) Plaintiffs have not alleged the requisite facts to establish that that the CCPA applies to Sussex and (2) Plaintiff has not alleged that their "personal information" was subject to exfiltration, theft, or disclosure, as required under the CCPA.

4. Plaintiffs' Fourth Cause of Action for aiding and abetting a violation of California Penal Code § 631 should be dismissed because (1) Plaintiffs have not alleged that anything Google did violated Section 631 and (2) Plaintiffs have not alleged that Sussex or Google acted with the requisite intent.

5. Plaintiffs' Fifth Cause of Action for violation California Penal Code § 632 should be dismissed because Plaintiffs have not alleged that Sussex recorded, without their

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

consent, any of their confidential communications.

6. Plaintiffs' Sixth Cause of Action for invasion of privacy under the California Constitution should be dismissed because Plaintiffs have failed to allege that anything Sussex did was "highly offensive."

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Court's file and records in this action, and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

August 26, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
Matthew D. Pearson

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

There is no shortage of class actions filed in California claiming that a healthcare provider unknowingly violated California law by installing a website tracker on its patient website. Indeed, nearly every healthcare provider operating within California has been sued.

Apparently, though, there are no more healthcare providers to sue, so plaintiffs have taken to suing ***media companies***, like Defendant, that publish magazines and websites providing information on healthcare. As Plaintiffs R.C. and D.G. (collectively, "Plaintiffs") admit, Sussex publishes both the *Psychology Today* magazine and www.psychologytoday.com (the "Site"). The Site "publishes content written by clinicians, experts, and researchers from across the field of behavior and psychology" and includes "a directory that lists clinical professionals, psychiatrists and treatment centers providing mental health services." [*Id.* at ¶ 23.] Users can "contact the therapists directly" [*Id.* at ¶ 23]. The Site also provides therapists with a video application like Zoom to speak with their clients.

Neither the Site nor Sussex actually **provides** any healthcare or employs anyone who

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

does. A simple review of the Site's homepage makes that clear.




[*Psychology Today*, available at: https://www.psychologytoday.com/us (last visited: July 18, 2024).]

But, despite the Site's immediately apparent, non-healthcare nature, Plaintiffs filed suit, alleging that, through the use of Google Analytics[1] on its Site, Sussex "disclos[es]…personally identifiable and sensitive medical information to unauthorized third parties," [Dkt. No. 16, ¶ 26], and, as a result (1) violated California's Confidentiality of Medical Information Act ("CMIA"), California Civil Code §§ 56.06, 56.101, and 56.10); (2) aided and abetted a violation of the CMIA; (3) violated the California Consumer Privacy Act of 2018 ("CCPA"); (4) aided and abetted a violation of California Penal Code § 631; (5) violated California Penal Code § 632; and (6) violated their privacy under California's Constitution.

Plaintiffs' claims are riddled with flaws. First, the majority of the FAC is based on Google's alleged collection of Plaintiffs' browsing information (i.e., pages visited, buttons clicked) on a publicly accessible website, information which courts have held is neither medical nor confidential. Second, with regard to the information that may actually be confidential (i.e., emails to therapists), Plaintiffs do not actually allege that Google collects it; they simply hint at it.

[1] As Plaintiffs allege, Google Analytics is merely a "tool for website traffic analysis." [Dkt. No. 16, ¶ 34.] Google Analytics is used by more than 30 million live websites to provide them, like it does here, with information such as the number of visitors, how the visitors got to the website (i.e., via a Google search), and which pages the visitors viewed. In Google's own words, Google Analytics does not *identify* any visitors. As Google states, "[e]very time a user visits a webpage, the [Google Analytics] tracking code will collect ***pseudonymous*** information about how that user interacted with the page." [*How Google Analytics Works*, Google.com, available at: https://support.google.com/analytics/answer/12159447?hl=en (last visited: August 22, 2024) (emphasis added).

Plaintiffs' failure is not accidental. Plaintiffs explicitly alleged in their original complaint that Google collected their email communications, [Dkt No. 1-1, ¶ 39 (alleging that Google Analytics "surreptitiously…collect[s]… *a copy of any email* communications sent to therapists" (emphasis in original)] but removed the allegation after having received a Rule 11 letter from Sussex.

Additional flaws abound. Nothing in the FAC plausibly supports a finding that Sussex collects and/or discloses any *medical information*. Indeed, as a *media* company, Sussex is not regulated by the CMIA. Even beyond that, the CMIA prohibits the unauthorized "disclosure" or "negligent release" of medical information. Sussex has *never* possessed Plaintiffs' medical information. Therefore, there is nothing it *could* disclose that would violate Plaintiffs' rights under the CMIA. The same is true with regard to the CCPA. The CCPA is intended to ensure that companies collecting the personal information of Californian's take steps to protect that information from theft and disclosure. There was no personal information here, just as there was no theft or disclosure.

These fatal flaws continue throughout Plaintiffs' FAC. At bottom, Plaintiffs are trying to jam a square peg into a round hole. They are trying to impose on Sussex—a media publisher—the legal obligations reserved for health care providers. They have failed to do so. Their FAC should be dismissed, in its entirety and with prejudice.

## II. MOTION TO DISMISS STANDARD

"In ruling on a motion under Rule 12(b)(6), [this] Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Apatow v. Am. Bankers Ins. Co. of Fla.*, No. 16-198 MWF (MRWX), 2016 WL 7422288, at *2 (C.D. Cal. Dec. 21, 2016) (Fitzgerald, J.). "To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and alterations omitted). The Court "need not accept as true . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (internal citation and quotation marks omitted). Indeed, the "Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief." *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## III. PLAINTIFFS' ALLEGATIONS

Plaintiffs admit that Sussex "is a private media company that owns *Psychology Today* magazine and the www.psychologytoday.com website." [Dkt. No. 16, ¶ 2.] They further admit that the Site "features therapy and health professional ***directories*** as well as hundreds of blogs and articles written by a variety of psychologists, psychiatrists, social workers, medical doctors, anthropologists, sociologists, and science journalists." [*Id.* (emphasis added).] They do not allege that either Sussex or the Site ***provides*** any actual medical care.

Plaintiffs allege that they each visited the Site and utilized the Site's "therapist directory." [*Id.* at ¶¶ 11, 16.] They claim that, in order to locate qualified therapists, they clicked various filters relating to the therapists' qualifications, including "location, insurance type, mental health specialty, price, and many other preferred characteristics…." [*Id.* at ¶ 3.] They also allege that they "reviewed the list of results, read various therapist biographies, viewed articles, blogs and/or videos." [*Id.* at ¶¶ 11 (Plaintiff R.C.), 16 (Plaintiff D.G. alleging that she "click[ed] on and review[ed] the therapist biographies").] Plaintiffs do not allege that before selecting these filters they logged into or in any way identified themselves on the Site. [*See generally id.*] Plaintiffs claim that, through Google Analytics installed on the Site, Google was able to collect their IP addresses and browsing information ("Public Browsing Information") and include in the FAC "figures" allegedly showing the information being collected. [*Id.* at ¶ 14, 19, Figures 4-7.]

Plaintiffs also allege that they each sent email communications to potential therapists directly through the Site. [*Id.* at ¶¶ 11 (R.C.), 17 (D.G.).] Plaintiffs claim that, prior to sending these emails, they were required to enter their names, email addresses, and telephone numbers, as well as a message to the potential therapist. [*Id.* at ¶¶ 12, 17.] Plaintiffs include as Figure 2 in the FAC the form they allegedly filled out, [*id.* at Figure 2] but, despite attaching numerous Figures showing what exactly Google Analytics **was** collecting and when, Plaintiffs refuse to attach such a figure as it relates to the email form, precisely because the information they inputted into the form **was not** collected by Google. At most, Google collected information on whether an unidentified user clicked on a button labeled "Profile_EmailButton". [*See id.* at Figure 1, 6.]

Lastly, Plaintiff D.G. alleges to have "used the [Site] for her online therapy sessions." [*Id.* at ¶ 18.] She claims that she received an email from Sussex, providing her with a link to check in for her appointment and inviting "her to join her teletherapy session via the 'Sessions by Psychology Today!' mobile app" ("Sessions"). [*Id.* at ¶ 18.] Plaintiffs do not allege that Google Analytics was installed on Sessions or provide any figures showing that Google was collecting any data via Sessions because it does not do so. [*See generally id.*]

Based on these allegations, Plaintiffs claim that Sussex violated California law and invaded their privacy. They do not allege how they have been injured by anything Sussex did.

## IV. <u>ARGUMENT</u>

### A. <u>The Site Does Not Collect Or Disclose Any Medical Information.</u>

The thrust of Plaintiffs' FAC is that Sussex (1) collected through the Site their medical information and (2) shared their medical information with Google through the use of Google Analytics. This "medical information," according to Plaintiffs, comes in two forms. First, Plaintiffs claim their Public Browsing Information constitutes medical information. Second, Plaintiffs allege that their correspondence to therapists (including their telephone interactions) constitute medical information. With regard to the former, case law makes clear that Plaintiffs are wrong. With the regard to the latter, the allegation is immaterial as Plaintiffs own allegations make clear that Sussex never disclosed Plaintiffs' written or oral communications to Google Analytics.

#### 1. Public Browsing Information Is Not Medical Information.

Nearly every plaintiff to file one of these lawsuits against a website operator has alleged that information about his or her website browsing constitutes medical information based upon the Department of Health and Human Services' ("HHS") bulletins and other related guidance. Specifically, plaintiffs claim that because the HHS has opined that browsing information can constitute individually identifiable health information ("IIHI") and because tools like Google Analytics collect public browsing information, those tools necessarily collect medical information. Plaintiffs here are no different. [Dkt. No. 16, ¶¶ 70 – 75.]



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

The flaw in this argument is that browsing information on a publicly accessible website, like the Site here, is not and has never been IIHI and, therefore, is not and has never been medical information. In June 2024, the U.S. District Court for the Northern District of Texas in *American Hospital Assoc. v. Becerra* No., 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024), explained why this is so. There, a group of hospitals challenged the validity of the HHS' Bulletins that stated that the combination of an individual's IP address and his or her browsing history on a publicly accessible portion of a healthcare provider's website constitutes "individually identifiable health information" or, as that term is defined, "information that (1) 'relates to' an individual's healthcare and (2) 'identifies the individual' or provides 'a reasonable basis to believe that the information can be used to identify the individual.'" *Id.* at *1.

In concluding that the HHS overstepped its bounds in issuing the Bulletins, the court explained that whether and to what extent information collected through a publicly accessible website "relates to an individual's healthcare" is entirely dependent on the "visitors' subjective motive for visiting the page," something only the visitor can know. *Id.* at *12. That is, there is no way to know whether an individual was browsing the website for his own purposes, for the purposes of his friend, or just out of pure curiosity. As the Court in *Becerra* put it: "[w]ithout knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)." *Id.* at *14.

Even before the court in *Becerra* repudiated the HHS's Bulletins, several courts, including the Ninth Circuit, have held that "the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA ... apply." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018); *see also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("By contrast, [Plaintiff's] allegations are far too vague to allow an inference to be drawn that [Defendant] was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata."); *Hartley v. Univ. of Chi. Med. Ctr., No. 22-c-5891, 2023 WL 7386060*, at *2 (N.D. Ill. Nov. 8,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

2023) (citing *Smith*, 745 F. App'x at 9) (rejecting argument that metadata could be IIHI for similar reasons).

The same is true here. The Public Browsing Information allegedly collected by Google Analytics could not constitute Plaintiffs' "medical information" because the information does not "relate to" their medical condition or history. For all Sussex (or Google for that matter) knew, Plaintiffs could have been browsing the Site out of curiosity or for someone else. Indeed, the only reason Sussex ever found out that Plaintiffs were on its website searching for their own medical purposes is because Plaintiffs admitted as much in their *publicly filed* complaint.

**2. Google Analytics Does Not Collect Communications to Therapists or Actual Therapy Sessions.**

Plaintiffs try to distinguish this case from the others that are based exclusively on the alleged collection and disclosure of public browsing information by hinting (without directly alleging or providing any facts to support their argument) that Sussex allows Google to collect users' email messages to therapists and information about their actual therapy sessions. [Dkt. No. 16, ¶¶ 45-40 (describing the Site's email and teletherapy capabilities).] But while Plaintiffs include in their FAC screenshots purportedly showing that Google has collected their Public Browsing Information [*see* Dkt. No. 16, Figures 4-6], ***none of these figures show that the actual content of the emails was collected***. In fact, the figures irrefutably show the opposite: that Google Analytics does not collect the content of email communications.

For example, Plaintiffs represent that Figure 6 shows that an unknown website user clicked on the "email" button shown in Figure 2. [*See* Dkt. No. 16, Figures 2 and 6.] Yet nowhere in Figure 6 does it show that Google is capturing any of the content of the email allegedly sent. Indeed, based on the information in Figure 6, which is the only information Google receives, the unknown user could have sent a blank email, could have sent an email on behalf of her friend or relative, or could have sent an email by mistake. Without the content of the email, there is no way to know the reason why the user sent it, and, as the *Becerra* court explained, "[w]ithout knowing…the visitor's subjective motive[,]…the resulting metadata could never identify that individual's PHI." *Becerra* No., 2024 WL 3075865 at *14.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Plaintiffs provide even less information as it relates to online therapy sessions. In fact, aside from alleging how the teletherapy works [Dkt. No. 16, ¶¶ 48-49] and providing a screenshot of the teletherapy page (which operates entirely independently from the Site) [*id.* at Figure 3], Plaintiffs do not even allege that Google Analytics was installed on the teletherapy page. Indeed, it isn't.

Therefore, as an initial matter, Plaintiffs have failed to allege that Sussex collects and discloses medical information. At most, Plaintiffs have alleged that Sussex allowed Google to collect from the Site Public Browsing Information, which is not medical information.

### B. Plaintiffs' CMIA Claims Must Be Dismissed.

Plaintiffs assert violations under three distinct sections of the CMIA: Sections 56.06, 56.101, 56.10. [Dkt. No. 16, First Cause of Action.] Each of these claims fail for their own, specific reasons. But before even delving into those reasons, the Court must consider whether the information in question here is even governed by the CMIA. It is not.

#### 1. The Information Collected Through Google Analytics Is Not "Medical Information" Under the CMIA.

The CMIA's definition of medical information has three distinct parts: (1) "any ***individually identifiable information***, in electronic or physical form," (2) "***in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor***"[2] (3) "regarding a patient's ***medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment***. Cal. Civ. Code § 56.05(j) (emphasis added). The information that Plaintiffs allege Google Analytics collected here meets none of these requirements.

##### *a. Information not "in possession of or derived from a provider of health care."*

Plaintiffs do not allege in the FAC that Sussex is a "health care service plan," a "pharmaceutical company," or a "contractor." [*See generally* Dkt. No. 16.] Instead, they claim that, for the purposes of the CMIA, Sussex can be considered a "provider of health care" because it both (1) "offers software or hardware to consumers…that is designed to maintain medical

[2] Notably, Plaintiffs conspicuously omit this clause from their definition of "medical information" in the Complaint. [*See* Dkt. No. 16, ¶ 98.]



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual," Cal. Civ. Code § 56.06(b), and (2) "offers a mental health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual," *Id.* at § 56.06(d). Plaintiffs are wrong.

Sussex operates a publicly available website; it does not offer any consumer "software or hardware."[3] In fact, it does not even allow consumers to log in or create a personal account on the Site. Consumers, including Plaintiffs, can visit the Site, browse, and, if desired, send a message to a therapist. Nothing more.[4]

Further, even if Sussex did offer consumers "software or hardware" (it does not), that "software or hardware" would not be "designed to maintain medical information…for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual." As Plaintiffs themselves admit, the Site provides (1) "content written by clinicians, experts, and researchers from across the field of behavior and psychology" and (2) "a directory that lists clinical professionals, psychiatrists and treatment centers providing mental health services." [Dkt. No. 16, ¶ 23.] Though they assert that Psychology Today "facilitates the provision of mental health services" [*id.* at ¶ 24], *facilitation* is a far cry from a piece of software or hardware designed to *maintain* medical information.

Similarly, the Site is not a "mental health digital service" that "allow[s]" an "individual to manage the individual's information" or "the diagnosis, treatment, or management of a medical

[3] The CMIA does not define either "software" or "hardware." Therefore, those terms must be given their "ordinary meaning" (i.e., their "common dictionary definitions"). *Animal Legal Def. Fund v. United States Dep't of Agric.*, No. 17-CV-03903-PJH, 2018 WL 2387812, at *6 (N.D. Cal. May 25, 2018), aff'd, 933 F.3d 1088 (9th Cir. 2019). The Merriam-Webster Dictionary defines "software" as "programs for a computer." [Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/software (last visited: August 22, 2024).] It defines "hardware" as "the physical components (such as electronic and electrical devices) of a vehicle (such as a spacecraft) or an apparatus (such as a computer)." [Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/hardware (last visited: August 22, 2024).] The site is neither a "program for a computer" nor a "physical component." If anything, computers use software (i.e., internet browsers) to access and view the Site.

[4] If a therapist subsequently initiates a call on Sessions, there is no transmission of the consumers' activity on the Site to Sessions, just as if the call had occurred on Zoom or Teams.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

condition of the individual." A "mental health digital service" is an "internet website that *collects* mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, *and* uses the information to facilitate mental health services to a consumer." Cal. Civ. Code § 56.05(l) (emphasis added). Crucially, Plaintiffs do not allege that Sussex collected through the Site their "mental health application information," marketed "itself as facilitating mental health services," ***and*** "use[d] the information to facilitate mental health services to a consumer." [*See generally* Dkt. No. 16.] To "collect" means "to bring together into one body or place" or to "to gather an accumulation of" something[5]—in other words, to keep or maintain. But Plaintiffs do not allege that Sussex collects, keeps, or maintains ***any specific information*** through the Site. They do not allege what information is stored, how it is stored, or where it is stored—because they cannot. And, without the collection and storage of information, Plaintiffs are unable to allege, among other things, that the Site "uses the information to facilitate mental health services…."

***b. Information not "Individually Identifiable."***

The CMIA explains that "[i]ndividually identifiable" means "that the medical information includes or contains any element of personal identifying information ***sufficient to allow identification of the individual***…." *Id.* (emphasis added). In certain contexts, such as when a website allows its users to log into their own, personal account, it is plausible to assume that information collected from the website is "individually identifiable." *See In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (distinguishing "users browsing through websites providing healthcare information to the public at large" from "users navigating to patient portals on healthcare providers' websites").

That, however, is not the case here. Plaintiffs do not allege that, at any point in time, they logged into the Site, nor could they. The Site does not allow visitors to log-in. Therefore, unless the information that Plaintiffs allege Google Analytics collected identified them personally, the information allegedly collected is not "individually identifiable."

[5] Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/collect (last visited: August 20, 2024).]



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

None of the information that Plaintiffs allege Google Analytics collected would personally identify them. For example, Plaintiff R.C. alleges that Google Analytics collected his IP address. IP addresses, however, do not identify an individual; they identify a device, which could be and likely is used by multiple people within a household *United States v. Hamilton*, 413 F.3d 1138, 1141 n. 2 (10th Cir. 2005) ("[A]n IP address…is a unique number identifying the location of an end-user's ***computer***." (emphasis added). IP addresses are not always unique to a single device: when connected to a modem/router, a public IP address can be shared by dozens of people within a network, such as in a corporate environment, a student library, a Starbucks with public Wi-Fi, or a federal courthouse Wi-Fi network. Additionally, when using mobile data, thousands of cell phones share the network providers' public IP address and are randomly assigned private IP addresses each occasion they access the network. In fact, a single cell phone may use multiple public and private IP addresses throughout the day, depending on whether it is connected to mobile data, Wi-Fi networks, or both.

R.C. also alleges that Google Analytics collected "his" general browsing information (i.e., list results, therapist biographies, articles, blogs, and/or videos). That information is no different than the generic "browsing through websites providing healthcare information to the public at large" rejected by the court in *In re Meta*. In fact, the Figures included by Plaintiffs in their FAC demonstrate that the only information being collected from the Site by Google Analytics is the URL of the webpage visited, the page title, the button clicked, and other non-identifying information. [Dkt. No 16, Figures 4-10.] Glaringly absent from Figures 4-10 is an IP address.

***c. Information Does Not Relate to Plaintiffs' "Mental or Physical Condition, or Treatment."***

The CMIA does not apply to medical information generally; it applies to medical information "***regarding a patient's*** medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j) (emphasis added). "Regarding a patient" is the crucial phrase.

As explained above, courts have rejected, as recently as June 2024, the idea that general browsing information, even browsing information from a HIPAA-regulated entity, which Sussex

is not, does not constitute medical information because there simply is no way to know whether the website user in question is browsing for herself, for her friend, or just out of curiosity. Thus, as the court in *Becerra* explained, "the closest [that Plaintiffs' browsing information] gets to [individually identifiable health information] is a speculative inference extrapolated from (but unsubstantiated by) collected metadata." 2024 WL 3075865, at *14.

Furthermore, even if the Court were to assume that, by contacting a specific therapist via the Site's email functionality, Plaintiffs were disclosing ***their own*** intent to receive medical treatment (something the Court cannot do), that still would not be enough. The fact that a person contacted a doctor does not render that information "medical" in nature. The information must go beyond the initial contact and include information about the actual treatment. *Eisenhower Med. Ctr. v. Superior Ct.,* 226 Cal. App. 4th 430, 435 (2014) ("[The mere fact that a person may have been a patient at the hospital at some time is not sufficient.").

Plaintiffs have not alleged that any information they provided via the Site constituted "medical information" under the CMIA. That, alone, is reason to dismiss heir CMIA claims.

### 2. The CMIA Does Not Apply to Sussex.

Plaintiffs allege in the FAC that Sussex's conduct "violated California Civil Code §§ 56.06, 56.101, and 56.10," and, therefore "[u]nder Civil Code §§ 56.36(b) and (c)," Sussex "is liable to Plaintiffs…for statutory damages of $1,000 per violation…" [Dkt. No. 16, ¶ 110.] Sections 56.06, 56.101, and 56.10, however, are not universally applicable. Section 56.10 applies only to "[a] provider of health care, health care service plan, or contractor." Cal. Civ. Code § 56.10(a). Section 56.101 applies only to a "provider of health care, health care service plan, pharmaceutical company, or contractor." Cal. Civ. Code § 56.101(a). And Section 56.06 merely expands the definition of a "provider of health care" under Sections 56.101 and 56.10.

Plaintiffs claim that Sussex is a "mental health digital service" under Section 56.06, and, therefore, a "provider of health care" under Sections 56.101 and 56.10, because the Site "offer[s] (1) a search-engine tool to find a mental healthcare provider based on specific concerns and preferences input by the user and (2) links and buttons for the user to click and, by so doing,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

directly call or send an email communication to a therapist of interest." [Dkt. No. 16, ¶ 102.]

As explained above, that is *not* what a "mental health digital service" is. Under Section 56.05(l), a "mental health digital service" is an "internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer." Cal. Civ. Code § 56.05(l). Furthermore, under Section 56.06(d), "a mental health digital service" is only "a provider of health care subject to the requirements of this part" if it provides the service "for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual." Cal. Civ. Code § 56.06(d).

Sussex does not do, and Plaintiffs do not allege that Sussex does, any of the above. For example, Plaintiffs do not allege that Sussex collects "mental health application information."[6] At most, Plaintiffs allege that Sussex collects information derived from button clicks on the site (i.e., alleging that the Site has "links and buttons for the user to click") indicated the users' preferences in therapists. [Dkt. No. 16, ¶ 102.] Plaintiffs also do not allege that Sussex uses this information "to facilitate mental health services to a consumer." At most, Sussex allows users, like Plaintiffs, to contact relevant therapists directly. [*Id.* (alleging that the Site allows users to "directly call or send an email communication to a therapist of interest"); *see also id.* at ¶ 42 (alleging that the Site's "searchable directory connects consumers with licensed clinicians").] Finally, Plaintiffs do not allege that the Site's "purpose" was to "allow[] the individual to manage the individual's information" or to permit the "diagnosis, treatment, or management of a medical condition of the individual." As Plaintiffs allege, the Site provides (1) "content written by clinicians, experts, and researchers from across the field of behavior and psychology" and (2) "a directory that lists clinical professionals, psychiatrists and treatment centers providing mental health services." [*Id.* at ¶ 23.] Nothing more.

Plaintiffs include in the FAC allegations about Sussex's "Sessions" application, which

[6] "'Mental health application information' means information related to a consumer's inferred or diagnosed mental health or substance use disorder, as defined in Section 1374.72 of the Health and Safety Code, collected by a mental health digital service." Cal. Civ. Code § 56.05(k).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

allows therapists to speak with their clients via the internet, in the hopes of demonstrating that Sussex "permits the diagnosis, treatment, or management of a medical condition of the individuals" and "facilitates mental health services." [Dkt. No. 16, ¶ 103.] But Sussex's Sessions application no more facilitates medical health services than Zoom, Webex, Teams, or AT&T does. Sussex's Sessions application merely allows individuals to communicate. It is simply a meeting space, not a "mental health digital service."

Because Plaintiffs have not plausibly alleged that the Site is a "mental health digital service," they have failed to allege that Sussex is a "provider of health care" and, in turn, failed to establish that the CMIA applies to it. Plaintiffs' CMIA claim must be dismissed.

### 3. Plaintiffs Do Not Sufficiently Allege An "Unauthorized Viewing" of Their Information.

California law is settled as to what is required to state a violation of Cal. Civ. Code § 56.101. A plaintiff must set forth, among other things, sufficient facts to plausibly allege that some unauthorized ***person*** "actually viewed" his or her confidential medical information. *See, e.g.*, *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1557 (2014) (holding that, to state a viable claim under § 56.101, the plaintiff must plead that "an unauthorized person view[ed] the [confidential] medical information"; *B.K. v. Eisenhower Med. Ctr*., No. EDCV232092JGBKKX, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) ("A plaintiff must allege . . . that the information was 'improperly viewed or otherwise accessed.'").

The very nature of Plaintiffs' allegations here—i.e., that Sussex embedded in the Site Google Analytics code [Dkt. No. 16, ¶ 6], to "provide analytics services, …maintain and improve Google's own services, develop new analytics and marketing services, and measure the effectiveness of advertising on Google's and its partners' sites and applications," [*id.* at ¶ 8—makes it implausible that any unauthorized ***person*** "actually viewed" their information. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023) ("[J]ust because medical information has been disclosed in an unauthorized manner does not mean that the information was viewed by an unauthorized person."). Indeed, it would make little sense for an actual person at Google to care about, much less view, the clicks and filters selected by Plaintiffs on the Site.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

In truth, even accepting all of Plaintiffs' allegations as true, the process by which the information is gathered and analyzed is entirely automated, controlled by computer code that requires no human intervention. It is for this reason that Courts have dismissed § 56.101 claims in tracking cases like this one. *See, e.g.*, *B.K.*, 2024 WL 878100, at *4 (dismissing in tracking class action § 56.101(a) claim because "Plaintiffs do not allege facts showing anyone improperly viewed or accessed any medical information"); *Cousin*, 681 F. Supp. 3d at 1129 (dismissing § 56.101(a) claims because "that Meta *could* collect and view the information of a hypothetical patient d[id] not support Plaintiff's claim" (emphasis added)).) As the Court in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, (Cal. Super. Jan. 5, 2023), noted when dismissing a § 56.101 claim: "the information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it." *Id.* at *7. Thus, even if there was medical information being collected here (there is not), Plaintiffs would still fail to allege any *facts* to suggest than any unauthorized *person* actually viewed it. Plaintiffs' claim should be dismissed.

**4. Plaintiffs Do Not Plausibly Allege that Sussex "Affirmatively Communicated" Their Medical Information to a Third Party.**

Similar to Cal. Civ. Code § 56.101 claims, the law relating to Cal. Civ. Code § 56.10 claims is settled. In order to state a claim under § 56.10, the plaintiff must allege, among other things, that the defendant "affirmatively communicated" her information to an unauthorized third party. *See Regents of Univ. of California v. Superior Ct.*, 220 Cal. App. 4th 549, 564, (2013) *as modified on denial of reh'g* (Nov. 13, 2013) (noting that a claim under § 56.101 requires "an affirmative act of communication"); *Sutter Health,* 227 Cal. App. 4th at 1555–56 (stating that, in the context of the CMIA, a "disclosure" "occurs when the healthcare provider affirmatively shares medical information with another person or entity"). It necessarily follows, therefore, that, in order for Sussex to have violated § 56.10, Sussex must have "affirmatively communicated" Plaintiffs' information to Google Analytics.

Plaintiffs, however, go to great lengths in the FAC to explain that that is not what occurred here. For example, Plaintiffs do not allege that Sussex collected their information and



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

thereafter sent it to Google Analytics. Instead, they allege that Google Analytics was able to "intercept, ***in real time and while in transit***" Plaintiffs' information." [Dkt. No. 16, ¶ 26 (emphasis added); *see also id.* at ¶ 36 (alleging that Google's code "***intercepts a user's interaction in real-time*** as the user navigates the page, including ***intercepting any information that the user may input and what links the user clicked***, and sends a second, duplicate set of transmissions to third parties' servers" (emphasis added)).] Plaintiffs do not explain how Sussex could have "***affirmatively communicated***" their information to Google if Google Analytics "***intercepted***" it "in real time and ***while it was in transit***." Both cannot be true. Either Plaintiffs' information was intercepted before it reached Sussex, or it was disclosed by Sussex after it was in Sussex's possession. Plaintiffs allege the former. Therefore, they have not stated and cannot state a claim under Section 56.10. Their claim must be dismissed.

**5. There Is No Private Right of Action for Aiding and Abetting a Violation of the CMIA.**

Section 56.36(b) sets forth the grounds on which individuals, such as Plaintiffs, may bring a suit against a third party under the CMIA. Per that section, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part." Cal. Civ. Code § 56.36(b). Nowhere in that section does it allow Plaintiffs to sue Sussex for allegedly helping Google to "knowingly or willfully obtain[] medical information for financial gain" or to "knowingly and willfully obtain[], disclos[e], or us[e] medical information without written authorization," despite Plaintiffs' claims otherwise. [Dkt. No. 16, ¶¶ 112-113.][7]

Unlike California Penal Code Section 631(a), which expressly allows a defendant to be sued for aiding and abetting, the CMIA is a direct liability statute, limiting a plaintiff's ability to sue under it to "negligent[] release[s] [of] confidential information or records." Cal. Civ. Code § 56.36(b). Plaintiffs' CMIA aiding and abetting claim must be dismissed.

**C. <u>Plaintiffs' CCPA Claim Must Be Dismissed.</u>**

In asserting a claim against Sussex under the CCPA, Plaintiffs have backed themselves

[7] Sussex is aware of no case in which an aiding and abetting claim under the CMIA has been asserted, let alone upheld by the court.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

into a corner. There is no dispute that, under California law, the CCPA does not apply to entities regulated by either the CMIA or the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Cal. Civ. Code § 1798.145 (c)(1)A) ("This title shall not apply to any of the following: (A) Medical information governed by the Confidentiality of Medical Information Act (Part 2.6 (commencing with Section 56) of Division 1) or protected health information that is collected by a covered entity or business associate governed by the privacy, security, and breach notification rules …established pursuant to the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ….").

Here, Plaintiffs affirmatively allege that Sussex is regulated by both the CMIA and HIPAA. [See Dkt. No. 16, First and Second Causes of Action, ¶ 72 ("Defendant's actions clearly violate HIPAA.").][8] For that reason alone, Plaintiffs' CCPA claim should be dismissed.

It is not, however, the only reason. The CCPA's private right of action makes clear that only individuals "whose nonencrypted and nonredacted personal information…is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action." Cal. Civ. Code § 1798.150 (A)(1).

Clearly, here, there was no "theft" or "disclosure" of Plaintiffs' information. Plaintiffs expressly allege that Sussex allowed Google Analytics to collect their information, and, as discussed above, absent an "affirmative communication," there can be no disclosure.

Plaintiffs, therefore, must allege that, as a result of Sussex allowing Google Analytics to be installed on its website, Plaintiff's information was "subject to an unauthorized access ***and exfiltration***." There was no "exfiltration" here. The Merriam-Webster Dictionary defines "exfiltration" as "to steal (sensitive data) from a computer (as with a flash drive)."[9] As noted

[8] Although Plaintiffs allege that both the CMIA and HIPAA apply to Sussex, neither does. The CMIA and HIPAA regulate healthcare providers and, at times, the providers' contractors. Sussex provides no health care and employs no healthcare professionals. It is a media publisher; nothing more.

[9] [Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/exfiltrate#:~:text=intransitive%20verb,%CB%8C)fil%2D%CB%88tr%C4%81%2Dsh%C9%99n (last visited: August 20, 2024).]



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

above, Plaintiffs do not allege that any information was "stolen." Instead, they claim that Google Analytics intercepted their information, with Sussex's permission, while it was en route to its final destination. Therefore, Plaintiffs cannot sue Sussex under the CCPA.

**D. <u>Plaintiffs' CIPA Claims Must Be Dismissed.</u>**

There can be no dispute that CIPA only applies to the interception or recording of the "content" of communications. Cal. Penal Code § 631(a). Nor can there be any dispute that the term "content" "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014). Courts have consistently found that general browsing information, like the type at issue here, does not constitute "content." *See, e.g., In re Nickelodeon Consumer Priv. Litig*., No. CIV.A. 12-07829, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (dismissing wiretap claim because IP addresses and URLs are not "content" of communication).

As demonstrated by the very figures Plaintiffs include in their FAC, nothing collected from the Site by Google is "content." It is merely URLs of sites visited, page titles and buttons clicked. [*See* Dkt. No. 16, Figures 4-6.] And to the extent Plaintiffs attempt to argue that Google was somehow collecting the "contents" of email communications sent through the Site [*See* Dkt. No. 16, ¶106], that argument is belied by Plaintiff's own allegations. Figure 6 in the FAC shows the exact information that is collected by Google when a user clicks "Send Email," and none of the information in that figure comes close to including the "contents" of a communication. [*See* Dkt. No. 16, Figure 6.] For that reason alone, Plaintiffs' CIPA claims must be dismissed.

**1. Plaintiffs Have Not Plausibly Alleged a Violation of CIPA § 631(a).**

California Penal Code § 631(a) imposes liability under four distinct scenarios. *B.K. v. Desert Care Network*, No. 223CV05021SPGPDX, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) ("*Desert Care*.") Here, Plaintiffs allege that Sussex is liable under the fourth clause of § 631(a)—aiding and abetting. [*See* Dkt. No. 16, ¶ 146.]

Liability can only be established under the fourth clause if the plaintiff can allege a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

violation of one of the first three clauses. *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (stating that, under aiding-and-abetting theory of liability, the defendant's "liability…is…based entirely on whether [a third party] violated Section 631(a) in some way"). Furthermore, "[a]s the website owner, [Sussex] was the intended recipient of plaintiff's communication" and "[p]arties to a conversation cannot eavesdrop on their own conversation, so no…part of Section 631(a)," other than aiding and abetting liability under clause four, "is applicable to [Sussex]." *Id*. Plaintiffs have failed to allege that Google Analytics violated of any of the first three clauses of CIPA § 631(a); therefore, Plaintiffs have failed to state a claim against Sussex under the fourth clause of CIPA § 631(a).

***a. Plaintiffs Have Not Alleged a Violation of the First Clause.***

Plaintiffs cannot, as a matter of law, state a claim under the first clause of CIPA § 631(a) because the first clause of CIPA § 631(a) *does not apply to online conduct. See, e.g., Cody v. Ring LLC,* No. 23-CV-00562-AMO, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024) ("Clause one of Section 631(a)…does not apply to the internet, and so cannot support [Plaintiff's] claims."); *Williams*, 2022 WL 17869275, at *2 ("[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet.").)

***b. Plaintiffs Have Not Alleged a Violation of the Second Clause.***

"The second clause of Section 631(a) applies if a third party reads or learns the content of communications without the consent of all parties, 'while' the communication is 'in transit ... or is being sent from, or received' within California." *Cody*, 2024 WL 735667, at *4. "'While' is the key word[.]" *Valenzuela*, 674 F. Supp. 3d at 758. For the second clause to even apply, the alleged third-party eavesdropper—here, Google Analytics—must "read or learn" the content of a communication *while it is in route to the intended recipient. Id.* at 759 ("'While' implies the interception must occur contemporaneous with the sending or receipt of the message.").)

That Plaintiffs here repeatedly use in the FAC the term "intercept" is of no consequence. Numerous courts have held that "[u]sing the word 'intercept' repeatedly is simply not enough[.]" *Rodriguez v. Google LLC,* No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

2022); *see also Cody*, 2024 WL 735667, at *5 (dismissing claim under second clause of CIPA § 631(a) because the plaintiff's "conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations."); *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *9, (C.D. Cal. Apr. 2, 2024) (dismissing claim under second clause of CIPA § 631(a) because, as it related to the "in transit" requirement, the plaintiff's "allegations merely restate the statutory language, which is insufficient under the plausibility standard"). Plaintiff must allege specific facts that make it plausible that Google Analytics is reading or learning their information while it is in transit. They fail to do so.

***c. Plaintiff Has Not Alleged a Violation of the Third Clause.***

"To state a claim for derivative liability under clause three," as Plaintiffs attempt to do here, Plaintiffs "must allege that [Google Analytics] 'use[d], or attempt[ed] to use, in any manner, or for any purpose, or to communicate in any way, any information [ ] obtained [in violation of clause one or clause two].'" *D'Angelo v. FCA US, LLC,* No. 323CV00982WQHMMP, 2024 WL 1625771, at *12, (S.D. Cal. Mar. 28, 2024) (quoting Cal. Penal Code § 631(a). Indeed, absent a violation of the first or second clauses of CIPA § 631(a), there can be no violation of the third clause. *See, e.g., Swarts*, 689 F. Supp. 3d at 744 ("A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)."); *Cody,* 2024 WL 735667, at *7 ("As [Plaintiff] failed to allege facts suggesting that [defendant] used or communicated any information obtained through a violation of the first or second clauses, she has also failed to plead a violation of the third clause.").

Plaintiffs here have not adequately pleaded a violation of either the first or second clause of CIPA § 631(a). Plaintiffs have, thus, necessarily failed to allege a violation of the third clause.

Because Plaintiffs' CIPA § 631(a) claim is based, entirely, on an aiding-and-abetting theory of liability and because Plaintiffs have failed to adequately allege that Google violated CIPA § 631(a), their CIPA § 631(a) claim must be dismissed.

***d. Plaintiffs Do Not Allege the Requisite Intent under CIPA § 631(a)***

"Section 631 requires defendants to act 'willfully' or 'intentionally.'" *Desert Care*, 2024

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

WL 1343305, at *7. Therefore, where the plaintiff fails to allege sufficient facts to establish that the third-party interceptor—here, Google—acted with the requisite intent, courts have dismissed aiding and abetting claims. *Ibid.* (dismissing claim because "Plaintiffs' allegations indicate[d] that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality"). That is the case here. That Plaintiffs allege that Sussex "acted intentionally, or, alternatively, with knowledge [of] Google's misappropriation of Plaintiffs'" information [Dkt. No. 16, ¶ 147], has no impact on this Court's ruling because the question is whether Sussex aided and abetted a third party (i.e., Google) who *willfully and intentionally* intercepted their communications. *See* Cal. Penal Code § 631(a).

Plaintiffs allege nothing that would suggest that anything Google did was "willful or intentional." Indeed, the most they allege is that "Google Analytics collects data from a website or application to create shareable reports that provide insights into a business. It is designed to work together with other Google solutions to provide a company with a complete understanding of its marketing efforts and to enhance performance." [Dkt. No. 16, ¶ 35.] That is not intentional criminal behavior. It is run-of-the-mill commercial behavior that is used by millions of websites.

Plaintiffs must also allege that Sussex "add[ed] or embed[ded] [Google's] small piece of JavaScript measurement code into each page of its site" [Dkt. No. 16, ¶ 36], with the intention of allowing the unlawful interception of their communications, which Plaintiffs have not done and cannot do. As the California Supreme Court explained: "Proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—*knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends*, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) (emphasis added).)

Here, Plaintiffs fail to plead facts sufficient to establish the key requirements of an aiding and abetting claim. More specifically, Plaintiffs have not pled facts showing (1) that Google had an unlawful intent; (2) that Sussex had any knowledge of Google's allegedly unlawful intent; (b)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

that Sussex harbored an intent to help Google intercept any alleged communications; (c) that Sussex had at least the same mental state as Google; or (d) that Sussex knew the "full extent of [Google's alleged] criminal purpose" and gave aid or encouragement with the intent or purpose of facilitating Google's alleged commission of a crime. Plaintiffs have not alleged facts to establish the intent required under CIPA § 631(a). Their claim must be dismissed for this additional reason.

**2. Plaintiffs Have Not Plausibly Alleged a Violation of CIPA § 632.**

CIPA § 632(a) makes it unlawful for a person to "intentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). Plaintiffs claim that Sussex violated CIPA § 632 because it "permitted Google to eavesdrop upon and/or record Psychology Today website users' confidential communications through an electronic amplifying or recording device." [Dkt. No. 16, ¶ 153.] This claim fails for several reasons.

**First**, at least one court has held that "[a] plain reading of the text [of CIPA § 632] itself makes clear that the statute only applies to communications transmitted by telephone, not internet." *Swarts*, 689 F. Supp. 3d at 747. **Second**, even if CIPA § 632(a) does apply to internet-based communications, Sussex could only violate CIPA § 632(a) if it recorded Plaintiffs' information without their consent, and clearly Sussex had Plaintiffs' consent. Plaintiffs provided Sussex with information for the express purpose of having Sussex record it and use it to provide them with web pages or therapist recommendations. [Dkt. No. 16, ¶¶ 11-12, 17-18.] *See also Calhoun v. Google, LLC* 645 F. Supp. 3d 916, 928 (N.D. Cal. 2022) ("Consent can be [express] or implied, but any consent must be actual." (internal quotations omitted and alternation in original)). **Third**, because Plaintiffs' CIPA § 632(a) is based on aiding and abetting, [*See* Dkt. No. 16, ¶ 153], Plaintiffs must allege the requisite intent on both the part of Sussex and Google. *Vaccaro v. Altais* No. 223CV04513ODWBFMX, 2023 WL 7003211, at *5, (C.D. Cal. Oct. 23, 2023) (noting that, in the context of CIPA § 632(a), "[a]n aider and abettor is one *who acts with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense*" (emphasis added)).) As explained above, Plaintiffs have not alleged

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

that Google was acting with a "criminal purpose" or that Sussex was aware of Google's "criminal purpose" and intended to help Google in committing the criminal act. **Fourth,** Plaintiffs have not alleged that any information Google Analytics collected about them was a "confidential communication". Plaintiffs allege that Google Analytics collected their IP addresses, [Dkt. No. 16, ¶ 50], but "one has no reasonable expectation of privacy in an IP address when using the Internet," *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016). Plaintiffs also allege that Google Analytics collected their button clicks and the pages they viewed. [Dkt. No. 16, ¶ 51]. Button clicks and pages viewed on a publicly accessible website are not confidential. *Thomas v. Papa Johns Int'l, Inc*., No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) ("[A] number of courts have found ['mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), [and] URLs of web pages visited'] [are] not something over which a consumer has an objectively reasonable expectation of privacy"). Any they repeatedly hint at, yet ever actually allege, that Sussex collects the contents of their email communications to therapists, yet they never once identify any facts to support their conclusory claim and, in fact, make allegations that directly refute their claim. [*See* Dkt. No. 16, Figure 6 (showing information collected when "Profile_EmailButton" is clicked).] Plaintiffs fail to state a claim under CIPA § 632(a); their claim must be dismissed.

**E. <u>Plaintiff's Invasion of Privacy Claim Fails.</u>**

An invasion of privacy claim asserted under the California Constitution requires that the invasion be "highly offensive." *Cousin,* 681 F. Supp. 3d at 1125–26 (stating that a "claim for invasion of privacy under the California Constitution" requires a plaintiff to plead, among other things, that "'the intrusion is so serious as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive'" (cleaned up)).) California district courts have recognized the "high bar for invasion of privacy claims." *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1035 (N.D. Cal. 2012).

In considering whether an invasion of a privacy interest is "highly offensive," "courts are required to consider all-inclusive factors such as the likelihood of serious harm to the victim, the

degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Cousin,* 681 F. Supp. 3d at 1126 (internal quotations omitted).)

Nothing Plaintiff has alleged here would support a finding that Sussex acted in a "highly offensive" manner. First, Plaintiffs have not alleged any "harm" arising out of Sussex's complained-of conduct, let alone "serious harm." In fact, aside from alleging that the complained-of conduct occurred, Plaintiffs have alleged nothing that would even suggest that they have been negatively impacted. Second, there was no "intrusion." Plaintiffs affirmatively provided their information to Sussex through the Site for the very purpose of Sussex obtaining it and delivering web pages, articles or therapists. Third, to the extent that Sussex could even be considered the 'intruder" in this scenario, Sussex's motives were not nefarious. According to Plaintiff, Sussex was merely trying to gain "insights into [its] business," obtain a "complete understanding of its marketing efforts," and "enhance performance." [Dkt. No. 16, ¶ 35.]

Finally, and perhaps most importantly, there simply can be no "highly offensive" invasion of privacy where, as here, the plaintiff has not alleged that any *human* actually laid eyes on any information, let alone information that is both confidential and specific to him or her. An invasion of privacy necessarily requires that the confidentiality of some information be breached. And here, having failed to allege that they ever provided any confidential information to Sussex or that any unauthorized human actually viewed it, Plaintiffs cannot allege an invasion of privacy claim. Their claim must be dismissed.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Sussex Publishers, LLC respectfully requests that the Court grant its Motion to Dismiss in full and with prejudice.

Dated: August 26, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
Matthew D. Pearson

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

4878-1948-4890