ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

DON BIVENS (*pro hac vice admission)*
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
R.C. and D.G., Individuals

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 3:24-cv-02609-JSC<br><br>Assigned to Honorable Jacqueline Scott Corley<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: October 3, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8<br><br>Complaint Filed: November 30, 2023<br>FAC Filed: August 12, 2024 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....7

II. LEGAL STANDARD....7

III. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY ......8

A. Defendant's Widespread Surreptitious Sharing of Personal and Sensitive Medical Information Without Disclosure and Without Obtaining Consent Violates the CMIA.... 8

1. Defendant is a mental health digital service and/or a provider of healthcare subject to the requirements of the CMIA. ....9

2. The medical information that Defendant, without authorization, collected and shared surreptitiously with Google relates to Plaintiffs' mental health conditions and plan of treatment. ....10

3. Defendant's intentional use of Google Analytics on its Psychology Today website and Google's receipt and use of the misappropriated information for targeted advertising and to create other technologies and offerings are sufficient to establish the unauthorized viewing of the medical information. .......14

B. Defendant's Failure to Implement Reasonable Security Measures on the Psychology Today Website Resulted in the Unauthorized Disclosure of Users' Personal and Private Information in Violation of the CCPA.... 17

C. Defendant's Conduct Violates the California Invasion of Privacy Act.... 19

1. Defendant cannot escape liability by erroneously applying a heightened criminal standard to Plaintiffs' civil aiding-and-abetting claims....19

2. By providing Google with the means and allowing Google to intercept and access website users' private and confidential communications, Defendant provided substantial assistance and encouragement to Google in violation of the fourth prong of Penal Code § 631(a). ....20

3. Plaintiffs have pleaded interception of "content" while "in transit." ....23

4. Personal and sensitive medical information is a "confidential communication" protected under Penal Code section 632. ....26

D. Defendant's disclosure of protected medical information without consent is highly offensive conduct and constitutes a serious invasion of privacy. .... 29

IV. PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND ....31

V. CONCLUSION....31

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*American Hospital Assoc. v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) ..... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 8

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ..... 29

*Brown v. Google, LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) ..... 28, 30

*Byars v. Goodyear Tire & Rubber Co.*,
2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ..... 23

*Byars v. Tire*,
2023 U.S. Dist. LEXIS 22337 (C.D. Cal. 2023) ..... 27

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ..... 31

*Calhoun v. Google, LLC*,
2024 U.S. App. LEXIS 20978 (9th Cir. 2024) ..... 27

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) ..... 25, 26

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ..... 11

*Deras v. Volkswagen Grp. Of Am., Inc.*,
2018 U.S. Dist. LEXIS 83553 (N.D. Cal. May 17, 2018) ..... 17

*Doe v. Regents of Univ. of Cal.*,
2023 WL 3316766 (N.D. Cal. May 8, 2023) ..... 14, 28, 30

*Durgan v. U-Haul Int'l Inc.*,
2023 U.S. Dist. LEXIS 131177 (D. Ariz. July 27, 2023) ..... 18

*D'Angelo v. FCA US, LLC,*
2024 WL 1625771 (S.D. Mar. 28, 2024) ..... 25

*Erickson v. Pardus*,
551 U.S. 89 (2007) ..... 8, 12

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Esparza v. UAG Escondido AI Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ... 19

*Federated University Police Officers' Association*,
2015 WL 13273308 (C.D. Cal. 2015) ... 28

*Gershfeld v. Teamviewer Us Inc.*,
2021 U.S. Dist. LEXIS 137353 (C.D. Cal. June 24, 2023) ... 18

*In re Ambry Genetics Data Breach Litig.*,
567 F.Supp.3d (C.D. Cal. 2021) ... 30

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015) ... 23

*In re Facebook Internet Tracking Litig.*,
140 F.Supp.3d 922 (N.D. Cal. 2015) ... 26

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 11, 24, 30, 31

*In re Google Assistant Privacy Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020) ... 30

*In re Google Inc. Gmail Litig.*,
2013 U.S. Dist. LEXIS 172784 (N.D. Cal. 2013) ... 26

*In re Google Inc. St. View Elec. Commc'n. Litig.*,
794 F.Supp.2d 1067 (N.D. Cal. 2011) ... 23

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ... 27, 28

*In re Meta Healthcare Pixel Litig.*,
2024 U.S. Dist. LEXIS 15391 (N.D. Cal. Jan. 29, 2024) ... 11

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ... 24

*In re Yahoo Mail Litig.*,
7 F.Supp.3d 1016 (N.D. Cal. 2014) ... 25

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) ... 31

*Javier v. Assurance IQ, LLC*,
2022 U.S. App. LEXIS 14951 (9th Cir. 2022) ... 27

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ... 30

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ... 8

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Licea v. Old Navy, LLC*,
669 F.Supp.3d 941 (C.D. Cal. 2023) ... 25

*Lopez v. Apple, Inc.*,
519 F.Supp.3d 672 (N.D. Cal. 2021) ... 23

*Lopez v. Smtih*,
203 F.3d 1122 (9th Cir. 2000) ... 31

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ... 8

*Mehta v. Robinhood Fin. LLC*,
2021 U.S. Dist. LEXIS 253782 (N.D. Cal. May 6, 2021) ... 18

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ... 31

*Neilson v. Union Bank of California*,
290 F.Supp.2d 1101 (C.D. Cal. 2003) ... 21

*Opperman v. Path, Inc.*,
87 F.Supp.3d 1018 (N.D. Cal. 2014) ... 31

*Ramos v. Wells Fargo Bank, N.A.*,
2023 U.S. Dist. LEXIS 144796 (S.D. Cal. Aug. 17, 2023) ... 18

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021) ... 23, 24

*Smith v. Facebook, Inc.*,
745 F.App'x 8 (9th Cir. 2018) ... 11

*Theme Promotions, Inc. v. News America Marketing FSI*,
546 F.3d 991 (9th Cir. 2008) ... 31

*Usher v.* City of *Los Angeles*,
828 F.2d 556 (9th Cir. 1987) ... 8

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. March 28, 2024) ... 19, 20

*Vicuna v. Alexia Foods, Inc.*,
2012 U.S. Dist. LEXIS 59408 (N.D. Cal. April 27, 2012) ... 17

*Yoon v. Lululemon USA, Inc.*,
549 F.Supp.3d 1073 (C.D. Cal. 2021) ... 23

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**State Cases**

*Apple Inc. v. Superior Court*,
56 Cal.4th 128 (2013) .......... 26

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) .......... 13

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) .......... 26

*People v. Guzman*,
11 Cal. App. 5th 184 (2017) .......... 29

*Tavernetti v. Superior Court of San Diego Cty.*,
22 Cal.3d 187 (1978) .......... 27

**Statutes**

California Civil Code
§ 56.05 .......... 9, 10, 11
§ 56.06 .......... 8
§ 56.10 .......... 8
§ 56.101 .......... 8
§ 1798.150 .......... 17

California Penal Code
§ 631 .......... *passim*
§ 632 .......... *passim*
§ 637.2 .......... 19

Code of Federal Regulations, Title 45
§ 164.514 .......... 14

**Rules**

Federal Rules of Civil Procedure,
Rule 8 .......... *passim*
Rule 9 .......... 12
Rule 12 .......... 8, 19
Rule 15 .......... 31

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## I. INTRODUCTION

Plaintiffs bring this case against Defendant to address its unlawful practice of disclosing, without notice or consent, Plaintiffs' and Class members' confidential, personally-identifiable information ("PII") and protected health information ("PHI") to unauthorized third parties via website tracking technologies and analytics software embedded on Defendant's Psychology Today website. Defendant attempts to escape liability by (1) misconstruing or ignoring the detailed allegations in the First Amended Complaint ("FAC"), (2) misclassifying the private health information at issue as public browsing information, and (3) erroneously applying a criminal standard of proof to Plaintiffs' civil claims. All of Defendant's arguments should be rejected.

As detailed in the FAC, Plaintiffs provided PII as well as PHI, including but not limited to information regarding Plaintiffs' patient status, mental health conditions, the types of treatment they were seeking, and their therapy provider preferences. Such personal information goes far beyond "public browsing" information. Importantly, ***Defendant does not deny*** that its Privacy Policy failed to identify Google as a recipient of Psychology Today website users' sensitive information. Nor did Defendant deny that it used Google Analytics that, *without the IP anonymization feature turned on,* allowed Google to intercept, receive, view and use Psychology Today website users' PHI and PII without authorization or consent. Defendant tries to obscure its privacy violations by claiming that the sensitive information related to Plaintiffs' mental health and plan of treatment that it shared is not medical information subject to protection.

Plaintiffs properly have pleaded claims for relief based on (1) Defendant's unauthorized disclosure of PII and PHI and (2) the substantial assistance that Defendant gave to enable third-party Google to intercept, view and use Psychology Today website users' personal and private information and their confidential communications. Defendant's conduct violated the CMIA, the CCPA, the CIPA and class members' privacy rights under the California Constitution.

## II. LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

is entitled to relief."[1] "Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests."[2] To overcome a Rule 12(b)(6) motion to dismiss, the factual allegations in the plaintiff's complaint must suggest that the claim has a plausible chance of success.[3] A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] In ruling on the motion, courts are required to accept all factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and construe the pleadings in the light most favorable to the nonmoving party.[5]

## III. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY

### A. Defendant's Widespread Surreptitious Sharing of Personal and Sensitive Medical Information Without Disclosure and Without Obtaining Consent Violates the CMIA.

To state a CMIA claim, a plaintiff must allege that a "provider of healthcare" disclosed medical information without authorization (*see* Civil Code §§ 56.10 & 56.06) and/or did not maintain, preserve, or store medical information in a manner that "preserves [its] confidentiality" (Civil Code § 56.101). Through its use of Google Analytics tracking technology embedded on its Psychology Today website, *without the IP anonymization feature turned on*, Defendant violated the CMIA by intentionally disclosing website users' protected mental health information with unauthorized third parties. That shared medical information included but was not limited to users' medical and/or mental health concerns and conditions, the type of care or treatment sought, information regarding the gender, ethnicity, and faith preferences regarding mental health professionals, the city or zip code where the user is seeking therapy, and information regarding the therapists who were viewed and/or contacted through the Psychology Today website.[6]

---

[1] Fed. R. Civ. P. 8(a)(2).
[2] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).
[3] *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[5] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).
[6] First Amended Complaint ("FAC") (Dkt. 16), ¶¶ 5, 11-12, 16-18, 50-52, 100.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendant cannot escape liability (a) by mischaracterizing the nature and scope of its website and mobile app offerings that facilitate the provision of mental health services or (b) by misclassifying the highly personal and sensitive information that was disclosed without notice or user consent and was used by Google for Google's own benefit and financial gain.

**1. Defendant is a mental health digital service and/or a provider of healthcare subject to the requirements of the CMIA.**

The argument that Plaintiffs failed to allege that it is a provider of healthcare is flatly wrong. Defendant simply ignores the pertinent paragraphs and the full allegations contained within Plaintiffs' first cause of action for violation of the CMIA.[7] For example, Defendant fails to address Paragraph 101, which alleges that "Psychology Today is ***both*** an internet website (www.psychologytoday.com) ***and*** a mobile application (Sessions by Psychology Today!) that collects personal and mental health information from consumers, including their inferred or diagnosed mental health condition."[8] Plaintiffs also allege that Psychology Today markets itself as facilitating mental health services to consumers by (1) touting the motto "Here to Help" and (2) claiming that it is the world's largest mental health and behavioral science destination online, providing articles, blogs, other behavioral science content and a "Diagnosis Dictionary."[9]

Further, Plaintiffs specifically assert that Defendant uses the information to facilitate mental health services.[10] The Psychology Today website does so by (1) providing a search-engine tool to find mental healthcare providers based on specific concerns and preferences input by the user and (2) offering links and buttons for the user to click and directly call or send an email communication to a therapist.[11] Defendant further facilitates mental health services by "providing an online platform (Sessions) for users and therapists to communicate regarding appointment details and check-in information and by hosting online teletherapy sessions either directly on the Sessions by Psychology Today webpage or through its mobile app."[12] Plaintiffs clearly allege in

---

[7] FAC, ¶¶ 97-110.
[8] FAC, ¶ 101, discussing the first requirement of a "mental health digital service" as defined by Cal. Civ. Code § 56.05(k).
[9] FAC, ¶ 102, establishing the second requirement of a "mental health digital service."
[10] FAC, ¶¶ 102-103.
[11] FAC, ¶ 102.
[12] FAC, ¶ 103.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

detail that Defendant is a mental health digital service.

The FAC also asserts that Defendant falls within the business categories that the CMIA deems to be providers of health care and subject to the same standards of confidentiality with respect to medical information disclosure.[13] Specifically, Defendant offers digital services and software applications in the form of the Psychology Today website (www.psychologytoday.com) and therapist directory and its mobile application (Sessions by Psychology Today!).[14] Plaintiffs further allege that both platforms "are designed to maintain medication information, especially that which is contained within email communications, and both facilitate the diagnosis, treatment, and management of users' medical or mental health conditions."[15] Defendant is clearly a provider of healthcare subject to the requirements of the CMIA.

Defendant attempts to escape this undeniable reality by arguing that Sessions is simply a meeting space like Zoom or Teams. Unlike those platforms, however, Psychology Today does more than just allowing users to communicate. When a user sends an email communication directly through the website, Psychology Today sends an email response addressed to the user's name and email address. That email includes a copy of the private communication containing medical information for the user to keep for his or her records.[16] The Sessions application also sends consumers emails with the dates and times of their scheduled appointments and a Psychology Today website link to use to check in for their online teletherapy appointments.[17]

These services provided by Defendant clearly allow an individual to manage information and also facilitate the diagnosis, treatment, or management of a medical condition of the individual. Defendant cannot claim credibly that it is not a provider of healthcare subject to the CMIA.

**2. The medical information that Defendant, without authorization, collected and shared surreptitiously with Google relates to Plaintiffs' mental health conditions and plan of treatment.**

---

[13] FAC, ¶¶ 104-106, discussing Cal. Civ. Code §§ 56.06(b) and (d) and businesses that offer software, hardware, or a mental health digital service to consumers "for the diagnosis, treatment, or management of a medical condition of the individual."

[14] FAC, ¶ 106.

[15] *Id.*

[16] FAC, ¶¶ 12, 17, 24, 47, 102.

[17] FAC, ¶¶ 4, 18, 24, 48, 103.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendant's argument that only public browsing information was collected by Defendant and disclosed to third parties misclassifies the highly personal and sensitive information inputted and shared by Psychology Today website users. Defendant's argument is based largely on a non-binding Texas case,[18] two Illinois cases, and an older Ninth Circuit decision.

First, Defendant's reliance on *Smith v. Facebook, Inc.*[19] is unavailing because the *Smith* court did not evaluate the CMIA's definition of "medical information." Further, all the cases Defendant cites are at odds with more recent California decisions holding that information collected on publicly-facing websites can plausibly involve PHI and state invasion of privacy claims.[20] As recently held by a court in this district, Plaintiffs' privacy claims "are not foreclosed at this juncture in whole or in part simply because their communications with their healthcare providers may have been through publicly available webpages."[21]

Defendant's argument also incorrectly analyzes and misconstrues the CMIA's three-part definition of "medical information," which includes [1] "any individually identifiable information, in electronic or physical form," [2] "in possession of or derived from a provider of health care" [3] "regarding a patient's medical history, mental health application information, mental or physical condition, or treatment."[22] Plaintiffs' allegations regarding the personal and sensitive medical information that is shared by Psychology Today website users, collected by Defendant to facilitate mental health services, and surreptitiously shared with Google, all without users receiving notice or providing authorization or consent, satisfies the definition's three requirements.

---

[18] *American Hospital Assoc. v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024).
[19] *Smith v. Facebook, Inc.*, 745 F.App'x 8, 9 (9th Cir. 2018).
[20] *See In re Meta Healthcare Pixel Litig.*, 2024 U.S. Dist. LEXIS 15391 (N.D. Cal. Jan. 29, 2024), citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (accepting privacy tort claims where information was transmitted to Meta from "public" sites) and *Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *3 (S.D. Cal. Nov. 17, 2023) (holding that interactions on defendant's website, while "unauthenticated" or publicly facing, plausibly involve PHI sufficient for invasion of privacy claims).
[21] *Id.*, 2024 U.S. Dist. LEXIS 15391 at *10. Thus, user login is irrelevant at the pleading stage.
[22] *See* FAC, ¶ 98 and Cal. Civ. Code § 56.05(i). The statute also provides that medical information is "individually identifiable" if it includes or contains "any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that…reveals the identity of the individual." *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

As discussed in detail above, Defendant is a provider of healthcare subject to the requirements of the CMIA. Contrary to Defendant's characterization of its offerings, Defendant provides digital services and software applications in the form of the Psychology Today website (www.psychologytoday.com) and its mobile application (Sessions by Psychology Today!), both of which facilitate the diagnosis, treatment, and management of users' medical or mental health conditions.[23] Defendant's collection and use of Psychology Today website users' private and sensitive information therefore establishes that the information is "in possession of or derived from a provider of healthcare," satisfying the second prong of the definition of "medical information."

Defendant attempts to skirt its status as a provider of healthcare by arguing that Plaintiffs did not allege what information is collected and stored, how it is stored, or where it is stored by Defendant. But Plaintiffs' CMIA claims ***are not subject*** to the more stringent Rule 9(b) standard, and Plaintiffs have no obligation to plead with that level of specificity. Those exact details demonstrating the extent of collection and storage of information that Plaintiffs and Class members shared with Defendant and that Defendant unlawfully disclosed are not necessary or required at this early pleading stage.[24] The same holds true for Defendant's argument that Plaintiffs failed to provide an image of Google Analytics collecting email content. That depth of information, which is not publicly available, more appropriately is the subject of discovery.

Here, contrary to Defendant's suggestion, Defendant did not simply collect and disclose Plaintiffs' and Class members' browsing information. Rather, Plaintiffs expressly alleged specific categories of sensitive information that they and other Class members shared with Defendant via the Psychology Today website and that that information was surreptitiously transmitted to and shared with Google. As detailed throughout the FAC, that personal and private information that clearly relates to mental health conditions and treatment included but was not limited to (1) the user's specific medical or mental health concern giving rise to the need for therapy; (2) the type of care or treatment that the user is requesting; (3) information concerning the user's gender,

---

[23] FAC, ¶¶ 4, 24, 41-49, 102-103.
[24] *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (holding that specific facts are not necessary if Defendant has fair notice of the claim and basis).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

ethnicity, and faith preferences regarding the therapist; (4) the city or zip code where the user is seeking therapy; and (5) information regarding the therapists who were viewed and/or contacted.[25]

Defendant's passing reference to *Eisenhower Med. Ctr. v. Superior Court*[26] does not bolster its argument. There, the court held only that the disclosure of names and identifiers ***without*** medical information – ***in contrast to the mental health information that Plaintiffs allege to have been disclosed here*** – was not enough to constitute "medical information" under the CMIA.

Further, Plaintiffs did not allege only that they contacted potential therapists with no treatment discussion as Defendant misleadingly suggests. Plaintiff R.C. specifically alleged that in addition to inputting his name, email address, and telephone number, his email communications through the Psychology Today website included sensitive medical information, such as Plaintiff R.C.'s age, issues he was presenting, his mental health concerns, and the types of treatment or therapy he was seeking.[27] Similarly, Plaintiff D.G. also provided her personal information and sent email communications which included private medical information such as her insurance information, her preference to stay in-network, her patient status, the additional therapy she was seeking and the reasons why she was seeking it.[28] This individually identifiable sensitive medical information undeniably relates to Plaintiffs' mental and/or physical conditions and plans of treatment. It goes far beyond publicly available or browsing information.

Lastly, Defendant wrongly claims that the information collected and shared without authorization is not "individually identifiable." That runs directly contrary to the FAC's explicit allegations that, in addition to IP addresses, personally identifiable and private medical information such as ***names, email addresses, telephone numbers***, mental health conditions and concerns, and mental health provider and treatment preferences were submitted and shared by Psychology Today website users and collected and maintained by Defendant.[29] Further, while Defendant attempts to

---

[25] FAC, ¶¶ 5, 11-12, 16-18, 50-52, 100.
[26] *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014).
[27] FAC, ¶¶ 11-12.
[28] FAC, ¶¶ 16-17. The personal information Plaintiff D.G. shared included her name, email address, telephone number, city and zip code, insurance carrier information, mental health concerns, and therapist preferences. *Id.*
[29] FAC, ¶ 100.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

downplay the importance of IP addresses, an IP address contains geographical location information from which the state, city and zip code of a specific device can be determined. Indeed, given the information that it can and does reveal, an IP address is considered personally identifiable information and is subject to HIPAA protection.[30]

To highlight its privacy implications in a different context, an IP address allows advertisers to target customers by countries, cities, neighborhoods, and zip codes.[31] Even more specifically, an IP address allows advertisers to target specific households, businesses, and even individuals with ads that are relevant to their interests[32], including their most private health and medical interests. Indeed, because it enables companies to use an IP address to identify individuals personally, IP targeting is one of the most successful marketing techniques that companies can employ to sell a product or service.[33] Thus, because Defendant uses Google Analytics without the IP anonymization feature turned on, Google can and does collect information that can identify Psychology Today website users, including their IP addresses.[34]

In sum, the information that is submitted and shared by Psychology Today website users and collected, maintained and disclosed by Defendant is medical information because it is identifiable information relating to a patient's medical or mental health condition and plan of treatment. These allegations are sufficient to state a claim for violation of the CMIA.[35]

**3. Defendant's intentional use of Google Analytics on its Psychology Today website and Google's receipt and use of the misappropriated information for targeted advertising and to create other technologies and offerings are sufficient to establish the unauthorized viewing of the medical information.**

Defendant's agreement with Google to use Google Analytics website tracking technology

---

[30] *See* 45 C.F.R. § 164.514(b)(2)(i)(O).

[31] *Location-based Targeting That Puts You in Control*, Choozle, https://choozle.com/geotargeting-strategies/ (last visited June 17, 2024).

[32] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/

[33] Trey Titone, *The future of IP address as an advertising identifier*, Ad Tech Explained (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/

[34] FAC, ¶¶ 55, 59.

[35] *See, e.g., Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023) (accepting allegations of similar health data transmitted through pixel technology to constitute "medical information" for purposes of the CMIA).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and Defendant's unauthorized disclosure to Google of protected health information collected by the Psychology Today website establish that Defendant "affirmatively communicated" to and shared with Google Plaintiffs' and Class members' information.[36] Defendant cannot shield itself from liability for wrongdoing by intentionally confusing and misconstruing allegations brought over from a different cause of action.

Seeking to support its argument that it did not violate the CMIA, Defendant cites to Plaintiffs' ***CIPA*** allegations and claims that Defendant could not have affirmatively communicated Plaintiffs' information if Google and its website tracking technology intercepted that information in real time and while it was in transit. One fact does not necessarily negate the other, particularly when the facts support separate and distinct claims. Moreover, as discussed in more detail in section III.B, Plaintiffs are permitted to plead in the alternative and to assert various facts and theories, regardless of their consistency.[37]

Here, the FAC alleges that Defendant acted intentionally in allowing and enabling Google to obtain Plaintiffs' and Class members' PHI.[38] Defendant did so by (1) installing and embedding Google Analytics code on its Psychology Today website without proper safeguards needed to preserve the confidentiality of users' medical information, (2) allowing Google to have direct access to Psychology Today website users' private medical information, and (3) failing to provide notice to users of its use of website tracking technology despite knowing that Google collects and records users' personal information.[39] By and through its affirmative actions, Defendant shared Plaintiffs' and Class members' private medical information with Google and provided the means for Google's unauthorized receipt, retention, and use of that sensitive information.[40]

---

[36] FAC, ¶¶ 114-118. These allegations of Defendant's substantial assistance and encouragement to Google in enabling and allowing Google to intercept and obtain Plaintiffs' and Class members' personal identifying data and private communications, including protected health information, also support Plaintiffs' second cause of action for aiding and abetting Google's violations of the CMIA.
[37] Fed. R. Civ. P. 8(d)(2).
[38] FAC, ¶ 115.
[39] FAC, ¶ 116.
[40] *Id*. Notably, transmissions occur only on webpages that contain Google Analytics code. Thus, Plaintiffs' and Class members' private medical information ***would not have been disclosed to Google via the tracking technology but for Defendant's decision to install the Google Analytics***

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

In claiming that no "unauthorized viewing" occurred, Defendant again misconstrues and/or flatly ignores the FAC's numerous allegations that Google, without authorization, has ***received and used*** the confidential medical information that Defendant disclosed without users' consent.

First, Plaintiffs have alleged clearly that Google *received* the private medical information that Plaintiffs and Class members shared with Defendant via its Psychology Today website.[41] Specifically, Plaintiffs assert that while they and Class members were interacting with the Psychology Today website, Google, in real time and through the website's embedded tracking technology, was and is able to and did intercept and collect website users' sensitive information, including their protected mental health information.[42] Moreover, ***because Defendant failed to turn on the IP anonymization feature on its website***, Google was able to identify, from the disclosed and intercepted data, individual Psychology Today website users' IP addresses and to access and obtain their other personally identifiable information.[43]

Plaintiffs have also pleaded, upon information and belief, that Google has *used*, for its own purposes and financial gain, the information shared by Psychology Today.[44] In addition to the automated functions of processing, analyzing, generating reports, and providing other analytics services, Google also viewed and used the unlawfully disclosed medical information to (1) maintain and improve Google's own services, such as software, algorithms, and other technology and business activities, (2) develop new analytics and marketing services, such as creating customer profiles, custom audiences, and targeted advertisements, and (3) measure the effectiveness of advertising on Google's and its partners' sites and applications.[45] These allegations establish the plausible inference that, in violation of the CMIA, medical information was received, *viewed*, and used by Google without website users' authorization or consent.

Accordingly, the allegations that Google, without authorization or consent, received and

---

***tracking tool*** on its Psychology Today website, including on webpages that transmit protected health information**.** *Id*. at ¶ 117.

[41] FAC, ¶¶ 6-7, 13, 36-39, 50-52, 59, 61, 107-109, 114-118.

[42] *Id*.

[43] FAC, ¶¶ 6-7, 13, 19. 50-52, 54-55, 59.

[44] FAC, ¶¶ 8, 27, 37-39, 62, 114, 144-145, 160.

[45] *Id*.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

used Plaintiffs' and Class members' private and personal medical information are sufficient to allege that Google violated the CMIA. Defendant cannot, by the simple expedient of ignoring properly-pleaded allegations, escape liability for aiding and abetting Google's CMIA violations.

### B. Defendant's Failure to Implement Reasonable Security Measures on the Psychology Today Website Resulted in the Unauthorized Disclosure of Users' Personal and Private Information in Violation of the CCPA

Despite strenuously asserting initially that the CMIA does not apply to it, Defendant then inconsistently argues that Plaintiffs' CCPA claim should be dismissed solely because the CCPA does not apply to entities regulated by the CMIA and HIPAA. Defendant's argument runs afoul of long-standing principles of pleading.

Rule 8(d) of the Federal Rules of Civil Procedure specifically permits alternative pleading. "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."[46] Further, it is well established that "plaintiffs are permitted to plead facts and seek remedies in the alternative."[47] In fact, a party "may state as many separate claims or defenses as it has, regardless of consistency."[48] "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."[49] Plaintiffs properly have pleaded, in the alternative, violations of the CMIA and CCPA, and Defendant cannot escape liability on this erroneous basis.

Substantively, the CCPA provides a private right of action to consumers whose "personal information…is subject to an unauthorized access and exfiltration, theft, ***or disclosure*** as a result of [a] business's violation of the duty to implement and maintain reasonable security procedures and practices.[50] Because the Statute is stated in the disjunctive, there is no requirement for a "theft" or "exfiltration" as Defendant erroneously suggests. Rather, to prevail on a CCPA claim, a plaintiff

---

[46] Fed. R. Civ. P. 8(d)(2).
[47] *James v. UMG Recordings*, 2011 U.S. Dist. LEXIS 126221 at *17 n.3 (N.D. Cal. Nov. 1, 2011); *see also Vicuna v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. April 27, 2012) (holding that a plaintiff is allowed to assert inconsistent theories of recovery at the pleading stage); *Deras v. Volkswagen Grp. Of Am., Inc.*, 2018 U.S. Dist. LEXIS 83553, at *19 (N.D. Cal. May 17, 2018) (holding there is "no bar to the pursuit of alternative remedies at the pleading stage").
[48] Fed. R. Civ. P. 8(d)(3).
[49] Fed. R. Civ. P. 8(d)(2).
[50] Cal. Civ. Code § 1798.150(a) (emphasis added).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

need only "allege that his personal information was subject to unauthorized…disclosure as a result of a business's failure to implement and maintain reasonable security procedures and practices."[51] A fair reading of the FAC shows that Plaintiffs have met this pleading requirement.[52]

Here, Plaintiffs alleged that Defendant and its Privacy Policy (1) failed to identify Google as a recipient of Psychology Today website users' personal information and sensitive medical information and (2) failed to disclose the use of Google Analytics to share, redirect, and disclose users' individually identifiable and protected mental health information and IP addresses with Google.[53] While Defendant states that it will share collected information with particular entities to assist in providing its services, Defendant does not disclose that it will share private medical information and confidential communications with Google, including for the additional purposes of improving Google algorithms and creating new advertising and analytics technologies.[54]

The FAC further alleges that Defendant's failure to anonymize Plaintiffs' and Class members' data and instead to allow Google to have unauthorized access to and to view Plaintiffs and Class members' personal information, including protected personal and medical information, are violations of Defendant's duty to implement and maintain reasonable security procedures and practices to safeguard such sensitive information.[55] Courts have found to be sufficient a plaintiff's allegations that a breach caused by a defendant's purported lack of reasonable security measures allowed third parties to view plaintiff's information.[56]

---

[51] *Durgan v. U-Haul Int'l I nc.*, 2023 U.S. Dist. LEXIS 131177, at *25 (D. Ariz. July 27, 2023), citing *Gershfeld v. Teamviewer Us Inc.*, 2021 U.S. Dist. LEXIS 137353, at *2 (C.D. Cal. June 24, 2023).
[52] FAC, ¶¶ 130-133.
[53] FAC, ¶ 130.
[54] FAC, ¶ 131.
[55] FAC, ¶¶ 132-133.
[56] *Ramos v. Wells Fargo Bank, N.A.*, 2023 U.S. Dist. LEXIS 144796, at *4 (S.D. Cal. Aug. 17, 2023) (finding no need for plaintiff to plead that there was a data breach and holding that plaintiff's claim that unknown individuals accessed information regarding his savings account as a result of defendant's failure to properly maintain plaintiff's nonredacted and nonencrypted information was sufficient to plead a violation of the CCPA). *See also In re Arthur J. Gallagher Data Breach Litig.*, 2022 U.S. Dist. LEXIS 175415, at *11 (N.D. Ill. Sept. 28, 20220) and *Mehta v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 253782, at *8 (N.D. Cal. May 6, 2021).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Plaintiffs have more than met their burden at this initial pleading stage. The FAC also details how Defendant breached its duty to implement reasonable security measures by: (i) failing to remove or disengage technology that was known and designed to share website users' private information surreptitiously; (ii) failing to obtain written consent of Plaintiffs and Class members to disclose their personally identifiable information to Google; (iii) failing to take steps to block the transmission of PHI via website tracking tools installed on the Psychology Today website; and (iv) otherwise failing to design and monitor its Psychology Today website to maintain the confidentiality and integrity of users' personal and private information.[57]

Accordingly, based on the facts alleged in the FAC and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs' CCPA claim survives Defendant's Rule 12(b)(6) challenge.

### C. Defendant's Conduct Violates the California Invasion of Privacy Act

#### 1. Defendant cannot escape liability by erroneously applying a heightened criminal standard to Plaintiffs' civil aiding-and-abetting claims.

Defendant's CIPA arguments likewise fail. As a threshold matter, Defendant incorrectly attempts to apply a heightened criminal intent standard to the ***civil*** aiding-and-abetting claims that Plaintiffs assert under CIPA. Recent case law makes it clear that, absent a statutory definition, the common law definition for aiding and abetting liability applies.[58]

Here, California Penal Code § 637.2 authorizes a **private *civil* right of action** for CIPA violations and provides for ***civil*** sanctions or statutory penalties of the greater of $5,000 per violation or three times the amount of actual damages, if any, sustained by the plaintiff.[59] Although Penal Code §§ 631 and 632 also impose parallel penal sanctions, Defendant cites no authority supporting its proposition that criminal standards of proof should be applied when Plaintiffs are pursuing civil liability and civil causes of action under those statutes. In fact, the court in ***Stoba*** **held the opposite – criminal standards do not apply to Plaintiffs' civil CIPA causes of**

---

[57] FAC, ¶ 133.

[58] *Esparza v. UAG Escondido AI Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024), citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483-485 (2023); *see also Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. March 28, 2024) (applying the common law definition to Section 631(a) because "in the absence of an explicit statutory scienter requirement," the common law definition applies in California civil actions).

[59] Cal. Pen. Code § 637.2.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**action**.[60] Thus, the availability of penal sanctions does not transform Plaintiffs' civil claims into criminal ones subject to the heightened criminal standard.[61]

The FAC is devoid of any suggestion that Plaintiffs are pursuing criminal claims against Defendant. Therefore, Defendant's arguments for application of the criminal standard for aider-and-abettor liability fail. Criminal standards and heightened intent requirements do not apply to Plaintiffs' §§ 631 and 632 ***civil*** causes of action any more than criminal drunk-driving standards of proof apply to a civil damages case brought by a person who was injured by a drunk driver.

**2. By providing Google with the means and allowing Google to intercept and access website users' private and confidential communications, Defendant provided substantial assistance and encouragement to Google in violation of the fourth prong of Penal Code § 631(a).**

The rest of Defendant's CIPA arguments make little sense in light of the detailed allegations throughout the FAC. Penal Code § 631(a) is violated when any person (1) "intentionally taps" a "wire, line, cable, or instrument", (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication" (see FAC ¶ 144), (3) "uses, or attempts to use . . . any information so obtained" (see FAC ¶ 145), or (4) "aids, agrees with, employs, or conspires" to do any of the above (see FAC ¶¶ 146-149). With the exception of the first clause which is not alleged in the FAC, Plaintiffs' allegations cover each of the remaining prongs and thereby establish both (a) Google's unlawful interception of Plaintiffs' and Class members' personal and private communications in violation of Penal Code § 631 and (b) Defendant's role in aiding and abetting that unlawful conduct.[62]

First, Paragraph 144 of the FAC asserts that by using Google Analytics and allowing Google to intercept and access Psychology Today website users' sensitive information and confidential communications, Defendant permitted Google contemporaneously ***to read or attempt to read, and/or to learn***, the contents or meaning of Plaintiffs' and Class members' private communications with Psychology Today while the communications were in transit.[63] Those

---

[60] *Stoba v. Saveology.com, LLC*, 2014 U.S. Dist. LEXIS 98058, *9 (S.D. Cal. 2014).
[61] *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (applying the common law definition of aider-and-abettor liability to Section 631(a)).
[62] FAC, ¶¶ 146-149.
[63] FAC, ¶ 144.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

communications to and through Psychology Today, which included protected mental health information, were sent simultaneously to Google servers and transmitted to Google in real time via Google Analytics tracking technology.[64] Allegations of Google's ***receipt and reading*** of Plaintiffs' and Class members' communications with Psychology Today are found throughout the FAC and are sufficient to satisfy the second prong of section 631.[65]

Plaintiffs further allege that Google ***used***, or at the very least had the capability to use, the private communications and confidential information that it received through Google Analytics.[66] As detailed above, Plaintiffs also have alleged that Google ***viewed and used*** the unlawfully-disclosed sensitive information to (1) maintain and improve Google's own services and technologies, (2) develop new analytics and marketing services, and (3) measure the effectiveness of advertising on Google's and its partners' websites and applications.[67] Google's ***use*** of the intercepted information is clearly alleged, satisfying the third prong of section 631.

Based on the common law definition as opposed to the inapplicable heightened-criminal-intent standard, liability may be imposed on one who aids and abets the commission of a tort if "the person (a) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."[68] To state a claim properly for aiding and abetting the tortious breach of a duty, a plaintiff must plead that the defendant (1) had knowledge that another's conduct constituted a breach of duty and (2) substantially assisted or encouraged that breach.[69] Plaintiffs' allegations satisfy all of those requirements.[70]

Here, the FAC contains numerous factual allegations throughout and discusses the underlying basis for Plaintiffs' CIPA claims. Those allegations include, but are not limited to,

---

[64] *Id.*
[65] FAC, ¶¶ 8, 27, 37-39, 62, 114, 145, 160.
[66] FAC, ¶ 145.
[67] FAC, ¶¶ 8, 27, 37-39, 62, 114, 144-145, 160.
[68] *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1325-1326 (1996).
[69] *See Neilson v. Union Bank of California*, 290 F.Supp.2d 1101, 1133 (C.D. Cal. 2003).
[70] FAC, ¶¶ 146-149.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

how Google Analytics tracking technology works[71]; what categories of information are shared by Plaintiffs and Class members and transmitted in real time and intercepted by Google[72]; and how Defendant's willful actions aided and abetted and provided the means for Google to accomplish the unauthorized interception, retention and use of Plaintiffs' and Class members' private and confidential communications.[73]

More specifically, Plaintiffs allege that Defendant willingly facilitated and provided substantial assistance and encouragement to Google by, among other things, (1) agreeing to use Google Analytics, (2) installing and embedding tracking technology code on its Psychology Today website without proper safeguards to preserve the confidentiality of users' communications, and (3) allowing Google to have direct access to and use Psychology Today website users' private and confidential communications without those users' consent or authorization.[74] Further, as Defendant admits, Plaintiffs have alleged that Defendant acted intentionally or, alternatively, with knowledge that Google's unauthorized interception, receipt, reading and use of Plaintiffs' and Class members' confidential communications would be a violation of CIPA.[75] Nothing more is required at this stage to state a claim for civil aiding and abetting.

Applying the incorrect and more stringent criminal standard for aiding and abetting, Defendant argues erroneously that Plaintiffs also must allege that Google willfully and intentionally intercepted their communications and that Defendant had knowledge of Google's "criminal purpose." As discussed in detail above, that is not the standard that applies to Plaintiffs' civil CIPA claims. Further, although not required, Plaintiffs did in fact allege Google's "intent," namely that Google designed and created its tracking technology for the very purpose of intercepting the content of users' communications on websites like Psychology Today.[76] Intent can be shown through "knowledge to a substantial certainty" that use of the equipment will result

---

[71] FAC, ¶¶ 6-7, 34-39, 65, 153.
[72] FAC, ¶¶ 5, 50-52, 100.
[73] FAC, ¶¶ 115-118, 146-149.
[74] FAC, ¶ 148.
[75] FAC, ¶ 147.
[76] *See* FAC, ¶¶ 34-39.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

in the recording of a confidential communication.[77] Google's intent and willful conduct are clear. Defendant cannot sidestep liability on this basis.

Accordingly, Plaintiffs properly have pleaded Defendant's aiding and abetting and, therefore, Defendant's violation of the fourth prong of Penal Code § 631.

**3. Plaintiffs have pleaded interception of "content" while "in transit."**

Defendant's argument asserting an alleged lack of "content" is based on another misreading of the FAC and on self-serving citations while ignoring key facts that are pleaded. As a fair reading of the FAC makes clear, Plaintiffs shared with Defendant, and Google intercepted, private and personal information, including protected medical and mental health information.[78] Contrary to Defendant's assertion, that is much more than "record" information or buttons clicked.

Specifically, Plaintiffs allege that, without Psychology Today website users' knowledge or consent, Defendant disclosed ***sensitive medical information*** to Google. That information included but was not limited to (1) the user's specific medical or mental health concern giving rise to the need for therapy, (2) the type of care and treatment that the user was requesting, (3) information concerning the user's gender, ethnicity, and faith preferences regarding the therapist, (4) the city or zip code where the user was seeking therapy and (5) information regarding the therapists viewed and/or contacted through the Psychology Today website.[79] That substantive medical information plainly is more than "browsing" information; instead, it is protected "content" information.[80]

---

[77] *Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 689 (N.D. Cal. 2021). *See also Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 512 (C.D. Cal. 2021) (sustaining § 631 claim against third party software provider and finding that it "intentionally recorded" plaintiff's data); *In re Google Inc. St. View Elec. Commc'n. Litig.*, 794 F.Supp.2d 1067, 1082 (N.D. Cal. 2011) (finding plaintiffs' Wiretap Act claim sufficient where defendant intentionally created, approved of, and installed specially-designed software and technology and used that technology to intercept plaintiffs' communications); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1059 (N.D. Cal. 2015) (wiretapping found where third-party designed the software that was then embedded into a mobile device which led software to transmit data).

[78] *See* FAC, ¶¶ 5, 11-13, 16-19, 50-52, 100.

[79] *Id.*

[80] Notably, ***there is no "content" requirement under Penal Code § 631.*** *See Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082 (C.D. Cal. 2021) (explaining that the "content" requirement applies only to CIPA provisions that use that language); *Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (same).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Further, whether information is "content" or "record information" can depend in part on the manner in which the information is generated.[81] For example, "information that otherwise would be considered 'record information' – such as names, addresses, telephone numbers, and email addresses – ***may be 'contents' of a communication where the user communicates with a website by entering his information into a form provided by the website.***"[82] Here, Plaintiffs allege that they were required to fill in an online form and input their names, email addresses, and telephone numbers when emailing potential therapists through the Psychology Today website.[83] Plaintiffs further allege that those email communications included personal and sensitive information related to Plaintiffs' mental health concerns and conditions and plans of treatment.[84] That entered information clearly constitutes the "contents" of a communication.

Defendant's assertion that the data shared or intercepted was not "content" also directly contradicts the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, which held expressly that ***"content" includes users "search[es]" and inputs" because they "could divulge a user's . . . queries[] and habits on third-party websites."***[85] Through the use of website tracking technology embedded on the Psychology Today website, Defendant allowed Google to intercept website users' "searches" and "inputs" on the online platform – searches that reveal health information (e.g., medical and mental health conditions, treatment, and similarly private, medically-oriented information). Those "searches" and "inputs" containing substantive medical information constitute "contents" under CIPA.[86] The "content" requirement clearly is satisfied.

Defendant next argues that Plaintiffs failed to allege facts that make it plausible that Google

---

[81] *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 517 (C.D. Cal. 2021).
[82] *Id.*, citing *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014).
[83] FAC, ¶¶ 12, 17, 46.
[84] *Id.*
[85] *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020); *see also Saleh v. Nike, Inc.*, 562 F.Supp.3d at 517–518 (holding that alleging the **recording of users' "clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry" satisfies plaintiff's burden to allege facts plausibly showing that defendants recorded plaintiff's content communications with defendant**).
[86] *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11 (N.D. Cal. Dec. 22, 2022) (finding **URLs containing users' search for a health condition are content** because they "concern[s] the substance of a communication").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Analytics is reading or learning information "while it is in transit." Defendant once again ignores the detailed allegations in the FAC, which not only contain the word "intercept" but also include explanatory phrases such as "in real time," "while in transit," "simultaneously" and "second duplicate set."[87] To satisfy the "in transit" requirement under the second clause of Section 631(a), the allegations must demonstrate that a party intercepted the communication during its transmission, rather than once it was placed in electronic storage.[88] The FAC does so.

Defendant's cited cases involve only conclusory allegations and are inapplicable here. In contrast, Plaintiffs repeatedly assert that as they and Class members enter their personally identifiable and sensitive mental health information on the Psychology Today website, ***Google simultaneously intercepts*** this private data ***in real time while it is in transit*** through embedded Google Analytics code.[89] Plaintiffs further explain that this tracking technology allegedly intercepts users' interactions ***in real time***, including inputted information and clicked links, and ***sends a second, duplicate set of transmissions to third-party servers***, including Google.[90] All of the information, including personally identifying information, is sent ***while the data is in transit***.[91]

The FAC clearly alleges that the private and confidential communications of Psychology Today website users were intercepted "in transit" before reaching their final destination.[92] No additional allegations are needed to establish liability.[93] Defendant cannot evade responsibility by

---

[87] *See* FAC, ¶¶ 6-7, 13, 19, 26, 36-37, 50-52, 62.
[88] *See Konop v. Hawaiin Airlines, Inc.*, 302 F.3d 868, 876-879 (9th Cir. 2002); *Licea v. Old Navy, LLC*, 669 F.Supp.3d 941, 946 (C.D. Cal. 2023).
[89] FAC, ¶¶ 6-7, 13, 19, 26, 36-37, 50-52, 62.
[90] FAC, ¶ 36
[91] FAC, ¶¶ 8, 27, 37, 39.
[92] *Licea v. Old Navy, LLC*, 669 F.Supp.3d at 946 (finding that plaintiff sufficiently alleged the "in transit" element when the third-party allegedly "covertly" embedded code into the chat feature that automatically records conversations and allows a third-party to "secretly intercept in real time" such communications). *See also D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *11 (S.D. Mar. 28, 2024) (citing cases and finding sufficient allegations that the defendant permitted the third party to "secretly intercept in real time" chat communications by embedding code that directs chat communications to be routed directly to the third party).
[93] *See Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining that consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

disregarding these claims.

**4. Personal and sensitive medical information is a "confidential communication" protected under Penal Code section 632.**

Plaintiffs have pleaded claims sufficiently to allege violations of CIPA. Those sufficiently-pleaded violations include Penal Code § 632, which prohibits any person from "intentionally," and "without the consent of all parties," using a "recording device" to "eavesdrop" upon or "record [a] confidential communication."[94] A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."[95] Defendant again tries to downplay its wrongdoing by arguing erroneously that Section 632 does not apply to internet communications and that no confidential communications took place. Defendant's arguments fail for numerous reasons.

Tellingly, Defendant cites only one authority to suggest that internet communications are not protected by Penal Code § 632. The California Supreme Court, however, regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme.[96] In the CIPA context, the California Supreme Court repeatedly has found that the California Legislature intended CIPA to establish strong privacy protections, and in light of this intent, the Court has instructed other courts to interpret CIPA in a manner that "fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests."[97] Numerous district courts have followed that instruction and have applied CIPA to various new technologies, including emails and other electronic communications.[98] Courts also have determined that CIPA

---

[94] Penal Code § 632(a).

[95] Penal Code § 632(c).

[96] *See Apple Inc. v. Superior Court*, 56 Cal.4th 128, 137 (2013) (holding that even if a technology did not exist at the time of a statute's enactment, that does not necessarily preclude the application of the statute to that technology). *Id.* at 139-141.

[97] *Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002).

[98] *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918, at *61, 67 (N.D. Cal. Aug. 12, 2016) (holding that, "in light of the plain language of section 631, the legislative intent underlying CIPA to protect privacy, and the California Supreme Court's approach to applying statutes to new technologies," CIPA applies to email communications). *See also In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d 922, 936 (N.D. Cal. 2015) (concluding that CIPA applies to "electronic communications"); *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014) (same); *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *20-21 (N.D. Cal. 2013) (same).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

applies to internet communications.[99] Defendant's assertion is simply false.

Defendant next claims it did not violate Penal Code § 632 because it had Plaintiffs' consent, but this argument is misleading. While Plaintiffs shared their personal and sensitive medical information through the Psychology Today website, they did not consent to Google's interception or use of their confidential communications.[100] Consent can be express or implied, but any consent must be actual.[101]

Here, Defendant never asked its Psychology Today website visitors, including Plaintiffs, whether they consented to having the contents of their private interactions and communications containing their personal and sensitive mental health information disclosed to and used by third parties like Google.[102] Further, as alleged in detail in the FAC, Psychology Today's Privacy Policy ***does not identify Google as a recipient of users' personal and sensitive information***, nor does it acknowledge Defendant's use of Google Analytics or other website tracking tools.[103] Defendant also fails to inform users that it redirects and shares their individually identifiable health information and IP addresses with Google.[104] Without proper notice, Plaintiffs could not have consented to Google's recording of their confidential communications.

Defendant's third argument once again incorrectly attempts to apply a heightened criminal standard to Plaintiffs' civil aiding-and-abetting claim under CIPA. Plaintiffs are not required to allege that Google acted with a "criminal purpose" or that Defendant intended to assist in any criminal act. That simply is not the correct standard.

Instead, in full satisfaction of the common law definition for aider-and-abettor liability, Plaintiffs allege that Defendant permitted, encouraged, and gave substantial assistance to Google to eavesdrop upon and/or record Psychology Today website users' confidential communications

---

[99] *Byars v. Tire*, 2023 U.S. Dist. LEXIS 22337, at *11 (C.D. Cal. 2023), citing *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal.3d 187 (1978) and *Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951 (9th Cir. 2022).
[100] FAC, ¶¶ 6, 26, 56-57, 63, 107, 130, 159.
[101] *Calhoun v. Google, LLC*, 2024 U.S.App.LEXIS 20978, at *14 (9th Cir. 2024), citing *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013).
[102] *See* FAC, ¶ 63.
[103] *See* FAC, ¶ 130.
[104] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

through an electronic amplifying device.[105] Defendant did so by intentionally (1) installing and embedding Google Analytics code on its Psychology Today website without proper safeguards to preserve the confidentiality of users' communications and (2) contemporaneously redirecting and transmitting Plaintiffs' and Class members' confidential communications to Google through Google Analytics website tracking technology.[106] Plaintiffs' allegations are sufficient to establish Defendant's aiding and abetting of Google's violations of Penal Code § 632.

Like many of its other arguments, Defendant's "no confidential communication" claim is based on a misreading and twisting of the FAC's allegations. Contrary to Defendant's cherry-picking argument, button clicks and pages viewed are not the only information at issue here. Rather, Plaintiffs' and Psychology Today Website Class members' personal and private communications with Defendant, including their submission of sensitive medical information such as their mental health conditions and concerns, their provider and treatment preferences, and their contact with potential mental health providers, are alleged to have been recorded and/or eavesdropped upon by Google without notice, authorization, or consent.[107]

Courts consistently recognize that individuals do have a reasonable expectation of privacy in the type of private medical information that Defendant disclosed and Google intercepted here.[108] Specifically, ***conversations about medical treatment and history give rise to an expectation of confidentiality under CIPA and therefore are protected communication***s.[109] Not one of the cases cited by Defendant addresses whether this type of private and sensitive medical information is confidential, and thus, are not on point or controlling. Further, while Defendant might wish

---

[105] FAC, ¶ 158.
[106] *Id.*
[107] *See* FAC, ¶¶ 155-156.
[108] *See Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, at *6 (recognizing reasonable expectation of privacy in "[p]ersonal medical information" because **it is understood to be among the most sensitive information that could be collected about a person**"); *Stasi v. Immediata Group Corp*, 501 F.Supp.3d 898, 926 (S.D. Cal. 2020) (recognizing reasonable expectation of privacy in health data"); *Brown v. Google, LLC*, 525 F.Supp.3d 1049, 1074 (N.D. Cal. 2021) (recognizing confidential nature of "private browsing session[s]").
[109] *See Federated University Police Officers' Association*, 2015 WL 13273308, at *12 (C.D. Cal. 2015).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

otherwise, **there is no *per se* rule that internet communications are not confidential.**[110]

The FAC's allegations are clear. While § 631 is not limited to "confidential communications," all other substantive conduct prohibited by § 631 and § 632 is the same.[111] Because Defendant did not disclose to Plaintiffs or Class members that their private communications containing protected medical information were being recorded and/or eavesdropped upon by Google, Defendant did not obtain and could not have obtained Plaintiffs' or Class members' express or implied consent to Google's recording or monitoring of those confidential communications.[112]

Additionally, by contemporaneously redirecting and transmitting Plaintiffs' and Class members' confidential communications through Google Analytics website tracking technology embedded on the Psychology Today website, Defendant permitted Google to eavesdrop upon and record – *i.e.*, Defendant aided and abetted Google's eavesdropping upon and/or recording – Psychology Today website users' confidential communications without their authorization or consent.[113] By so doing, Defendant violated § 632, and Plaintiffs have properly pleaded a claim against Defendant for its unlawful conduct.

**D. Defendant's disclosure of protected medical information without consent is highly offensive conduct and constitutes a serious invasion of privacy.**

Plaintiffs properly have pleaded each of the three elements required to state a Constitutional privacy claim against Defendant.[114] Defendant's assertion that its unlawful conduct is not highly offensive ignores the plain allegations of the FAC and the weight of authority protecting medical information privacy.

First, Defendant's arguments that no harm or intrusion occurred because Plaintiffs affirmatively provided information to Defendant to deliver "web pages, articles, or therapists" misleadingly downplays the actual information shared by Plaintiffs and disclosed by Defendant

---

[110] *Brown v. Google LLC*, 2023 WL 5029899, at *18 (N.D. Cal. Aug. 7, 2023).
[111] *See People v. Guzman*, 11 Cal. App. 5th 184 n7 (2017).
[112] FAC, ¶ 156.
[113] FAC, ¶ 158.
[114] See FAC, ¶¶ 165 (protected privacy interest), 166 (reasonable expectation of privacy), and 167 (serious invasion of privacy).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

without consent. The FAC clearly alleges that ***Plaintiffs and Class members inputted and shared specific categories of personal and medical information*** with Defendant through its Psychology Today website. That information included but was not limited to Plaintiffs' and Class members' names/identities, telephone numbers, email addresses, and other personally identifiable information, ***as well as intensely private matters such as patient status, mental health conditions and concerns, provider preferences, and therapy or medical treatment sought.***[115] This highly personal and sensitive medical information, which is protected by numerous statutes including HIPAA, was disclosed by Defendant and intercepted by Google without users' notice, awareness, authorization or consent. While perhaps not "nefarious," that invasive and unlawful conduct causes serious harm and goes far beyond "routine commercial behavior" and data collection.

Second, it is well established that individuals have a reasonable expectation of privacy in their own medical health data.[116] Numerous courts have found even negligent disclosure of medical information to be an invasion of privacy "because the disclosure of such information is likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'"[117] A more recent decision in this district also held that the interception of private communications may be highly offensive.[118] Whether Defendant's intrusion is highly offensive depends "on the degree to which the intrusion is unacceptable as a matter of public policy."[119]

Here, the intrusion concerns the unauthorized disclosure or interception of protected medical information without Psychology Today users' consent. Contrary to Defendant's belief, that conduct is, in fact, highly offensive and a breach of social norms.[120] This is especially true

---

[115] FAC, ¶¶ 5, 11-12, 16-18, 50-52, 100, 165.

[116] *See Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, at *6 (sustaining privacy claims based on the interception of medical data through pixels because ***"[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person"***) [emphasis added].

[117] *In re Ambry Genetics Data Breach Litig.*, 567 F.Supp.3d at 1143; *Stasi v. Immediata Group Corp*, 501 F.Supp.3d at 926 (same); *see also Brown v. Google LLC*, 525 F.Supp.3d at 1066 (finding reasonable expectation in data defendant promised not to disclose).

[118] *See In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 830 (N.D. Cal. 2020).

[119] *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606.

[120] *See Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, at *6 (finding transmittal of medical data though Meta Pixel is highly offensive because "medical information" is "the most sensitive

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

given that Defendant engaged in its invasive conduct surreptitiously, in a manner that Psychology Today website users could not detect, and in violation of Defendant's own Privacy Policy.[121] Thus, Defendant's argument claiming that no serious invasion of privacy occurred is wholly without merit and should be rejected.

## IV. PLAINTIFFS ALTERNATIVELY REQUEST LEAVE TO AMEND

If the Court grants any part of Defendant's motion, Plaintiffs request leave to amend under Rule 15(a). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.[122] Leave to amend a complaint "shall be freely given where justice so requires."[123] This policy is applied with "extreme liberality."[124]

## V. CONCLUSION

Plaintiffs properly have asserted claims for relief and have stated plausible individual and putative class privacy claims under the CMIA, the CCPA, the CIPA, and the California Constitution. For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion in its entirety.

Respectfully submitted,

Dated: September 9, 2024

**KELLER GROVER LLP**

By: ______________________

ERIC A. GROVER
*Attorneys for Plaintiffs*

---

information . . . about a person"); *Doe v. Beard*, 63 F.Supp.3d 1159, 1169-1170 (C.D. Cal. 2014) (explaining that the disclosure of "medical information" is an "egregious violation[] of social norms"); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *7 (N.D. Cal. Apr. 6, 2023) (finding interception of data that touched on "sensitive health . . .information" to be sufficient to state an intrusion upon seclusion claim).

[121] *See Calhoun v. Google LLC*, 526 F.Supp.3d 605, 631 (N.D. Cal. 2021) (surreptitious collection of data in contravention of representations to users is highly offensive); *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1061 (N.D. Cal. 2014) (holding that interception of personal contact lists without consent was sufficient to pass challenges to the "highly offensive" element on a motion to dismiss); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (recognizing reasonable expectation of privacy when data collection is inconsistent with privacy promises).

[122] *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smtih*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).

[123] *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1010 (9th Cir. 2008).

[124] *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).