Matthew D. Pearson, SBN 294302
*mpearson@bakerlaw.com*
Monique Matar, SBN 317145
*mmatar@bakerlaw.com*
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: (714) 754-6600
Facsimile: (714) 754-6611

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-02609-JSC<br><br>The Honorable Jacqueline Scott Corley<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**DATE: OCTOBER 3, 2024**<br>**TIME: 10:00 A.M.**<br>**COURTROOM 8**<br><br>Action Filed: November 30, 2023<br>FAC Filed: August 12, 2024 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........................................................................................................ 1

II. PLAINTIFFS' FAC SHOULD BE DISMISSED. . ............................................................ 2

A. Plaintiffs' Browsing Data Is Neither Content, Confidential, Nor Medical. ........... 2

B. Plaintiffs' Email Content Information Was Not Disclosed. .................................. 6

C. Plaintiffs Have Failed to Allege a Violation of the CMIA. ................................. 8

1. Sussex Did Not "Disclose" Plaintiffs' Medical Information. .................... 9

2. Plaintiffs Fail to Allege Anyone "Actually Viewed" Their Information. . 10

3. The CMIA Does Not Apply to Sussex. .................................................. 11

D. Plaintiffs Do Not Allege that Sussex Aided and Abetted a CIPA Violation. ....... 12

E. Plaintiffs Have Failed to Allege a Violation of CIPA § 632 ................................ 14

F. Plaintiffs Have Failed to Allege a Constitutional Invasion of Privacy Claim. ..... 15

III. CONCLUSION .......................................................................................................... 16


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. Selectquote Ins.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 13

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 9

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal.Super. Jan. 05, 2023) .......... 11

*Cody v. Ring LLC*,
No. 23-CV-00562-AMO, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .......... 13

*Delgado v. Meta Platforms, Inc.*,
No. 23-CV-04181-SI, 2024 WL 818344 (N.D. Cal. Feb. 27, 2024) .......... 6

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 3

*Drummond Co., Inc. v. Collingsworth*,
No. 13MC80169JSTJCS, 2013 WL 6074157 (N.D. Cal. Nov. 18, 2013) .......... 5

*Garcia v. Cnty. of Los Angeles*,
No. CV 15-03651 AG (KSX), 2017 WL 11635080 (C.D. Cal. Apr. 24, 2017) .......... 14

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 5

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) .......... 2, 13

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1, 865 P.2d 633 (1994) .......... 3

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 8

*Oddei v. Optum, Inc.*,
No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) .......... 12

*Rodriguez v. Ford Motor Co.*,
No. 323CV00598RBMJLB, 2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) .......... 6, 14

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Strike 3 Holdings, LLC v. John DOE Subscriber Assigned Ip Address 104.54.83.44*, No. 2:23-CV-2129-TLN-CKD, 2023 WL 7339082 (E.D. Cal. Oct. 19, 2023) ........................ 5

*Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546 (2014) ........................ 9, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-3517 SI, 2011 WL 4345316 (N.D. Cal. Sept. 15, 2011) ........................ 14

*Tomassi v. City of Los Angeles*, No. CV 08-1851 DSF SSX, 2008 WL 4722393 (C.D. Cal. Oct. 24, 2008) ........................ 6

*Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 300 Cal. Rptr. 3d 32 (2022), review denied (Jan. 25, 2023) ........................ 6

*Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029 (S.D. Cal. 2012) ........................ 15

**Statutes**

Cal. Civ. Code § 56.05(k) ........................ 12

Cal. Civ. Code § 56.05(l) ........................ 11

Cal. Civ. Code § 56.06(b) ........................ 12

Cal. Civ. Code § 1798.81.5(d)(1) ........................ 3

HIPAA ........................ 3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## I. INTRODUCTION

Obfuscation is not a defense to a motion to dismiss; alleging facts that give rise to a plausible cause of action is. Here, however, Plaintiffs do not identify any such facts and, therefore, have plausibly alleged no such claim against Defendant Sussex Publishers, LLC.

As explained in Sussex's motion to dismiss (and as largely ignored by Plaintiffs in their Opposition), when shed of the unsupported conclusions and irrelevant allegations, Plaintiffs' FAC focuses on the alleged nonconsensual disclosure by Sussex of two types of information: (1) information gathered by Google Analytics while Plaintiffs browsed Sussex's publicly accessible website, www.psychologytoday.com ("Browsing Data") and (2) the contents of emails sent by Plaintiffs to therapists through the Site ("Email Content Information"). That's it.

Although not acknowledged by Plaintiffs at all, these two types of information are inherently different. Browsing Data gathered by Google Analytics while Plaintiffs browsed www.psychologytoday.com (the "Site") includes exactly what one would expect: web page URLs, page titles, button clicks, etc. As numerous courts have now found, Browsing Data is neither content (under CIPA), medical information (under the CMIA or CCPA), nor confidential information (for purposes of an invasion of privacy claim). It is nothing more than a log of what a person clicked on and viewed while visiting a public website and, even beyond that, it is linked to an IP address, not any individual person or device. Thus, regardless of the legal grounds on which Plaintiffs sue Sussex, collection and disclosure of Plaintiffs' Browsing Data is not actionable.

The same is not true regarding Email Content Information, though. Email Content Information could include—among other things—name, email address, phone number, and message content. Sussex does not dispute that Email Content Information is "content" and could be confidential. What Sussex does dispute—and what Plaintiffs here have *not* alleged—is that their Email Content Information was ever shared with Google. It was not. Plaintiffs' own allegations make this clear.

In their initial Complaint, Plaintiffs affirmatively and explicitly alleged that Sussex allowed Google to collect the contents of their emails to therapists. [Dkt. No. 1-1, ¶ 39.] In fact,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Plaintiffs went so far as to add emphasis to their allegation by italicizing it. [*Id.* (alleging that Google collected "*a copy of any email communication sent to therapists*").] Following receipt of a Rule 11 letter focusing on, among other things, that very allegation, Plaintiffs removed the allegation in their FAC. [*See generally* Dkt. No. 16.] That is not to say that Plaintiffs do not discuss Email Content Information in the FAC; they do, including providing a screenshot of the email form presented on the Site. [Dkt. No. 16, Figure 2.] But the collection by Sussex of Email Content Information *alone* does not result in a violation of the law.[1] In fact, millions of websites collect Email Content Information. What Plaintiffs must allege is that Sussex disclosed (or allowed the collection of) that Email Content Information to an unauthorized third party (i.e., Google), which they simply have not done.

In truth, Plaintiffs have attempted—and seek leave from the Court to attempt again—to impose liability on Sussex for something it does not do and has not done—namely, the unconsented-to disclosure of confidential, medical information. Sussex is a media company operating a website that provides popular and accessible articles on psychology and access to mental health clinicians and therapists. It is not a doctor, a hospital, or a clinic. Nor does it employ a single medical professional or therapist or engage in any diagnosis or treatment. It is, for all intents and purposes, an avenue through which people in need can connect with clinical therapists to receive therapy. Plaintiffs' claims against Sussex are inadequately pleaded and misguided. Plaintiffs' FAC should be dismissed in its entirety and with prejudice.

## II. PLAINTIFFS' FAC SHOULD BE DISMISSED.

### A. Plaintiffs' Browsing Data Is Neither Content, Confidential, Nor Medical.

Each of Plaintiffs' six causes of action requires them to plausibly allege that the information allegedly collected and disclosed (here, Browsing Data) was content, medical, or confidential.[2] Plaintiffs have failed to do so.

---

[1] Furthermore, Plaintiffs themselves admit that Sussex does not even read or retain Email Content Information. [Dkt. No. 16. Fig. 2 (snapshot of email form from Site that states: "Psychology Today does not read or store your email.").]

[2] *See Heiting v. Taro Pharms. USA, Inc.,* No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *7 (C.D. Cal. Apr. 2, 2024) ("Under CIPA, only 'any information concerning the substance, purpose,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Plaintiffs try to avoid this inevitable conclusion by attempting to blur the lines between their Browsing Data and their Email Content Information. But given that Plaintiffs *have* alleged that their Browsing Data was shared with Google but *have not* alleged that their Email Content Information was similarly shared, keeping separate the two categories of information is paramount and the only way the Court can determine whether a plausible claim has been alleged.

Plaintiffs' allegations provide the dividing line between Browsing Data and Email Content Information. Figure 2 of the FAC shows *exactly* what constitutes Email Content Information by showing, *exactly*, what information Plaintiffs could have inputted when they sent an email to a therapist: (1) name, (2) email address, (3) phone number, (4) email subject, and (5) email content. [Dkt. No. 16, Fig. 2.] ***All other categories of information that Plaintiffs allege Sussex collected and shared are Browsing Data.***

For example, Plaintiffs allege that they provided Sussex with their "IP address;" [Dkt. No. 19, ¶ 8], "age and insurance information;" "their search parameters detailing their mental health concerns and conditions;" "their gender, ethnicity, sexuality, and faith preferences regarding providers;" and "the type of therapy or category of treatment they sought," [*id.* at ¶ 5.] That is *Browsing Data* and, as admitted by Plaintiffs[3], provided by Plaintiffs by clicking buttons on the Site.[4] Therefore, the question is whether, by allowing Google to collect via Google Analytics, the

---

or meaning of [a] communication'," (i.e., "content") " is protected."); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 39–40, 865 P.2d 633, 657 (1994) ("[A]n invasion of privacy in violation of the state constitutional right to privacy…[requires] each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *25 (N.D. Cal. Apr. 11, 2024) ("The CMIA is similar to HIPAA, protecting against disclosure of individually identifiable medical information without written, signed authorization."); Cal. Civ. Code § 1798.81.5(d)(1) (defining, under the CCPA, "personal information" as name in combination with, among other things not at issue here, "medical information").

[3] [Dkt. No. 16, ¶¶ 43-44 (describing the process by which users, such as Plaintiffs, can provide this information, and explaining that it is all through button clicks on specified filters).]

[4] Although Plaintiffs refer to "search terms," they are really referring to the URL of the page they are presented when conducting a search on the Site. When a user searches for "therapists" on the Site, the URL of the page containing the search results includes the term "therapist." That is all. Plaintiffs do not allege, nor could they, that Sussex allows Google to actually capture the search terms as they are being inserted into the Site. Thus, by alleging that Sussex allows Google to



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

buttons Plaintiffs clicked on the Site, Sussex disclosed content, medical, or confidential information? The answer to that question is demonstrably "no."

**Button clicks are not content.** In *Doe v. Cedars-Sinai Health System, et al.* and *Valladolid v. Memorial Health Services,*[5] the California Superior Court analyzed allegations similar to those here and concluded that plaintiffs' allegations in each of those cases did not constitute "contents" of communications. [See Pearson Decl. at Ex. A at 4–5 (allegations that plaintiffs "conducted searches on Defendants' website for ankle surgery and podiatrists"; "to book appointments and view medical tests"; and "search[] for ophthalmologists on the website," even where plaintiffs alleged that their "IP addresses, . . . the pages a patient clicked on, and the doctors' names on those pages" were captured, were not "contents" of communications); Ex. B at 4 (allegations that plaintiff "viewed test results on Defendant's website and searched on Defendant's website for a doctor to treat a leg injury" were not "contents").] This case is no different. Button clicks are button clicks, nothing more.

**Button clicks are not medical information.** In their Opposition, Plaintiff do not address, let alone explain, how their Browsing Data could constitute "medical information." Nor do they address, beyond calling it a "non-binding Texas case," the June 20, 2024 holding in *American Hospital Assoc. v. Becerra*, which specifically held that browsing data cannot be categorized as medical information because "(1) an individual's IP address with (2) a visit to a UPW addressing specific health conditions or healthcare providers" (i.e., button clicks and searches) "cannot identify an individual or the individual's PHI without an unknowable subjective-intent element" (i.e., whether the individual was browsing the Site for himself, for someone else, or simply out of

---

capture "search terms," all they are actually alleging is that Sussex allows Google to collect the URL of the Site pages they visit. [*See* Dkt. No. 16, Fig. 7 (showing search term in URL).] Similarly, Plaintiffs' reference to "inputs" in the Opposition, [Dkt. No. 21, 24:11-19], is unavailing. Despite alleging that the Site allowed them to "input" information on the email form, they never allege that Google was installed on or collected information from the email form.

[5] Because neither of these opinions is currently available electronically, Sussex has attached true and correct copies of the opinions to the Declaration of Matthew D. Pearson ("Pearson Decl."), filed concurrently herewith.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

curiosity). No. 4:23-CV-01110-P, 2024 WL 3075865, at *13 (N.D. Tex. June 20, 2024).[6] The Browsing Data allegedly collected and disclosed by Sussex here is no different. Neither Sussex nor Google had any way of knowing whether Plaintiffs were clicking on buttons for themselves, for others, for no reason at all, or on accident. The only thing that either Sussex or Google knew was that someone connected to an IP address (which could be shared by hundreds or thousands of users) clicked on a button.[7] That ***is not*** medical information.

**Button clicks are not confidential.** There can be no dispute that Plaintiffs voluntarily provided to Sussex their Browsing Data. There can also be no dispute that a person generally has no reasonable expectation of privacy in the information he or she voluntarily provides to a third party. *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("IP addresses 'are voluntarily turned over in order to direct the third party's servers,' and so no reasonable expectation of privacy attaches to them.") (internal citation omitted). That Sussex allowed Google to collect Plaintiffs' Browsing Data is of no moment. Information that is not private or confidential in the first instance does not somehow become private or confidential simply because it is shared with a third party.

In sum, with regard to the alleged disclosure of Plaintiffs' Browsing Data, Plaintiffs cannot state a claim under CIPA, CMIA, CCPA, or the California Constitution, because Plaintiffs

---

[6] The *Becerra* decision has now become firmly solidified after the U.S. Department of Health and Human Services ("HHS") withdrew its appeal of that decision on August 29, 2024.

[7] It should also be noted that, as argued in Sussex's Motion to Dismiss, an IP address does not identify an individual or even a device. It identifies the internet network that a specific device is using when accessing the Site. Therefore, Plaintiffs' IP addresses would be different depending on where they were when they visited the Site (i.e., at home, at work, at a coffee shop, etc.). *Drummond Co., Inc. v. Collingsworth*, No. 13MC80169JSTJCS, 2013 WL 6074157, at *2 (N.D. Cal. Nov. 18, 2013) ("An IP address may identify the network through which a network-enabled device (such as a desktop computer, laptop computer tablet, or smartphone) is accessing the Internet. When a portable device moves from an Internet connection on one network (the network connection at one's home, for example) to an Internet connection on another network (a local coffee shop), the IP address associated with the portable device changes to reflect that the device is connected to that particular network."); *Strike 3 Holdings, LLC v. John DOE Subscriber Assigned Ip Address 104.54.83.44*, No. 2:23-CV-2129-TLN-CKD, 2023 WL 7339082, at *2 (E.D. Cal. Oct. 19, 2023) ("An IP address provides only the location at which one of any number of computer devices may be deployed….").

have not alleged—and cannot allege—that their Browsing Data was content, medical, or confidential information. It was button clicks, nothing more. And, even beyond that, it was button clicks associated with an IP address that could have, but may not necessarily have, identified Plaintiffs, depending on where they were when they visited the Site (at home, in the car, or at a local coffee shop), who was on their computer when the Site was visited (Plaintiffs or their roommates), and how their browser was configured when they visited the Site (the use of a Virtual Private Network, or VPN, masks IP addresses)—information all completely unknown to and unknowable by Sussex and Google.[8] Plaintiffs' claims under CIPA, CMIA, CCPA, and the California Constitution based on the alleged disclosure of their Browsing Data must be dismissed.

### B. Plaintiffs' Email Content Information Was Not Disclosed.

Not only do each of Plaintiffs' six causes of action require them to allege that the information allegedly collected was content, medical, and confidential, but they also each require them to allege that the information at issue was disclosed, in one way or another, to an unauthorized third party.[9] As it relates to Plaintiffs' Email Content Information, they have failed—entirely—to do so.

Plaintiffs' allegations, at least as they relate to their Email Content Information, can most accurately be described as verbal contortionism. They allege that they sent emails to therapists

---

[8] In light of these facts, it makes no difference—contrary to Plaintiffs' repeated claims—whether Sussex was utilizing Google's "IP anonymization feature," [Dkt. No. 21, 8:14-18], because, even with Plaintiffs' IP address, there was no way for Sussex or Google to definitively identify Plaintiffs as the users in question. Further, the obscure IP anonymization feature no longer exists on Google Analytics.

[9] *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 219, 300 Cal. Rptr. 3d 32, 46 (2022), review denied (Jan. 25, 2023) ("The remedy provided in subdivision (b) [of section 56.36] is the right of an individual whose confidential information has been released in violation of CMIA to bring a private cause of action for nominal and/or actual damages.") (internal quotations omitted, alteration in original); *Rodriguez v. Ford Motor Co.*, No. 323CV00598RBMJLB, 2024 WL 1223485, at *6 (S.D. Cal. Mar. 21, 2024) (noting that, under a CIPA aiding and abetting claim, as alleged here, plaintiff must show that the defendant assisted a third party in unlawfully obtaining communications); *Delgado v. Meta Platforms, Inc.*, No. 23-CV-04181-SI, 2024 WL 818344, at *4 (N.D. Cal. Feb. 27, 2024) ("The CCPA…calls for enforcement by the California Attorney General, allowing a private right of action only in the event of a security breach."); *Tomassi v. City of Los Angeles*, No. CV 08-1851 DSF SSX, 2008 WL 4722393, at *3 (C.D. Cal. Oct. 24, 2008) ("When the disclosure of information does not involve particularly sensitive information, no serious invasion of privacy occurs.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

through the Site. [Dkt. No. 16, ¶¶ 11 (R.C), 17 (D.G.).] They allege that those emails included their "age, issues…, mental health concerns, and the types of treatment or therapy that [they were] seeking." [*Id.* at ¶¶ 12 (R.C), 17 (D.G.).] They even provide a screenshot of the Site's form they allegedly used to send the emails [*id.* at Fig. 2], and describe the process by which Sussex confirmed that their email had been sent, [*id.* at ¶ 47 (detailing receipt of the confirmation email)]. Yet, despite making the explicit allegation in their initial complaint that Sussex allowed Google to collect "*a copy of any email communication sent to therapists*," [Dkt. No. 1-1, ¶ 39 (emphasis in original)], Plaintiffs never once make this allegation in the FAC or the Opposition.

Instead, Plaintiffs rely on vague generalizations, hoping the Court will infer allegations that they never make. For example, Plaintiffs repeatedly allege that Sussex allowed Google to collect their "interactions with and communications through [the Site]." [*See, e.g.,* Dkt. No. 16, ¶¶ 5, 13, 19, 75, 115, 114-115, 144-148.] They even allege that Sussex allowed Google to collect "their contact with potential mental healthcare providers." [*Id.* at ¶ 155.] But, when one considers how Plaintiffs use the terms "communications" and "contact" in the FAC, it becomes immediately apparent that Plaintiffs are not actually alleging that Google collected their Email Content Information. For example, in Paragraph 66 of the FAC, Plaintiffs expressly allege that their "confidential communications" include information that was provided separate and apart from the emails (i.e., "gender, ethnic, and faith preferences"). [*Id.* at ¶ 66.] Moreover, throughout the FAC, Plaintiffs draw a distinction between "email communications" and their "confidential" or "private" communications. In fact, where Plaintiffs are expressly discussing "email communications," they make sure to describe it as such. [*Id.* at ¶¶ 11 (R.C. alleging that she "sent *email* communications to a number of therapists directly through the Psychology Today website"), 17 (D.G. alleging that she "sent *email* communications to potential therapists directly through the Psychology Today website") (emphasis added)).] Nowhere in the FAC do Plaintiffs allege that Google collected the content of their "***email communications***."

Plaintiffs' obfuscation continues in their Opposition. For example, in response to Sussex's argument that Plaintiffs fail to allege that any "content" was intercepted by Google,

Plaintiffs describe their email communications, claiming that those communications are clearly "content." [Dkt. No. 21, 24:1-10.] But while that may be true, Plaintiffs never once claim in their Opposition that their email communications *were intercepted or obtained by Google*. Instead, they merely state:

> Here, Plaintiffs allege that they were required to fill in an online form and input their names, email addresses, and telephone numbers when emailing potential therapists through the Psychology Today website. Plaintiffs further allege that those email communications included personal and sensitive information related to Plaintiffs' mental health concerns and conditions and plans of treatment. That entered information clearly constitutes the "contents" of a communication.

[*Id*.] That Plaintiffs were required to "fill in an online form" and that their email communications included "personal and sensitive information" is of no consequence, given that Plaintiffs do not allege that the information they provided was ever disclosed to Google or a third party.

Plaintiffs' omission is not an oversight. Clearly, Plaintiffs know how to allege that the contents of their *email* communications were being intercepted, having done so in italics in their original complaint (and having not done so in their FAC). [Dkt. No. 1-1, ¶ 39.] And clearly, they know how to determine what information—exactly—is being shared with Google while they interact with the Site, having included in the FAC multiple screenshots detailing that exact information. [*See generally* Dkt. No. 16.] Yet, despite these facts, *nowhere* in the FAC do they specifically allege that their Email Content Information was being collected by a third party. The reason for this is simple: it wasn't. Plaintiffs know it, and this Court should not allow Plaintiffs' intentionally vague allegations to proceed. Plaintiffs' FAC should be dismissed.

### C. **Plaintiffs Have Failed to Allege a Violation of the CMIA.**[10]

In addition to failing to allege that any of their *medical information* was collected,

[10] In their Opposition, Plaintiffs' fail to address Sussex's argument that CMIA does not allow for aiding and abetting liability. Therefore, Plaintiffs have abandoned their second cause of action for aiding and abetting a CMIA violation. *See Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) ("Plaintiffs' opposition failed to address their claim for unjust enrichment. Accordingly, the Court deems this claim abandoned.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Plaintiffs also (1) fail to allege that their medical information was disclosed, as required by their CMIA § 56.10(a) claim; (2) fail to allege that their medical information was "actually viewed," as required by their CMIA § 56.101(a) claim; and, most importantly, (3) fail to allege that Sussex is a "medical provider" to which the CMIA applies at all.

1. Sussex Did Not "Disclose" Plaintiffs' Medical Information.

Plaintiffs do not dispute, nor could they, that, to state a claim under CMIA § 56.10(a), they must plausibly allege that Sussex "affirmatively communicated" their medical information to an unauthorized third party. [Dkt. No. 21, 14:20-15:3 (acknowledging the "affirmative communication" requirement).] Nor do they dispute that, under the CMIA, the term "affirmatively communicate" means "giving out medical information on a patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1554 (2014).

Instead, Plaintiffs argue that they did, in fact, allege that Sussex "gave out their medical information" by: "(1) installing and embedding Google Analytics code on its Psychology Today website without proper safeguards needed to preserve the confidentiality of users' medical information, (2) allowing Google to have direct access to Psychology Today website users' private medical information, and (3) failing to provide notice to users of its use of website tracking technology despite knowing that Google collects and records users' personal information." [Dkt. No. 21, 15:14-19.] None of those things, however, constitute an "affirmative communication" of Plaintiff's medical information. Indeed, allowing Google access and failing to provide proper notification smacks of the exact allegations in data-breach cases that courts have consistently found to be inadequate under CMIA § 56.10.[11] Plaintiffs' CMIA § 56.10 claims must be dismissed.

---

[11] *See, e.g., Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898, 922 (S.D. Cal. 2020) (finding, under CMIA § 56.10(a), that even where the plaintiff alleges an "affirmative act" that "caused…Plaintiffs' information [to be] accessible via the internet," that affirmative act does not meet the "disclosure" requirement unless it "was done with the intent to communicate" medical information); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1148 (C.D. Cal. 2021) (dismissing CMIA § 56.10(a) claim despite plaintiff alleging that defendant failed "to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect patients' Private Information").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

2. Plaintiffs Fail to Allege Anyone "Actually Viewed" Their Information.

In their Opposition, Plaintiffs conflate "receipt" and "use" with "actual viewing." [Dkt. No. 21, 16:1-3 (arguing that Sussex "flatly ignores the FAC's numerous allegations that Google, without authorization, has received and used the confidential medical information that Defendant disclosed without users' consent"). "Receipt" of medical information has long been held to be insufficient to state a claim under CMIA § 56.101(a) because "[t]hat the records have changed possession even in an unauthorized manner does not mean they have been exposed to the view of an unauthorized person." *Sutter Health v. Superior Ct*., 227 Cal. App. 4th 1546, 1558 (2014).

The same is true with regard to "use," especially within the context of this case. Plaintiffs' entire claim is that "a small piece of JavaScript measurement code," embedded in the Site, *automatically* caused Plaintiffs' browser to send a "duplicative set of transmissions" to Google's servers. [Dkt. No. 16, ¶ 26.] Plaintiffs do not, and cannot, allege that any "unauthorized person" was involved in that "duplicate" transmission. Plaintiffs, likewise, do not allege any "human" involvement in how Google allegedly "used" the information once it was in its possession. For example, Plaintiffs allege that Google "aggregates and organizes the data based on particular criteria," which can be "customized by applying filters." [Dkt. No. 16, ¶ 37.] However, anyone with a rudimentary understanding of Microsoft Excel understands that organizing data using filters is not done through manual review and manipulation, but rather through built-in software functions designed to automate the process. So, too, for Plaintiffs' allegation that Google generates reports to help analyze the data collected, including on "acquisition," "engagement," and "demographics." [*Id.* at ¶ 37.] No one, including Plaintiffs, believes that there is a Google employee manually reviewing, parsing, and organizing to create these "reports." The reports are automatically generated based on criteria set by the Site owner—here, Sussex. Finally, Plaintiffs' allegation that Google "uses" the data collected from the Site "to maintain and improve Google's own services, develop new services, measure the effectiveness of its advertising, and personalize content and ads that one sees on Google's and its partners' sites and applications," [*id.* at ¶ 39], is equally devoid of any "actual viewing" by an unauthorized





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*person*. It defies logic to believe that an actual human within Google would improve Google's service or develop new products by reviewing metadata from a single user transaction, let alone by reviewing *Plaintiffs'* metadata from *their individual transaction on the Site*. Indeed, the only plausible inference that can be drawn from Plaintiffs' allegations is the inference drawn by the California Supreme Court in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *7 (Cal.Super. Jan. 05, 2023): "the information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it." Plaintiffs' CMIA § 56.101 claim must be dismissed.

3. The CMIA Does Not Apply to Sussex.

In their FAC and their Opposition, Plaintiffs go to great lengths to try to establish that Sussex—a media company—provided a "mental health digital service" and, therefore, is a "provider of healthcare" under the CMIA. [Dkt. No. 21, § III(A)(1).] Indeed, despite never once alleging that Google was installed on or in any way involved with Sussex's version of Zoom, Sessions by Psychology Today, they devote multiple paragraphs in the FAC to discussing it and include in the FAC screenshots of it in the hopes that the tool will somehow transform Sussex from a media company into a healthcare provider. [*See generally* Dkt. No. 21.] It does not.[12]

Under the CMIA, a "mental health digital service" is "a mobile-based application or internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer." Cal. Civ. Code § 56.05(l). Nowhere in the FAC do Plaintiffs allege that Sussex uses any of the information collected through the Site to "facilitate mental health services to a consumer." In fact, Plaintiffs allege the opposite. Plaintiffs admit that

[12] Plaintiffs also argue that Sussex facilitates mental health services by "(1) providing a search-engine tool to find mental healthcare providers based on specific concerns and preferences input by the user and (2) offering links and buttons for the user to click and directly call or send an email communication to a therapist." [Dkt. No. 21, 9:17-20.] Anyone who has ever browsed the internet knows that Google, itself, provides this very capability through its search engine, but no one would claim that Google is a "mental health digital service." This is true despite the fact that most people searching for therapists via Google's search engine are likely to include the desired location and specialty of the therapist in their search (e.g. "child therapist Irvine").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

the Browsing Data Sussex collects through the Site is used to "serv[e] targeted advertisements." [Dkt. No. 16, ¶ 114.] And, with regard to Email Content Information, Plaintiffs acknowledge that Sussex neither reads nor retains it. [*Id.*at Fig. 2.]

Moreover, Plaintiffs do not allege that Sussex collected "mental health application information from a consumer" through Sessions. D.G., the only Plaintiff to claim to have used Sessions, affirmatively alleges that the only information she provided via Sessions was "her name," which she gave when entering the "virtual waiting room." [Dkt. No 16, ¶ 18.] A name, alone, is clearly not "mental health application information." Cal. Civ. Code § 56.05(k) (defining "mental health application information" as "information related to a consumer's inferred or diagnosed mental health or substance use disorder"). In fact, aside from Plaintiffs' Email Content Information—which, as discussed above, Plaintiffs do not allege was shared, read, or retained by Sussex—Plaintiffs do not allege, nor could they, that the Site ever even gave them the option to provide their "inferred or diagnosed mental health or substance use disorder."[13] In sum, Plaintiffs have not alleged any facts that would convert Sussex, a media company, into a "provider of health care" under the CMIA. Plaintiffs' CMIA claims must be dismissed.[14]

**D. <u>Plaintiffs Do Not Allege that Sussex Aided and Abetted a CIPA Violation.</u>**

Plaintiffs do not dispute that, in order to establish their CIPA aiding-and-abetting claim, they must establish that *Google* violated either the second or third clauses of § 631(a): "(2)

[13] Plaintiffs likewise make no claim that Sussex offers 'mental health services' in the commonly accepted sense of the phrase because it does not. Sussex does not employ any mental health therapists, counselors, or Psychiatrists, and does not offer any crisis intervention, support groups, workshops, or training.

[14] To the extent Plaintiffs claim that Sussex is a "provider of health care" because it "offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual," Cal. Civ. Code § 56.06(b), they are wrong. The court in *Oddei v. Optum, Inc.*, No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035, 2022 WL 17538747 (9th Cir. Dec. 8, 2022), made clear that while visiting a website, like the Site here, may require the visitor to use his "own hardware and software (i.e., a computer and its programs)," the website, itself, is not "hardware or software." *Id.* at *2.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

‘willfully attempting to learn the contents or meaning of a communication in transit over a wire,’ [i.e., eavesdropping] [or] (3) ‘attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.’” (*A.S. v. Selectquote Ins.*, 2024 WL 3881850, at *9 (S.D. Cal. Aug. 19, 2024) (quotation omitted)).[15] They likewise do not dispute that establishing a violation of the second clause is a prerequisite to establishing a violation of the third. [*See generally* Dkt. No. 21.]

Nevertheless, they argue that they have, in fact, alleged that Google unlawfully and “willfully attempting to learn the contents or meaning of a communication in transit over a wire.” [*Id.* at 20:22-24.] But, as discussed above, Plaintiffs cannot even allege that anyone at Google ever laid eyes on their Browsing Data, let alone that someone at Google did this *while their information was in transit.* And their response in the Opposition to this fact only serves to further demonstrate their inability.

Plaintiffs’ sole argument in support of their claim that Google did, in fact, read or attempt to read their “communications” while they were in transit is that Plaintiffs used the correct “buzz words” in the FAC, such as “in real time,” “while in transit,” “simultaneously” and “second duplicate set.” [*Id.* at 25:3-4.] Not only is that the antithesis of the federal pleading standard and the tact that courts have rejected time and time again, but it also internally inconsistent.[16] If, as Plaintiffs claim, Google Analytics caused their browser to “send[] a second, duplicative” transmission of their communication to Google’s “servers,” [Dkt. No. 16, ¶ 36], then there was no “interception.” Whether Plaintiffs knew it or not, Google’s servers, as Plaintiffs admit, were the intended recipient of that “second transmission” and, as such, were not reading or attempting to read Plaintiffs’ communications “while in-transit.” Plaintiffs must allege “specific facts that

[15] Plaintiffs correctly acknowledge that the first clause of § 631(a) is inapplicable here because it does not apply to the internet. [Dkt. No. 21, 20:15-16.]

[16] *See, e.g., Cody v. Ring LLC*, No. 23-CV-00562-AMO, 2024 WL 735667, at *5 (N.D. Cal. Feb. 22, 2024) (dismissing claim under second clause of CIPA § 631(a) because the plaintiff’s “conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations.”); *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *9 C.D. Cal. Apr. 2, 2024) (dismissing claim under second clause of CIPA § 631(a) because, as it related to the “in transit” requirement, the plaintiff’s “allegations merely restate the statutory language, which is insufficient under the plausibility standard”).)





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

make it plausible [Google] is intercepting [their] data in transit." *Rodriguez*, 2022 WL 214552, at *2. They have failed to do so. *Garcia v. Cnty. of Los Angeles*, No. CV 15-03651 AG (KSX), 2017 WL 11635080, at *2 (C.D. Cal. Apr. 24, 2017) (dismissing complaint because it "consists of nothing more than conclusory legal buzz words—devoid of any factual support").

Plaintiffs also argue that they sufficiently alleged that Google violated clause three of § 631(a) because they assert that Google "used the unlawfully disclosed sensitive information to (1) maintain and improve Google's own services and technologies, (2) develop new analytics and marketing services, and (3) measure the effectiveness of advertising on Google's and its partners' websites and applications." [Dkt. No. 21, 21:8-11.] The problem with Plaintiffs' argument is that "a finding of a violation under clause three is contingent upon a finding of a violation of either clause one or two," *Rodriguez v. Ford Motor Co.*, No. 323CV00598RBMJLB, 2024 WL 1223485, at *14 (S.D. Cal. Mar. 21, 2024), and Plaintiffs have not alleged a violation of clause one or two. Plaintiffs, therefore, have failed to allege that Google violated any clause of § 631(a), resulting in their having failed to allege that Sussex aided and abetted any such violation.

**E. Plaintiffs Have Failed to Allege a Violation of CIPA § 632.**

Despite their arguments in the Opposition, Plaintiffs did not allege in their FAC that Sussex was directly liable for violating § 632; instead, they asserted that Sussex was liable for aiding and abetting Google in violating § 632. [Dkt. No. 16, ¶ 158 ("Defendant permitted, encouraged, and gave substantial assistance to Google to eavesdrop upon and/or record Psychology Today website users' confidential communications through an electronic amplifying or recording device. By so doing, Defendant violated § 632.").] Only now, after Sussex demonstrated in its Motion to Dismiss, that unlike § 631(a), § 632 does not provide for aiding and abetting liability do Plaintiffs argue that Sussex is directly liable under § 632. But, just as Sussex is limited to the allegations in Plaintiffs' FAC, Plaintiffs are, too. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-3517 SI, 2011 WL 4345316, at *1 (N.D. Cal. Sept. 15, 2011) (noting that, at the motion to dismiss phase, the parties and the court are "limited to the pleadings"). Plaintiffs cannot simply change theories of liability because the one they alleged is not viable.

But even if the Court were to consider Plaintiffs' direct liability claim under § 632, it still should be dismissed. For communications to be protected by § 632, they must not only be content, but they also must be confidential. *Weiner v. ARS Nat. Servs., Inc*., 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) (stating that an element of the claim is "a 'confidential' communication"). As explained above, the information allegedly collected by Google here was neither. Plaintiffs' § 632 claim must be dismissed.

**F. <u>Plaintiffs Have Failed to Allege a Constitutional Invasion of Privacy Claim.</u>**

Plaintiffs' sole argument in support of their Constitutional invasion of privacy claim is based on their incorrect assumption that the Browsing Data that Google collected somehow constituted "medical information." [Dkt. No. 21, § III(D).] As explained above, it does not.

But even beyond that, Plaintiffs have failed to state an actionable invasion of privacy claim because Plaintiffs have not shown that Sussex's alleged conduct was "highly offensive" sufficient to constitute a "serious invasion of privacy." *Cousin*, 681 F. Supp. 3d at 1125–26 (stating that "'the intrusion [must be] so serious as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive'").[17] Plaintiffs have not alleged any "harm," much less "serious harm," arising out of Sussex's complained-of conduct. In fact, they allege no repercussions from Sussex's conduct at all. Further, the "setting of the intrusion" belies any "highly offensive" conduct, as sharing of browsing history on a public-facing website historically cannot form the basis of an invasion of privacy claim. *See id.* at 1126 ("[I]t is clear that . . . disclosing a user' s browsing history does not plausibly reach the level of 'highly offensive' conduct[.]") (collecting cases). And Sussex's motives were not nefarious. According to Plaintiffs, Sussex was trying to make its own marketing more effective. Their claim must be dismissed.[18]

---

[17] "Highly offensive" conduct turns on "all-inclusive factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, …." *Id*. at 1126 (internal quotations omitted).

[18] Plaintiffs' claim for monetary damages is impermissible because "'California's 'constitutional provision protecting the right of privacy…does not confer on a litigant a private right of action for damages." *Cousin*, 681 F. Supp. 3d at 1127–28 (citation omitted).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## III. CONCLUSION

For the reasons discussed above, Defendant Sussex Publishers, Inc. respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiffs' FAC in its entirety and with prejudice.

Dated: September 16, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
Matthew D. Pearson
*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA