ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

DON BIVENS (*pro hac vice*)
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

*Attorneys for Plaintiffs*
R,C, and D.G., Individuals

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>SUSSEX PUBLISHERS, LLC; and DOES 1 through 100, inclusive,<br><br>　　　　　　　Defendants. | Case No:  3:24-cv-02609-JSC<br><br>Assigned to: Hon. Jacqueline Scott Corley<br><br><u>CLASS ACTION</u><br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>**<u>DEMAND FOR JURY TRIAL</u>**<br><br>Complaint Filed:  November 30, 2023<br>FAC Filed:         August 12, 2024 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## CLASS ACTION COMPLAINT

Plaintiffs R.C. and D.G. ("Plaintiffs"), on behalf of themselves and a class of similarly situated individuals as defined below, and based on personal knowledge where applicable, information and belief, and the investigation by counsel, allege the following against Defendant Sussex Publishers, LLC.[1]

## INTRODUCTION

1.    This class action lawsuit arises out of Defendant's policy and practice of (1) disclosing to and sharing with third parties, without users' knowledge, authorization, or consent, private and personal information, including sensitive medical information, that Defendant's website, www.psychologytoday.com, has collected while users navigate its online platform and (2) aiding and abetting Google's (and possibly other third party interceptors') unauthorized intercepting, recording, collection and use of California residents' highly personal and confidential data and communications.

2.    Sussex Publishers, LLC is a private media company that owns Psychology Today magazine and the www.psychologytoday.com website.  The Psychology Today platforms focus on behavioral science with a stated mission to cover all aspects of human behavior so as to help people better manage their own health and wellness, adjust their mindset, and manage a range of mental health and relationship concerns.  The Psychology Today website features therapy and health professional directories as well as hundreds of blogs and articles written by a variety of psychologists, psychiatrists, social workers, medical doctors, anthropologists, sociologists, and science journalists.

3.    Psychology Today content and its therapist directories are found in more than 20 countries worldwide, making it one of the most widely used directories to find a mental health professional.  The online directory provides free access to a vast network of hundreds of thousands

---

[1] R.C. and D.G. file their claims under pseudonyms to protect against further disclosure of the private and potentially stigmatizing nature of the mental health conditions for which they sought treatment through Defendant's online platform.  Revealing Plaintiffs' true identities would substantially cause the exact harm that they are seeking to remedy through the filing of this suit, i.e., the disclosure of their personal and sensitive health information.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   of professionals and allows users to sort providers by location, insurance accepted, the type of

2   therapy or treatment offered, symptoms or conditions treated, mental health specialty(ies), price,

3   and many other preferred characteristics, including age, ethnicity, sexuality, language, and faith.

4          4.      The Psychology Today website also allows and provides a means (i.e., a button or

5   link) for consumers to contact therapists directly through the website, via either telephone or email.

6   Additionally, if online versus in-person therapy is chosen, Psychology Today facilitates the

7   teletherapy appointment by (1) sending an email with the appointment date and time and a link to

8   check-in and (2) hosting the online session on its own website or on the Psychology Today

9   "Sessions by Psychology Today!" mobile app.

10         5.      Plaintiffs and Class members who visited the Psychology Today website expected

11  that their personal and sensitive medical information – including without limitation (a) their name,

12  email address, telephone number, age and insurance information, (b) their search parameters

13  detailing their mental health symptoms, concerns and conditions, (c) their gender, ethnicity,

14  sexuality, and faith preferences regarding mental health providers, and (d) the type of therapy or

15  category of treatment they sought – would be and remain private and confidential.  Plaintiffs and

16  Class members had a reasonable expectation that their interactions with and communications

17  through Psychology Today's website, which contained personal and/or uniquely identifying

18  information, would not be shared with *any* third parties, let alone to *undisclosed* third parties.

19         6.      Unbeknownst to individuals using the Psychology Today online platform, Google

20  Analytics code is embedded into the Psychology Today website.  Through that embedded tracking

21  technology, while Plaintiffs and Class members were and are interacting with the Psychology

22  Today website, Google, concurrently and in real time, was and is able to and did and does intercept,

23  eavesdrop upon, and collect Psychology Today website users' sensitive information, including

24  their individually identifiable and protected mental health information.

25         7.      Stated another way, while Plaintiffs and Class Members are using their various

26  electronic devices to enter or select filters reflecting their personal identifying and sensitive mental

27  health information, Google simultaneously is intercepting and receiving their private data in real

28  time, while it is in transit, by using the Google Analytics code that is embedded on the Psychology

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Today website.  The Google Analytics technology surreptitiously duplicates users' communications with Psychology Today and contemporaneously sends those copies as second transmissions to Google's servers, all while concurrently communicating with the host website Psychology Today.  All of this happens without the knowledge of Psychology Today website users, and certainly without any choice, authorization, or consent.

8.  Moreover, because Defendant failed to turn on the IP anonymization feature on its Psychology Today website during the period that Google Analytics 3 (Universal Analytics) was embedded on its site, Google was able to identify, from the unauthorized intercepted data, individual Psychology Today website users' IP addresses[2] and to access and obtain their other uniquely identifying information, including sensitive medical information.[3]

9.  Plaintiffs are informed and believe and on that ground allege that Google views, reads, and uses, and/or has the capability to use, the information shared by the Psychology Today website not only to provide analytics services, but also to maintain and improve Google's own services, develop new analytics and marketing services, and measure the effectiveness of advertising on Google's and its partners' sites and applications.  Plaintiffs and Class members did not consent to that undisclosed and inappropriate access, viewing, and use of their private information, including individually identifiable medical information.

10.  Defendant's unauthorized disclosure of Plaintiffs' and Class members' personal identifying information and private and sensitive mental health information, all without adequate notification to Plaintiffs and Class members regarding that data sharing, is an invasion of Plaintiffs' and Class members' privacy.  It also violates multiple laws, including the California

---

[2] IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as individually identifying information.  *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

[3] Google Analytics 3 (Universal Analytics) collected IP addresses by default.  On information and belief, at some point during the class period, the Google Analytics program embedded on Defendant's website changed from Google Analytics 3 (Universal Analytics) to Google Analytics 4 (GA4).  GA4 automatically anonymizes IP addresses.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.* ("CMIA"); the

2    California Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.* ("CCPA"); the California

3    Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); and the right to privacy under

4    the Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental

5    rights of all Californians.

6                                            **PARTIES**

7        **A.    Plaintiff R.C.**

8        11.    Plaintiff R.C. is a natural person and a citizen and resident of California.

9        12.    On more than one occasion during the 12-month period preceding the original filing

10   of the Complaint, Plaintiff R.C. accessed Defendant's online platform and used the therapist

11   directory and filters to search for a mental health professional.  While navigating the Psychology

12   Today website, Plaintiff R.C. provided personal identifying and mental health information by

13   selecting specific filters to narrow his search.  Those filters, which reflected his symptoms and the

14   type of therapy he was seeking, included anxiety, relationship issues, and emotionally focused

15   therapy (EFT).  Plaintiff R.C. also selected options that disclosed that he was searching for a male

16   therapist, near the 90211 zip code, who accepted Blue Shield insurance.

17       13.    After selecting various filters and disclosing the bases for his treatment needs,

18   Plaintiff R.C. received and reviewed a list of mental health providers.  To continue his search on

19   the Psychology Today website, he read various therapists' biographies, viewed articles, blogs

20   and/or videos related to the therapists' specialties and/or the services they offered, and sent email

21   communications to a number of therapists directly through the Psychology Today website.

22       14.    When emailing potential therapists through the website, Plaintiff R.C. was required

23   to fill in a form and enter his full name, email address, and telephone number.  Those email

24   communications also included personal and sensitive medical information, such as Plaintiff R.C.'s

25   date of birth or age, issues that he was presenting (anxiety), his mental health concerns (anxiety

26   and relationship issues), and the type of treatment or therapy that he was seeking (EFT).  For each

27   email that Plaintiff R.C. sent, Psychology Today then sent Plaintiff R.C. an email response that

28   included his full name and email address as well as a copy of his personal and confidential

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

communication to the therapist.

15.     On information and belief, as Plaintiff R.C. used the filters to select and identify his symptoms, the type of therapy he was seeking, and that he was searching for a male therapist near the 90211 zip code who accepted Blue Shield insurance, Google was able to and did intercept Plaintiff R.C.'s personal interactions with and communications through the Psychology Today website.  Those private communications related to his mental health conditions, the treatment he was seeking, and his provider preferences.  Through the Google Analytics tracking technology embedded in the Psychology Today website, Google was able to carry out that interception simultaneously as Plaintiff R.C. was transmitting his individually identifiable and sensitive mental health information to Psychology Today.

16.     When Plaintiff R.C. chose to seek help through the Psychology Today website, including utilizing its therapist directory and filter options and contacting mental health providers directly through the Psychology Today website, he did not consent to Google's interception, receipt or use of his personal, confidential and protected mental health information.  Further, he was unaware of and had no opportunity to opt out of Google's interception.

**B.     Plaintiff D.G.**

17.     Plaintiff D.G. is a natural person and a citizen and resident of California.

18.     Beginning in or around November 7, 2019, and continuing into 2023, Plaintiff D.G. would visit the Psychology Today website and use the therapist directory and filters to search for a mental health provider.  While navigating the Psychology Today website, Plaintiff D.G. provided personal information including but not limited to her name, email address, telephone number, city and zip code, insurance carrier information, mental health concerns, and therapist preferences.

19.     Specifically, during her most recent search for a mental health provider in April 2023, Plaintiff D.G. disclosed that she was seeking help for a family crisis involving her adult son. Using the provided filter options, Plaintiff D.G. selected a number of symptoms and issues indicating her mental health concerns and need for treatment. Those included the following filter options: addiction, ADHD, anxiety, autism, depression, drug abuse, marriage counseling, OCD, relationship issues, stress, substance abuse, suicidal ideation, and trauma/PTSD.

20.    Plaintiff D.G. also chose additional filters indicating (a) her Anthem medical insurance, (b) her preference for cognitive behavioral therapy (CBT) or family therapy, (c) with a female therapist (d) within a five mile radius of 91501, (e) who spoke English and (f) specialized in treating adults, and preferably (g) who was of Jewish faith.  From the list of results displayed, Plaintiff D.G. clicked on and reviewed the therapists' biographies.

21.    On numerous occasions, Plaintiff D.G. sent email communications to potential therapists directly through the Psychology Today website.  In order to do so, Plaintiff D.G. completed the required online form and entered her full name, her email address, and her telephone number.  Plaintiff D.G. also included a detailed message specifying her Anthem insurance and her preference to stay in-network, her patient status, the additional therapy she was seeking, and her reason for seeking that therapy.  For each of these email communications, Psychology Today sent Plaintiff D.G. a response that was addressed to her full name and email address and included a full copy of her private correspondence seeking mental health treatment.

22.    Plaintiff D.G. did not just email therapists directly through the Psychology Today website.  She also used the website for her online teletherapy sessions.  Shortly before a scheduled appointment, Plaintiff D.G. would receive an email from her therapist through Psychology Today specifying the date and time of her upcoming appointment.  The email also provided Plaintiff D.G. a link to check in for her appointment at https://sessions.psychologytoday.com/name-of-therapist and invited her to join her teletherapy session via the "Sessions by Psychology Today!" mobile app.  Plaintiff D.G. then was required to enter her name in the virtual waiting room in order to join the therapy session hosted online by Psychology Today.

23.    On information and belief, as Plaintiff D.G. used the filters to select and identify her symptoms, the type of therapy she was seeking, and that she was searching for a Jewish therapist near the 91501 zip code, Google was able, in real time through the Google Analytics tracking technology embedded in the Psychology Today website, to intercept Plaintiff D.G.'s personal interactions with and private communications through the Psychology Today website and did so.  Google was able to carry out that interception simultaneously as Plaintiff D.G. was transmitting her personal identifying and sensitive mental health information to Psychology

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    Today.

2        24.    When Plaintiff D.G. decided to use the Psychology Today website, including its

3    therapist directory and filter options, its telephone and email options, and its teletherapy session

4    services, she did not consent to Google's interception, receipt, or use of her personal, confidential,

5    and protected mental health information.  Further, she was unaware of and had no opportunity to

6    opt out of Google's interception.

7        **C.    Defendant Sussex Publishers, LLC and Psychology Today**

8        25.    Defendant Sussex Publishers, LLC is a limited liability company organized under

9    the laws of the State of Delaware with its principal place of business in New York.

10       26.    Defendant currently owns Psychology Today magazine, which was founded in

11   1967 to make psychology literature available to the general public.  The magazine has received

12   numerous awards for both editorial and design, and is published six times a year.

13       27.    Defendant also owns the [www.psychologytoday.com](www.psychologytoday.com) website, which publishes

14   content written by clinicians, experts, and researchers from across the field of behavior and

15   psychology.  In addition to a comprehensive Diagnosis Dictionary, the online platform includes a

16   directory that lists clinical professionals, psychiatrists, and treatment centers that provide mental

17   health services.  The providers who are registered on the Psychology Today website offer detailed

18   profiles and video introductions to demonstrate their expertise.  They are searchable by numerous

19   factors such as location, mental health conditions treated, and the type(s) of therapy they practice.

20       28.    Psychology Today also facilitates the provision of mental health services by listed

21   therapists by, among other things, (1) providing a button and link for consumers to contact

22   therapists directly through the Psychology Today website via telephone or email, (2) sending

23   consumers emails with copies of their private communications to therapists containing medical

24   information, (3) sending consumers emails with the dates and times of their scheduled

25   appointments and a Psychology Today website link to use to check in for their appointments, and

26   (4) hosting teletherapy sessions on the Psychology Today website or mobile app.

27       29.    Psychology Today's online content, its therapist directory, and its teletherapy

28   session services are available in 20 countries worldwide, including the United States.  Defendant

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    systematically and continuously does business in California and with California residents and

2    California mental healthcare providers.

3        30.    Defendant's Psychology Today website and Privacy Policy fail to put visitors on

4    notice of Defendant's use of Google Analytics tracking technology, Defendant's disclosure of

5    personally identifiable and sensitive medical information to unauthorized third parties, and

6    Defendant's decision to allow Google (and possibly other third-parties) to intercept, in real time

7    and while in transit, the transmission and dissemination of Plaintiffs' and other Class members'

8    personal and private information, including protected mental health information and other health

9    information.

10        31.    Upon information and belief, Plaintiffs allege that Google received, viewed, and

11    used Plaintiffs' and Class members' information not only to provide analytics services to

12    Defendant, but also for Google's other business purposes including but not limited to (1)

13    improving its own software, algorithms, and other technology and business activities and (2)

14    providing marketing services and offerings, such as creating customer profiles, custom audiences,

15    and targeted advertisements.

16    **D.    Doe Defendants**

17        32.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

18    DOES 1 through 100, inclusive, and therefore sue those defendants by those fictitious names.

19    Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

20    Plaintiffs are informed and believe and on that ground allege that each of the fictitiously-named

21    defendants is responsible in some manner for the occurrences alleged in this Complaint and that

22    Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

23        33.    Plaintiffs are informed and believe and on that ground allege that, at all relevant

24    times, each named Defendant and the Doe Defendants were the principals, agents, partners, joint

25    venturers, officers, directors, controlling shareholders, subsidiaries, affiliates, parent corporations,

26    successors in interest, and/or predecessors in interest of some or all of the other Defendants, were

27    engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such

28    other relationships to some or all of the other Defendants as to be liable for their conduct with

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   respect to the matters alleged below.  Plaintiffs are informed and believe and on that ground allege

2   that each Defendant acted pursuant to and within the scope of the relationships alleged above and

3   that each knew or should have known about and that each authorized, ratified, adopted, approved,

4   controlled, aided and abetted the conduct of all Defendants.

5   **JURISDICTION AND VENUE**

6        34.    This Court has subject matter jurisdiction over this action under the California

7   Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.*, the California

8   Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.*, the California Invasion of Privacy

9   Act, Cal. Penal Code §§ 631 and 632, and the California Constitution.

10        35.    This Court has personal jurisdiction over the parties because Defendant has

11   sufficient minimum contacts with this State in that it operates and markets its services throughout

12   this State, including working with patient-clients and mental health care providers in California.

13   Further, a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in

14   the State of California, including Plaintiffs' accessing the Psychology Today website, Google's

15   unauthorized intercepting and collecting of Plaintiffs' and Class members' private and sensitive

16   data from Defendant's website, and Google's use of that data for commercial purposes.  Plaintiffs'

17   rights were violated in the State of California, and those violations arose out of their contact with

18   Defendant from and within the State of California.

19        36.    Venue is proper in this Court because Defendant removed the action from Alameda

20   County Superior Court.  Venue was proper in that Court under Code of Civil Procedure §§ 395

21   and 395.5 and case law interpreting those sections, which provide that if a foreign business entity

22   fails to designate with the office of the California Secretary of State a principal place of business

23   in California, it is subject to being sued in any county that a plaintiff desires.  On information and

24   belief, Defendant Sussex Publishers, LLC is a foreign business entity and had failed to designate

25   a principal place of business in California with the office of the California Secretary of State as of

26   the date on which the Complaint in this action originally was filed.

27

28

**FACTUAL ALLEGATIONS COMMON TO THE CLASS**

**A.     Google's Website Tracking Technology**

37.     Google dominates online search.  One of Google's most lucrative lines of business is its advertising and analytics services.  Google provides a number of tracking tools, including Google Analytics, which are used to collect data from websites and mobile applications into which the tools are embedded and integrated.

38.     In 2005, Google launched the initial version of Google Analytics, which served as a tool for website traffic analysis.  In the years that followed, Google introduced various other technologies with improved tracking functionality.  Examples include Google Analytics Synchronous code and Google Analytics Asynchronous code, which allowed webpages to track commerce transactions with improved data collection and accuracy.  Google continues to update its analytics platform with the launch of additional tracking technologies, including Universal Analytics and Google Analytics 4, both of which provide more in-depth information about users' behavior.

39.     Google markets Google Analytics as a platform that offers "a complete understanding of your customers across devices and platforms" to "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data."[4]  Google Analytics collects data from a website or application to create shareable reports that provide insights into a business.  It is designed to work together with other Google solutions to provide a company with a complete understanding of its marketing efforts and to enhance performance.

40.     In order to get that benefit, a website like Psychology Today adds or imbeds a small piece of JavaScript measurement code into each page of its site.  When a user accesses a website hosting Google Analytics, Google's code surreptitiously directs the user's browser to duplicate the communication with the host website and concurrently send that copied message to Google's

---

[4]  *Analytics*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/ (last visited October 5, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

servers.  This second, secret transmission contains the original GET request sent to the host website.[5]  It also contains additional data that Google Analytics is configured to collect.

41.    In essence, Google Analytics code intercepts a user's interactions in real-time as the user navigates the page.  That includes intercepting any information that the user may input and the links that the user clicked.  Google Analytics contemporaneously sends a second, duplicate set of transmissions to Google's servers.  Those copied transmissions are initiated by Google Analytics code and are concurrent with the communications with the host website, enabling Google instantaneously to collect and view the same information that website users are sharing with the host.

42.    The Google Analytics measurement code also collects information from the browser, such as the language setting, the type of browser and the device and operating system on which the browser is running.  It even can collect and record the "traffic source" – which is what brought the user to the site in the first place – such as a search engine, an advertisement on which the user clicked, or an email marketing campaign.[6]

43.    All the information collected by the Google Analytics JavaScript code, while it also is in transit to the host website, is sent simultaneously to Google for processing.  Once Google Analytics receives, views, reads, and processes the raw user data, which includes personal and sensitive medical information, it aggregates and organizes the data based on particular criteria. The criteria can be customized by applying filters.

44.    After the data has been viewed, processed, and subsequently stored in the Google database, Google uses the data to generate reports to help analyze the data collected.  Those reports include reports on acquisition (e.g., information about where the traffic originated and the methods by which users arrived at a site), engagement (what web pages and app screens a user visited), and

---

[5] A GET request is a way to retrieve data from a server using the Hypertext Transfer Protocol (HTTP).

[6] *How Google Analytics Works*, Google Analytics Help, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=12156336,12153943,2986333,&sjid=478430351580570002-NA&visit_id=638186454308763581-3109655727&rd=1 (last visited October 5, 2023).

demographics (a user's age, location, language, gender, and interests expressed when browsing online and engaging in purchase activities).

45.    In addition to accessing and using the data collected from website users to provide its services, Google also uses the information shared by sites like Psychology Today to maintain and improve Google's own services, develop new services, measure the effectiveness of its advertising, and personalize content and ads that one sees on Google's and its partners' sites and applications.

**B.    Defendant's Use of Google Analytics on the Psychology Today Website**

46.    According to the National Alliance on Mental Health and the Centers for Disease Control, one in five adults in the United States is affected by mental illness each year.  Equivalent to more than 52 million Americans, 55% of those affected adults receive no treatment.  While cost is one of the main reasons for the lack of treatment, it also is challenging to find a mental health provider who both specializes in a specific area of concern and provides the right type of treatment for the affected individual.

47.    Psychology Today claims that it is the world's largest mental health and behavioral science destination online and touts the motto "Here to Help."  Although its articles and blogs are not peer reviewed, Psychology Today publishes content written by clinicians, experts, and researchers from across the fields of psychology and behavior.  The website also includes a "Diagnosis Dictionary," which is a comprehensive guide to diagnosable conditions; a section for commonly used and need-to-know psychology basics; a full overview of therapy types; and a content center dedicated to numerous subjects ranging from ADHD to parenting.[7]

48.    In addition to providing behavioral science content, the Psychology Today website also offers a free online directory that lists clinical professionals, psychiatrists, treatment centers, and support groups providing mental health services in more than 20 countries.  Launched in 2003, the searchable directory connects consumers with licensed clinicians.  Under the "Get Help" link,

---

[7] *About Psychology Today*, Psychology Today, https://psychologytoday.com/us/docs/about-psychology-today (last visited October 5, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

website users can specify the type of help they are seeking, such as mental health (which encompasses listed conditions such as addiction, anxiety, depression, and eating disorders), personality, personal growth, relationships, and family life.

49.     Alternatively, website users can click and follow the "Find a Therapist" link and search for a provider by city or zip code.  After a location is chosen, the search for a mental health provider can be narrowed further by specifying a user's mental health concerns, insurance provider, gender preference, type of therapy sought, age range treated, price, and many other preferences. Some of those filters and preferences shared by a user are, by their nature, very personal and confidential.

50.     For example, the list of mental health concerns that a user can specify and select includes but is not limited to addiction, adoption, anger management, behavioral issues, bipolar disorder, borderline personality, cancer,  chronic illness/pain, dementia, domestic abuse, eating disorders, infertility, marriage counseling, medication management, obesity, pregnancy, relationship issues, sex therapy, stress, substance abuse, suicidal ideation, trauma and PTSD, and many other medical or mental health issues.  A user also can share and specify the type of therapy that he or she is seeking, which can include applied behavioral analysis (ABA), brainspotting, cognitive processing (CPT), couples counseling, dialectical behavior (DBT), experiential therapy, family therapy, hypnotherapy, intervention, psychological testing and evaluation, rational emotive behavior (REBT), trauma therapy, and many more categories of treatment.

51.     After sharing personal and sensitive medical information on the website, a user's search yields a list of potential therapists, each of whom offers a detailed profile biography and video introduction to demonstrate his or her expertise.  The Psychology Today directory also provides contact information for each registered therapist with an option to call or email the therapist directly through the Psychology Today website.  *See* Figure 1.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**Figure 1:**



52.    To contact a therapist, users can click a telephone number or telephone icon to place a call or, alternatively, they can click an "Email me" button that pops up a browser window with a fillable form.  *See* Figure 2.  Users must enter and provide their name, email address, telephone number, subject, and a message explaining who they are and what services they are seeking.

**Figure 2:**



53. For email communications sent directly through its website, Psychology Today receives the email and then sends users an email response that is addressed to the user's full name and email address and includes a complete copy of the user's private correspondence to the therapist for the user's records.

54. In addition to facilitating communications with therapists who are listed on its website, Psychology Today also assists users with their mental health needs by hosting online teletherapy sessions on the Psychology Today website and mobile app. Before a scheduled appointment, a therapist will send an email through Psychology Today to the user detailing the date and time of the user's upcoming appointment. The email also will provide the user with a link to check in for the online appointment at https://sessions.psychologytoday.com/name-of-therapist. Additionally, the email will invite the user to join the teletherapy session via the "Sessions by Psychology Today!" mobile app.

55. Once a user checks in for the teletherapy appointment and enters the virtual waiting room, the user must provide his or her name in order to join the therapy session hosted online by Psychology Today. *See* Figure 3. The user also must grant access to Sessions by Psychology Today for the use of the user's camera and microphone to conduct the online appointment.

**Figure 3:**



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

56.     On information and belief, while users are navigating the Psychology Today website and online platform, Google Analytics, in real-time, surreptitiously is duplicating and collecting users' sensitive information, including users' private personal and medical information, without the users' knowledge or consent.  In addition to IP addresses[8], that personal information includes but is not limited to (1) the user's specific medical or mental health symptoms and concerns giving rise to the need for therapy; (2) the type of care or treatment that the user is requesting; (3) information concerning the user's gender, ethnicity, and faith preferences regarding the therapist; (4) the city or zip code where the user is seeking therapy sessions; (5) the user's health insurance provider; and (6) information regarding the mental health providers viewed and/or contacted if that was done directly through the website.

57.     For example, the Psychology Today website automatically captures and, through the website tracking technology, contemporaneously transmits to Google the following personal information as it is being entered and/or selected by a user, all without that user's knowledge, authorization, or consent: that the user clicked on the profile page of Dr. X, a male psychiatrist specializing in transgender issues, who accepts LGBTQ+ teenage patients; that the price of the therapy is high (more than $130); and that the practice is located near the 90025 zip code.  If the user clicks on the telephone number or email buttons for Dr. X, the user's clicks and attempts to communicate with Dr. X also are shared with Google.  *See* Figures 4-6.

---

[8]  Before July 1, 2023, Google Analytics 3 (Universal Analytics) collected IP addresses by default, and used them to help with geolocation data to determine a user's country or city.  After that date, Universal Analytics no longer processed new data, and users were required to rely on Google Analytics 4 (GA4) as their platform for analytics.  According to Google, GA4 does not collect or store IP addresses.  For that reason, website images captured more recently and used as figures may not contain IP addresses.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Figure 4:**



**Figure 5:**

**Figure 6:**



58.    Similarly, when a website user searches the Psychology Today therapist directory, the filters selected by the user to narrow his or her search for a mental health provider are shared instantaneously with Google, even before the user hits the "Show # Therapists" button. Importantly, the filter options chosen by the user and shared with Google not only reflect that a particular button was clicked or box was checked, but also disclose to Google, in real-time, the actual content of that button click – namely the users' sensitive medical information.   That information very clearly includes the user's mental health symptoms, concerns, and need for and type of treatment sought.   *See* Figures 7-12, reflecting Google Analytics capturing a user's interactions and medical information in real-time.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**Figure 7**:



**Figure 8**:



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

**Figure 9**:

2



3

4

5

6

7

8

9

10

11

12

13

14

**Figure 10**:

15

16



17

18

19

20

21

22

23

24

25

26

27

28

**Figure 11**:



**Figure 12**:



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

59.    Once a user has selected the necessary and preferred filters and clicks the "Show #
Therapists" button, Google Analytics instantly receives that information and produces a log/report
with the number of filters applied, the specification code for each filter chosen with the primary
filter identified by name/title, and the number of results displayed.  *See* Figure 12 above.  Hitting
that button also results in a descriptive URL being shown in the user's browser, which contains at
least one personal and sensitive search term related to the user's mental health condition or
treatment.  That same descriptive URL is captured by and disclosed to Google and is reflected in
the Google Analytics report.  *See* Figure 13.[9]

**Figure 13**:



60.    Additionally, the information submitted by users through the search bar on the
Psychology Today homepage, as well as the subjects searched (see Figure 14) and the names of
the articles that users view (see Figure 15), ***are shared with Google simultaneously while the user***
***is navigating the Psychology Today website.***

---

[9]  Figures 7 through 13 were captured from the Psychology Today website utilizing Google
Analytics 4 between October 23 and 27, 2024.

1  **Figure 14**:

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
        v: 1
       _v: j101
        a: 486144573
        t: pageview
       _s: 1
       dl: https://www.psychologytoday.com/us/archive?search=anorexia&op
           =Search
       ul: en-us
       de: UTF-8
       dt: Search | Psychology Today
       sd: 24-bit
       sr: 1920x1080
       vp: 1903x961
       je: 0
       _u: QACAAAABAAAAAC~
      jid: 328568436
     gjid: 1885013502
      cid: 1272014801.1689159218
      tid: UA-2018278-8
     _gid: 956588897.1689159219
       _r: 1
```

**Figure 15**:

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
        v: 1
       _v: j101
        a: 185930079
        t: pageview
       _s: 1
       dl: https://www.psychologytoday.com/intl/blog/meaningfull/20
           2306/eating-disorders-treatment-a-new-study-offers-promi
           se
       ul: en-us
       de: UTF-8
       dt: Eating Disorders Treatment: A New Study Offers Promise |
           Psychology Today
       sd: 24-bit
       sr: 1536x864
       vp: 1019x710
       je: 0
       _u: YADAAAABAAAAAC~
      jid: 604686905
     gjid: 561808448
      cid: 2137713603.1689772514
      tid: UA-2018278-8
```

61.    As described above, Google Analytics captures and duplicates website user information in real-time as the user is interacting with the Psychology Today website. The

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103

Tel. 415.543.1305 | Fax 415.543.7861

captured and intercepted information, which includes personal and sensitive medical information, is sent to Google simultaneously as users communicate with Psychology Today.  To demonstrate that instantaneous and concurrent transfer of information, Plaintiffs prepared a video recording capturing how Google Analytics works as a user interacts with the Psychology Today website.[10]

62.    Google recognized the privacy risks inherent in its Analytics services.  As one way to mitigate those risks, Google offered website owners an opt-in feature that automatically anonymized visitors' IP addresses.  According to Google, this feature was designed to help site owners comply with their own privacy policies and governing law.[11]  When enabled by website owners, the anonymization feature automatically added a parameter to communications between website visitors' computers and Google's Analytics server.  That parameter appeared on the website's back-end code as the "aip" parameter.  Figure 16 below is an example of how the "aip" parameter for Universal Analytics was displayed if the anonymization feature was turned on.

**Figure 16**:



---

[10]  The video recording was prepared on or about October 27, 2024.  A USB drive containing the video recording will be concurrently filed with the Court and provided to Defendant.

[11]  *IP masking in Universal Analytics*, Google, https://support.google.com/analytics/answer/2763052?hl=en (accessed Nov. 10, 2023).  See also footnote3 3 and 9 above.

63.    When the "aip" parameter does not appear, IP addresses are not anonymized.  That allows and enables Google to identify users' IP addresses and track their online actions.

64.    As shown in Figure 17 below, Psychology Today did not enable or utilize Google's IP anonymization feature before the Complaint was filed.  The "aip" parameter was completely missing, indicating that IP anonymization was not enabled.  As a result, before the introduction of GA4, Google Analytics could see and collect Psychology Today website users' IP addresses along with information related to their mental or physical conditions, diagnosis, and treatment.

**Figure 17**:



```
▼Query String Parameters    view source    view decoded
    v: 1
    _v: j101
    a: 834473933
    t: pageview
    _s: 1
    dl: https%3A%2F%2Fwww.psychologytoday.com%2Fus
    ul: he-il
    de: UTF-8
    dt: Psychology%20Today%3A%20Health%2C%20Help%2C%20Happiness%20%2B%20Find%2
    0a%20Therapist
    sd: 24-bit
    sr: 1920x1080
    vp: 1132x929
    je: 0
    _u: QACAAAABAAAAAC~
    jid: 1607475657
    gjid: 1093395552
    cid: 1667106823.1687771230
    tid: UA-2018278-8
    _gid: 1041627434.1689080841
    _r: 1
    _slc: 1
    gtm: 45He37a0n71NM5PKS
    cg1: ContentWeb
    cg2: Home%20Page
    cd4: US
```

65.    Thus, before the introduction of GA4, while Google Analytics offered website owners like Defendant an opt-in IP anonymization feature, Psychology Today did not enable that

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

anonymization feature on its website.  By using the Google Analytics tool without the anonymized IP feature enabled, Psychology Today was disclosing to and sharing with Google its users' IP addresses.   IP addresses are individually identifiable information and are subject to HIPAA protection.[12]

66.    Defendant's Psychology Today website also was and is disclosing to Google private and personal medical information regarding its users' specific mental-health symptoms, conditions, and concerns, and their treatment for those conditions and concerns, all without the knowledge of the individual, and certainly without any choice or consent.

67.    In its Privacy Policy linked at the very bottom of its web page, Psychology Today states that it will collect "personally identifiable information," such as names and email addresses, when visitors use the website to perform certain tasks.  Those tasks can include posting or commenting on an article, calling or emailing a professional, filling out a self-assessment or taking a self-test, subscribing, purchasing a product, registering to be listed in the directory, and opening an email communication from Defendant.[13]  But Defendant fails to disclose that users' private and sensitive medical information, including users' mental health conditions and concerns, therapy and treatment preferences, and other personally identifiable information are captured and saved simply as a result of the users viewing the website and searching the free online therapist directory.

68.    The Psychology Today Privacy Policy also asserts that Defendant maintains logs of site usage "for purposes such as to evaluate users' interest level in areas of the website, which and how many pages they look at, how long they stay on the website, and what web browsers are used."  ***But the Privacy Policy falsely claims that that data is "tracked in aggregate form, not at an individual user level, and is not uniquely identifying."***

69.    By failing to turn on the IP anonymization feature on its website while Universal Analytics was running on its website, Psychology Today automatically captured personal and

---

[12]  *See* 45 C.F.R. § 164.514(b)(2)(i)(O).

[13]   *Privacy Policy*, Psychology Today, https://psychologytoday.com/us/docs/privacy-policy (last visited October 6, 2023).

1  uniquely identifying information and simultaneously shared that information with Google in a

2  form that was not anonymous.[14]

3      70.    Psychology Today further claims that it uses information collected, and shares that

4  information with third parties, only when needed to provide or deliver the products or services that

5  users request on the website.

6      71.    But Psychology Today goes far beyond sharing information necessary to provide

7  or deliver its products and services.  Through the tracking technology embedded on its website,

8  Psychology Today simultaneously transmits and discloses personal and protected mental health

9  information to Google.  Nowhere on its website does Psychology Today disclose that it is using

10  Google Analytics, which is completely unrelated to Defendant's offered products and services and

11  is completely unrelated to anything that Defendant needs to do in order to offer or provide those

12  products or services.  Defendant also fails to identify Google, or any other third-party interceptor,

13  as a recipient of users' private communications and confidential mental health information.

14      72.    Further, although the Privacy Policy discloses that Defendant uses third-party

15  advertising companies to serve ads when users visit the Psychology Today website, ***it does not***

16  ***disclose that sensitive and individually identifiable medical information is being shared with***

17  ***Google to improve Google's own analytics services, software, algorithms and other technology.***

18  Upon information and belief, the information intercepted and duplicated by Google, while it was

19  in transit to Psychology Today, also was and is used by Google's advertising offerings to create

20  targeted advertisements and customer profiles, all to enhance Google advertising features and

21  unrelated to any products or services offered by Psychology Today.

22      **C.    Plaintiffs and Class Members Did Not Consent to Defendant's Disclosure of**
          **Their Private Information and Confidential Communications; They Have a**
23        **Reasonable Expectation of Privacy in Their User Data.**

24      73.    Psychology Today did not and does not ask its website visitors, including Plaintiffs,

25  whether they consented or consent to having the contents of their private interactions and

26

27  _____

   [14] An IP address is one way that Google can identify the person whose sensitive data and
28  information Google is intercepting.  But it is not the only way.  Google also can identify persons
   via their browsers, device identifiers and cookies, among other things.

---

SECOND AMENDED CLASS ACTION COMPLAINT        28          CASE NO. 3:24-cv-02609-JSC

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

communications containing their personal and sensitive mental-health information disclosed to and used by third parties like Google. Further, Google's analytics software is incorporated seamlessly – and, to users, invisibly – in the background. That seamless and invisible incorporation gave and gives Plaintiffs and Class members no way of knowing that Google was and is intercepting their individually identifiable and protected health information. The intercepted information included and includes their IP addresses; their medical conditions and concerns; their search parameters; their preferences regarding a mental health professional; and the type of treatment they are seeking.

74. Although Psychology Today's Privacy Policy mentions the use of cookies, which it claims cannot be used to find a user's name, email address, or anything uniquely identifying, that minimal mention does not put Psychology Today website or app users on notice of Defendant's use of invasive tracking technology like Google Analytics.

75. Unlike first-party cookies, Google Analytics (1) simultaneously communicates information to an external server while a user navigates a website; (2) tracks users across devices, meaning that a user's actions on multiple devices all will be included in the information stored regarding that user; (3) is not easily disabled by users; and/or (4) creates a record of all of the information that users provide to and/or receive from the website. Plaintiffs and Class members could not consent or be deemed to have consented to Google's conduct when they were unaware that their confidential communications would be intercepted, stored, read, and used by Google or any other undisclosed third party.

76. Plaintiffs and Class members had and have a reasonable expectation of privacy in their confidential information and communications, including *and especially* information and communications related to (a) their medical symptoms, concerns and conditions, (b) their gender, ethnicity, and faith preferences regarding mental health providers, (c) the type of therapy or treatment that they are seeking, (d) their health insurance provider(s), (e) their sensitive and private communications with potential therapists, and (f) the details of their teletherapy appointments. All of that is private, sensitive, and personal information related to Plaintiffs' and Class members' mental or physical conditions, diagnoses, and treatment.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

77.    Privacy studies, such as those by *Pew Research Center*, show that a majority of Americans are concerned about how data is collected about them.[15]  Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for a consumer's or individual's affirmative consent before a company collects and shares data regarding that consumer or other individual.

78.    Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy.  Further, 64% of Americans believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to obtain a consumer's permission before sharing the consumers' information.  To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[16]

79.    Users act in a manner that is consistent with those preferences.  During a rollout of new iPhone operating software, for example, 94% of U.S. users who were asked for clear, affirmative consent before allowing companies to track them chose ***not*** to share their data.[17]

80.    The privacy expectation is even greater when personal and sensitive medical information is at stake.  Patient healthcare data in the United States is protected by federal law under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6, and its implementing regulations, which are promulgated by the Department of Health and Human Services ("HHS").

81.    In December 2022, HHS issued a bulletin to "highlight the obligations" of health

---

[15]  Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

[16]  Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

[17]  *See* https://www.wired.co.uk/article/apple-ios14-facebook ("According to Flurry Analytics, 85 per cent of worldwide users clicked 'ask app not to track' when prompted, ***with the proportion rising to 94 per cent in the US.***").

care providers under the HIPAA Privacy Rule "when using online tracking technologies" (such as those used by Psychology Today) that "collect and analyze information about how internet users interact with regulated entities' websites or mobile applications."[18]  **HHS affirmed that health care providers violate HIPAA when they use tracking technologies that disclose an individual's identifiable information even if no treatment information is included** *and even if the individual does not have a relationship with the health care provider*:

> How do the HIPAA Rules apply to regulated entities' use of tracking technologies?
>
> Regulated entities disclose a variety of information to tracking technology vendors through tracking technologies placed on a regulated entity's website or mobile app, including individually identifiable health information (IIHI) that the individual provides when they use regulated entities' websites or mobile apps. This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code. ***All such IIHI collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services. This is because, when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.***

[Emphasis added.]

**82.**    The HHS bulletin expressly provided that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." ***Defendant's actions clearly violate HIPAA Rules.***

83.    In its guidance for Marketing, the HHS also provided that written authorization is required before a use or disclosure of protected health information can be made for marketing:

> The HIPAA Privacy Rule gives individuals important controls over whether and how their protected health information is used and disclosed for marketing purposes.  With limited exceptions, the Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for

---

[18] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

marketing…***Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes.***[19]

84.    Under federal law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or a household member of a patient for marketing purposes without the patient's express written authorization.[20]  California law provides for similar protections and safeguards.

85.    Due to the highly personal and sensitive nature of the information that is input onto and shared on the Psychology Today website, Plaintiffs and Class members who used the Psychology Today online platform reasonably believed that their interactions and private communications with Psychology Today were and are confidential and would not be recorded, transmitted to third parties, or monitored for later use.  Defendant's unauthorized disclosure and sharing of highly personal information and Google's surreptitious interception, storage, reading, and use of Plaintiffs' and Class members' private medical information violate Plaintiffs' and Class members' privacy interests and rights.

     **D.    Plaintiffs' and Class Members' Personal and Private Information, Including Sensitive Medical Information, Has Economic Value, and Its Unauthorized Disclosure and Interception Have Caused Economic Harm**.

86.    It is well known that there is an economic market for a consumer's personal data, with personal medical information being one of the most valuable categories of data.

87.    In a 2014 article by the Federal Trade Commission, the agency detailed the value of user data, particularly health information, and found that data brokers sell data in sensitive categories for a premium.[21]  The FTC subsequently brought a lawsuit against one of the data brokers for selling location data regarding people who visit abortion clinics for approximately

---

[19] https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/marketing.pdf (last visited November 15, 2023)[emphasis added].

[20]  HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502, 164.508(a)(3), and 164.514(b)(2)(i).

[21]  *Data Brokers, A Call For Transparency And Accountability*, Federal Trade Commission, (May 2014), https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    $160 for a week's worth of data.[22]

2        88.     For years, data harvesting has been one of the fastest growing industries in the

3    United States.  Between 2016 and 2018, the value of information mined from Americans increased

4    by 86% for Meta and 40% for Google.  Conservative estimates suggest that in 2018, internet

5    companies earned $202 per American user, and that value was expected to rise to $434 per user,

6    or almost $200 billion industry-wide.

7        89.     In particular, the value of health data is well-known and has been reported upon

8    extensively in the news.  For example, a 2017 article by Time Magazine titled "How Your Medical

9    Data Fuels a Hidden Multi-Billion Dollar Industry" described the extensive market for health data

10   and noted that the market for information was both lucrative and a significant risk to privacy.[23]

11       90.     More recently, a 2021 report from *Invisibly* noted that "because health care records

12   often feature a more complete collection of the patient's identity, background, and personal

13   identifying information (PII), health care records have proven to be of particular value for data

14   thieves."[24]  The article further explained that "while a single social security number might go for

15   $0.53, a complete health care record sells for $250 on average" – nearly 500 times as much.

16   According to the report, health care data breaches increased by 55% in 2020.

17       91.     Due to the difficulty in obtaining health information, illegal markets also exist for

18   such personal and sensitive information.  NPR reported that health data can be "more expensive

19   than stolen credit card numbers."[25]

20       92.     Further, individuals can sell or monetize their own data if they choose to do so.  A

21   host of companies and applications such as Nielsen Data, Killi, DataCoup, and AppOptix offer

22   consumers money in exchange for their personal data.

---

24   [22] *See* https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-sues-kochava-selling-
25   data-tracks-people-reproductive-health-clinics-places-worship-other.

     [23] *See* https://time.com/4588104/medical-data-industry/ (last visited November 15, 2023).

26   [24] *How Much is Your Data Worth?  The Complete Breakdown for 2021*, Invisibly, (July 13,
27   2021), https://www.invisibly.com/learn-blog/how-much-is-data-worth/.

     [25] Aarti Shahani, *The Black Market For Stolen Health Care Data*, NPR (Feb. 13, 2015, 4:55
28   am), https://www.npr.org/sections/alltechconsidered/2015/02/13/385901377/the-black-market-
     forstolen-health-care-data (last visited June 29, 2023).

93.    In sum, Plaintiffs' and Class members' private and personal information, including their protected medical information, is recognized to have monetary value. Psychology Today's unauthorized disclosure and Google's interception of that sensitive medical information have deprived Plaintiffs and Class members of the economic value of their personal property without proper consideration.

94.    Plaintiffs and Class members have suffered injuries and damages in the form of (i) invasion of privacy; (ii) diminution of value of their private information; (iii) statutory damages; (iv) the continued and ongoing risk to their private medical information; and (v) the continued and ongoing risk of harassment, spam, and targeted advertisements specific to their medical and mental health conditions and their other confidential information communicated and otherwise disseminated via the Psychology Today website.

## CLASS ACTION ALLEGATIONS

95.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class (the "Psychology Today Website Class" or "the Class") defined as follows:

> All California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter and through and including the date of resolution, visited and used the Psychology Today website and whose health information and/or other personal data was intercepted by, and/or or disclosed to, Google through Google's tracking technology embedded in the Psychology Today website.

96.    Excluded from the Psychology Today Website Class are employees of Defendant and employees of Defendant's parents, subsidiaries, and corporate affiliates. Plaintiffs reserve the right to amend or modify the class definition and/or to add sub-classes or limitations to particular issues, where appropriate, based upon subsequently discovered information.

97.    This action properly may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) there is a well-defined community of interest in the litigation, (2) common questions of law and fact predominate over individual issues, and (3) the proposed Class is ascertainable.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**Numerosity**

98.     The Psychology Today Website Class that Plaintiffs seek to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records and/or Google's records to determine the size of the Class and to determine the identities of individual Class members.

99.     Based on information and belief, the Psychology Today Website Class consists of at least 75 individuals.  The Class is so numerous that joinder of all members is impracticable.

**Typicality**

100.     Plaintiffs' claims are typical of the claims of all of the other members of the Psychology Today Website Class, as Plaintiffs now suffer and have suffered from the same violations of the law as other putative Class members.  Plaintiffs' claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and all of the other Class members.

**Adequacy**

101.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiffs have retained competent counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Psychology Today Website Class members and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests that are adverse to those of the other Psychology Today Website Class members.

**Commonality and Predominance**

102.     By its unlawful actions, Defendant has violated Plaintiffs' and the Class members' privacy rights under the CMIA, the CCPA, the CIPA, and the California Constitution.  The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact presented in this Complaint.

103.     This action involves common questions of law and fact that predominate over any questions affecting only individual Class members.  Those common questions of law and fact include, without limitation, the following:

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

(a) Whether Defendant has or had a policy or practice of disclosing and sharing personal and private information collected on the Psychology Today website including, without limitation, individually identifiable and protected mental health information, with Google and/or other third parties;

(b) Whether Defendant has or had a policy or practice of not disclosing to Psychology Today website users that it would share their personal and private information, including individually identifiable and protected mental health information, with Google and/or other third parties;

(c) Whether Defendant has or had a policy or practice of not obtaining Psychology Today website users' consent to share personal and private information, including individually identifiable and protected mental health information, with Google and/or other third parties;

(d) Whether Defendant has or had a policy or practice of allowing the duplication and simultaneous transmission of Psychology Today website users' private information and confidential communications, without users' knowledge or consent, to Google and/or other third parties;

(e) Whether Defendant, through the website tracking technology embedded on its Psychology Today website, has or had a policy or practice of permitting or enabling third parties to intercept, collect, record, and use confidential communications and information, including individually identifiable and protected mental health information, submitted and shared by or otherwise obtained from Psychology Today website users;

(f) Whether Defendant's acts and practices violate or violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*;

(g) Whether Defendant's acts and practices violate or violated the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.*;

(h) Whether Defendant's acts and practices violate or violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

(i)    Whether Defendant's acts and practices violate or violated the California Constitution or individual rights arising under the California Constitution; and

(j)    Whether Plaintiffs and Class members are entitled to actual, statutory, nominal, and/or other forms of damages and other monetary relief.

**Superiority**

104.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Psychology Today Website Class predominate over any questions affecting only individual members of the Class.  Even if every individual member of the Class could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.  Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of each member of the Psychology Today Website Class.  Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law.  Plaintiffs anticipate no difficulty in the management of this case as a class action.

105.    The prosecution of separate actions by individual members of the Psychology Today Website Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to those adjudications or that would substantially impair or impede the ability of those non-party members of the Class to protect their interests.

106.    The prosecution of individual actions by members of the Psychology Today Website Class also would run the risk of establishing inconsistent standards of conduct for

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    Defendant.

2                        **FIRST CAUSE OF ACTION**
                            **Violations of CMIA**
3            **(California Civil Code §§ 56.06, 56.101, 56.10, 56.36)**

4            107.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and

5    further allege as follows.

6            108.    The CMIA defines "medical information" to mean "any individually identifiable

7    information, in electronic or physical form," that is related to a person's "medical history, mental

8    health application information, mental or physical condition, or treatment."  Medical information

9    is "individually identifiable" if it includes or contains "any element of personal identifying

10   information sufficient to allow identification of the individual, such as the patient's name, address,

11   electronic mail address, telephone number, or social security number, or other information that,

12   alone or in combination with other publicly available information, reveals the identity of the

13   individual."  Cal. Civ. Code § 56.05(j).

14           109.    Section 56.05 also defines "mental health application information" to mean any

15   "information related to a consumer's inferred or diagnosed mental health or substance use

16   disorder" that is collected by a mental health digital service.  Cal. Civ. Code § 56.05(k).

17           110.    The information that is submitted and shared by Psychology Today website users

18   and collected and maintained by Defendant, including but not limited to Psychology Today

19   website users' personal and sensitive information such as names, email addresses, telephone

20   numbers, mental health conditions and concerns, and mental health provider and treatment

21   preferences, is medical information because it is individually identifiable information relating to a

22   patient's medical condition or mental health and plan of treatment.

23           111.    A "mental health digital service" refers to a "mobile-based application or internet

24   website that collects mental health application information from a consumer, markets itself as

25   facilitating mental health services to a consumer, and uses the information to facilitate mental

26   health services to a consumer."   Cal. Civ. Code § 56.05(l).   As discussed in detail above,

27   Psychology  Today  is  both  an  internet  website  (www.psychologytoday.com)  and  a  mobile

28   application (Sessions by Psychology Today!) that collect personal and mental health information

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

from consumers, including their inferred or diagnosed mental health condition.

112.    The Psychology Today website, which touts the motto "Here to Help," markets itself as facilitating mental health services to consumers.  It claims that it is the world's largest mental health and behavioral science destination online.  In addition to providing articles, blogs, and other behavioral science content, including a "Diagnosis Dictionary," the Psychology Today website also offers (1) a search-engine tool to find a mental healthcare provider based on specific symptoms, concerns, and preferences input by the user and (2) links and buttons for the user to click and, by so doing, directly call or send an email communication to a therapist of interest. Psychology Today also provides a copy of those private communications to users for their records.

113.    Psychology Today further facilitates mental health services by providing an online platform (Sessions) for users and therapists to communicate regarding appointment details and check-in information and by hosting online teletherapy sessions either directly on the Sessions by Psychology Today webpage or through its mobile app.  Based on the personal and individually identifiable medical information collected and used by Psychology Today and the mental health services it provides or facilitates, Defendant is a mental health digital service.

114.    The CMIA also defines and identifies categories of businesses that are deemed to be providers of health care and subject to the same standards of confidentiality with respect to medical information disclosure that are required of a provider of health care.  For example, California Civil Code § 56.06(b) states that any "business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or health care provider…, or for the diagnosis, treatment, or management of a medical condition of the individual, ***shall be deemed to be a provider of health care subject to the requirements of this part.***"

115.    California Civil Code § 56.06(d) further provides that "any business that offers a mental health digital service to a consumer for the purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    this part."

2        116.    Defendant offers digital services and software applications in the form of the

3    Psychology Today website (www.psychologytoday.com) and therapist directory and its mobile

4    application ("Sessions by Psychology Today!").  Both platforms are designed to maintain medical

5    information, especially that which is contained within email communications, and both facilitate

6    the diagnosis, treatment, and management of users' medical or mental health conditions.

7    Therefore, Defendant also is deemed to be a provider of health care and is subject to the standards

8    of confidentiality with respect to medical information disclosure that are required by the CMIA.

9        117.    As alleged in detail above, through the use of Google Analytics website tracking

10   technology embedded into Psychology Today's website, Defendant intentionally and knowingly

11   shared Plaintiffs' and Class members' medical information with and disclosed that information to

12   third party Google (and possibly others) without Plaintiffs' and Class members' knowledge,

13   authorization or consent.  In so doing, Defendant violated Cal. Civ. Code § 56.06(f) by failing to

14   maintain the confidentiality of users' private and personal medical information.

15       118.    Defendant also violated Cal. Civ. Code § 56.101(a) by failing to maintain, preserve,

16   and store medical information in a manner that preserves the confidentiality of the information.

17   Instead, Psychology Today allowed and enabled third-party Google (and possibly others) to

18   intercept, duplicate and otherwise access Plaintiffs' and Class members' private medical

19   information, which Google used for its own purposes including improving and creating new

20   marketing and analytics services for itself.

21       119.    California Civil Code § 56.10(a) further provides that a provider of health care

22   "shall not disclose medical information regarding a patient of the provider of health care or an

23   enrollee or subscriber of a health care service plan without first obtaining an authorization."

24   Defendant violated this section of the CMIA when it disclosed Plaintiffs' and Class members'

25   medical information to undisclosed third-party Google (and possibly others) without first obtaining

26   Plaintiffs' and the Class members' authorization to do so.  **Nowhere on its Psychology Today**

27   **website does Defendant identify Google as a recipient of users' highly personal and sensitive**

28   **data, including their protected mental health information, nor does Defendant ask for or**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1  obtain user consent to share or disclose information to Google.

2      120.    Defendant's conduct, as described above, violated California Civil Code §§ 56.06,

3  56.101, and 56.10.  Under Civil Code §§ 56.36(b)(1), Defendant is liable to Plaintiffs and the

4  Psychology Today Website Class members for statutory damages of $1,000 per violation, even in

5  the absence of proof of actual damages, the amount deemed proper by the California Legislature.

6                          **SECOND CAUSE OF ACTION**
                                 **Violations of CCPA**
7                      **(California Civil Code § 1798.150(a)(1))**

8      121.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and

9  further allege as follows.

10     122.    In 2018, Californians voted the California Consumer Privacy Act of 2018

11 ("CCPA") into law.  The CCPA gives California consumers the right to learn what information a

12 business has collected about them, to delete their personal information, to stop businesses from

13 selling their personal information, including using it to target them with ads that follow them as

14 they browse from one website to another, and to hold businesses accountable if they do not take

15 reasonable steps to safeguard protected information.

16     123.    In further protecting consumers' rights, including the constitutional right to privacy,

17 the CCPA states that one purpose and intent of the act is to allow consumers "to control the use of

18 their personal information, including limiting the use of their sensitive personal information, the

19 unauthorized use or disclosure of which creates a heightened risk of harm to the consumer," and

20 to provide consumers with "meaningful options" over how their information is collected, used,

21 and disclosed.

22     124.    To that end, businesses are required to inform consumers specifically and clearly

23 about how those businesses collect and use personal information and how consumers can exercise

24 their rights and choices.  The CCPA further provides that businesses should collect consumers'

25 personal information only for specific, explicit, and legitimate disclosed purposes and should not

26 further collect, use, or disclose consumers' personal information for reasons incompatible with

27 those purposes.

28     125.    To achieve the CCPA's objectives and safeguard consumers' information,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

subsection (e) of § 1798.100 requires a business that collects consumer personal information to "implement reasonable security procedures and practices appropriate to the nature of the personal information to protect the personal information from unauthorized or illegal access, destruction, use, modification, or disclosure in accordance with Section 1798.81.5."

126.    Similarly, California Civil Code § 1798.81.5(b) provides that a "business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

127.    The CCPA defines "personal information" as an individual's "first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted": (i) Social security number; (ii) unique identification numbers issued on government documents used to verify an individual's identity, such as a driver's license number, military identification number or passport number; (iii) account number or credit or debit card number along with access information; (iv) medical information; (v) health insurance information; (vi) unique biometric data; and (vii) genetic data.  California Civil Code § 1798.81.5(d)(1)(A).

128.    Subsection (d)(2) of § 1798.81.5 further defines "medical information" as "any individually identifiable information, in electronic or physical form, regarding the individual's medical history or medical treatment or diagnosis by a health care professional."

129.    As alleged in detail above, Psychology Today's Privacy Policy does not identify Google as a recipient of users' personal information or sensitive medical information, nor does Defendant acknowledge its use of Google Analytics or other website tracking tools.  Defendant also fails to disclose to its Psychology Today website users that it redirects, shares, and discloses website users' individually identifiable and protected mental health information and IP addresses with Google.

130.    Indeed, Psychology Today's only disclosure of information sharing states that it will share collected information with third parties ***only*** when needed to deliver its products or

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

services as requested on the website. Nowhere does the Psychology Today website or Privacy Policy state that Defendant will disclose private medical information and confidential communications to Google and for the additional purposes of improving Google algorithms and data points and creating new advertising and analytics technologies, services, and business opportunities. That goes far beyond the disclosed purposes of facilitating mental health services and is a clear breach of the duties that Civil Code § 1798.150(a)(1) imposes on Defendant.

131. Further, Defendant's disclosure to Google of – and Defendant's permitting Google to duplicate and to have unauthorized access to – Plaintiffs' and Class members' personal information, including IP addresses and private medical information, are violations of Defendant's duty to implement and maintain reasonable security procedures and practices to safeguard such sensitive information and constitute violations of section 1798.150(a)(1) of the CCPA.

132. Defendant breached its duty to implement reasonable security measures by: (i) failing to remove or disengage technology that was known and designed to share website users' private information surreptitiously, including individually identifiable and sensitive mental health information; (ii) failing to obtain written consent of Plaintiffs and Class members to disclose their personally identifiable information to Google and any other unauthorized third parties with which Defendant has failed to execute a HIPAA-compliant business associate agreement; (iii) failing to take steps to block the transmission of protected health information that was taking place via website tracking tools that were installed on its Psychology Today website; and (iv) otherwise failing to design and monitor its Psychology Today website to maintain the confidentiality and integrity of users' personal and private information.

133. Under Civil Code § 1798.150(a)(1)(A), Defendant is liable to Plaintiffs and Psychology Today Website Class members, each of whom is entitled to the greater of (i) his or her actual damages or (ii) statutory damages of not less than $100 and up to $750 per consumer per incident, plus any other relief that the court deems proper under § 1798.150(a)(1)(C).

134. On November 30, 2023, via FedEx Priority, Plaintiffs' counsel sent Defendant a California Civil Code § 1798.150(b) notice of non-compliance advising Defendant of its violations of the CCPA. Defendant did not respond or cure the alleged breach. Therefore, under Civil Code

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

§ 1798.150(a)(1)(A), Defendant is liable to Plaintiffs and each of the Psychology Today Class members for the greater of (a) statutory damages of not less than $100 and up to $750 per consumer per incident <u>or</u> (b) actual damages suffered as a result of Defendant's violations of the CCPA.

## THIRD CAUSE OF ACTION
### Aiding and Abetting Unlawful Interception
### (Violations of California Penal Code § 631)

135. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

136. The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id*. § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id*.

137. To establish liability under section 631(a), Plaintiffs need only establish that Defendant, "by means of any machine, instrument, or contrivance, or in any other manner," did or does any of the following:

[i] [I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

[ii] [W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

[iii] [U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

[iv] [A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

138.    Under § 631, a defendant must show that it had all parties' consent.

139.    Defendant and Google are each a "person" for the purposes of CIPA.

140.    Defendant systematically and routinely does business in California with California residents and California mental health providers.  Google maintains its principal place of business in California, where it designed, contrived, agreed to, conspired to achieve, effectuated, and/or received the interception and use of the contents of Plaintiffs' and Psychology Today Website Class members' private and sensitive communications containing protected mental health information.  Additionally, Google intercepted Plaintiffs' and Class members' data and confidential communications in California, where Plaintiffs, Class members and Google all are located.

141.    Google Analytics website tracking technology, Plaintiffs' and Class members' web browsers, and Plaintiffs' and Class members' computing and mobile devices are a "machine, instrument, or contrivance…or other manner."

142.    At all relevant times, Defendant used Google Analytics website tracking technology on its Psychology Today website without Plaintiffs' and Psychology Today Website Class members' knowledge, consent, or authorization.

143.    By using Google Analytics and allowing Google to intercept, duplicate and access Psychology Today website users' private information and confidential communications, Defendant permitted Google contemporaneously to read or attempt to read, and/or to learn, the contents or meaning of Plaintiffs' and Class members' sensitive interactions and private communications with Psychology Today while the communications were in transit or passing over any wire, line or cable, or were being received at any place within California.  Plaintiffs' and Class members' communications to and through Psychology Today, which included protected mental health information, were and are being sent simultaneously to Google servers and were and are transmitted to Google in real time via Google Analytics tracking technology.

144.    Google used, or at the very least has the capability to use, the private

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

communications and confidential information it duplicated and received through Google Analytics for its own purposes, including to improve Google's own advertising and analytics services and to create new technologies and offerings.

145.    At all relevant times, Defendant willingly facilitated, aided, employed, agreed with, and conspired with unauthorized third parties like Google to track, intercept, read, and use Plaintiffs' and Class members' personal and private communications made via the Psychology Today website.  These communications were concurrently transmitted to and intercepted by Google while the communications were in transit, and were not authorized or consented to by Plaintiffs and Class members.

146.    By allowing Google (and possibly others) to intercept and obtain Plaintiffs' and Psychology Today Website Class Members' personal and private communications, without consent or written authorization, Defendant acted intentionally or, alternatively, with knowledge that Google's unauthorized interception, receipt, reading and use of Plaintiffs' and Class members' confidential communications would be a violation of CIPA.

147.    Defendant provided substantial assistance and encouragement to Google, including but not limited to (1) installing and embedding Google Analytics code on its Psychology Today website without proper safeguards to preserve the confidentiality of users' communications, (2) failing to provide notice to Psychology Today website users of its use of Google Analytics website tracking technology despite knowing that Google collects and records users' personal and sensitive communications, and (3) allowing Google to have direct access to, read, and use Psychology Today website users' private and confidential communications without those users' consent or authorization.

148.    By so doing, Defendant provided the means to accomplish Google's unauthorized duplication, receipt, reading, and use of Plaintiffs' and Psychology Today Website Class members' confidential communications.  Accordingly, the interception by Google was unlawful, and Defendant aided and abetted Google's unlawful conduct.

149.    Defendant's conduct as described above violated California Penal Code § 631(a). Under Penal Code § 637.2, Plaintiffs and Psychology Today Website Class members therefore are

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual

2   damages, the amount deemed proper by the California Legislature.

3                              **FOURTH CAUSE OF ACTION**
    **Unlawful Recording of and Eavesdropping Upon Confidential Communications**
4                   **(Violations of California Penal Code § 632)**

5        150.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and

6   further allege as follows.

7        151.    California Penal Code § 632 prohibits using "an electronic amplifying or recording

8   device to eavesdrop upon or record [a] confidential communication". . . "intentionally and without

9   the consent of all parties to a confidential communication."

10       152.    Google's tracking technology embedded into the Psychology Today website is an

11  electronic amplifying or recording device for purposes of § 632.  The Google Analytics code

12  duplicates and records a user's interaction in real-time as the user navigates the page, including

13  recording any information that the user may input or select and recording the links that the user

14  clicked.  The measurement code also collects and records information from the browser, such as

15  the language setting, the type of browser and the device and operating system on which the browser

16  is running.

17       153.    Section   632   defines   a   "confidential   communication"   to   include   "any

18  communication carried on in circumstances as may reasonably indicate that any party to the

19  communication desires it to be confined to the parties thereto."

20       154.    Plaintiffs' and Psychology Today Website Class members' personal and private

21  communications with Defendant, including their submission of sensitive medical information such

22  as their mental health conditions and concerns, their provider and treatment preferences, and their

23  contact with potential mental healthcare providers, were confidential communications for purposes

24  of § 632.

25       155.    Because Defendant did not disclose to Plaintiffs or to the Psychology Today

26  Website Class members that their private communications containing protected medical

27  information were being recorded and/or eavesdropped upon by Google, Defendant did not obtain,

28  and could not have obtained, Plaintiffs' or the Class members' express or implied advance consent

---

to Google's recording or monitoring of those communications. As a result, Plaintiffs and the Psychology Today Website Class members had an objectively reasonable expectation that their confidential communications were not being recorded and/or eavesdropped upon by Google. That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording and/or eavesdropping upon people's private – and in this case medically-sensitive and mental-health-related – communications and the ease with which a disclosure or warning could have been provided.

156. Plaintiffs and Psychology Today Website Class members expected that their personal and private communications with Defendant would not be intercepted and secretly recorded and/or eavesdropped upon by third parties, let alone *undisclosed* third parties.

157. By (1) installing and embedding Google Analytics code on its Psychology Today website without proper safeguards to preserve the confidentiality of users' communications and (2) contemporaneously redirecting and transmitting Plaintiffs' and Class members' confidential communications through Google Analytics website tracking technology, Defendant permitted, encouraged, and gave substantial assistance to Google to eavesdrop upon and/or record Psychology Today website users' confidential communications through an electronic amplifying or recording device. By so doing, Defendant violated § 632.

158. At no time did Plaintiffs or Class members consent to Defendant's and Google's unlawful conduct. Nor could Plaintiffs or Class members reasonably expect that their confidential communications with Psychology Today would be overheard or recorded by Google, especially in the absence of any disclosure in Psychology Today's Privacy Policy.

159. Upon information and belief, Google utilized Plaintiffs' and Class members' sensitive personal information, including their protected mental health information, for Google's own purposes, including improving Google's advertising and analytics services offerings and revenue.

160. Defendant's conduct as described above violated California Penal Code § 632. Under Penal Code § 637.2, Plaintiffs and the Psychology Today Website Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

damages, the amount deemed proper by the California Legislature.

**FIFTH CAUSE OF ACTION**
**Invasion of Privacy**
**(Violations of Art. 1, § 1, California Constitution)**

161.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

162.    "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians.  That section of the Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

163.    The right to privacy in California's Constitution creates a right of action against private entities such as Defendant.  To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

164.    Plaintiffs and Class members have a legally protected privacy interest in their private and confidential communications with Defendant, including in their individually identifiable medical information submitted and shared through their use of the Psychology Today website.  That information, including but not limited to Plaintiffs' and Class members' names/identities, telephone numbers, email addresses, other personally identifiable information, patient status, health conditions and concerns, provider preferences and medical treatment, are inherently private, personal and sensitive in nature, and are protected by the right to privacy and confidentiality under the CMIA, HIPAA, CCPA, and CIPA.

165.    Plaintiffs and Class members had a reasonable expectation of privacy under the circumstances, including that: (i) the private communications disclosed by Psychology Today and intercepted and duplicated by Google include personal and sensitive information related to Plaintiffs' and Class members' mental health conditions and treatment; and (ii) Plaintiffs and Class members did not consent to Defendant disclosing or otherwise authorize Defendant to disclose

1    their private and confidential health information to Google or other third-party interceptors, nor

2    did they authorize Google to intercept, duplicate, store, read, or use that private information for

3    Google's own benefit and monetary gain.

4    166.    Defendant's conduct constituted a serious invasion of privacy that would be highly

5    offensive to a reasonable person in that: (i) the information disclosed by Psychology Today and

6    allowed by Psychology Today to be intercepted, duplicated, and collected by Google was highly

7    sensitive and personal medical information protected by the California Constitution and numerous

8    California statutes including the CMIA and the CCPA; (ii) Defendant did not have authorization

9    or consent to disclose that personally identifiable and protected mental health information to any

10    third party interceptor, including Google; (iii) Google did not have authorization to collect,

11    duplicate, read or use that highly sensitive information; and (iv) the invasion deprived Plaintiffs

12    and Class members of the ability to control the dissemination and circulation of that private and

13    sensitive information, an ability that is a fundamental privacy right. Defendant's conduct

14    constitutes a severe and egregious breach of social norms.

15    167.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class

16    members have had their privacy invaded and have sustained injury, including injury to their peace

17    of mind.

18    168.    Plaintiffs and Psychology Today Website Class members seek appropriate relief

19    for that injury, including but not limited to restitution, disgorgement of profits earned by Defendant

20    as a result of the intrusions upon Plaintiffs' and Class members' privacy, and any other equitable

21    relief that will compensate Plaintiffs and Class members properly for the harm to their privacy

22    interests.

23    169.    Plaintiffs also seek such other or further relief as the Court may deem just and

24    proper.

25

26

27

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for the following relief:

a.  An order certifying the Psychology Today Website Class, appointing Plaintiffs R.C. and D.G. as representatives of the Psychology Today Website Class, and appointing counsel for Plaintiffs as counsel for the Psychology Today Website Class;

b.  An order declaring that Defendant's actions, as described above, violate California Civil Code §§ 56, *et seq.*;

c.  An order declaring that Defendant's actions, as described above, violate California Civil Code §§ 1798.150(a)(1).;

d.  An order declaring that Defendant's actions, as described above, violate California Penal Code § 631;

e.  An order declaring that Defendant's actions, as described above, violate California Penal Code § 632;

f.  An order declaring that Defendant's actions, as described above, violate Art. 1, § 1 of the California Constitution;

g.  A judgment for and award of statutory damages of $1,000 per violation under California Civil Code §§ 56.36(b) to Plaintiffs and each of the members of the Psychology Today Website Class;

h.  A judgment for and award of actual damages, or an award of statutory damages of not less than $100 and up to $750 per consumer per incident, whichever is greater, under California Civil Code § 1798.150(a)(1)(A) to Plaintiffs and each of the members of the Psychology Today Website Class;

i.  A judgment for and award of statutory damages of $5,000 per violation under California Penal Code § 637.2 to Plaintiffs and each of the members of the Psychology Today Website Class;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

j.    A judgment for and award of compensatory and/or nominal damages to Plaintiffs and each of the members of the Psychology Today Website Class;

k.    Payment of costs of the suit;

l.    Payment of attorneys' fees under California Code of Civil Procedure § 1021.5;

m.    An award of pre- and post-judgment interest to the extent allowed by law; and

n.    Such other or and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  October 31, 2024          **KELLER GROVER LLP**

**By:**  /s/ *Eric A. Grover*

ERIC A. GROVER
*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  October 31, 2024          **KELLER GROVER LLP**

By:  /s/ *Eric A. Grover*

ERIC A. GROVER
*Attorneys for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861