Matthew D. Pearson, SBN 294302
*mpearson@bakerlaw.com*
Monique Matar, SBN 317145
*mmatar@bakerlaw.com*
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: (714) 754-6600
Facsimile: (714) 754-6611

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

R.C. and D.G., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,

Defendants.

Case No.: 3:24-cv-02609-JSC

The Honorable Jacqueline Scott Corley

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed concurrently with Declarations of Jo Colman, Matthew D. Pearson, Kenneth Oliver; and (Proposed) Order]

**DATE: February 27, 2025**
**TIME: 10:00 a.m.**
**COURTROOM: 8**

Action Filed: November 30, 2023
Initial CMC: August 1, 2024

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 2
II. PLAINTIFFS' ALLEGATIONS ..... 3
III. MOTION TO DISMISS STANDARD ..... 4
A. 12(b)(1) ..... 4
B. 12(b)(6) ..... 5
IV. ARGUMENT ..... 5
A. Plaintiffs Have Failed to Establish Injury-in-Fact. ..... 5
1. Sussex's Actions Did Not Invade Plaintiffs' Privacy. ..... 6
a. Public IP Addresses Identify No One. ..... 7
b. Nothing Google Allegedly Collected Here Identified Plaintiffs. ..... 9
2. "Statutory Damages" Are Not Injury-in-Fact. ..... 10
3. Diminution in Value of Their Information Is Not Injury-in-Fact. ..... 10
4. Plaintiffs' "Ongoing Risk" Claims Are Not Injury-in-Fact. ..... 11
B. Plaintiffs Have Failed to State an Actionable Claim Against Sussex. ..... 11
1. Plaintiffs' Constitutional Invasion of Privacy Claim Fails. ..... 11
2. Plaintiffs' CCPA Claim Fails. ..... 13
3. Plaintiffs' CMIA Claim Fails. ..... 13
a. Plaintiffs Do Not Allege that the CMIA Applies to Sussex ..... 13
b. Plaintiffs Fail to Allege That Their Medical Information Was Disclosed to or Viewed by An Unauthorized Person. ..... 17
4. Plaintiffs' CIPA Claims Fail. ..... 20
a. Plaintiffs Have Not Stated an Aiding-and-Abetting Claim Under CIPA § 632. ..... 20
b. Plaintiffs' § 631(a) Aiding-and-Abetting Claim Fails. ..... 22
5. Plaintiff's CIPA § 631(a) Aiding-and-Abetting Claim Fails for the Additional Reason That Plaintiffs Do Not Allege the Requisite Intent. ..... 24
V. CONCLUSION ..... 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................................. 10, 11

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)................................ 18

*Apatow v. Am. Bankers Ins. Co. of Fla.*,
No. 16-198 MWF, 2016 WL 7422288 (C.D. Cal. Dec. 21, 2016) ......................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................... 5

*B.K. v. Desert Care Network*,
No. 223CV05021SPGPDX, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)...................... 22, 24

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) .......................... 19

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023)...................................... 19, 20

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007)............................................................................................ 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 5

*Bibiano v. Lynch*,
834 F.3d 966 (9th Cir. 2016)............................................................................................ 4

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
635 F. App'x 351 (9th Cir. 2015) ..................................................................................... 9

*Bihari v. Cross Roads of W. Gun Show*,
No. SACV160718JVSEX, 2016 WL 11000618 (C.D. Cal. July 18, 2016) ............................ 6

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023), *reconsideration denied*, No. 5:22-CV-01456-SB-SP, 2023 WL 4195768 (C.D. Cal. May 18, 2023) ............................................................................................................ 10

*Caudill v. Wells Fargo Home Mortg., Inc.*,
No. CV 5: 16-066-DCR, 2016 WL 3820195 (E.D. Ky. July 11, 2016).................................. 6



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Cody v. Ring LLC*,
No. 23-CV-00562-AMO, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ... 23

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ... 7

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 19

*D'Angelo v. FCA US, LLC*,
No. 323CV00982WQHMMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ... 24

*Esparza v. Gen Dig. Inc.*,
No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ... 22

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023) ... 6

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ... 12

*Hancock v. Urb. Outfitters, Inc.*,
830 F.3d 511 (D.C. Cir. 2016) ... 9

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ... 23

*Henson v. Turn, Inc.*,
No. C 15-01497 JSW, 2018 WL 6605624 (N.D. Cal. Dec. 17, 2018) ... 6, 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ... 12

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) ... 21

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ... 12

*Massie v. Gen. Motors LLC*,
No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ... 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 22

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Oddei v. Optum, Inc.*,
No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) .......... 16

*Prima Asset Corp. v. Goh*,
No. SACV171390DOCDFMX, 2017 WL 11662669 (C.D. Cal. Dec. 21, 2017).......... 10

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).......... 22

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017).......... 6

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021).......... 22

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022).......... 23

*Saeedy v. Microsoft Corp*.,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023).......... 12

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004).......... 4, 5

*Simon v. Eastern Ky. Welfare Rights Org*.,
426 U.S. 26 (1976).......... 5

*Smith v. Facebook, Inc*.,
745 F. App'x 8 (9th Cir. 2018).......... 18

*Smith v. YETI Coolers, LLC*,
No. 24-CV-01703-RFL, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024).......... 21, 25

*Spokeo Inc. v. Robins*,
136 S. Ct. 1540 (2016).......... 5, 10

*Starkey v. Rushmore Loan Mgmt. Servs. LLC*,
No. SACV191588JVSJDEX, 2019 WL 8989907 (C.D. Cal. Dec. 10, 2019) .......... 6

*Strike 3 Holdings, LLC v. Doe*,
No. 17CV2317-JAH (BLM), 2017 WL 6389848 (S.D. Cal. Dec. 14, 2017) .......... 8

*Sutter Health v. Superior Ct*.,
227 Cal. App. 4th 1546 (2014).......... 19

*Svenson v. Google Inc*.,
No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .......... 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 24

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024)........ 22

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........ 5

*Turner v. Nuance Commc'ns, Inc.*,
No. 22-CV-05827-DMR, 2024 WL 2750017 (N.D. Cal. May 28, 2024)........ 21

*United States v. Christie*,
624 F.3d 558 (3d Cir. 2010)........ 10

*United States v. Jenkins*,
No. 1:18-CR-00181, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) ........ 8, 17

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019)........ 9

*United States v. Matish*,
193 F. Supp. 3d 585 (E.D. Va. 2016)........ 10

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 23

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)........ 22

*Yockey v. Salesforce, Inc.*,
No. 22-CV-09067-JST, 2024 WL 3875785 (N.D. Cal. Aug. 16, 2024)........ 20

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)........ 20

**Statutes**

Cal. Civ. Code § 56.05(b) ........ 14

Cal. Civ. Code § 56.05(j) ........ 16, 17, 18

Cal. Civ. Code § 56.05(k) ........ 14

Cal. Civ. Code § 56.05(l) ........ 14

Cal. Civ. Code § 56.06(d) ........ 14, 16

Cal. Civ. Code § 56.10 ........ 1, 19

Cal. Civ. Code § 56.10(a)........ 13



Baker & Hostetler LLP
Attorneys at Law
Costa Mesa

Cal. Civ. Code § 56.101 .......... 1, 19, 20

Cal. Civ. Code § 56.101(a) .......... 13, 19

Cal. Civ. Code § 1798.81.5(A)(1)(d) .......... 12, 13

Cal. Penal Code § 637.2(a) .......... 20

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1, 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**NOTICE IS HEREBY GIVEN** that on February 27, 2025, at 10:00 a.m. in Courtroom 8 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sussex Publishers, LLC ("Sussex") will and hereby does move for an order dismissing Plaintiffs R.C.'s and D.G.'s (collectively, "Plaintiffs") Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

This motion is made on the grounds that Plaintiffs have failed to allege the necessary facts to establish that they suffered an injury-in-fact sufficient to confer on this Court subject matter jurisdiction. In the alternative, this motion is made on the grounds that Plaintiffs have failed to state against Sussex any plausible claims under which relief can be granted. More specifically:

**Plaintiffs' First Cause of Action** for violation of California's Confidentiality of Medical Information Act ("CMIA") should be dismissed because (1) the CMIA does not apply to Sussex; (2) Plaintiffs do not allege that any third party obtained their "medical information;" (3) Plaintiffs do not allege any "unauthorized viewing" under their Section 56.101 claim, and (4) Plaintiffs do not allege any "unauthorized disclosure" under their Section 56.10 claim. **Plaintiffs' Second Cause of Action** for violation of the California Consumer Protection Act of 2018 ("CCPA") should be dismissed because Plaintiffs have not alleged that their "personal information" was subject to exfiltration, theft, or disclosure**. Plaintiffs' Third Cause of Action** for aiding and abetting a violation of California Penal Code § 631 should be dismissed because Plaintiffs have not alleged (1) that anything Google did violated Section 631 and (2) that Sussex or Google acted with the requisite intent. **Plaintiffs' Fourth Cause of Action** for violation California Penal Code § 632 should be dismissed because (1) Plaintiffs have not alleged that anything Google did violated Section 632 and (2) Plaintiffs have not alleged that Sussex or Google acted with the requisite intent. **Plaintiffs' Fifth Cause of Action** for invasion of privacy under the California Constitution should be dismissed because Plaintiffs have failed to allege that they had a reasonable expectation of privacy in any of the information allegedly disclosed to Google or that the disclosure was "highly offensive."

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Matthew D. Pearson, Kenneth Oliver, and Jo Colman; the

Court's file and records in this action; and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Dated: December 10, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

At the October 10, 2024 hearing on Sussex's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), the Court, having reviewed the FAC, rightfully expressed confusion as to what information, exactly, Plaintiff was alleging Sussex disclosed to Google via Google Analytics.

THE COURT: But -- So just tell me -- let's just put aside the complaint. Let's just tell me, in a narrative, is it your allegation that Google – that Google Analytics actually collects the communications that the users have with their therapists?

MR. GROVER: No. [Pearson Declaration ("Pearson Decl."), **Exhibit A**, at Tr.6:25-7:5]

THE COURT: Okay. So how about the form that they have to complete; are you alleging that Google Analytics collects that information from the form?

MR. GROVER: …I don't think we're directly alleging, no, that Google Analytics gets the actual form. [*Id*. at Tr.8.2-8]

THE COURT: ….So what is it that Google Analytics collects? [*Id.* at Tr. 7:7]

MR. GROVER: [ ] all things related to the search and the IP address.

THE COURT: Just those two --

MR. GROVER: Yeah.

THE COURT: Those two things. Okay. All right. That wasn't clear to me. Now that's helpful. [*Id.* at Tr. 8:19-25.]

Thus, as Plaintiffs' counsel himself admitted, Google Analytics collects no more data on

www.PsychologyToday.com than it does on the millions of other law-abiding websites on which it has been installed to measure user behavior.

The Court then instructed Plaintiffs to file a Second Amended Complaint ("SAC") "[b]ecause, until [Plaintiffs' counsel] told me that we're just talking about what's put into the search and the IP address, I couldn't tell from your allegations exactly what it was that the plaintiffs" were alleging Google Analytics collected. [*Id.* at Tr. 24:11-14.]

On October 31, 2024, Plaintiffs filed their SAC. As they did in their original Complaint and in their FAC, Plaintiffs included in the SAC sweeping, generic statements, suggesting that Google Analytics collects far more than it actually does. [*See, e.g.,* Dkt. No. 36, ¶¶ 6 (alleging that Google "collect[ed]…[Site] users' sensitive information, including their individually identifiable and protected mental health**"),** 9 (alleging disclosure of "individually identifiable medical information"), 15 (same), 73 (same), 103 (same), 129 (same), 132 (same).] Indeed, not until paragraph 73 of the SAC do Plaintiffs actually identify what it is they claim Google Analytics collects: "IP addresses; their medical conditions and concerns; their search parameters; their preferences regarding a mental health professional; and the type of treatment they are seeking." [*Id.* at ¶ 73.] Put another way, the only "individually identifiable" information that Plaintiffs claim Google Analytics collects is a public IP address—not names, email addresses, social security numbers, addresses, telephone numbers, etc. And the only "medical information" Plaintiffs claim Google Analytics collects—albeit incorrectly—is their search parameters; their preferences regarding a mental health professional; and the type of treatment they are seeking.

Plaintiffs' claims, therefore, are a house of cards, each dependent on Plaintiffs establishing that a public IP address is, in fact, "individually identifiable information." But, public IP addresses no more identify an individual website user than a zip code identifies the persons living in it. Without alleging that something Google Analytics collected personally identified them, Plaintiffs have failed not only to state a viable claim against Sussex, but also to establish that they suffered an injury-in-fact for Article III standing purposes. Plaintiffs' SAC must be dismissed.

## II. PLAINTIFFS' ALLEGATIONS

Shed of the generic, misleading, and irrelevant allegations, Plaintiffs' claims boil down to





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

the following. Sussex operates a website, www.PsychologyToday.com (the "Site"). [Dkt. No. 36, ¶ 27.] The Site allows users, like Plaintiffs, to find qualified therapists [*id.* at ¶ 27], by entering a city or zip code [*id.* at Ex. B (video showing search for "San Francisco")] and/or clicking on filter buttons [*id.* at ¶ 49, Figures 7-11]. Although Plaintiffs claim that the Site requests information about *themselves*, their claims are belied by Figures 7 through 11 in the SAC. These figures show that the filter panel and button labels describe the genders, attributes, and qualifications of the therapists, [*id.* at Figures 7-11], not those of the users.

Once a user locates a therapist, she can email or call the therapist directly. [*Id.* at ¶ 51.] Independently, therapists may use Sussex's version of zoom, called "Sessions," to conduct online therapy with their clients. [*Id.* at ¶ 54.]

Plaintiffs claim that Sussex installed Google Analytics on the Site, which, according to Plaintiffs, duplicates and sends to Google their IP addresses and a record of the actions that they took on the Site (i.e., the URL of pages they viewed and the buttons they clicked). [*Id.* at ¶ 57.] Plaintiffs **do not** allege that Google Analytics collects any personally identifiable information, most notably from the "email" form (i.e., name, email address, phone number, or content of email). [*See id.* at Figure 2]. Nor do they allege that Google Analytics collects any information related to the use of Sessions. [*See id.* at Figure 3.]

Based on the above, Plaintiffs assert five claims against Sussex: (1) violation of California's CMIA; (2) violation of the CCPA; (3) violation of CIPA, § 631; (4) violation of CIPA, § 632; and (5) invasion of privacy under California's Constitution.

## III. MOTION TO DISMISS STANDARD

### A. 12(b)(1)[1]

Subject matter jurisdiction is a threshold issue that must be decided "before moving on to other, non-merits threshold issues." *Bibiano v. Lynch*, 834 F.3d 966, 971 fn. 4 (9th Cir. 2016). A defendant's jurisdictional attack "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373

[1] Although Sussex removed this action to this Court, it did so under a different complaint that asserted different allegations. Namely, the original complaint that was removed to this Court alleged that Google Analytics was collecting names and the contents of email communications. The SAC does not include those allegations.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the "court need not presume the truthfulness of the plaintiff's allegations" and may consider "affidavits or other evidence properly brought before the court." *Id.* In response to a factual attack, the plaintiff must furnish "affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

**B. <u>12(b)(6)</u>**

"In ruling on a motion under Rule 12(b)(6), [this] Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Apatow v. Am. Bankers Ins. Co. of Fla.*, No. 16-198 MWF (MRWX), 2016 WL 7422288, at *2 (C.D. Cal. Dec. 21, 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and alterations omitted). The Court "need not accept as true . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (internal citation and quotation marks omitted). Indeed, the "Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief." *Id.*

## IV. <u>ARGUMENT</u>

**A. <u>Plaintiffs Have Failed to Establish Injury-in-Fact.</u>**

Constitutional "standing is a threshold matter central to [the Court's] subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). The "irreducible minimum" of standing requires, at the very least, that the plaintiff "suffer[] an injury in fact… that is fairly traceable to the challenged conduct of the defendant[.]" *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she," personally, "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548; *see also Id.* at 1547 n.6 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

"Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("*TransUnion*"). So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* But courts may not "loosen Article III based on

contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. Nor does a plaintiff "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. "[E]ven when a statute has allegedly been violated, Article III requires such violation to have caused some real—as opposed to purely legal—harm to the plaintiff." *Robins v. Spokeo, Inc*., 867 F.3d 1108, 1112 (9th Cir. 2017).

Here, Plaintiffs identify four categories of harm they claim to have suffered from Sussex's alleged violation of California law: "(i) invasion of privacy; (ii) diminution of value of their private information; (iii) statutory damages; (iv) the continued and ongoing risk to their private medical information; and (v) the continued and ongoing risk of harassment, spam, and targeted advertisements specific to their medical and mental health conditions and their other confidential information communicated and otherwise disseminated via the Psychology Today website." [Dkt. No. 36, ¶ 94.] None of these claims constitute "concrete and particularized" harm sufficient to establish injury-in-fact.



1. **Sussex's Actions Did Not Invade Plaintiffs' Privacy.**

Admittedly, courts have held that an alleged invasion of privacy can be an "intangible harm" that satisfies Article III's injury-in-fact requirement. *See, e.g., Caudill v. Wells Fargo Home Mortg., Inc*., No. CV 5: 16-066-DCR, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (noting that an alleged invasion of privacy has "traditionally been regarded as providing a basis for a lawsuit in the United States"). That does not mean, however, that a plaintiff establishes injury-in-fact simply by using the phrase "invasion of privacy." *Starkey v. Rushmore Loan Mgmt. Servs. LLC*, No. SACV191588JVSJDEX, 2019 WL 8989907, at *3 (C.D. Cal. Dec. 10, 2019) (finding use of the phrase "invasion of privacy" insufficient to allege injury-in-fact); *Bihari v. Cross Roads of W. Gun Show*, No. SACV160718JVSEX, 2016 WL 11000618, at *2 (C.D. Cal. July 18, 2016) (no standing where "complaint fails to allege any facts whatsoever establishing an invasion of privacy").

For an alleged invasion of privacy to even potentially constitute an injury-in-fact, the plaintiff must plausibly allege that his or her identity was somehow known or knowable. *See., e.g., Henson v. Turn, Inc.,* No. C 15-01497 JSW, 2018 WL 6605624, at *4 (N.D. Cal. Dec. 17, 2018)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

("Because Plaintiffs have not alleged that their data is confidential and readily recognizable and identifiable as belonging to any particular person, the Court finds that they have failed to state a cognizable injury."); *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 231 (M.D. Pa. 2023) (dismissing for lack of standing where plaintiff did not "aver [defendant] disclosed his home address, credit card, bank account, social security number, or any other information that could potentially be used to identify him"); *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("The fact of the matter remains, however, that none of Plaintiffs' personal information is implicated by the allegations they make. Plaintiffs fail to explain how either GM's or Decibel's possession of anonymized, non-personal data regarding their browsing activities on GM's website harms their privacy interests in any way."); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023) (finding plaintiff's "allegations did not set forth concrete harm" where she did not allege the disclosure of "any personally identifying information"—" [n]ot her name," "[n]ot her address," "[n]ot her credit card information," "[n]othing that could connect her browsing activity to her….").

Plaintiffs here do not allege that Google Analytics ever collected their names, addresses, social security numbers, or any other type of information that would identify them. [*See generally* Dkt. No. 36.] The only "individually identifiable information" they claim Google collected are IP addresses. [*Id.* at ¶¶ 37, 65 (alleging that "IP addresses are individually identifiable information and are subject to HIPAA protection"). The IP addresses that Google collected here, however, were not "individually identifiable."

***a. Public IP Addresses Identify No One.***

There are two main types of IP addresses: public IP addresses and private IP addresses. [Declaration of Kenneth Oliver ("Oliver Decl."), ¶¶ 5-8.] Public IP addresses (1) are globally unique, (2) are assigned to gateway devices (i.e., routers or modems) by Internet Service Providers ("ISPs"); and (3) allow devices that are ***not*** on the same local network to communicate with one another (i.e., over the internet). [*Id.* at ¶¶ 9-12, 14.] In contrast, private IP addresses (1) are unique only within the local network in which they are being used; (2) are assigned to devices on a local network (i.e., computers, laptops, phones) by the gateway device; and (3) allow devices to

communicate with other devices that ***are*** on the same local network. [*Id.* at ¶¶ 17-18.]

In the simplest terms, public IP addresses identify different gateway devices on the internet, and private IP addresses identify different devices on a local network. [*Id.* at ¶¶ 14, 18.] Because of this, private IP addresses are not visible outside of the local network on which they are being used. [*Id.* at ¶¶ 17, 21.] For example, when Plaintiffs visited the Site, neither the Site nor Google could see the private IP addresses assigned to the devices they were using at the time. [*Id.* at ¶¶ 35-38.] The Site and Google could only see the public IP address of the gateway device Plaintiffs were using. [*Id.* at ¶¶ 35-38.]

Moreover, the public IP addresses sent to either the Site or Google do not differentiate between the devices on the local network. [*Id.* at ¶ 39.] If, when Plaintiffs visited the Site, they were using the same gateway device (i.e., on the same local network), their public IP addresses would be exactly the same. [*Id.*] Only the gateway device knows what each device on the local network is doing because only the gateway device receives private IP addresses. [*Id.* at ¶¶ 36, 38.]

Further, only ISPs can accurately determine the physical location of a gateway device using a public IP address, as they assign and manage IP address allocations. [*Id.* at ¶ 29.] ISPs register ranges of IP addresses in public records, which are typically accurate at the city or regional level but less precise for mobile networks. [*Id.*]

On top of that, public IP addresses change, both over time (if the IP address's lease expires or if the gateway device loses power or connectivity) and based on the location of the user (i.e., the user changes local networks by relocating to work, a coffee shop, or a library). [*Id.* at ¶¶ 13, 40.] *See United States v. Jenkins,* No. 1:18-CR-00181, 2019 WL 1568154, *4 (N.D. Ga. Apr. 11, 2019) ("*Jenkins*") ("IP address information merely shows the location at which a device accesses the internet during a specific session. It does not follow [a] person around.").

Finally, and perhaps most importantly, IP addresses, whether private or public, are *device-specific*, not user-specific. [*Id.* at ¶¶ 9, 18.] Therefore, if Plaintiffs' daughter, brother, or spouse were to use their device, both the private and public IP addresses would remain the same. An IP address provides no information as to *who* is actually using the device. *See Jenkins*, 2019 WL 1568154, *4 ("Indeed, [an IP address] does not even identify the user, just the location of internet

access."); *Strike 3 Holdings, LLC v. Doe*, No. 17CV2317-JAH (BLM), 2017 WL 6389848, at *3 (S.D. Cal. Dec. 14, 2017) (noting that an ISP is "the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address").

***b. Nothing Google Allegedly Collected Here Identified Plaintiffs.***

The only allegedly "identifiable information" Plaintiffs claim Google collected was their IP addresses, [Declaration of Jo Colman ("Colman Decl."), ¶¶ 5-35 (explaining Site and information collected on same)], and the only possible IP address Google could have collected is their public IP addresses. The public IP addresses collected via Google Analytics:

1. Did not differentiate between devices on the same local network (i.e., Plaintiffs' spouses' devices on their home network, Plaintiffs' coworkers' devices on their work network, or fellow customers' devices on their local coffee shop's network);

2. Did not identify who was visiting the Site (i.e., who was using the device at the time);

3. Changed, based on the local network the Plaintiffs were using at the time they visited the Site (i.e., work, house, coffee shop); and

4. Likely changed over time even when Plaintiffs remained on the same local network (due to IP address lease expiration or gateway device lost connectivity).

In fact, the only information that can be gleaned from a public IP address is: (1) the name of the ISP who leased the public IP address and (2), potentially, the general geographical location of the gateway device to which the public IP address was leased (country, city, region, or zip code)[2]. [*Id.* at ¶ 28.] As stated above, that information can no more identify a person than a ZIP code can identify the persons living within it. And no court has ever found that the disclosure of a ZIP code alone constitutes an injury-in-fact. *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) ("California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes."); *Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (no concrete injury based on collection of ZIP code). Just as most, if not all, courts have

[2] Given the prevalence of IP address masking technologies, such as virtual private networks ("VPNs"), IP address may, but do not necessarily, provide the general location of a user. [Oliver Decl., ¶ 30.]



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

found no reasonable expectation of privacy in a public IP address. *See, e.g., United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."); *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016) (same); *United States v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010) (same).

Without plausibly alleging that any of the information allegedly collected by Google identified them, Plaintiffs have not and cannot allege an invasion of privacy sufficient to establish Article III injury-in-fact. *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *5 (S.D. Cal. June 12, 2023) (dismissing claims for lack of standing because "Plaintiff does not allege that Defendant recorded or collected any of her personal information"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023), *reconsideration denied*, No. 5:22-CV-01456-SB-SP, 2023 WL 4195768 (C.D. Cal. May 18, 2023) (finding no injury-in-fact where the plaintiff did "not allege that she disclosed…any specific personal information…that implicates a protectable privacy interest").

**2. "Statutory Damages" Are Not Injury-in-Fact.**

The Supreme Court's decision in *Spokeo, Inc.* made clear that "allegations of statutory damages, without more, are insufficient to show an injury in fact[.]" *Prima Asset Corp. v. Goh*, No. SACV171390DOCDFMX, 2017 WL 11662669, at *3 (C.D. Cal. Dec. 21, 2017). And as demonstrated above and below, Plaintiffs do not allege anything "more."

**3. Diminution in Value of Their Information Is Not Injury-in-Fact.**

While the Ninth Circuit "has recognized diminution in value of personal information as a viable theory of damages under state contract law," *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016), such diminution can only constitute injury-in-fact when supported by "allegations describing how the [the defendant's conduct] devalued plaintiffs' specific information…such that [plaintiffs] are prevented from deriving economic benefit from this information in the future*," I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 (N.D. Cal. 2022).

Here, aside from claiming that "there is an economic market for a consumer's personal



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

data," [Dkt. No. 36, ¶ 86], and that "individuals can sell or monetize their own data if they choose to do so," [*id.* at ¶ 92], Plaintiffs allege nothing to suggest that somehow ***their*** information has lost value. They do not even claim that they have attempted to sell their information.

**4. Plaintiffs' "Ongoing Risk" Claims Are Not Injury-in-Fact.**

In order for future "risk of harm" to give rise to a present injury-in-fact, the risk "must either *materialize* or *cause some other injury* in order to confer standing in a suit for damages." *I.C.*, 600 F. Supp. 3d at 1050 (emphasis added). Here, Plaintiffs allege neither. They do not explain how "their private medical information" is at risk, nor do they identify any instances of "harassment, spam, and targeted advertisements specific to their medical and mental health conditions and their other confidential information communicated and otherwise disseminated via the Psychology Today website." [Dkt. No. 36, ¶ 94.]

****

None of the four categories of harm identified by Plaintiffs in the SAC qualify as injury-in-fact for purposes of Article III standing. Therefore, this Court lacks jurisdiction over, and must dismiss, their SAC.

**B. <u>Plaintiffs Have Failed to State an Actionable Claim Against Sussex.</u>**

Plaintiffs assert five claims against Sussex, each requiring Plaintiffs to plausibly allege distinct elements. For example, Plaintiffs allege that Sussex violated their constitutional right of privacy. But, as demonstrated above, no such invasion occurred. Plaintiffs also allege that Sussex violated their rights under the CCPA. But Plaintiffs do not allege that Sussex failed to protect *their* "personal information." Plaintiffs further claim that Sussex violated the CMIA. But Plaintiffs fail to demonstrate (1) that the CMIA applies to Sussex or (2) that Sussex disclosed or negligently released *their* "medical information." Finally, Plaintiffs assert that Sussex violated CIPA by aiding and abetting Google's alleged eavesdropping and wiretapping of their communications. But, again, there can be no eavesdropping or wiretapping when the information allegedly collected is *anonymous*. At bottom, Plaintiffs have failed to plausibly allege a single, viable claim against Sussex. Their SAC must be dismissed.

**1. Plaintiffs' Constitutional Invasion of Privacy Claim Fails.**



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

An invasion of privacy claim under the California Constitution requires three things: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). Plaintiffs here have plausibly alleged none of these three elements.

**First**, there can be no "privacy interest," and certainly not one in which Plaintiffs would have a reasonable expectation of privacy, when, as here, the information allegedly collected and/or disclosed does not identify anyone. *Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at **5, 6 (W.D. Wash. Dec. 21, 2023) (finding no "legally protected privacy interest in which [plaintiffs] had a reasonable expectation of privacy" where the defendant collected "internet browsing activities, internet searches," "online shopping behavior," "keyword search terms, URLs, and unique user identifiers and cookies" but no "personal" information).

**Second,** even if Plaintiffs did have a reasonable expectation of privacy in their IP addresses, pages visited, and browsing information, Sussex allowing Google to collect that information is not "sufficiently serious in…nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms***., *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994) (emphasis added). For example, in *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), the court analyzed the information allegedly disclosed—"unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices"—and found that "such disclosure does not constitute an egregious breach of social norms." *Id.* at 1063. Similarly, in *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011), as modified (June 7, 2011), the Court found no "egregious breach of social norms" based on the defendant's alleged unconsented-to collection and use of the plaintiff's residential address. *Id.* at 992. In the court's words, the defendant's conduct was more akin to "routine commercial behavior." *Id.*

The same is true here. Disclosure of Plaintiffs' non-identifying IP addresses, pages visited and browsing histories is not an "egregious breach of social norms." It is "routine commercial behavior." Plaintiffs have failed to state an actionable claim for invasion of privacy under California's constitution. Their claim, therefore, must be dismissed.

**2. Plaintiffs' CCPA Claim Fails.**

To bring against Sussex a viable claim under the CCPA, Plaintiffs must allege that their "personal information," as defined by Cal. Civ. Code § 1798.81.5(A)(1)(d), was accessed and exfiltrated, stolen, or disclosed. § 1798.81.5(A)(1)(d) defines "personal information" as including, at the very least, either "[a]n individual's first name or first initial and the individual's last name" or "[a] username or email address in combination with a password or security question and answer that would permit access to an online account."

Nowhere in the SAC do Plaintiffs allege that their names and/or log-in information were disclosed to Google. In fact, the only location on the Site that allows a user to enter his or her name is the "email" form, and Plaintiffs have already admitted that Google Analytics does not collect that information.

THE COURT: Okay. So how about the form that they have to complete; are you alleging that Google Analytics collects that information from the form?

MR. GROVER: ….I don't think we're directly alleging, no, that Google Analytics gets the actual form

[Pearson Decl., **Ex. A**, at Tr. 8:2-8:8]

Therefore, Plaintiffs have failed to allege that their "personal information" was accessed and exfiltrated, stolen, or disclosed and, therefore, have no statutory right to sue Sussex for violation of the CCPA. Their CCPA claim must be dismissed.

**3. Plaintiffs' CMIA Claim Fails.**

Plaintiffs' CMIA claim requires them to allege, among other things, that the CMIA applies to Sussex and that the information allegedly disclosed or negligently released to Google qualifies as their "medical information." Plaintiffs fail to allege either of these requirements.

***a. Plaintiffs Do Not Allege that the CMIA Applies to Sussex.***

Each of Plaintiffs' CMIA claims are predicated on a finding that Sussex is a "provider of healthcare," as that term is defined by the CMIA. *See Cal.* Civ. Code §§ 56.10(a) (prohibiting a "provider of health care" from "disclos[ing] medical information regarding a patient of the provider of health care…without first obtaining an authorization"); *id.* at § 56.101(a) (stating that "[a]ny



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

provider of health care…who negligently…maintains, preserves, [or] stores…medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36); *id.* at § 56.06 (identifying certain business that "shall be deemed to be a provider of health care subject to the requirements of this part").

But, because, as Plaintiffs admit, Sussex is a "private media company" and not a hospital, clinic, or outpatient facility, [Dkt. No. 36, ¶ 2], Plaintiffs must allege that Sussex somehow falls within one of the enumerated categories of businesses that qualify as "providers of health care" under California Civil Code § 56.06. Sussex does not employ a single mental health provider, and its directory functions merely as a free, online yellow pages for therapists—similar to directories available in virtually every profession, from plumbers to lawyers. To circumvent this, Plaintiffs resort to piecemeal analysis in an attempt to undermine at an otherwise obvious truth. Plaintiffs label Sussex a "mental health digital service" under Cal. Civ. Code § 56.05(l) and, therefore, a "provider of health care" subject to the CMIA's requirements under § 56.06(d). [Dkt. No. 36, ¶ 111, 114]. They also claim that because Sussex is a "business that offers software or hardware to consumers…designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual," Sussex is deemed a "provider of health care" under Cal. Civ. Code § 56.05(b). [Dkt. No. 36, ¶ 111]. Neither is true.

**Sussex does not provide a "mental health digital service."** Under the CMIA, a "mental health digital service" is (1) "a mobile-based application or internet website that collects mental health application information from a consumer," i.e., "information related to a consumer's inferred or diagnosed mental health or substance use disorder," Cal. Civ. Code § 56.05(k); (2) "markets itself as facilitating mental health services to a consumer;" and (3) "uses the information to facilitate mental health services to a consumer," Cal. Civ. Code § 56.05(l). Not all businesses that offer "mental health digital services," however, are subject to the CMIA. The CMIA only applies when the business "offers a mental health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management

of a medical condition of the individual." Cal. Civ. Code § 56.06(d).

In the SAC, Plaintiffs claim that Sussex provides a "mental health digital service" because it (1) "is both an internet website (www.psychologytoday.com) and a mobile application (Sessions by Psychology Today!) that collect[s] personal and mental health information from consumers, including their inferred or diagnosed mental health condition," [Dkt. No. 38, ¶ 11]; (2) "markets itself as facilitating mental health services to consumers," [*id.* at ¶ 112]; and (3) "facilitates mental health services" through its "search-engine tool to find a mental healthcare provider based on specific symptoms, concerns, and preferences input by the user," "links and buttons for the user to click and, by so doing, directly call or send an email communication to a therapist of interest," [*id.* at ¶ 112], and its "online platform (Sessions) for users and therapists to communicate regarding appointment details and check-in information and by hosting online teletherapy sessions either directly on the Sessions by Psychology Today webpage or through its mobile app," [*id*. at ¶ 113].

Plaintiffs' claim fails for numerous reasons. **First**, Sussex does not collect "a consumer's inferred or diagnosed mental health or substance use disorder." The search terms input, and the filters used on the Site do not relate to the ***consumer's*** inferred or diagnosed mental health or substance use disorder; they merely identify the gender and qualifications of the clinician or therapist that the consumer is seeking. Moreover, even if the Court were to find that such terms and filters did relate to the consumer's inferred or diagnosed mental health or substance use disorder, neither Sussex nor Google would know who the consumer was. In other words, the inferred or diagnosed mental health or substance use disorder information collected could not be attributed to ***an identifiable individual***.

**Second,** to the extent that Plaintiffs' claim that their emails to clinicians and therapists included their names and "inferred or diagnosed mental health or substance use disorder," they still have not alleged that Sussex used this information "to facilitate mental health services." In fact, Plaintiffs make clear that the Site allowed them to "contact therapists ***directly*** through the website." [Dkt. No. 36, ¶ 4 (emphasis added).] Thus, aside from allegedly collecting the contents of the emails, Plaintiffs do not allege that Sussex, itself, "uses" the information at all.

**Third**, even if Sussex is deemed to provide a "mental health digital service," Plaintiffs have

failed, entirely, to allege any facts that would support a finding that Sussex offered this service "for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual." At best, Plaintiffs have alleged that, through the Site, Sussex aided them in locating an appropriate clinician or therapist. They do not claim that Sussex played any role, whatsoever, in allowing them to manage their information, or in their diagnosis, treatment, or management of their condition. In fact, Plaintiffs do not even allege that Sussex knows what their diagnoses or treatment was.

Plaintiffs have failed to allege that Sussex provided a "mental health digital service," let alone did so for the purposes of "allowing the[m]… to manage…[their] information, or for the[ir] diagnosis, treatment, or management of a medical condition…." As such, Plaintiffs have not alleged that Sussex was a provider of health care under Cal. Civ. Code § 56.06(d).

**Sussex does not provide "software or hardware to consumers that is designed to maintain…medical information" for any purposes, let alone "in order to make the information available to an individual or health care provider, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual."** As an initial matter, the Central District of California has already held that while a website, like the Site, may require "hardware and software (i.e., a computer and its programs)…to access" it, the website, in and of itself, is not hardware or software. *Oddei v. Optum, Inc.*, No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035, 2022 WL 17538747 (9th Cir. Dec. 8, 2022).

Moreover, to the extent Plaintiffs are alleging that Sussex's version of zoom, Sessions, constituted "software or hardware," they have not alleged, nor could they, that Sessions was designed to maintain any medical information. In fact, the only information that Plaintiffs allege Sussex collected through Sessions is a name. [Dkt. No. 36, ¶ 22 ("Plaintiff D.G. then was required to enter her name in the virtual waiting room in order to join the therapy session[.]"). Clearly, a name is not medical information. *See* Cal. Civ. Code § 56.05(j). And, certainly, a name alone would be of no use to a user in "manag[ing]" his or her "information" or "for the diagnosis, treatment, or



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

management" or his or her "medical condition."

Plaintiffs have failed to allege that Sussex is a "provider of health care" and, therefore, has failed to allege that the CMIA applies to Sussex. Plaintiffs' CMIA claim must be dismissed.

***b. Plaintiffs Fail to Allege That Their Medical Information Was Disclosed to or Viewed by An Unauthorized Person.***

The CMIA regulates the disclosure and negligent release of "medical information." In order to constitute "medical information," the information must (1) be "individually identifiable," (2) be "in possession of or derived from a provider of health care," and (3) be in "regard[s] [to] a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). None of the information Sussex allegedly allowed Google to collect meets these criteria.

**First,** none of the information Plaintiff alleges Google collected was "individually identifiable." The CMIA defines "individually identifiable" as "information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05(j). Here, Plaintiffs do not allege that Google received any of this information. They allege that Google received a public IP address, and, as courts have held in the past, an IP address "does not…identify the user, just the location of internet access." *Jenkins*, 2019 WL 1568154, *4.

**Second,** none of the information Plaintiffs allege Google collected was "in possession of or derived from a provider of health care." In fact, Plaintiff claims that the information collected was sent directly from their browser to Google. [Dkt. No. 36, ¶ 41 (alleging that "Google Analytics contemporaneously sends a second, duplicate set of transmissions to Google's servers," which "are initiated by Google Analytics code and are concurrent with the communications with the host website, enabling Google instantaneously to collect and view the same information that website users are sharing with the host").] Therefore, aside for Plaintiffs, who are clearly not "providers of health care," there is no other entity that the collected information could have been "in possession



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

of" or "derived from."

**Third,** none of the information Plaintiffs allege Google collected related to ***their*** "medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." This is true not only because Google did not collect any information that would identify Plaintiffs, but also because, as the Ninth Circuit held in *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), "the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements [for medical information] apply." In other words, even if Google could have identified Plaintiffs while they were browsing the Site, the information collected by Google would still not be "medical information" because "[w]ithout knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)."*Am. Hosp. Ass'n v. Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, at *14 (N.D. Tex. June 20, 2024).

As proof of this point, the Court need only review the video Plaintiffs attached as Exhibit B to the SAC. In the video, an unidentified user (1) searches for therapists in "San Francisco" and (2) narrows the list of therapists by clicking on various filters (i.e., "male," "anxiety," "drug abuse," etc.). Plaintiffs presumably included the video to illustrate the process they followed when using the Site. There is, however, a crucial distinction: the user in the video, unlike Plaintiffs, is not searching for a therapist for themselves; they are just clicking buttons. No one—not even Plaintiffs—would argue that the information collected by Google during the video constituted "medical information." Yet, under Plaintiffs' argument, it would qualify as such because neither Sussex nor Google has any way to differentiate Plaintiffs from the user in the video. All Sussex and Google know is that *someone* was clicking buttons on the site; they have no idea *why* the buttons were being clicked.

For information to qualify as "medical information," it must relate to "a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment," Cal. Civ. Code § 56.05(j), and, as the





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

court in *Becerra* explained and as demonstrated by Plaintiffs' video, without knowing *why* someone is on the site, which neither Sussex nor Google knows, the information collected on the Site cannot be "medical information."

**Fourth,** Plaintiffs do not allege that Sussex "disclosed," as required under Cal. Civ. Code § 56.10, or "negligent released," as required under Cal. Civ. Code § 56.101, their medical information. In order to allege a "disclosure" under § 56.10, the plaintiff must allege that the defendant "affirmatively communicated" her information to an unauthorized third party. *See Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1555–56 (2014) (stating that, in the context of the CMIA, a "disclosure" "occurs when the healthcare provider affirmatively shares medical information with another person or entity"). To allege a "negligent release" under § 56.101, a plaintiff must allege sufficient facts to demonstrate that some unauthorized person "actually viewed" her medical information. *See, e.g., id.* at 1557 (holding that, to state a viable claim under § 56.101, the plaintiff must plead that "an unauthorized person view[ed] the medical information"); *B.K. v. Eisenhower Med. Ctr.*, No. EDCV232092JGBKKX, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) (same).

Here, Plaintiffs allege neither. In fact, as it relates to their § 56.10 claim, Plaintiffs go out of their way to allege that the information allegedly collected by Google was never in Sussex's possession at all. It, according to Plaintiffs, was sent directly to "Google's servers" at the same time it was being sent to Sussex. [Dkt. No. 36, ¶ 41.] Clearly, Sussex could not have "affirmatively" communicated the information if, as Plaintiffs allege, Google Analytics "initiates" a "second, duplicate set of transmissions," [*id.* at ¶ 41], and directs "the user's browser" to "concurrently send…copied message[s] to Google's Servers," [*id.* at ¶ 40].

Their allegations regarding "unauthorized viewing" fare no better. While they repeatedly conclude that Google "views" their information, [Dkt. No. 36, ¶¶ 9, 31, 41, 43-44], they offer no facts to support this conclusion. They do not allege to have received targeted advertising or email marketing based on their interactions with the Site, nor do they allege anything else that would even suggest that Google was, in some way, "access[ing], view[ing], or us[ing]" the information collected. They simply use the word "viewed," hoping it is enough. It is not. *See, e.g., B.K.*, 2024



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

WL 878100, at *4 (dismissing in tracking class action § 56.101(a) claim because "Plaintiffs do not allege facts showing anyone improperly viewed or accessed any medical information"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129 (S.D. Cal. 2023) (same).) As the Court in *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023), noted when dismissing a § 56.101 claim: "the information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it." *Id*. at *7.

In sum, Plaintiffs have not only failed to allege that the CMIA applies to Sussex, but they have also failed to allege that Sussex violated it. Plaintiffs' CMIA claim must be dismissed.

**4. Plaintiffs' CIPA Claims Fail.**

Plaintiffs assert claims under two different sections of CIPA: § 632 and § 631(a). These two sections, while regulating different conduct and requiring proof of different elements, can only form the basis of a claim if a "violation" of them "injure[s]" the plaintiff. Cal. Penal Code § 637.2(a); *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) ("Only a person 'who has been injured by a violation of this chapter' may assert a civil claim.").

Plaintiffs here do not allege any facts to support their claim that they have been "injured" by a violation of either § 632 or § 631(a). Indeed, courts have consistently held that where, as here, the "communication" allegedly eavesdropped on or wiretapped does not identify the individual, no injury can result. *See., e.g.*, *Henson*, 2018 WL 6605624, at *4 ("Because Plaintiffs have not alleged that their data is confidential and readily recognizable and identifiable as belonging to any particular person, the Court finds that they have failed to state a cognizable injury."). And, as explained above, Plaintiffs have not alleged that any of the communications allegedly eavesdropped on or wiretapped by Google identified them.

***a. Plaintiffs Have Not Stated an Aiding-and-Abetting Claim Under CIPA § 632.***

"CIPA Section 632 imposes liability against a 'person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.'" *Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2024 WL 3875785, at *6 (N.D. Cal. Aug. 16, 2024) (emphasis added).)

Plaintiffs do not allege that Sussex is directly liable for eavesdropping or recording their communications, given that "a party cannot 'eavesdrop' on their own conversation under the first prong of section 632," *Turner v. Nuance Commc'ns, Inc.*, No. 22-CV-05827-DMR, 2024 WL 2750017, at *8 (N.D. Cal. May 28, 2024), and that website interactions are "by their very nature, recorded," *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1122 (S.D. Cal. 2023). Instead, Plaintiffs assert that Sussex is liable under CIPA § 632 because it aided and abetted Google in eavesdropping on and/or recording their interactions on the Site. [Dkt. No. 36, ¶ 157.]

Plaintiffs'§ 632 aiding-and-abetting claim fails for two reasons. **First,** Plaintiffs have not alleged the elements necessary to impose aiding and abetting liability on Sussex. Defendants "aid and abet" a violation of CIPA § 632 "when they (a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578, at *5 (N.D. Cal. Oct. 21, 2024).) Put another way, for aiding-and-abetting liability to attach, Plaintiffs must allege that Sussex "knowingly agreed with or employed [Google] to engage in conduct that violated the wiretapping statute." *Id.*

That, however, is not what Plaintiffs allege. Instead, they claim that "Google Analytics collects data from a website or application to create shareable reports that provide insights into a business" and that "[i]t is designed to…provide a company with a complete understanding of its marketing efforts and to enhance performance." [Dkt. No. 36, ¶ 39.] That Plaintiff alleges that Google was using the data collected unlawfully [*id.* at ¶ 45], in no way alters the fact that Sussex did not knowingly agree to, or install Google Analytics for the purpose of, violating CIPA § 632. *Smith*, 2024 WL 4539578, at *5 (dismissing aiding-and-abetting claim because plaintiff's allegations did not give rise to "a plausible inference that Defendant had knowledge of Adyen's conduct violating the statute, let alone had an intent or purpose of aiding it substantially").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**Second,** Plaintiffs have not alleged that any of the information collected by Google on the Site constituted a "confidential communication." A communication is "confidential" for purposes of § 632 if "one of the parties 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022) (internal quotations omitted). The general rule in California is that "Internet communications do not reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). In fact, where, as here, internet communications are involved, "plaintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021).

Plaintiffs here allege no such "unique, definite circumstances." They merely allege that, while browsing the Site, Google collected their public IP address, their button clicks, and the pages they viewed—all of which has been held not to be "confidential." *See, e.g., Revitch*, 2019 WL 5485330, at *3 (dismissing with prejudice § 632 claim because plaintiff "cannot allege that his browsing activity and form field entries fall within the scope of confidential communications protected by section 632"); *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) ("[A] number of courts have found ['mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), [and] URLs of web pages visited'] [are] not something over which a consumer has an objectively reasonable expectation of privacy"). In fact, the "communications" here are even less confidential than in other cases because neither Sussex nor Google knew who was communicating.

***b. Plaintiffs' § 631(a) Aiding-and-Abetting Claim Fails.***

CIPA § 631(a) imposes liability under four distinct scenarios. *B.K. v. Desert Care Network*, No. 223CV05021SPGPDX, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) ("*Desert Care*").) Here, Plaintiffs allege that Sussex is liable under the fourth clause of § 631(a)—aiding and abetting. [*See* Dkt. No. 36, ¶ 145.] Liability can only be established under the fourth clause if the plaintiff can allege a violation of one of the first three clauses. *Esparza v. Gen Dig. Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024); *see also Williams v. What If*

*Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (stating that, under aiding-and-abetting theory of liability, the defendant's "liability…is…based entirely on whether [a third party] violated Section 631(a) in some way").

**Plaintiffs Have Not Alleged a Violation of the First Clause.** Plaintiffs cannot, as a matter of law, state a claim under the first clause of CIPA § 631(a) because the first clause of CIPA § 631(a) *does not apply to online conduct. See, e.g., Cody v. Ring LLC*, No. 23-CV-00562-AMO, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024) ("Clause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet[.]").

**Plaintiffs Have Not Alleged a Violation of the Second Clause.** "The second clause of Section 631(a) applies if a third party reads or learns the content of communications without the consent of all parties, 'while' the communication is 'in transit ... or is being sent from, or received' within California." *Cody*, 2024 WL 735667, at *4. "'While' is the key word[.]" *Valenzuela v. Keurig Green Mountain, Inc.,* 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). For the second clause to even apply, the alleged third-party eavesdropper—here, Google—must "read or learn" the content of a communication *while it is in route to the intended recipient. Id.* at 759 ("'While' implies the interception must occur contemporaneous with the sending or receipt of the message.").)

That Plaintiffs here repeatedly use the term "intercept" in the SAC is of no consequence. Numerous courts have held that "[u]sing the word 'intercept' repeatedly is simply not enough[.]" *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also Cody*, 2024 WL 735667, at *5 (dismissing claim under second clause of CIPA § 631(a) because the plaintiff's "conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations."); *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *9 (C.D. Cal. Apr. 2, 2024) (same). Plaintiffs must allege specific facts that make it plausible that Google is reading or learning their information while it is in transit. They have already admitted that that was not occurring.

THE COURT: …Like, what is being read simultaneously while it's being transmitted?

MR. GROVER: Well, the information – it's not being -- we're not alleging it's





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

being read by a human.

THE COURT: No. [Pearson Decl., **Ex. A,** at Tr. 12:12-16]

MR. GROVER: When I'm hitting the "send" button to get the results of the search, it's doing it -- you know, it's going to two places, essentially.

THE COURT: But where do you get from the statute that sending it is the same as reading it or listening to it?

MR. GROVER: Ah. [*Id.* at Tr.13:20-25.]_

Not only do Plaintiffs not allege that Google is reading or learning their information "while it is in transit," but they actually allege the exact opposite. Plaintiffs claim that "[o]nce Google Analytics ***receives***," (i.e., no longer "in transit"), "views, reads, and processes the raw user data, it aggregates and organizes the data based on particular criteria." [Dkt. No. 36, ¶ 43 (emphasis added).] If Google Analytics receives the information before it views it, it clearly is not "reading or learning" the contents of the information "while it is in transit".

**Plaintiffs Have Not Alleged a Violation of the Third Clause.** "To state a claim for derivative liability under clause three," as Plaintiffs attempt to do here, Plaintiffs "must allege that [Google] 'use[d], or attempt[ed] to use, in any manner, or for any purpose, or to communicate in any way, any information [ ] obtained [in violation of clause one or clause two].'" *D'Angelo v. FCA US, LLC*, No. 323CV00982WQHMMP, 2024 WL 1625771, at *12 (S.D. Cal. Mar. 28, 2024). *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023) ("A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause[.]").

Because Plaintiffs' CIPA § 631(a) claim is based, entirely, on an aiding-and-abetting theory of liability and because Plaintiffs have failed to adequately allege that Google violated CIPA § 631(a), their CIPA § 631(a) claim must be dismissed.

### 5. Plaintiff's CIPA § 631(a) Aiding-and-Abetting Claim Fails for the Additional Reason That Plaintiffs Do Not Allege the Requisite Intent.

"Section 631 requires defendants to act 'willfully' or 'intentionally.'" *Desert Care*, 2024 WL 1343305, at *7. Therefore, where the plaintiff fails to allege sufficient facts to establish that



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

the third-party interceptor—here, Google—acted with the requisite intent, courts have dismissed aiding and abetting claims. *Id.* (dismissing claim because "Plaintiffs' allegations indicate[d] that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality"). That is the case here.

Plaintiffs allege nothing that would suggest that anything Google did was "willful or intentional." Indeed, the most they allege is that "Google Analytics collects data from a website or application to create shareable reports that provide insights into a business, and is designed to work together with other Google solutions to provide a company with a complete understanding of its marketing efforts and enhance performance." [Dkt. No. 36. ¶ 39.] That is not intentional criminal behavior. It is run-of-the-mill commercial behavior.

Plaintiffs must also allege that Sussex "add[ed] or embed[ded] [Google's] small piece of JavaScript measurement code into each page of its site" [*Id.* at ¶ 40], with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts," *Smith*, 2024 WL 4539578, at *4. In other words, where a defendant "properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute," the "defendant has not aided, agreed with, or employed the third party to perform acts that violate the wiretapping statute." *Id.*

That, too, is the case here. Nothing Plaintiffs have alleged would demonstrate or even suggest that Sussex installed Google Analytics on the Site with "any knowledge or intent that [Google] w[ould] use the information [collected] in a manner that violates [CIPA]." As Plaintiffs admit, Sussex installed Google Analytics simply to obtain "analytics services," [Dkt. No. 36, ¶¶ 9, 31]. Plaintiffs' CIPA § 631(a) claim must be dismissed.

## V. <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant Sussex Publishers, LLC respectfully requests that the Court grant its Motion to Dismiss in full and with prejudice.

Respectfully submitted,

Dated: December 10, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON
*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

4916-3442-6627

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA