ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

DON BIVENS (*pro hac vice admission)*
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN, A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
R.C. and D.G., Individuals

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 3:24-cv-02609-JSC<br><br>Assigned to Honorable Jacqueline Scott Corley<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>Date: February 27, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8<br><br>Complaint Filed: November 30, 2023<br>FAC Filed: August 12, 2024<br>SAC Filed: October 31, 2024 |



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................8
II. PLAINTIFFS HAVE ALLEGED INJURY IN FACT ....................8
A. Invasion of privacy is a concrete harm. .................... 8
1. Identification is not a requirement of an invasion-of-privacy claim....................10
2. Defendant's argument that unauthorized disclosure of IP addresses cannot show injury in fact is wrong on multiple levels. ....................11
3. Defendant raises jurisdictional factual disputes intertwined with merits issues that cannot be resolved at the pleading stage. ....................12
B. Plaintiffs suffered the diminution of the value of their personal information. .................... 14
C. Plaintiffs sufficiently allege an ongoing risk. .................... 16
D. Plaintiffs sufficiently allege statutory damages. .................... 16
III. PLAINTIFFS HAVE PLEADED EACH CLAIM SUFFICIENTLY. ....................16
A. Legal standard for Rule 12(b)(6) motion to dismiss. .................... 16
B. Plaintiffs sufficiently allege a CMIA claim. .................... 17
1. Plaintiffs' "medical information" is at issue. ....................17
2. The medical information disclosed was "individually identifiable." ....................19
3. Defendant is a mental health digital service and/or a provider of healthcare subject to the requirements of the CMIA. ....................20
4. Plaintiffs allege unauthorized disclosure or unauthorized viewing. ....................23
C. Plaintiffs have alleged CIPA claims sufficiently. .................... 25
1. Plaintiffs properly allege claims under Pen. Code § 631(a). ....................26
2. Plaintiffs allege that Google "read" the contents "in transit." ....................27
3. Plaintiffs allege that Sussex and Google acted intentionally and willfully. ....................29
4. Plaintiffs have alleged Penal Code § 632 claims. ....................30
D. Plaintiffs sufficiently have alleged a constitutional invasion-of-privacy claim. .................... 31
IV. CONCLUSION ....................33

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*A.B. v. Google LLC*,
2024 U.S. Dist. LEXIS 108185 (N.D. Cal. June 18, 2024) ........ 15

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) ........ 30

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024) ........ 24

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ........ 8, 13, 14

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ *passim*

*Brown v. Google LLC*,
2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021) ........ 15

*Byars v. Sterling Jewelers, Inc.*,
2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) ........ 12

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........ 9, 10, 11, 31

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ........ 24

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 25, 26

*Cousin v. Sharp Healthcare* (*Cousin II*),
702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023) ........ 19, 23, 24

*Davis v. Facebook, Inc.* (*In re Facebook Inc. Internet Tracking Litig.),*
956 F.3d 589 (9th Cir. 2020) ........ *passim*

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 U.S. Dist. LEXIS 12175 (E.D. Cal. Jan. 22, 2024) ........ 9

*Doe v. Regents of UC*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 23, 30, 31

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........ 14

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
750 F.3d 1098 (9th Cir. 2014) .......... 19, 20

*Heiting v. Taro Pharms. USA, Inc.*,
2024 U.S. Dist. LEXIS 135780 (C.D. Cal. July 31, 2024) .......... 25, 27, 30

*Henson v. Turn, Inc*,
2018 U.S. Dist. LEXIS 212249 (N.D. Cal. Dec. 17, 2018) .......... 10

*I.C. v. Zynga*,
600 F. Supp. 3d 1034 (N.D. Cal 2022) .......... 15, 16

*In re Blackbaud, Inc.*,
2021 U.S. Dist. LEXIS 151831 (D.S.C. Aug. 12, 2021) .......... 22

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 14

*In re Google Referrer Header Privacy Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) .......... 10

*In re Google RTB Consumer Privacy Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) .......... 12, 32

*In re Meta Healthcare Pixel Litig.*,
2024 U.S. Dist. LEXIS 15391 (N.D. Cal. Jan. 29, 2024) .......... 18, 19

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 20, 31

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 15

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 29

*Lee v. City of L.A.*,
250 F.3d 668 (9th Cir. 2001) .......... 16, 17

*Lightoller v. JetBlue Airways Corp.*,
2023 U.S. Dist. LEXIS 102158 (S.D. Cal. June 12, 2023) .......... 12

*M.G. v. TherapyMatch, Inc.*
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) .......... *passim*

*Marden v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 132292 (N.D. Cal. July 3, 2024) .......... 21

*Massie v. Gen. Motors LLC*,
2022 U.S. Dist. LEXIS 28969 (D. Del. Feb. 17, 2022) .......... 11

*Mata v. Zillow Grp., Inc.*,
2024 U.S. Dist. LEXIS 229061 (S.D. Cal. Dec. 18, 2024) ........................................ *passim*

*Matera v. Google Inc.*,
2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sep. 23, 2016) ............................................... 16

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) ..................................................... 0

*Mirmalek v. L.A. Times Communs. LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ................................... 9, 11, 20

*Moody v. C2 Educ. Sys.*,
2024 U.S. Dist. LEXIS 132614 (C.D. Cal. July 25, 2024) ................................................ 11

*Oddei v. Optum, Inc.*,
2021 U.S. Dist. LEXIS 233362 (C.D. Cal. Dec. 3, 2021) .................................................. 23

*Prima Asset Corp. v. Goh,*
2017 U.S. Dist. LEXIS 236512 (C.D. Cal. Dec. 21, 2017) ............................................... 16

*Ramirez v. County of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) ............................................................................................ 28

*Revitch* v. *New Moosejaw, LLC,*
2019 U.S. Dist. LEXIS 186955 ............................................................................................ 27

*Saeedy v. Microsoft Corp.*,
2023 U.S. Dist. LEXIS 227915 (W.D. Wash. Dec. 21, 2023) .......................................... 32

*Shah v. Fandom, Inc.*,
2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ............................................. 9, 11

*Smith v. Facebook*,
745 F. App'x 8 (9th Cir. 2018) ............................................................................................ 19

*Smith v. Google, LLC*,
2024 U.S. Dist. LEXIS 98367 (N.D. Cal. June 3, 2024) ............................................... 28, 29

*Smith v. Yeti Coolers, LLC*,
2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ................................................ 25

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......................................... *passim*

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ......................................................................... *passim*

*Stoba v. Saveology.com, LLC*,
2014 U.S. Dist. LEXIS 98058 (S.D. Cal. July 18, 2014) .................................................... 26

*Svenson v. Google Inc.*,
2015 U.S. Dist. LEXIS 43902 (N.D. Cal. Apr. 1, 2015) .................................................... 15

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Tavantzis v. Am. Airlines, Inc.*,
2024 U.S. Dist. LEXIS 31474 (N.D. Cal. Feb. 23, 2024) .................... 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) .................... 8

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) .................... 25

*United States v. Jenkins*,
2019 U.S. Dist. LEXIS 62776 (N.D. Ga. Apr. 11, 2019) .................... 12

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .................... 14

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*,
524 F.3d 1090 (9th Cir. 2008) .................... 13

*Yockey v. Salesforce, Inc.*,
2024 U.S. Dist. LEXIS 146802 (N.D. Cal. Aug. 16, 2024) .................... *passim*

**Federal Statutes**

15 United States Code
§ 1681 .................... 16

45 Code of Federal Regulations
§ 160.103 .................... 20
§ 164.514 .................... 12, 20

**State Cases**

*Barbour v. John Muir Health,*
2023 WL 2618967 (Cal. Super. Jan. 5, 2023) .................... 24

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .................... 30

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .................... 32

*Saunders v. Superior Court*,
27 Cal.App.4th 832 (1994) .................... 25

*Sutter Health v. Sup. Ct.*,
227 Cal. App. 4th 1546 (2014) .................... 23, 24

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**State Statutes**

California Civil Code
§ 56.05 .......... 18, 19, 20, 21
§ 56.06 .......... *passim*
§ 56.10 .......... 17, 23
§ 56.101 .......... 17, 23
§ 1798.91 .......... 19
§ 1798.140 .......... 12
§ 1798.150 .......... 8

California Penal Code
§ 502 .......... 15
§ 630 .......... 10
§ 631 .......... 25, 27, 28, 29
§ 632 .......... 30, 31
§ 632.7 .......... 10
§ 637.2 .......... 25
§ 638.51 .......... 20
§ 1546 .......... 12

**Rules**

Federal Rules of Civil Procedure,
Rule 12 .......... *passim*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**I. INTRODUCTION**

The Second Amended Complaint ("SAC") alleges that Defendant unlawfully disclosed Plaintiffs' sensitive personal and medical information to unauthorized third parties without Plaintiffs' consent or knowledge via website tracking technologies and analytics software embedded on the Psychology Today website. Plaintiffs allege that Sussex secretly shared with Google confidential medical information regarding their mental health conditions and the medical treatment that they sought for those conditions. Plaintiffs allege that Defendant's conduct violated the CMIA, CIPA, and their privacy rights under the California Constitution.[1]

Sussex challenges Plaintiff's injury-in-fact allegations by misstating the elements of a privacy invasion claim and misconstruing the SAC's allegations. Plaintiffs' right to control their personal and medical information underlies each of their claims and violation of that right is concrete harm Plaintiffs suffered because of Defendant's conduct. Based on that injury in fact, plus other harms discussed below, Plaintiffs have Article III standing for all of their claims. Sussex also raises jurisdictional factual disputes that are intertwined with the merits of the claims and thus cannot be resolved at the pleading stage. Defendant's Rule 12(b)(1) motion should be denied.

In its Rule 12(b)(6) motion, Defendant also misconstrues or ignores the SAC's detailed allegations, overlooks relevant case law addressing disclosure of medical information to unauthorized third parties, and erroneously attempts to apply a criminal standard of proof to Plaintiffs' civil claims. All of Defendant's arguments should be rejected and its motion denied.

**II. PLAINTIFFS HAVE ALLEGED INJURY IN FACT**

Defendant's Rule 12(b)(1) motion challenges only the "injury in fact" requirement. Plaintiffs have established Article III standing for all of their claims. *See* SAC ¶¶ 11-24, 27-31, 34, 37-94, 107-169; *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024), quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021).

**A. Invasion of privacy is a concrete harm.**

Throughout the SAC, Plaintiffs allege that Defendant invaded their privacy when, without

[1] Plaintiffs do not challenge the dismissal of the 2nd cause of action under Civ. Code § 1798.150.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

users' knowledge or authorization, it secretly disclosed their private medical information to Google via undisclosed website trackers and analytics software on its website. *See e.g.*, SAC ¶¶ 11-24, 37-85, 94, 107-169. These allegations demonstrate that Plaintiffs suffered the harm of invasion of privacy, which is a concrete injury establishing their standing for each claim at issue here.

Ninth Circuit case law is well settled that that the harm of invasion of privacy is an injury in fact that can establish Article III standing. *See e.g.*, *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Tracking*") (CIPA standing established where plaintiffs alleged invasion of their privacy rights), citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-18 (9th Cir. 2020) (similar); *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *12 (N.D. Cal. Dec. 12, 2024) (CIPA standing established in allegations that the defendant caused the "***Plaintiff's IP address to be disclosed to unconsented-to third parties***" (emphasis added)); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *15-17 (N.D. Cal. Oct. 21, 2024) (similar); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 923 (N.D. Cal. 2023) ("*Brown III*") (privacy harm allegations based on disclosure of plaintiffs' anonymized browsing data to unauthorized third parties established standing for CIPA and invasion-of-privacy claims); *Doe v. N. Cal. Fertility Med. Ctr.,* 2024 U.S. Dist. LEXIS 12175, at *9-13, n.4 (E.D. Cal. Jan. 22, 2024) (similar, CMIA claim).

"[V]iolations of the right to privacy have long been actionable at common law." *Facebook Tracking*, 956 F.3d at 598.[2] "[T]he Ninth Circuit has found, in near uniformity, that intangible injuries based on alleged violations of privacy-related statutes are sufficiently concrete." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 909 (S.D. Cal. 2020), citing *Campbell*, 951 F.3d at 1112, 1118, *Facebook Tracking*, 956 F.3d at 598. That includes that "the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed" CIPA, which "thus codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Facebook Tracking*, 956 F.3d at 598.

---

[2] For all case quotations, internal citations, quotation marks and original alterations are omitted.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**1. Identification is not a requirement of an invasion-of-privacy claim.**

Disclosure of a person's identity is *not* a requirement for an invasion-of-privacy claim. *See e.g.*, *Facebook Tracking*, 956 F.3d at 598 (stating elements claim); *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009-10 (N.D. Cal. 2020) ("*Google Referrer*") (rejecting argument that privacy harm occurs only when a website user's identity is disclosed). *Google Referrer* found that the plaintiffs sufficiently alleged concrete harm and that "their standing in no way depend[ed] on whether the search terms may be used to discover their identities." 465 F. Supp. 3d at 1008-10. "[I]nformation need not be personally identifying to be private." *Id.*

The Ninth Circuit also has found the collection of "anonymized and aggregated" data sufficient to constitute injury in fact for a CIPA claim. *Campbell*, 951 F.3d at 1119 (collection of the contents of plaintiffs' online private messaging, without their consent, harmed plaintiffs' privacy interests). The court in *Brown III* found that the plaintiffs suffered a concrete privacy harm and had standing for their CIPA claims where the defendant disclosed their IP addresses and personal browsing even though it was anonymized. *Brown III*, 685 F. Supp. 3d at 923-25 (denying summary judgment motion). The court rejected the argument "that privacy harms are never concrete where only anonymized data is collected." *Id.* at 924, citing *Campbell*, 951 F.3d at 1112.

Further, CIPA's privacy protections are not limited by whether the person's identity is disclosed. *See* Pen. Code §§ 630, *et seq.* For example, Penal Code § 632.7 prohibits recording conversations on cellular telephones without all parties' consent. Whether the recording party knows the person's name has no bearing on the privacy invasion. *See also*, *Google Referrer*, 465 F. Supp. 3d at 1007-10 (discussing similar examples involving various privacy statutes).

The cases Defendant cites are inapposite. *See* Defendant's Motion to Dismiss the Plaintiffs' Second Amended Complaint for Damages ("MTD")' at 6-7, citing, for example, *Henson v. Turn, Inc*, which addressed violations of a New York state law and followed New York courts' interpretation of that law. 2018 U.S. Dist. LEXIS 212249, at *8-11 (N.D. Cal. Dec. 17, 2018). The out-of-circuit cases regarding "session replay software" addressed claims that the defendant recorded visitors' movements on its retail website for its own use, <u>not</u> that it disclosed their sensitive data to unauthorized third parties for the third parties' benefit. *See* MTD at 6-7, citing

*Massie v. Gen. Motors LLC*, 2022 U.S. Dist. LEXIS 28969, at *4, 7-14 (D. Del. Feb. 17, 2022) and cases involving non-California claims not at issue here.[3]

**2. Defendant's argument that unauthorized disclosure of IP addresses cannot show injury in fact is wrong on multiple levels.**

Defendant next argues that Plaintiffs do not show injury in fact because IP addresses do not identify the website user. The argument fails from the start because it is based on the flawed premise that invasion-of-privacy claims require identification. As discussed above, controlling Ninth Circuit and persuasive California district court case law hold otherwise. *See e.g.*, *Campbell*, 951 F.3d at 1119; *Brown III*, 685 F. Supp. 3d at 923-25.

Defendant's argument also is a red herring, designed to distract from the privacy harm that Plaintiffs suffered from Defendant's unauthorized sharing with Google of Plaintiffs' *sensitive personal and medical information* in addition to their IP addresses. Plaintiffs allege that Sussex's Psychology Today website used tracking software that shared not just Plaintiffs' IP addresses but also their detailed browsing data, including descriptive URLs, that disclosed their mental health conditions and the treatment they were seeking for those conditions, all to an unauthorized third party without their consent. *See e.g.*, SAC ¶¶ 1-24, 27-31, 37-94, 107-169. Those allegations sufficiently show that Plaintiffs suffered concrete harm to their privacy interests. *See Stasi*, 501 F. Supp. 3d at 909-12 (finding concrete harm to privacy resulting from unauthorized disclosure of medical info); *see also, e.g., St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *32-34 (N.D. Cal. Oct. 1, 2024) (recognizing privacy interests in medical information).

Further, courts in this district have found injury-in-fact when the information disclosed to unauthorized third parties included IP addresses. *See Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *12; *Shah*, 2024 U.S. Dist. LEXIS 193032, at *15-17; *see also*, *Brown III*, 685 F. Supp. 3d at 919-20, 923-25; , *Moody v. C2 Educ. Sys.,* 2024 U.S. Dist. LEXIS 132614, at *9-11 (C.D. Cal. July 25, 2024) (finding CIPA standing where plaintiffs alleged that the defendant, via tracking software, secretly disclosed their device and browsing data to third parties without their consent).

---

[3] Although *Massie* addressed California claims, it too was an inapposite first-party, retail sessions replay case with no medical or other sensitive private data at issue. *Id.* at *7, 11, 13, n.4.



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Sussex's disclosure of Plaintiffs' sensitive medical information is distinguishable from the cases that Defendant cites. In those cases, the courts found that there was no privacy harm because the plaintiffs did not allege that any sensitive medical information was disclosed. *See* MTD at 10, citing *Lightoller v. JetBlue Airways Corp*., 2023 U.S. Dist. LEXIS 102158, at *9 (S.D. Cal. June 12, 2023) (plaintiff alleged only that she searched flight prices) and *Byars v. Sterling Jewelers, Inc.,* 2023 U.S. Dist. LEXIS 61276, at *7 (C.D. Cal. Apr. 5, 2023) (no allegations of any sensitive data disclosed while on website). ***This is not one of those cases.*** Plaintiffs allege that Sussex shared detailed information regarding their specific mental health conditions and treatment needs with an unauthorized third party without their knowledge or obtaining consent.

Other cases cited by Defendant are even further off-point. *See* MTD at 9-10, citing cases that found no harm in the collection of zip codes. A website user's IP address is more specific than a zip code and is deemed protected personal information in various federal- and state-law contexts. *See e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(O) (IP address is a personal identifier subject to HIPAA protection); Cal. Civ. Code § 1798.140(v)(1)(A) ("[i]dentifiers such as a[n] [IP] address" constitute a consumer's personal information); Cal. Pen. Code §§ 1546(d) and (h), 1546.1(a)(1) and (b) (precluding the government from compelling ISPs to provide a user's IP address without a warrant); *In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) ("*Google RTB*") (defendant's selling and sharing of "sensitive personal information ***such as plaintiff's IP address***" without consent supported a reasonable expectation of privacy; that "is personal information under California law[,]" which generally is expected to remain private).

Sussex also cites inapposite Fourth Amendment cases that address law enforcement's ability to obtain criminal defendants' IP addresses without a warrant. *See* MTD at 8-10, citing *e.g.*, *United States v. Jenkins*, 2019 U.S. Dist. LEXIS 62776, at *11 (N.D. Ga. Apr. 11, 2019) and other cases. None of those criminal cases has any application here.

**3. Defendant raises jurisdictional factual disputes intertwined with merits issues that cannot be resolved at the pleading stage.**

Even if identification were required, the question of whether the data that Sussex shared with Google can identify the website user is a factual dispute intertwined with both jurisdiction

and the merits and thus cannot be resolved at the pleading stage. *See Bowen,* 118 F.4th at 1142-43. On a Rule 12(b)(1) motion, when jurisdictional issues are intertwined with the merits of the claims, factual disputes must be left to the trier of fact. *Id.*; *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper.").

Sussex submitted evidence attempting to support its factual assertions that IP addresses never can identify a specific website user. Dkt. 42-1, 42-3, 42-5. But Sussex's factual assertions are not limited to whether Plaintiffs allege a concrete harm; they also try to litigate core merits issues, such as whether the data at issue qualifies as "personally identifiable information" and technical details regarding how Google collects and processes data. *See id.* Sussex's evidence only highlights that the concrete-harm issues it attempts to raise are intertwined with merits issues.

Further, Plaintiffs dispute Defendant's assertions regarding the amount of information that an IP addresses can reveal, particularly when combined with other details regarding a person's medical browsing information and searches for mental health providers in specific locations. *See* Declaration of Joseph Greenfield ¶¶ 10-25 (expert testimony explaining that IP addresses may act as unique digital identifiers, correlating to a specific household or an individual system, and when combined with other data, such as browser data, and geolocation, and IP addresses). Plaintiffs have presented evidence that they (1) were using their own devices, (2) were the only ones using their devices, and (3) were not using a VPN. Declarations of Plaintiff R.C. ¶¶ 1-3 and D.G. ¶¶ 1-4.

Through discovery, Plaintiffs expect to obtain further evidence that the information Sussex shared can be used to identify the user. In *Brown III*, the plaintiffs were able to obtain that evidence through discovery. *See* 685 F. Supp. 3d at 925. The court found that a privacy invasion can occur without identifying the website user, thus rejecting Google's argument, but also noted that the plaintiffs had presented evidence showing that, *"even if the individual data points gathered are anonymous by themselves," one of which was the user's IP address, "when aggregated, Google can use them to uniquely identify a user with a high probability of success." Id.* at 919-20, 923-25.

An IP address allows advertisers to target customers by neighborhoods and and zip codes

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and, even more specifically, by specific households, businesses, and even individuals with ads that are tailored to their interests, including their most private health and medical interests.[4] Indeed, because companies can use an IP address to identify individuals, IP targeting is one of the most effective marketing techniques that companies can employ to sell a product or service. Trey Titone, *The future of IP address as an advertising identifier*, Ad Tech Explained (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/. Thus, during the time when Sussex embedded Google Analytics 3 on its website , Google could and did collect information, including IP addresses, that could identify website users. SAC ¶ 8 and n.3.

Even Sussex argues that the ***factual dispute*** it raises – whether the information it shared with Google identified Plaintiffs – affects the merits of each claim. MTD's Rule 12(b)(6) section at 11-12, 17, 20. If identification is required, then exactly what the disclosed information (including the IP addresses) reveals about a website user is a disputed fact issue that is intertwined with the merits of each claim and must be left for the trier of fact to resolve. *Bowen*, 118 F.4th at 1142-43; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1194 (S.D. Cal. 2024), citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[i]n privacy cases, the standing and merits inquiries will often be intertwined.").

**B. Plaintiffs suffered the diminution of the value of their personal information.**

The invasion-of-privacy harm alone establishes Plaintiffs' standing as to all claims. Nonetheless, Plaintiffs also allege that, because Sussex disclosed their personal and medical information to Google without their consent, they suffered diminution in the value of that information. SAC ¶¶ 86-94. As Sussex admits, courts have found that diminution in the value of personal information can be injury-in-fact for standing. *Facebook Tracking*, 956 F.3d at 600-01; *In re Facebook Privacy Litig.*, 572 F. App'x 494, 496 (9th Cir. 2014); *Brown III*, 685 F. Supp. 3d at 942; *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1199-1200 (N.D. Cal. 2019).

---

[4] *See e.g.*, Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/; *Location-based Targeting That Puts You in Control*, Choozle, https://choozle.com/geotargeting-strategies/ (last visited June 17, 2024).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

The SAC alleges that Plaintiffs' data obtained from their browsing on Sussex's website have financial value. SAC ¶¶ 86-94. Personal health data has been valued from $0.53 for a single data point to up to $250 for a set of medical information and there is a market for individuals to sell their own personal information. SAC ¶¶ 90, 92. By Sussex embedding the tracking technology on its website, Google is able to collect and use Plaintiffs' personal and medical information for its own financial gain, including its analytics and advertising services. SAC ¶¶ 9, 31, 45, 118, 144.

Case law supports that there is a concrete harm of loss of value of personal data when plaintiff alleges their browsing histories carry financial value and there was a market for their data. *See e.g., Facebook Tracking*, 956 F.3d at 600. The "decision stands for the proposition that plaintiffs can state an economic injury for their misappropriated data." *Brown III*, 685 F. Supp. 3d at 939-40, discussing *Facebook Tracking*. Denying Google's summary judgment motion to a Penal Code § 502 claim, the court found that plaintiffs presented evidence that they suffered economic harm from the unauthorized disclosure of their personal data, including that "Google itself has piloted a program where it pays users $3.00 a day for their browsing history." *Id.*

The allegations that Sussex and third-party Google intentionally are using embedded tracking technology to obtain users' information are readily distinguishable from data breach cases like *I.C. v. Zynga,* 600 F. Supp. 3d 1034, 1054-55 (N.D. Cal 2022). In non-data-breach cases where the defendant shared the plaintiffs' information with unauthorized third parties, courts have found that sharing the plaintiffs' data diminished plaintiffs' ability to sell that data. *See e.g., Svenson v. Google Inc.,* 2015 U.S. Dist. LEXIS 43902, at *15-17 (N.D. Cal. Apr. 1, 2015) ("[B]y making [plaintiff's] personal information available to YCDroid, Google diminished the value of that information."); *A.B. v. Google LLC*, 2024 U.S. Dist. LEXIS 108185, at *18 (N.D. Cal. June 18, 2024) (alleged loss of personal data was economic harm for UCL standing); *Brown v. Google LLC*, 2021 U.S. Dist. LEXIS 244695, at *47 (N.D. Cal. Dec. 22, 2021) (similar). Distinguishing data breach cases, the court in a tracking case found that the "plaintiffs' theory in this case [is] that they provided something of value to Meta and received nothing in return. This can constitute an economic injury." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**C. Plaintiffs sufficiently allege an ongoing risk.**

Because Sussex disclosed their personal and medical information to unauthorized third-party Google, which intercepted, read and used the information for its own business purposes, Plaintiffs suffer ongoing risks to that private information and risks of harassment, spam, and targeted advertising specific to their medical conditions. *See e.g.*, SAC ¶¶ 1-10, 27-31, 37-72, 94.

Sussex argues that those allegations do not show a concrete harm, citing a data breach case where plaintiffs did not allege that the risk of identity theft had "materialize[d] or cause[d] some other injury" *I.C. v. Zynga*, 600 F. Supp. 3d at 1050. This unknown third-party data-breach case is inapposite in a known unauthorized-disclosure action: it involves only speculative injury such as "future risk" of identity theft. ***Here, the harm already has occurred.*** Sussex affirmatively disclosed to Google Plaintiffs' private medical information without their consent, and that information is used by Google for targeted advertising and analytics services. *E.g.*, SAC at ¶¶ 1-10, 27-31, 37-45, 71-72. That is an identifiable, concrete harm with an ongoing risk.

**D. Plaintiffs sufficiently allege statutory damages.**

Plaintiffs' concrete harm allegations are not based on "statutory damages alone." Plaintiffs allege that they suffered *the invasion of their privacy*, *i.e.*, the substantive right underlying CIPA and its minimum statutory damages. SAC ¶¶ 11-24, 73-85, 94; *see Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 130778, at *37 (N.D. Cal. Sep. 23, 2016) (contrasting CIPA's substantive privacy rights protection with the Fair Credit Reporting Act's (15 U.S.C. § 1681e) procedural focus). Plaintiffs also allege loss of value of their personal information and ongoing risk of harassment, scams, and targeted advertising. SAC ¶¶ 86-94.

*Prima Asset Corp. v. Goh*, which Defendant cites, does not support its argument. 2017 U.S. Dist. LEXIS 236512, at *3-4 (C.D. Cal. Dec. 21, 2017). There, the plaintiff argued ***only*** that, because it was seeking statutory damages, it established injury in fact. *Id.* at *8. The court found that to be insufficient. The SAC here alleges much more.

**III. PLAINTIFFS HAVE PLEADED EACH CLAIM SUFFICIENTLY.**

**A. Legal standard for Rule 12(b)(6) motion to dismiss.**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Lee v. City of L.A.*,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

250 F.3d 668, 688 (9th Cir. 2001). Courts may not consider evidence outside of the complaint, with very few exceptions not present here. *Id.*; *Tavantzis v. Am. Airlines, Inc*., 2024 U.S. Dist. LEXIS 31474, at *7 (N.D. Cal. Feb. 23, 2024) (defendant has a "heavy burden to make a strong showing that the motion to dismiss can be decided without discovery.").

**B. Plaintiffs sufficiently allege a CMIA claim.**

To state a CMIA claim, a plaintiff must allege that a "provider of healthcare" disclosed "medical information" without authorization (Civ. Code §§ 56.10, 56.06) and/or did not maintain, preserve, or store medical information in a manner that "preserves [its] confidentiality." Civ. Code § 56.101. "Medical information" is "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care … regarding a patient's medical history, mental health application information, … mental or physical condition, or treatment." Civ. Code § 56.06(j). "'Individually identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, *or other information that, alone or in combination with other publicly available information***,** reveals the identity of the individual." *Id.*

**1. Plaintiffs' "medical information" is at issue.**

The information that Sussex disclosed to Google without Plaintiffs' consent is "medical information" under the CMIA. The SAC alleges that Plaintiffs shared specific details on the Psychology Today website, including but not limited to their mental health symptoms and conditions, that they were seeking treatment for those conditions, and that they were researching particular types of treatment in narrow geographic areas. SAC ¶¶ 11-24, 56-61, 107-120.

For example, Plaintiff R.C. accessed Defendant's online platform and used its therapist directory and filters to search for a mental health professional to treat his anxiety and relationship issues, preferably a therapist using emotionally focused therapy who worked in a specific zip code. SAC ¶¶ 11-15. When Plaintiff D.G. used Sussex's website, she disclosed that she was seeking help for a family crisis and using the filter options, Plaintiff D.G. selected specific symptoms and issues related to the crisis and her personal mental health concerns, including the following filter

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

options: addiction, ADHD, anxiety, autism, depression, drug abuse, marriage counseling, OCD, relationship issues, stress, substance abuse, suicidal ideation, and trauma/PTSD. SAC ¶¶ 18-24.

Through the tracking technology embedded on the website, as Plaintiffs navigated the Psychology Today online platform and used the filters to select and identify their medical symptoms, the type of therapy they were seeking, and the types of therapists they preferred, Google was able to and did intercept Plaintiffs' interactions with and communications through the website, which disclosed their sensitive mental health conditions, the treatment they sought, and their provider preferences. SAC ¶¶ 11-24, 56-61. Google also intercepted descriptive URLs that revealed the contents of their searches and filters. SAC ¶¶ 56-61; Dkt. 37-1 (video). Google also intercepted Plaintiffs' IP addresses. SAC ¶¶ 56, 63-66. Plaintiffs did not consent to and were unaware of any of those disclosures to Google. SAC ¶¶ 16, 24, 66, 73-75, 117, 119.

Defendant oddly argues that the information that Plaintiffs disclosed does not constitute "a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." The information plainly includes, at a minimum, Plaintiffs' mental conditions and preferred treatment. The information plainly also constitutes "mental health application information," which Civil Code § 56.05(k) defines as "information related to a consumer's inferred or diagnosed mental health or substance use disorder, …, collected by a mental health digital service."

Sussex also argues the information is not "medical information" because Google and Sussex did not know why a person is clicking buttons or searching for certain information (*i.e.,* for the person's own medical condition or some other reason). Plaintiffs, however, allege that the information disclosed to Google without their consent was ***about their own*** mental health conditions and their search for therapists to treat ***their*** conditions. *See e.g.,* SAC ¶¶ 12-15, 18-24.

***Ninth Circuit courts agree that descriptive URLs that reveal sensitive medical information in the user's search terms can be the basis for privacy-based claims*** such as CMIA claims, invasion-of-privacy claims, and CIPA claims. *See e.g.*, *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *24-27 (allegations that descriptive URLs disclosed medication information sufficient to state a CMIA claim); *In re Meta Healthcare Pixel Litig.*, 2024 U.S. Dist. LEXIS 15391, at *10-

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

11 (N.D. Cal. Jan. 29, 2024) (allegations that third party tracking tool intercepted URLs and other data that revealed plaintiffs' log-ins and searches on healthcare providers' website and patient portal were sufficient to state a privacy claim); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973, 975 (S.D. Cal. Nov. 17, 2023) (*Cousin II*) (similar); *Facebook Tracking*, 956 F.3d at 601; *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.*), 750 F.3d 1098, 1109 (9th Cir. 2014) (***a URL can disclose communication contents, like the user's search terms***).

Defendant cites *Smith v. Facebook, Inc*. for the proposition that "the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements [for medical information] apply." 745 F. App'x 8, 9 (9th Cir. 2018), referring to HIPAA and Cal. Civ. Code § 1798.91. Defendant's reliance on *Smith* is unavailing because the *Smith* court did not evaluate the CMIA's definition of "medical information." Further, *Smith* is off point because there was no indication there that the information disclosed included descriptive URLs that showed the person's searches for their own specific medical conditions and for therapists who treat those conditions in specific geographic locations.

**2. The medical information disclosed was "individually identifiable."**

Plaintiffs allege that Sussex shared with Google, in real time as they navigated the website, information including their IP addresses and descriptive URLs showing Plaintiffs' searches and filters on Defendant's online platform. SAC ¶¶ 11-24, 30-31, 37-72, 117-119. Those descriptive URLs revealed, among other data, substantive medical information related to Plaintiffs' mental health conditions, treatment they sought, and the narrow geographic areas in which they were seeking a mental health provider. SAC ¶¶ 12-15, 18-23, 56-61, 117-119; Dkt. 37-1 (video).

Sussex argues that the medical information does not meet Civil Code § 56.05((j)'s definition of "individually identifiable" because it did not allow it or Google to identify the specific website user. The CMIA's definition of individually identifiable medical information is not so narrow. It includes "any … information that, alone or in combination with other publicly available information, reveals the identity of the individual." Civ. Code § 56.05(j). Recent cases have found that similar alleged disclosures of IP addresses and descriptive URLs that revealed medical or mental conditions constituted CMIA medical information. *See e.g.*, *St. Aubin*, 2024 U.S. Dist.

LEXIS 179067, at *25-27; *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *39 (D. Ariz. May 10, 2024); *see also*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) (recognizing privacy expectation in descriptive URLs that reveal medical information).

In *McCulley*, the plaintiffs alleged that the defendant "disclosed symptoms, treatment options, and types of providers by forwarding their browsing activity." 2024 U.S. Dist. LEXIS 85232, at *39. The court found that the information was "individually identifiable" as to the plaintiffs "as the tracking tools allegedly used by the third parties conveyed [plaintiffs'] IP addresses." *Id.* The court also noted that "the California Civil Code's definition for information protected by the CMIA largely tracks the HIPAA definition of [] Protected Health Information." *Id.*, citing 45 C.F.R. § 160.103. As a result, the court found that "the search terms [p]laintiffs describe can sufficiently be considered 'medical information' under the CMIA." *Id.*[5]

Further, any questions that may exist as to what specific information can be obtained from an IP address and whether a website user's IP address combined with other personal information can identify the individual user are factual disputes that cannot be resolved on a Rule 12(b)(6) motion to dismiss. *See Facebook Tracking*, 956 at 601; Greenfield Decl. at ¶¶ 20-25.

**3. Defendant is a mental health digital service and/or a provider of healthcare subject to the requirements of the CMIA.**

Plaintiffs have alleged that Defendant falls within the business categories that the CMIA deems to be providers of health care and subject to the standards of confidentiality with respect to medical information disclosure. SAC ¶¶ 108-116, discussing Civ. Code §§ 56.06(b) and (d).

**Defendant is a "mental health digital service" and qualifies as "a provider of health care."** Civ. Code §§ 56.05(k), 56.06(d). A "provider of healthcare" includes "[a]ny business that offers a mental health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual … ." Civ. Code §§ 56.06(d). A "[m]ental health digital service" is "a

---

[5] Also, as noted above, federal and California statutes recognize IP addresses to be personal information that is subject to protection. *See e.g.,* 45 C.F.R. § 164.514(b)(2)(i)(O) (IP addresses protected under HIPAA); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *9, citing *In re Zynga Priv. Litig.*, 750 F.3d at 1108 and analyzing Cal. Pen. Code § 638.51 (finding that "IP addresses 'constitute addressing information'" and are protected under the pen register statute).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

mobile-based application or internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer." Civ. Code § 56.05(l).

Sussex's "Psychology Today" is both a website (psychologytoday.com) and a mobile application (Sessions by Psychology Today!) that collects personal and mental health information from consumers, including their "inferred or diagnosed mental health condition." SAC ¶ 111. Sussex markets the website as facilitating mental health services to consumers, touting the motto "Here to Help" and claiming that it is the world's largest mental health and behavioral science destination online…." SAC ¶ 112. Thus, Sussex meets the first two criteria of "mental health digital service" under Civ. Code § 56.05(k).

Further, Sussex uses the information collected to facilitate mental health services. SAC ¶¶ 111-113. Sussex does so via the website by providing a search-engine tool to find mental healthcare providers based on specific concerns and preferences input by the user and by offering links and buttons for the user to click and directly call or send an email to a therapist. SAC ¶ 112. It also facilitates mental health services by providing an online platform (Sessions) for users and therapists to communicate and by hosting online teletherapy sessions either directly on the Sessions by Psychology Today webpage or through its mobile app. SAC ¶ 113. Thus, Sussex meets the third criterion for a "mental health digital service." *See* Civ. Code § 56.06(k).

Those allegations negate Sussex's claim that the website and app are simply connection points to therapists. *See e.g.*, *Marden v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 132292, at *12 (N.D. Cal. July 3, 2024) (allegations that defendant's website provided online medical, including mental health, information and counseling stated a CMIA claim). Further, as discussed below, Sussex's arguments at MTD 15-16, that it is not a mental health digital service raise factual disputes that cannot be resolved at the pleading stage. *See*, *e.g.*, *Facebook Tracking*, 956 F.3d at 601 ("At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party").

The SAC alleges that Sussex collects users' browsing data as they navigate the website and collects their personally identifiable information when users perform certain tasks on the website,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

such as performing self-assessments, commenting on articles, and calling or emailing a professional. *See e.g.*, SAC ¶¶ 67-70, 113. The SAC also alleges, and the video submitted with the SAC shows, that the browsing data, including descriptive URLs, disclose information about the ***website users'*** inferred or diagnosed mental health conditions and treatment sought for those conditions, *not solely the therapists' information*. *See e.g.*, SAC ¶¶ 47-72, 117; Dkt. 37-1 (video). The SAC's factual allegations must be taken as true at this stage of the litigation. *Facebook Tracking*, 956 F.3d at 601.

**Plaintiffs also allege that Defendant is a "provider of health care" under Civil Code § 56.06(b)'s definition**, which includes any business that:

> offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual.

Civ. Code § 56.06(b); *see* SAC ¶¶ 114-116. Defendant offers digital services and software applications in the form of the Psychology Today website and therapist directory and its mobile application (Sessions by Psychology Today!). SAC ¶ 116. Both platforms "are designed to maintain medical information, especially … within email communications, and both facilitate the diagnosis, treatment, and management of users' medical or mental health conditions." SAC ¶ 116. And courts recognize that Civil Code § 56.06 reflects the California legislature's intention to broaden the CMIA's protections and "ensure that the CMIA would apply to all businesses that maintain medical information 'whether or not the business was organized for that purpose.'" *In re Blackbaud, Inc.,* 2021 U.S. Dist. LEXIS 151831, at *4 (D.S.C. Aug. 12, 2021), at *23-24, citing Cal. Assembly Committee on Appropriations, Bill Analysis, A.B. 658 (May 1, 2013).

*Defendant's mobile application plainly is software that consumers use either to manage their mental health information or to treat their conditions. See e.g.,* SAC ¶¶ 4, 28, 54-55, 116. The Psychology Today website also provides a software-based platform through which consumers engage in therapy sessions or communicate with their current or potential mental health providers regarding treatment and appointments. SAC ¶¶ 4, 28, 47-54, 116. The website also provides software-based search tools for consumers to obtain information about and manage their mental

health conditions. SAC ¶¶ 2, 3, 27-29, 47-51, 111-13, 116.

Sussex cites readily distinguishable *Oddei v. Optum, Inc.*, 2021 U.S. Dist. LEXIS 233362, at *5 (C.D. Cal. Dec. 3, 2021), *aff'd by*, 2022 U.S. App. LEXIS 33801, (9th Cir. Dec. 8, 2022). *Oddei* found that the defendant was not alleged to be a "provider of health care" because the plaintiff ***alleged no facts*** "beyond [the] conclusory statement" that the defendant "'offers software or hardware to consumers in order to make medical information available at the request of the individual.'" *Id.*, citing § 56.06(b). The SAC makes specific allegations. SAC ¶¶ 3-5, 27-28, 116.

**4. Plaintiffs allege unauthorized disclosure or unauthorized viewing.**

Sussex argues that, to allege a "disclosure" under Civil Code § 56.10, Plaintiffs had to allege that Sussex "affirmatively" shared Plaintiffs' information to Google, the unauthorized third party. MTD at 19, citing *Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546, 1555–56 (2014). According to Sussex, because Plaintiffs allege that Sussex and Google simultaneously receive the information, Sussex could not have had the data first to affirmatively release it to Google. Defendant misses the point. Sussex ***chose*** to put Google's tracking software on its website which allows users to communicate about their mental health conditions and treatment services. *See e.g.*, SAC ¶¶ 6, 30, 117. By doing so, Sussex has "affirmatively" shared the users' sensitive mental health information with Google and permitted it access to such information on an ongoing basis.

Plaintiffs also have alleged adequately that Sussex "negligently released" the information to Google under Civil Code § 56.101. The SAC expressly alleges that Google viewed Plaintiffs' sensitive medical information in real time as Plaintiffs used the website and app. SAC ¶¶ 6-9, 15-16, 23-24, 30-31, 37-72, 117-120; *see also*, Dkt. 37-1 (video attached to the SAC). The SAC further alleges that Google collected and used the information for its targeted advertising and analytics services and to develop new business offerings. *E.g.*, SAC ¶¶ 37, 44-45, 71-72.

Courts have found that similar allegations sufficiently state a CMIA claim based on the negligent release of medical information. *See e.g., St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at 28-30; *Doe v. Regents of UC*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023); *Cousin II*, 702 F. Supp. 3d at 975. Courts have rejected the argument that, to state a CMIA claim, plaintiffs must allege that a human, not an entity or its computer, viewed the information. *St. Aubin* at 28-30; *Doe v.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Regents* at 819; *Cousin II* at 975. *At minimum, it is a factual dispute that cannot be resolved at the pleading stage. St. Aubin* at 28-29, citing *Cousin II* at 975.

Defendant's cited cases do not support its claim that Plaintiffs' allegations are insufficient. *Sutter Health*, 227 Cal.App.4th 1546, involved a very different situation in which a thief stole a laptop containing the plaintiffs' medical information. The court found the plaintiffs' allegations lacking because they did not allege what the thief did with the information, *i.e.,* that the data actually was viewed by an unauthorized third party. *Id.* at 1553-54. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024) was a tracking software case but is inapposite because the plaintiffs did not allege that data disclosed revealed the nature of their medical treatment. *Id.* at 1061; *see also*, *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *29-30, finding the same set of cases to be distinguishable and unpersuasive.

*St. Aubin* also found that *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023), another case Defendant cites, applied flawed reasoning when it concluded that a human must view the information. 2024 U.S. Dist. LEXIS 179067, at *30. As *St. Aubin* explained, (1) *Barbour* did not adhere to the legal rule that a complaint's allegations are to be construed in favor of the plaintiff and (2) it mistakenly relied on *Sutter*, which did not address that issue. *Id.*, citing *Barbour*, 2023 WL 2618967 and *Sutter*, 227 Cal.App.4th 1546.

Other cases contradict Sussex's argument that Plaintiffs must allege that they personally received targeted advertising due to Sussex's disclosure. "Disclosure of personal health information to third-party online advertisers is sufficient to allege that medical information was viewed by unauthorized third parties under the CMIA." *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *43-44 (W.D. Wash. Nov. 14, 2024), citing *Cousin II*, 702 F. Supp. 3d at 975. The SAC alleges that Google used the Psychology Today website users' information that Defendant released for Google's own business purposes. SAC ¶¶ 9, 31, 45, 72, 117-18.

Further, as discussed below, the SAC alleges that Google viewed the Plaintiffs' and other users' medical information that Sussex disclosed to it via the tracking software. *E.g.*, SAC ¶¶ 6-9, 15, 23, 37-66. The video attached to the SAC shows Google intercepting and reading/viewing the Psychology Today website users' data while the data was in transit. Dkt. 37-1.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**C. Plaintiffs have alleged CIPA claims sufficiently.**

Defendant incorrectly attempts to apply a heightened criminal-intent standard to the civil CIPA aiding-and-abetting claims. SAC ¶¶ 135-160; *see* Penal Code §§ 631(a) and 632; *see e.g.*, *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *19-21 (rejecting argument that criminal law standard for "aided and abetted" applied to a CIPA § 631(a) claim) *M.G. v. TherapyMatch, Inc.* 2024 U.S. Dist. LEXIS 166534, at *14 (N.D. Cal. Sept. 16, 2024); (same); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("*Cousin I*") (same).

Some courts have looked to § 631(a)'s statutory language and found that the relevant question at the pleading stage is whether the plaintiff "sufficiently alleged that [the defendant] 'aided, agreed with, employed, or conspired with"' the third-party interceptor. *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *21, quoting Pen. Code § 631(a) and following *Cousin I*, 681 F. Supp. 3d at 1130. Other courts have found that, because CIPA lacks a statutory definition for "aiding and abetting," the common law civil tort definition applies. *Mata v. Zillow Grp., Inc.*, 2024 U.S. Dist. LEXIS 229061, at *17 (S.D. Cal. Dec. 18, 2024), citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483-85 (2023); *Heiting v. Taro Pharms. USA, Inc.*, 2024 U.S. Dist. LEXIS 135780, at *14 (C.D. Cal. July 31, 2024) ("*Heiting II*") (same). Under the common law, persons are aiders and abettors if they "(a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Mata*, 2024 U.S. Dist. LEXIS 229061, at *17-18, citing district court cases and *Saunders v. Superior Court*, 27 Cal.App.4th 832, 845 (1994).

Penal Code § 637.2 authorizes a private civil right of action for CIPA violations and provides for civil sanctions of the greater of $5,000 per violation or three times the amount of actual damages sustained by the plaintiff. Although §§ 631 and 632 also impose parallel penal sanctions, Plaintiffs are pursuing civil recoveries only. Defendant cites only one outlier case that applied a heightened intent standard to a CIPA § 632 claim, contradicting the string of persuasive cases cited above. *See Smith v. Yeti Coolers, LLC*, 2024 U.S. Dist. LEXIS 194481, at *11-12, 15-16 (N.D. Cal. Oct. 21, 2024)("*Yeti*"). But *Yeti* failed to explain why criminal standards of proof

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

should be applied to civil causes of action seeking civil liability.

All other courts have held that criminal standards do not apply to civil CIPA claims. *See e.g.*, *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *19-21, *Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *14; *Cousin I*, 681 F. Supp. 3d at 1130; *Stoba v. Saveology.com, LLC*, 2014 U.S. Dist. LEXIS 98058, at *9 (S.D. Cal. July 18, 2014). As *Stoba* recognized, even though the California Legislature "chose to impose penal as well as civil sanctions," the reach of § 637.2 "would be the same if the Legislature had adopted three separate statutes – one declaring that the prohibited conduct was unlawful, a second specifying the civil sanctions that could be imposed upon such unlawful conduct, and a third specifying the penal sanctions … – and had placed the first two statutes in the Civil Code and the third statute in the Penal Code." 2014 U.S. Dist. LEXIS 98058, at *9. The availability of penal sanctions does not transform Plaintiffs' civil claims into criminal ones subject to the heightened criminal standard.

**1. Plaintiffs properly allege claims under Pen. Code § 631(a).**

Penal Code § 631(a) is violated when any person (1) "intentionally taps" a "wire, line, cable, or instrument", (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" (*see* SAC ¶ 143), (3) "attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" (see SAC ¶ 144), or (4) "aids, agrees with, employs, or conspires" *to do* ***any*** *of the above* (*see* SAC ¶¶ 140-143, 145-148). Except for the first clause, which is not alleged in or relevant to the SAC's claims, the allegations cover each of the remaining prongs and thereby establish both (a) Google's unlawful interception of Plaintiffs' personal and private communications in violation of § 631 and (b) Defendant's role in aiding and abetting that unlawful conduct. SAC ¶¶ 135-149.

The SAC alleges that the Plaintiffs communicated with Sussex's website regarding their own sensitive mental health conditions. SAC ¶¶ 11-24. The SAC alleges how Sussex embedded Google's tracking software on its website and how the software transmitted users' communications simultaneously to Sussex and Google. SAC ¶¶ 37-72, 140-149; Dkt. 37-1 (video). Through the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

tracking software, Google contemporaneously intercepted, and read the communications while they were in transit. SAC ¶¶ 6-7, 40-44, 56-62, 143. Google used information from the communications' contents for its own benefit. SAC ¶¶ 9, 31, 45, 72, 144. *All of that was done without Plaintiffs' knowledge or consent.* SAC ¶¶ 16, 24, 30, 56-57, 66, 73, 75, 142-149.

The video Plaintiffs submitted with the SAC shows how a website user's communications are sent simultaneously to Sussex and Google and how Google intercepts them while they are in transit. *See* Dkt. 37-1 (video).. The video shows that, while the user communicates with Sussex's website, Google, in real time, *intercepts and reads the specific communications, including the descriptive URLs revealing the contents of the user's searches regarding specific mental health conditions and treatment options.* For example, the video shows Google intercepting and reading in real time that the user was searching for therapists who treat anxiety and drug abuse. *See* Dkt. 37-1, video at, *e.g.*, 1:08-1:24, 2:00-2:28.

**2. Plaintiffs allege that Google "read" the contents "in transit."**

Defendant incorrectly asserts that Plaintiffs have not alleged that Google read or learned the communications while they were in transit. That argument ignores the SAC's detailed allegations summarized above and the examples shown in the attached video.

Further, Defendant cites cases that had only bare-bones or otherwise problematic allegations that are nothing like those here. MTD at 23. The SAC's allegations are strikingly similar to those in recent cases alleging that a defendant secretly embedded tracking software on its website, enabling a third party to intercept the website users' communications in real time without their consent. *Mata*, 2024 U.S. Dist. LEXIS 229061, at *13-19; *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *10-24; *Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *9-16; *Yockey v. Salesforce, Inc.*, 2024 U.S. Dist. LEXIS 146802, at *11-14 (N.D. Cal. Aug. 16, 2024); *Heiting II*, 2024 U.S. Dist. LEXIS 135780, at *7-16; *Revitch*, 2019 U.S. Dist. LEXIS 186955 at *2-6. Those courts all found that the plaintiffs stated a § 631(a) aiding and abetting claim.

Defendant also misreads SAC paragraph 43 when it argues that Plaintiffs' use of the phrase "[o]nce Google Analytics receives" necessarily means that Plaintiffs allege that Google "views, reads, and processes the raw user data, it aggregates and organizes the data based on particular

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

criteria" *after* the data no longer is in transit. *See* MTD at 24. Defendant takes the phrase out of context. Paragraph 43 states in full: "All the information collected by the Google Analytics JavaScript code, while it also is in transit to the host website, is sent simultaneously to Google for processing. Once Google Analytics receives, views, reads, and processes the raw user data, which includes personal and sensitive medical information, it aggregates and organizes the data based on particular criteria. The criteria can be customized by applying filters." SAC ¶ 43. Nothing suggests that the viewing, reading and processing happens ***after*** the data is in transit to Sussex.

Moreover, the SAC at ¶ 143explains that: "By using Google Analytics and allowing Google to intercept, duplicate and access Psychology Today website users' private information and confidential communications, Defendant permitted Google ***contemporaneously to read or attempt to read, and/or to learn, the contents or meaning of Plaintiffs' and Class members' sensitive interactions and private communications with Psychology Today while the communications were in transit*** …." Plaintiffs' "communications to and through Psychology Today, which included protected mental health information, were and are being sent simultaneously to Google servers and were and are transmitted to Google in real time via Google Analytics tracking technology." *Id.* (emphasis added).

Sussex improperly relies on the hearing transcript from the prior motion to dismiss the previous, non-operative complaint. MTD at 23-24.[6] Not only are the statements made at the prior hearing are not relevant to the present motion, counsel stated only that Plaintiffs were not alleging that a ***human*** at Google is reading the communications while they are in transit. *See* Dkt. 42-4 at 12:12-16, 13:20-25. But courts have found that a CIPA § 631(a) claim is properly stated when a third-party software company allegedly intercepts and reads the communications while in transit *and have* <u>*not*</u> *interpreted § 631 as requiring that a human do the reading. See e.g.*, *Smith v. Google, LLC,* 2024 U.S. Dist. LEXIS 98367, at *14 (N.D. Cal. June 3, 2024); *St. Aubin*, 2024 U.S.

---

[6] "'It is well-established … that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" *Yockey*, 2024 U.S. Dist. LEXIS 146802, at *6, quoting *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). "A motion to dismiss an amended complaint is not a motion for reconsideration of the Court's prior order, but, rather, a new motion addressing a newly filed complaint." *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Dist. LEXIS 179067, at *15-18, 28-29; *Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *12-14; *Yockey*, 2024 U.S. Dist. LEXIS 146802, at *10-14; *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). In *Smith v. Google*, the court found that, ***when websites use Google Analytics tracking software, "Google is … the one 'reading' and/or 'using' the data it collects for the purposes of Section 631***." 2024 U.S. Dist. LEXIS 98367, at *14 (emphasis added).

**3. Plaintiffs allege that Sussex and Google acted intentionally and willfully.**

Section 631(a)'s second prong requires that Google "willfully and without the consent of all parties to the communication, or in any unauthorized manner" reads or attempts to read or learn the contents of communications while they are in transit. Section 631(a)'s third prong requires that Google "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained [by the first or second prongs] …" And the fourth prong requires that Sussex "aids, agrees with, employs or conspires" with Google to do such conduct.

Google willfully the tracking software for the purpose of intercepting, reading, recording and collecting the contents of the website users' communications. SAC ¶¶ 6-8, 31, 37-72, 140-149. Google did not obtain website users' consent to do that. SAC ¶¶ 7, 9, 16, 24, 142, 145-148. And Google uses the information that it obtains for its business. SAC ¶¶ 9, 31, 45, 72, 144.

Sussex chose to put Google tracking software on its website without informing or obtaining consent from Psychology Today website users. SAC ¶¶ 6-10, 28-30, 56-72, 142. In doing so, Sussex gave Google substantial assistance and encouragement to intercept and read the communications' contents and to use the information for Google's business purposes and was aware that Google did so without the users' consent or knowledge. SAC ¶¶ 31, 37-72, 142-149.

In response to these allegations that clearly demonstrate willful action without proper consent, Sussex argues that installing tracking software is not willful or intentional conduct for a § 631(a) aiding and abetting claim and is just a normal business practice. But Sussex sidesteps a key fact: it ***secretly*** allowed a third party to intercept users' communications regarding their personal and medical information. Sussex was able to but did not ask Plaintiffs' permission or notify them in advance. Cases with similar fact patterns have rejected Sussex's theory and found that plaintiffs stated a § 631(a) aiding and abetting claim. *See, e.g., Mata*, 2024 U.S. Dist. LEXIS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

229061, at *13-19; *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *10-24; *Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *9-16; *Heiting II*, 2024 U.S. Dist. LEXIS 135780, at *9-10, 14-15.

*B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *17 (C.D. Cal. Feb. 1, 2024), which Defendant cites, is distinguishable. There, the court concluded that the plaintiffs failed to allege "a predicate CIPA violation by Meta" because the plaintiffs included an allegation that Meta stated an "express desire ***not*** to receive health data from its business partners." *Id.* (emphasis added). The SAC here contains no similar allegations.

**4. Plaintiffs have alleged Penal Code § 632 claims.**

Penal Code § 632(a) prohibits any person from "intentionally," and "without the consent of all parties," using a "recording device" to "eavesdrop" upon or "record [a] confidential communication." Section 632(c) defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto…." *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002) ("[A] conversation is confidential under [§] 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.").

"Personal medical information is understood to be among the most sensitive information that could be collected about a person" and reasonably is expected to be kept private. *Doe v. Regents,* 672 F. Supp. 3d at 820; *see also*, *e.g., Yockey*, 2024 U.S. Dist. LEXIS 146802, at *14-20; *Stasi*, 501 F. Supp. 3d at 926. The communications about Plaintiffs' private mental health conditions and reasons for seeking treatment that Sussex disclosed and allowed Google to intercept are protected confidential communications under CIPA.

Plaintiffs allege that, by secretly embedding Google's tracking technology on its website, and by using an electronic amplifying device without website users' consent or knowledge, Sussex permitted, encouraged, and gave substantial assistance to Google to eavesdrop upon and/or record Plaintiffs' and other Psychology Today website users' confidential communications regarding their mental health conditions and treatment. *See* SAC ¶¶ 155-158; *see also e.g.*, ¶¶ 37-72, 150-160. Sussex aided Google by intentionally (1) installing and embedding Google Analytics code on its website without proper safeguards to preserve the confidentiality of users' communications

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and (2) contemporaneously redirecting and transmitting users' confidential communications to Google through the tracking technology. *Id.* Sussex did not obtain users' consent to having the contents of their confidential communications disclosed to and used by a third party like Google. SAC ¶¶ 16, 24, 155, 158. Plaintiffs thus allege that Sussex's aiding and abetting of Google's § 632 violations fully satisfy the common law definition for civil aider-and-abettor liability.

As discussed above, to state a CIPA ***civil*** claim, Plaintiffs are not required to allege that Google acted with a criminal purpose or that Sussex intended to assist in any criminal act. *See e.g.*, *Mata*, 2024 U.S. Dist. LEXIS 229061, at *17-18. That simply is not the correct standard.

Sussex also argues that Plaintiffs have not overcome California's general presumption that internet communications are not private, citing inapposite case law that does not address medical information. MTD at 22. ***In cases that do address medical information, courts have found time and again that individuals have a reasonable expectation of privacy in their internet communications.*** *E.g.*, *Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *16-17 (privacy reasonably expected in online communications about "mental health concerns and therapist preferences on a website that is a mental healthcare conduit" supporting a § 632 claim); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *33-34 (similar, communications about medical conditions and care were not "standard internet communications" about "general information"); *Yockey*, 2024 U.S. Dist. LEXIS 146802, at *14-20; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; *Doe v. Regents*, 672 F. Supp. 3d at 820. *Plaintiffs' private communications with Sussex about their highly sensitive mental health conditions and treatment unquestionably were confidential.*

Finally, to state a § 632 claim, Plaintiffs are not required to allege that Defendant and Google knew the identity of the person communicating with Defendant. On its face, Penal Code § 632 does not state that eavesdropping or secret recording is prohibited only if all parties to the communication are identified. Further, case law recognizes that the privacy interests that CIPA protects can be violated regardless of whether the communications at issue were anonymized or aggregated. *See e.g.*, *Brown III*, 685 F. Supp. 3d at 924-25, citing *Campbell*, 951 F.3d at 1112.

**D. Plaintiffs sufficiently have alleged a constitutional invasion-of-privacy claim.**

Plaintiffs properly have pleaded each of the three elements required to state a Constitutional

privacy claim against Defendant. *See* SAC ¶¶ 164 (protected privacy interest), 165 (reasonable expectation of privacy), and 166 (serious invasion of privacy); *see Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994). Plaintiffs allege that Sussex disclosed their IP addresses and sensitive medical information such as patient status, mental health conditions and concerns, provider preferences, and therapy or medical treatment sought. SAC ¶¶ 164-165. As discussed above, individuals have a reasonable expectation of privacy regarding their medical information and an invasion of privacy does not require that the individual be identified.

Plaintiffs also sufficiently allege that the privacy invasion is highly offensive. SAC ¶¶ 166. The "highly offensive" inquiry is factually intensive and generally is avoided at the pleading stage. *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *35; *Facebook Tracking*, 956 F.3d at 606. "Courts have refused to dismiss invasion-of-privacy claims at the motion to dismiss stage" where the disclosures "involved medical information, because" such disclosure "is more likely to constitute an egregious breach of the social norms that is highly offensive." *Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *19; *see also*, *Stasi*, 501 F. Supp. 3d at 926. *Although it might be routine for a business to collect website users' data or to use third-party trackers, it is not "routine" for a business to do so secretly without the users' permission or knowledge when the data is highly sensitive. See e.g.*, *Google RTB*, 606 F. Supp. 3d at 946-47.

In cases like this one, with allegations that the defendant, using tracking software, disclosed website users' personal and medical information to unauthorized third parties, courts have found an invasion-of-privacy claim to be sufficiently stated. *See e.g.*, *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *32-37; *TherapyMatch*, 2024 U.S. Dist. LEXIS 166534, at *17-21; *see also*, *Google RTB,* 606 F. Supp. 3d at 946-47 (privacy claim properly stated where Google allegedly shared and sold plaintiffs' "sensitive personal information such as plaintiff's IP address, geo-location data, and web-browsing information, search terms, and sensitive websites that plaintiffs visited relating to … health[.]"). Sussex's reliance on *Saeedy v. Microsoft Corp*., 2023 U.S. Dist. LEXIS 227915 (W.D. Wash. Dec. 21, 2023), is unavailing because that case did not involve disclosure of sensitive personal or medical information and is unpersuasive. *Id.* at *9-11.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**IV. CONCLUSION**

Plaintiffs properly have asserted claims for relief and have stated plausible individual and putative class privacy claims under the CMIA, the CIPA, and the California Constitution. The Court should deny Defendant's motion in its entirety.

Respectfully submitted,

Dated: January 9, 2025

**KELLER GROVER LLP**

By:________________________________
ERIC A. GROVER
*Attorneys for Plaintiffs*