Matthew D. Pearson (SBN 294302)
Matthew.Pearson@wbd-us.com
Jack F. Altura (SBN 297314)
Jack.Altura@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

R.C. and D.G., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,

Defendants.

Case No.: 3:24-cv-02609-JSC

The Honorable Jacqueline Scott Corley

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

**DATE: February 27, 2025**
**TIME: 10:00 a.m.**
**COURTROOM: 8**

Action Filed: November 30, 2023
Initial CMC: August 1, 2024

## TABLE OF CONTENTS


I. PLAINTIFFS HAVE NOT ALLEGED AN INJURY-IN-FACT. 2

A. There Is No Injury Without Identifiable Information. 2

B. No Sensitive Medical Information Was Ever Disclosed. 4

C. Public IP Addresses Identify No One. 5

D. The Injury-in-Fact Question Is Not "Intertwined with Merits Issues." 7

E. Plaintiffs' Other "Injury Theories" Fail. 8

II. PLAINTIFFS' CMIA CLAIM FAILS AS A MATTER OF LAW. 8

A. The CMIA Does Not Apply to Sussex. 8

B. Plaintiffs Never Provided Google or Sussex Their "Medical Information." 11

C. Plaintiffs Do Not Allege an Actionable "Disclosure" or "Actual Viewing." 12

III. PLAINTIFFS' CIPA § 631(A) CLAIM FAILS. 13

IV. PLAINTIFFS' CIPA § 632 CLAIM FAILS. 15

V. PLAINTIFFS' CONSTITUIONAL INVASION OF PRIVACY CLAIM FAILS. 15

VI. CONCLUSION 16

## TABLE OF AUTHORITIES

*Cases* *Page(s)*

*Am. Hosp. Ass'n v. Becerra,*
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)............................ *15*

*Am. Nat'l Ins. Co. v. Akopyan,*
No. 2:20-CV-08502-RGK-E, 2020 WL 10317437 (C.D. Cal. Dec. 14, 2020) .................. *7*

*Brit. Airways Bd. v. Boeing Co.,*
585 F.2d 946 (9th Cir. 1978)............................................................................................. *7*

*Brown v. Google LLC,*
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................................................ *2, 3, 4*

*Campbell v. Facebook, Inc.,*
951 F.3d 1106 (9th Cir. 2020)........................................................................................ *2, 3*

*Castillo v. Costco Wholesale Corp.,*
No. 2:23-cv-01548-JHC, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) . *11*

*Cody v. Ring LLC,*
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........................................................................ *13, 14*

*Cousin v. Sharp Healthcare,*
702 F. Supp. 3d 967 (S.D. Cal. 2023)............................................................................... *13*

*Cousin v. Sharp Healthcare,*
No. 22-cv-2040-MMA-DDL, 2024 U.S. Dist. LEXIS 48697 (S.D. Cal. Mar. 18, 2024) . *13*

*Daghaly v. Bloomingdales.com, LLC,*
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024)................................................. *4*

*Daly v. Viacom, Inc.,*
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ............................................................................. *4*

*Doe v. Regents of the Univ. of Cal.,*
672 F. Supp. 3d 813 (N.D. Cal. 2023) ............................................................................. *13*

*Griffith v. TikTok, Inc.,*
No. 5:23-CV-00964-SB-E, 2024 WL 5279224(C.D. Cal. Dec. 24, 2024).......................... *3*

*Hall v. Smosh Dot Com, Inc.,*
72 F.4th 983 (9th Cir. 2023) ............................................................................................. *7*

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .............................. *8*

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024)........................ *4*

*In re Google Referrer Header Priv. Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................... *2, 3*

*In re Google RTB Consumer Priv. Litig.*,
No. 21CV02155YGRVKD, 2022 WL 3704100 (N.D. Cal. Aug. 26, 2022)....................... *6*

*London v. New Albertson's, Inc.*,
No. 08-CV-1173 H (CAB), 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008)........................ *5*

*Mangini v. R.J. Reynolds Tobacco Co.*,
793 F. Supp. 925 (N.D. Cal. 1992) ........................................................................ *3*

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)................................................................. *14*

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998)............................................................................ *15*

*Oddei v. Optum, Inc.*,
No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) .................. *9*

*People v. Trevino*,
26 Cal. 4th 237 (2001) ....................................................................................... *10*

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021)................................................................... *15*

*Smith v. Sabre Corp.*,
No. 217CV05149SVWAFM, 2018 WL 11420538 (C.D. Cal. Jan. 23, 2018) .................... *8*

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).............................. *11*

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 fn. 4 (S.D. Cal. 2020).............................................................. *8, 12*

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................... *2, 3*

*Wild Equity Inst. v. City & Cnty. of San Francisco*,
No. C 11-00958 SI, 2012 WL 1458178 (N.D. Cal. Apr. 26, 2012).................................... *7*

**Statutes**

Cal. Civ. Code § 56.05 .......... 5, 10, 11
Cal. Civ. Code § 56.06 .......... 8, 9, 10
Cal. Health & Safety Code § 1374.72 .......... 10
Cal. Penal Code § 631 .......... 1, 13, 14
Cal. Penal Code § 632 .......... 1, 15

**Regulations**

45 C.F.R. § 160.103 .......... 5

With each new pleading, Plaintiffs' allegations change. First, they alleged that Defendant Sussex Publishers, LLC, through its website, www.psychologytoday.com (the "Site"), allowed Google Analytics ("GA") to intercept and read their email communications with their therapists. Plaintiffs dropped that allegation following a Rule 11 letter. Second, Plaintiffs claimed that, through the Site, Sussex allowed GA to intercept and collect their names and other identifying information—only to abandon that allegation when pressed by the Court. Third, they asserted that Sussex violated the California Consumer Privacy Act ("CCPA"), but now their Opposition fails to even mention the CCPA, let alone rebut Sussex's CCPA dismissal arguments.

Fourteen months, three complaints, a Rule 11 letter, a fully briefed motion to dismiss (and hearing), and, now, a second fully briefed motion to dismiss later, Plaintiffs are left with just three allegations: (1) they visited the Site; (2) while on the Site, they searched for a therapist using filters based on therapists' characteristics; and (3) GA, which was on the Site, collected Plaintiffs' public IP addresses and the filters they clicked on. That is it.

Based on these three allegations, Plaintiffs claim that Sussex (1) engaged in unlawful wiretapping under California's Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631, 632; (2) violated the Confidentiality of Medical Information Act ("CMIA"); and (3) invaded their privacy under the California Constitution. These claims, however, never even get off the ground.

To have Article III standing, a plaintiff must have suffered an injury-in-fact, and an alleged violation of a statute is not, *per se*, "injury-in-fact". More must be alleged. Plaintiffs acknowledge this in the SAC, claiming that they each suffered an injury-in-fact resulting from an alleged invasion of their privacy. Yet there simply can be no invasion of privacy when the information gathered does not identify the person to whom it relates. That is the case here.

On this point, Plaintiffs adopt contradictory positions. On the one hand, they assert that whether the information GA collected identified them is irrelevant because identification is not necessary to state an invasion-of-privacy injury-in-fact. [Dkt. 43, § II(A)(1).] On the other, they claim that the information collected by GA did, in fact, identify them. [*Id* at§ II(A)(3).] Both are wrong. Identification ***is*** necessary for Plaintiffs to have standing, and the information GA collected ***did not*** identify them. The SAC must be dismissed.

## I. PLAINTIFFS HAVE NOT ALLEGED AN INJURY-IN-FACT.

### A. There Is No Injury Without Identifiable Information.

The crux of Plaintiffs' standing argument is that "[d]isclosure of a person's identity is ***not*** a requirement for an invasion-of-privacy claim." [Dkt. 43, 10:2-3 (emphasis in original).] In some situations, that assertion is correct. A person who is spied on while in a changing room suffers an invasion of privacy regardless of whether the person's identity is known. That is because the harm suffered there—embarrassment—is independent of identity.

But that is not the case here. Neither Plaintiff alleges embarrassment or any form of emotional distress from the anonymous information collected by GA on the Site. Nor could they. Applied to the changing-room scenario, the data that GA would collect would merely show: (1) an anonymous person enters changing room at 10:00 a.m. holding jeans and a T-shirt; (2) anonymous person tries on both items; (3) anonymous person leaves the changing room at 10:15 a.m.; and (4) anonymous person purchases the items by 10:30 a.m. This information on its face is not harmful.

Plaintiffs implicitly agree with this fact, given that they both publicly filed the very information they claim GA unlawfully collected. [Dkt. 36 ¶¶ 12-15 (R.C.), 19-21 (D.G.).] In fact, Plaintiffs' complaints make clear that Plaintiffs believe that the disclosure of the information they allege was collected by GA only has the potential to be harmful when that information is associated with their identities. Why else would Plaintiffs be willing to disclose in the complaints (1) that they visited the Site [*id.* at ¶¶ 12 (R.C.), 18 (D.G.)]; (2) which "provider filters" they selected on the Site, [*id.* at ¶¶ 12 (R.C.), 19-20 (D.G.)]; and (3) the ZIP code in which they were searching, [*id.* at ¶¶ 12 (R.C.), 20 (D.G.)], yet refuse to use their actual names in the complaints?

Plaintiffs cite to three cases—*In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999 (N.D. Cal. 2020) ("*In re Google*"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020); and *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023)—for the proposition that "CIPA's privacy protections are not limited by whether the person's identity is disclosed." [Dkt. 43, 10:17-18.] None of these cases supports Plaintiffs' argument.

First, both *In re Google* and *Campbell* were decided before the United States Supreme Court issued its opinion in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), in which it stated that

"[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court" *Id.* at 427 (emphasis in original). In other words, after *TransUnion*, "an injury in law is not an injury in fact." *Id.*

Second, *In re Google* did not even include a claim under CIPA. 465 F. Supp. 3d at 1003. Instead, the plaintiffs there sued under the Electronic Communications Privacy Act, *id.*, a ***federal statute*** through which "Congress has…identified a concrete privacy interest in communications stored with electronic communication service providers—even if those communications cannot be linked to the user," *id.* at 1009. And while Congress may have the right to enact federal statutes the violation of which constitutes a *per se* injury-in-fact, that power does not extend to state legislatures. *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992) ("It is one thing when Congress enacts a statute, the violation of which constitutes 'injury' in the Art. III sense….It is quite another thing to suggest that the states have the same power….").

Third, while *Campbell* and *Brown* did involve CIPA claims, the facts of those cases are very different than the facts at issue here. In *Campbell*, Facebook "initially did not contest…that Plaintiffs had standing," arguing, instead, that the court "should affirm the settlement approval," and only later in in its supplemental brief claimed that "Plaintiffs lacked standing" because "Plaintiffs suffered no concrete harm from the 'use of anonymized and aggregated data from website links.'" 951 F.3d at 1119. The Ninth Circuit summarily dismissed this argument because it was "beside the point in the context of this case," given that "Facebook has confirmed…that [it] identifies and collects the contents of users' individual private messages." *Id.* In fact, the Ninth Circuit specifically stated that "this case…does not present the question whether standing could be based entirely on injury from anonymized, aggregated uses of data…." *Id.* at 1119 n. 9; *see also Griffith v. TikTok, Inc.,* No. 5:23-CV-00964-SB-E, 2024 WL 5279224, at *7 n. 14 (C.D. Cal. Dec. 24, 2024) (noting that *In re Google* "did not address the reasonable expectation of privacy required for the California privacy claims at issue here.").

*Brown* is equally distinguishable. As an initial matter, the plaintiffs and class members in *Brown* were all "Google account holders," 685 F. Supp. 3d at 919, thereby allowing Google to "'uniquely identify a user with a high probability of success.'" *Id.* at 925. Even further, the plaintiffs

in *Brown* alleged that Google surreptitiously collected their browsing information while they were using Google's "incognito" mode (i.e., a browsing mode that Google represented would result in Google ***not*** receiving the plaintiffs' browsing history). *Id.* at 919. Put simply, the facts in *Brown* are far more akin to the changing-room example discussed above (i.e., intrusion into a private space) than they are to the facts at issue here—namely, anonymous data collected by GA that Plaintiffs were already voluntarily providing to Sussex.

Unlike the cases cited by Plaintiffs, in *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024), adopted, No. CV 24-3081-GW-KSX, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024), the Central District of California actually considered the very question presented here—does a plaintiff have Article III standing to assert a claim under CIPA if she has not plausibly alleged that the information collected could be associated with her?—and found that the plaintiff did not. *Id.* at *5. Per the Court, if "Plaintiff's identity would not be connected with the anonymous information,…[then] seemingly no harm would have occurred." *Id.*

The Ninth Circuit recently affirmed a CIPA dismissal, stating that because "the only injury [Plaintiff] asserts is the violation of her privacy rights as codified by CIPA" and because "her allegations are insufficient to state a claim under…CIPA provision," she "lacks standing." *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024).

At bottom, "the standing analysis is contextual," *Brown*, 685 F. Supp. 3d at 925, and each individual plaintiff's experience is determinative. Here, Plaintiffs do not allege that GA collected their names, addresses, telephone numbers, or any of the other data capable of identifying them. Instead, they claim that GA collected their public IP addresses, which, as explained below, identify no one, and their button clicks on the Site, which they disclosed in their publicly filed complaints. *See Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1124 (N.D. Cal. 2002) ("[B]ecause plaintiff herself publically [sic] disclosed the [private] fact…, [her claim] fails[.]").

**B. <u>No Sensitive Medical Information Was Ever Disclosed.</u>**

Plaintiffs next try to establish injury-in-fact by claiming that the inclusion of "sensitive medical information" in the information collected by GA alters the standing analysis. [Dkt. 43, 11:9-11.] It does not, as no sensitive medical information was ever collected.

The Health Information Portability and Accountability Act ("HIPAA") defines "protected health information" as "***individually identifiable*** health information…" 45 C.F.R. § 160.103 (emphasis added). The CMIA defines "medical information" as "any ***individually identifiable*** information…." Cal. Civ. Code § 56.05(j) (emphasis added). That is, information is not "medical information" unless and until it is individually identifiable. Plaintiffs have not alleged and cannot allege that any information collected by GA was individually identifiable. *See London v. New Albertson's, Inc.,* No. 08-CV-1173 H (CAB), 2008 WL 4492642, at *5 (S.D. Cal. Sept. 30, 2008) ("Because Defendants de-identify Plaintiff…information before any subsequent…transfer…, this data is no longer 'individually identifiable' and thus not 'medical information' under the CMIA.").

**C. <u>Public IP Addresses Identify No One.</u>**

Although Plaintiffs cite to it only twice in their Opposition, Plaintiffs filed the Declaration of Joseph Greenfield for the apparent purpose of establishing that public IP addresses can, in fact, identify individuals. [*See* Dkt. No. 43-1.] A review of Greenfield's declaration shows: (1) he does not contradict any of the facts set forth in Sussex's declarations, and (2) he fails to address the distinction between being a Google account holder and not being a Google account holder as it relates to what information Google collects and how it uses it.

Before delving into the inaccuracies of Greenfield's declaration, two things must be emphasized: (1) Greenfield never claims that public IP addresses can be used to "identify" anyone, strategically opting to use the language "effectively pinpoint" instead [Dkt No. 43-1,¶ 25], and (2) Sussex has never argued that Google lacks the ability to determine users' precise location. Indeed, as anyone who has ever used Google Maps knows, that notion would be untenable. Sussex's position is that from the information collected by GA on the Site (i.e., public IP addresses and browsing history), Google, at best, can determine the ZIP-code sized location of an unknown user.

Greenfield relies almost exclusively on Google's Great Britain-specific version of its publicly available Privacy & Terms Policies (the "GB Policies") to opine on what GA can do with a public IP address. [*Id.* at ¶¶ 20-25; Oliver Reply Decl., ¶ 10.] The relevant US version, which is similar, but not the same, is attached as **Exhibit A** to the Oliver Reply Declaration ("US Policies"). Greenfield's opinions rest on statements from Google that are either taken out of context or do not

apply to Plaintiffs at all. In paragraph 22, Greenfield quotes the GB Policies: "The saved location, which can be used to help Google determine a more relevant location in a future search, can come from the IP address...." [*Id.* at ¶ 2.] But, as the GB Policies clarify, this "saved location" applies only to "Google Account" holders, as stated in the section's heading, "How are Location History and Web & App Activity saved in my Google Account?" [Oliver Reply Decl., ¶¶ 16-17.] This distinction matters because Google account holders (i.e., people who have Gmail addresses; sign in to services like Google Maps, YouTube, or Chrome; or use an Android device with Google Play) (1) affirmatively identify themselves to Google and (2) agree to a host of Google-specific policies and disclosures. [*Id.* at ¶ 16.] *See also In re Google RTB Consumer Priv. Litig.*, No. 21CV02155YGRVKD, 2022 WL 3704100, at *2 (N.D. Cal. Aug. 26, 2022) (alleging "that Google links information…with named plaintiffs' ***Google accounts***, and that this renders all such linked information 'personal information' of ***an account holder***" (emphasis added)). This case, however, only involves the Site and GA, not the Plaintiffs' activities across the broader Google platform. Neither Plaintiff claims to be a Google account holder. [*See generally* Dkt. 43.]

Greenfield also partially quotes Google's answer to the question "How does Google know my location?", stating "[t]his location information can come from real-time signals, like your IP address or from your device," [Dkt. 43-1, ¶ 23], and, from that, concluding "Google may be able to determine the precise location of an individual" from an IP address, [*Id.* at ¶ 24]. Yet the very GB Policies he cites refute his conclusion. In the "From your IP address" section, Google says it "may use information [i.e., IP addresses] about the ***general area that you're in*** to provide some basic services…." [Oliver Reply Decl., **Ex. A.,** p. 20.] Additionally, Google's reference to using real-time signals, such as IP addresses, for location determination is consistent with common technical practices. [*Id.* at ¶ 20.] IP addresses can provide *general* geographic information—in 'real-time'—based on ISP data. However, their utility for determining *precise* locations, such as street addresses, is minimal without other data points, as demonstrated by Google's reliance on device telemetry for enhanced accuracy (i.e., from an Android phone or app with telemetry activated, as noted in Google's policy for account holders). [*Id.* at ¶¶ 20-22.] Thus, consistent with Sussex's position, a public IP address at most provides a ***general, ZIP-code sized location***.

**D. <u>The Injury-in-Fact Question Is Not "Intertwined with Merits Issues."</u>**

In a last-ditch effort to avoid dismissal, Plaintiffs argue that the Court cannot decide whether they have standing at the pleading stage because Sussex's standing arguments are "are intertwined with the merits of the claims" and "factual disputes must be left to the trier of fact." [Dkt. 43, 13:2-3.] Plaintiffs' argument is wrong on both fronts.

This Court could determine whether Plaintiffs have alleged an injury-in-fact without ever considering Plaintiffs' underlying claims. This is not a situation in which Sussex is arguing that Plaintiffs were not injured because they consented to Sussex's conduct or some other merit-based issue. *Hall v. Smosh Dot Com, Inc*., 72 F.4th 983, 985 (9th Cir. 2023) ("[C]onsent is relevant to the merits…, not to Article III standing."). Instead, Sussex is arguing that even if the Court *assumes* that it violated the statutes in question, Plaintiffs would still not have standing because they have not alleged an injury. *Wild Equity Inst. v. City & Cnty. of San Francisco*, No. C 11-00958 SI, 2012 WL 1458178, at *11 (N.D. Cal. Apr. 26, 2012) (analyzing injury-in-fact by "assum[ing] that plaintiff will prevail on the merits").

Beyond that, while claiming that "factual disputes must be left to the trier of fact," Plaintiffs fail to identify a single "question of fact" as it relates to their standing. While Plaintiffs may "dispute Defendant's assertions regarding the amount of information that an IP addresses can reveal…." [Dkt. 43, 13:13-15,] "disputing" facts is not the same as a "factual question." A "factual question" arises when parties submit conflicting, admissible evidence. *Brit. Airways Bd. v. Boeing Co*., 585 F.2d 946, 952 (9th Cir. 1978) (noting that "legal memoranda and oral argument…cannot by themselves create a factual dispute"). Plaintiffs have not done that here, relying instead on their "expert's" assumptions from Google's Policies that have no application to Plaintiffs.

Finally, to the extent the Court does believe there is a "factual question" to be resolved, it can and should resolve it. *Am. Nat'l Ins. Co. v. Akopyan*, No. 2:20-CV-08502-RGK-E, 2020 WL 10317437, at *1 (C.D. Cal. Dec. 14, 2020) ("[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."). It was Plaintiffs' burden to provide the Court with sufficient, admissible evidence to do just that. They failed to do so. Public IP addresses do not identify anyone, and nothing Plaintiffs or their "expert" say changes that.

### E. Plaintiffs' Other "Injury Theories" Fail.

Plaintiffs also claim that somehow they have been injured through the "diminution in value" of their information and through some largely unspecified "ongoing risk." [Dkt. 43-1, §§ II(B), (C).] These claims are quickly rebutted. **First**, Plaintiffs cannot, on the one hand, allege that their "information" has value that was decreased the minute it was collected by GA while, on the other hand, publicly disclose that very information in their complaints. *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (rejecting diminution theory because plaintiffs fail to "allege facts explaining how Defendants' collection…of their information reduces the value of that information"). **Second**, to establish a risk of future harm sufficient to confer Article III standing, Plaintiffs cannot simply claim that they are at an "ongoing risks to that private information and risks of harassment, spam, and targeted advertising specific to their medical conditions." [Dkt. 43-1, 16:3-5.] They must allege ***facts*** to substantiate the risk. *Smith v. Sabre Corp*., No. 217CV05149SVWAFM, 2018 WL 11420538, at *3 (C.D. Cal. Jan. 23, 2018) ("[A]bsent specific allegations as to why the unauthorized person's alleged possession of Smith's information exposes her to a substantial and concrete risk of future [harm], she lacks standing based on that risk."). They have failed entirely to do so here.

In sum, the only difference between what Plaintiffs included in their publicly filed complaints and what GA collected on the Site is that GA also collected their public IP addresses, which identify no one. If anything, the information in Plaintiffs' complaints is more invasive than that collected by GA, given that the complaints disclose that it was Plaintiffs who were on the Site and the reason for their being on it—information GA had no way of knowing. Plaintiffs have failed to state an injury-in-fact arising out of Sussex's alleged conduct. Their SAC must be dismissed.

## II. PLAINTIFFS' CMIA CLAIM FAILS AS A MATTER OF LAW.

### A. The CMIA Does Not Apply to Sussex.

The CMIA applies to "providers of health care." *Stasi v. Inmediata Health Grp. Corp*., 501 F. Supp. 3d 898, 908 fn. 4 (S.D. Cal. 2020). As a "private media company," [Dkt. 36, ¶ 2], Sussex is clearly not a "provider of health care" under the normal definition of the term. Therefore, Plaintiffs resort—incorrectly—to Civil Code §§ 56.06(b)'s and (d)'s expansion of the term.

§ 56.06(b) makes the CMIA applicable to"[a]ny business that offers software or hardware to consumers, including a mobile application…that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual..." Cal. Civ. Code § 56.06(b). Plaintiffs claim that Sussex meets this definition because it offers both the Site and its Zoom-like application, Sessions. Neither is true.

First, while a website may require the "individual's own hardware and software (i.e., a computer and its programs)…to access" it, it is not, itself, hardware or software. *Oddei v. Optum, Inc.*, No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021)*, aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035, 2022 WL 17538747 (9th Cir. Dec. 8, 2022). Second, Plaintiffs' reliance on Sussex's video-conferencing application is misplaced. The question is not whether Sussex operates a "mobile application." It is whether that mobile application (1) is "designed to maintain medical information" (2) "in order to make the information available to an individual or a provider of health care," (3) "for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual[.]" Cal. Civ. Code § 56.06(b).

Here, Plaintiffs never even get past the first requirement—namely, that Sussex's video-conferencing application is "designed to maintain medical information." It is not, as Plaintiffs' own allegations make clear. D.G., the only Plaintiff who alleged to have used Sussex's application (but who then omitted the allegation in her Declaration), identified her "name" as the only information she inputted into the application. [Dkt. 36, ¶ 22.] Clearly, the application was not "designed to maintain medical information" if it never actually collected any medical information, and, certainly, the application was not making medical information available to anyone for any purpose.

§ 56.06(d) is equally inapplicable. Under § 56.06(d), "[a]ny business that offers a mental health digital service," which the CMIA defines as "a mobile-based application or internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services

to a consumer," Cal. Civ. Code § 56.05(l), "to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care." *Id.* at § 56.06(b).

Again, Plaintiffs fail to surmount the first hurdle: establishing that Sussex (1) "collects mental health application information" (2) "from a consumer[.]" "Mental health application information" is "information related to a consumer's inferred or diagnosed mental health or substance use disorder, as defined in Section 1374.72 of the Health and Safety Code." *Id.* at § 56.05(k). Sussex never collected Plaintiffs' "inferred or diagnosed mental health or substance use disorder" because, aside from Plaintiffs visiting the Site, Sussex never had any interaction with Plaintiffs. The declaration of D.G. demonstrates this fact. D.G. declares that, when she visited the Site, she was "seeking help for a family crisis involving her adult son" and that she "selected a number of symptoms and issues indicating [her] mental health concerns and need for treatment," including "addiction, ADHD, anxiety, autism, depression, drug abuse, marriage counseling, OCD, relationship issues, stress, substance abuse, suicidal ideation, and trauma/PTSD." [Dkt. 43-3, ¶ 2.] D.G. fails to explain whether she, herself, was suffering from each of those thirteen issues or whether "her adult son" was. Furthermore, if, indeed, each of those thirteen issues related to her specifically, she fails to indicate whether she has been "diagnosed" with those conditions. Thus, even with the additional information provided by D.G. in her declaration—information that was not made available to either Sussex or GA through the Site—the filters selected by D.G. still do not qualify as "mental health application information" because neither Sussex nor GA knows what her "inferred or diagnosed mental health or substance abuse disorder[s]" are.

Beyond that, neither of the Plaintiffs was a "consumer" of Sussex, as required under § 56.06(d). The legislature's use of the term "consumer" is unique; most other sections of the CMIA use the broader term "individuals." *See* Cal. Civ. Code § 56.05. Therefore, under general statutory interpretation principles, "the normal inference is that the Legislature intended a difference in meaning." *People v. Trevino*, 26 Cal. 4th 237, 242 (2001). The difference lies in the dictionary definitions of the terms. A "consumer" is "a person who ***buys goods or services*** for their own use," whereas an "individual" is "a single person or thing, especially when compared to the group or set

to which they belong." [1,2] Put simply, for Sussex to be a "mental health digital service," it must be in the business of ***selling mental health*** goods or services directly to individuals, turning them into "consumers." Sussex does not do this, and Plaintiffs do not allege it does.

### B. Plaintiffs Never Provided Google or Sussex Their "Medical Information."

To qualify as "medical information" under the CMIA, the information must (1) be "individually identifiable" and (2) be in regard to "a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). The information about Plaintiffs that was collected by GA meets neither of these requirements.

Plaintiffs admit that the only non-browsing information collected by GA about them is their public IP addresses. [Dkt. 34, 9:17-18 (describing information collected from the Site as "their IP addresses and descriptive URLs showing Plaintiffs' searches and filters").] Nevertheless, in their Opposition, they rely on cases involving collection of far more information. For example, Plaintiffs cite to *St. Aubin v. Carbon Health Techs., Inc*., No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024), arguing that Judge Tigar found that the disclosure of "descriptive URLs" was sufficient to state a CMIA claim. [Dkt. 43, 18:26-28.] That is not what Judge Tigar found.

In fact, in *St. Aubin,* there was no question as to whether the information collected could be used to identify the plaintiffs because the third-party collector was Facebook, and Facebook was collecting Facebook IDs, which allowed Facebook "to link" the URLs of the healthcare pages the plaintiffs had visited with their "Facebook profile." *St. Aubin*, 2024 WL 4369675, at *1; *see also Castillo v. Costco Wholesale Corp.,* No. 2:23-cv-01548-JHC, 2024 U.S. Dist. LEXIS 207197, at *4-5 (W.D. Wash. Nov. 14, 2024) ("The data collected by the Pixel can be linked to a customer's identity through their personal Facebook account.").

Plaintiffs likewise discuss *McCulley v. Banner Health*, No. CV-23-00985-PHX-SPL, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024), suggesting that the court there analyzed and later held that IP addresses are inherently individually identifiable. That is far from the truth. The

---

[1] *See* https://dictionary.cambridge.org/us/dictionary/english/consumer?q=consumer+
[2] *See* https://dictionary.cambridge.org/us/dictionary/english/individual?q=individual+

defendant in *McCully* did not even dispute the "individually identifiable" requirement under the CMIA. *Id.* at *38. Indeed, the sum total of the *McCully* court's analysis on the issue was: "The Court finds that this information was 'individually identifiable' to Plaintiffs as the tracking tools allegedly used by the third parties conveyed Plaintiffs' IP addresses." *Id.* at *39. Clearly, the court in *McCulley* did not have the benefit, like the Court does here, of being presented with expert testimony explaining the distinction between public and private IP addresses, and the dearth of information that can actually be gleaned from them (a general, ZIP code-sized location).

### C. <u>Plaintiffs Do Not Allege an Actionable "Disclosure" or "Actual Viewing."</u>

Plaintiffs' § 56.10 claim requires them to allege that Sussex "affirmatively disclosed" their medical information. Their § 56.101 claim requires them to allege an "unauthorized viewing" of their medical information. Plaintiffs do not dispute this, arguing instead that their allegations establish both. [Dkt. 43, § 3(B)(4).] Plaintiffs are wrong.

As to the "affirmative disclosure" requirement, Plaintiffs argue, with no legal support, that they meet the requirement because they allege "Sussex ***chose*** to put Google's tracking software on its website which allows users to communicate about their mental health conditions and treatment services." [Dkt. 43, 23:14-15 (emphasis in original).] Plaintiffs act as if the "affirmative disclosure" requirement under § 56.10 is the same as a requirement that the defendant do ***something*** intentionally to allow the disclosure. It is not. Time and time again, courts have held that, to be liable under § 56.10, the defendant must "affirmatively communicate" the medical information to a third party. *See, e.g. Stasi,* 501 F. Supp. 3d at 922 (dismissing § 56.10 claims because while it may be "reasonable to infer that some affirmative act by Inmediata caused the [disclosure,]" that is not the same as an "affirmative disclosure" of medical information under § 56.10.)

With regard to the "unauthorized viewing" requirement under § 56.101, Plaintiffs argue that this requirement can be met even if no unauthorized ***person*** ever viewed their medical information. [Dkt. 43, 23:27-28 (stating that "Courts have rejected the argument that, to state a CMIA claim, plaintiffs must allege that a human, not an entity or its computer, viewed the information.").] In making this argument, however, Plaintiffs overlook one crucial fact: every valid case to which Plaintiffs cite includes allegations that the information in question had been used by the third party

to target the plaintiffs with advertising.[3] *See St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *31 (alleging "that after scheduling an appointment for her COVID-19 vaccine, Plaintiff received advertisements relating to COVID-19 vaccination"), *Doe v. Regents of the Univ. of Cal.,* 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023) (alleging that plaintiff "began receiving advertisements on Facebook for high blood pressure medication as well as targeted email advertisements relating to the same"); *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *5 (alleging that "Plaintiffs later received targeted advertisements for specific prescriptions"). Indeed, courts have found that such allegations "raise a plausible claim that…medical information was…accessed." *Doe*, 672 F. Supp. 3d at 819.

Here, Plaintiffs make no such allegations. They merely allege, in a wholly conclusory fashion, that "Google received, viewed, and used Plaintiffs' and Class members' information" in order to, among other things, "provid[e] marketing services and offerings, such as creating customer profiles, custom audiences, and targeted advertisements." [Dkt. 36, ¶ 31.] That is insufficient to "raise a plausible claim" that Google actually viewed their information.

## III. <u>PLAINTIFFS' CIPA § 631(a) CLAIM FAILS.</u>

For their aiding and abetting claim under § 631(a), Plaintiffs must establish both (1) that GA either (a) "willfully…read[], or attempt[ed] to read, or…learn[ed] the contents or meaning of any message, report, or communication while the same is in transit" or (b) "use[d], or attempt[d] to use…any information…obtained" through an unlawful wiretap and (2) that Sussex intentionally "aid[ed], agree[d] with, employ[ed], or conspire[d] with [Google] to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above[.]" Cal. Penal Code § 631(a).

As an initial matter, Plaintiffs have not alleged that GA has used or attempted to use any of their information that it collected through the Site.[4] Plaintiffs do not allege having received targeted advertising based on the information they provided on the Site, and their allegation in the SAC that GA "at the very least has the capability to use" the information is of no avail. [Dkt. No 36, ¶ 144.] § 631(a) requires ***actual*** use or attempted use of the information.

---

[3] Plaintiffs cite to *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023), but that case was vacated after the court found that it lacked jurisdiction. *Cousin v. Sharp Healthcare,* No. 22-cv-2040-MMA-DDL, 2024 U.S. Dist. LEXIS 48697, at *28 (S.D. Cal. Mar. 18, 2024).

[4] Plaintiffs' failure to allege a violation of clause two further precludes them from alleging a violation of clause three. *See Cody v. Ring LLC,* 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024).

That leaves Plaintiff with only the second prong of § 631(a), under which they must allege that Google "willfully…read[], or attempt[ed] to read, or…learn[ed] the contents or meaning of…[their] communication while [it was] in transit." Cal. Penal Code § 631(a). To be clear, this means that Plaintiffs must plausibly allege that in the millisecond it took Plaintiffs' communications to travel from their own devices to Sussex's servers, Google read, attempted to read, or learned the contents of those communications, not simply that GA acquired them during that time.

Courts that have decided this issue previously have failed to draw this distinction, focusing instead on whether the "interception" occurred while the communication was in transit. *See, e.g., St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *18 (finding an alleged violation of the second clause of § 631(a) because plaintiff claimed that the "interception" occurred simultaneously). But, as the Eastern District noted, "the crucial question under § 631(a)'s second clause is whether [the plaintiff] has plausibly alleged that [the third party] ***read one of his communications*** while it was still in transit, i.e., ***before it reached its intended recipient***." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (emphasis added). The Court correctly noted the distinction at the prior hearing, asking "[b]ut where do you get from the statute that sending [the communication] is the same as reading it or listening to it?" [Dkt. 42-4, Tr.13:20-25]. Plaintiffs have alleged no facts that would support a finding that GA "read, attempted to read, or learned" the contents of their communications at all and certainly not in the millisecond it took for them to reach Sussex.

Finally, although Plaintiffs attempt to prove application of a lesser aiding-and-abetting intent standard, the outcome is the same regardless of the standard applied. Sussex cannot be liable for aiding and abetting unless Google violated § 631(a), and, as discussed above, Plaintiffs have not alleged such a violation. *Cody*, 718 F. Supp. 3d 1003 (dismissing aiding-and-abetting claim because plaintiff "fails to establish an underlying third-party violation"). Further, even under Plaintiffs' proposed aiding-and-abetting intent standard, [Dkt. 43, 25:8-12], Plaintiffs have still failed to plausibly allege aiding-and-abetting liability. To argue that Sussex somehow "aided," "agreed with," "employed," or "conspired with" Google to unlawfully intercept Plaintiffs' communications is to argue that this Court and Plaintiffs' counsel, on whose sites GA is currently running (https://www.cand.uscourts.gov/ and https://www.kellergrover.com/), did the same.

## IV. PLAINTIFFS' CIPA § 632 CLAIM FAILS.

Plaintiffs do not dispute that ordinary browsing history, such as button clicks, URLs of pages visited, etc., do not constitute "confidential communications" protected by § 632. [Dkt. 43, 31: 9-11.] Instead, they claim that "[i]n cases that…address medical information, courts have found time and again that individuals have a reasonable expectation of privacy in their internet communications." [*Id.* at 31:11-13.] But, in making this argument, Plaintiffs put the cart before the horse. They assume that the information collected on the Site constituted "medical information." It did not. It was the browsing information of an anonymous individual who may have been browsing for themselves or, in the case of Plaintiffs' expert, may have been browsing for someone else. That is not medical information. Plaintiffs' § 632 claim must be dismissed.

## V. PLAINTIFFS' CONSTITUIONAL INVASION OF PRIVACY CLAIM FAILS.

There is no dispute that whether Plaintiffs have a "reasonable expectation of privacy" in the information collected by GA depends on the type of information collected. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 (9th Cir. 1998). Nor is there any dispute as to what information was collected by GA: public IP address and "provider filters." [Dkt. Nos. 43-2, ¶ 1; 43-3, ¶ 2.] Where the dispute arises is how the collected information is classified.

In support of their invasion-of-privacy claim, Plaintiffs assume the information is "sensitive medical information," citing to numerous cases finding an invasion of privacy from the disclosure of medical information. [Dkt. 43, 32:18-27.] But, as explained above, Plaintiffs' assumption is wrong. Information is only "medical information" if it is personally identifiable and specifically relates to the treatment ***of that identifiable person.*** *Am. Hosp. Ass'n v. Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, at *14 (N.D. Tex. June 20, 2024) ("Without knowing…the visitor's subjective motive[], the resulting metadata could never identify that individual's PHI."). Plaintiffs do not allege that, from the information GA collected on the Site, Google could identify them, nor do they allege that GA knew their "subjective motive" for being on the Site. Therefore, they have not alleged the collection or disclosure of "medical information," and, as such, fall within the category of cases that have dismissed invasion of privacy claims arising out of the collection of mere browsing records. *See, e.g., Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 524-25 (C.D. Cal. 2021).

## VI. **CONCLUSION**

For the foregoing reasons, Defendant Sussex Publishers, LLC respectfully requests that the Court grant its Motion to Dismiss in full and with prejudice.

Respectfully submitted,

Dated: January 30, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC