ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

DON BIVENS (*pro hac vice admission)*
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
R.C. and D.G., Individuals

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

R.C. and D.G., individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

SUSSEX PUBLISHERS, LLC; and DOES 1 through 100, inclusive,

Defendants.

Case No: 3:24-cv-02609-JSC

Assigned to Honorable Jacqueline Scott Corley

**PLAINTIFFS' STATEMENT OF RECENT DECISION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

[Local Rule 7-3(d)(2)]

Date: February 27, 2025
Time: 10:00 a.m.
Courtroom: 8

Complaint Filed: November 30, 2023
FAC Filed: August 12, 2024

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-3(d)(2), Plaintiffs R.C. and D.G, hereby submit this Statement of Recent Decision in support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Second Amended Complaint for Damages (ECF 43).

Attached hereto as **Exhibit A** is the court's decision in *Misael Ambriz, et al., v. Google, LLC*, No. 23-cv-05437-RFL, 2025 U.S. Dist. LEXIS 29609 (N.D. Cal. Feb. 10, 2025).

Good cause exists for the filing of this notice, as the decision referenced above was issued on February 10, 2025, prior to the upcoming hearing on Defendant's Motion to Dismiss Second Amended Complaint for Damages.

Respectfully submitted,

Dated: February 20, 2025

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Counsel for Plaintiffs*

# EXHIBIT A

# Ambriz v. Google, LLC

United States District Court for the Northern District of California

February 10, 2025, Decided; February 10, 2025, Filed

Case No. 23-cv-05437-RFL

**Reporter**
2025 U.S. Dist. LEXIS 29609 *

MISAEL AMBRIZ, et al., Plaintiffs, v. GOOGLE, LLC, Defendant.

**Counsel:** **[*1]** For Misael Ambriz, individually and on behalf of all other persons similarly situated, Plaintiff: Neal J. Deckant, LEAD ATTORNEY, Bursor & Fisher, P.A., Walnut Creek, CA USA.

For Jimmy Nimmo, Eugene Erlikh, James Fox, Christopher Bissonnette, Ahmad Mehdipour, Peter Samish, Plaintiffs: Neal J. Deckant, Bursor & Fisher, P.A., Walnut Creek, CA USA.

For Christopher Barulich, Consol Plaintiff: Anthony Gerard Simon, LEAD ATTORNEY, Jeremiah W. Nixon, The Simon Law Firm, P.C., St. Louis, MO USA; Neal J. Deckant, Bursor & Fisher, P.A., Walnut Creek, CA USA.

For GOOGLE, LLC, Defendant: Kristine Anne Forderer, Travis LeBlanc, LEAD ATTORNEYS, Anupam Singh Dhillon, Thilini Chandrasekera, Cooley LLP, San Francisco, CA USA; Tiana A. Demas, PRO HAC VICE, Cooley LLP, Chicago, IL USA.

**Judges:** RITA F. LIN, United States District Judge.

**Opinion by:** RITA F. LIN

## Opinion

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 47

**I. INTRODUCTION**

This is an action for statutory damages under the California Invasion of Privacy Act ("CIPA") for Google's alleged unlawful access to, transcription, and analysis of calls made by Plaintiffs to various business customer service centers. Google has moved to dismiss under Rule 12(b)(6). The thrust of Google's various **[*2]** arguments is that it simply provides a software tool to its business clients, and that Google itself—as opposed to its software—does not engage in any conduct that violates CIPA. At this stage of the litigation, the Court is required to accept the allegations of the operative complaint as true. For the reasons described below, Plaintiffs have adequately alleged that Google acted as an unauthorized third party to Plaintiffs' calls in violation of CIPA. Google's Motion to Dismiss (Dkt. No. 47) is **DENIED**.

**II. ALLEGATIONS OF FIRST AMENDED COMPLAINT**

Defendant Google, LLC offers a product called Google Cloud Contact Center AI ("GCCCAI") to support the customer service centers of other businesses. (Dkt. No. 45, "CAC" ¶¶ 1-2.) GCCCAI offers a virtual agent for callers to interact with, and it can also support a human agent, including by: (i) sending the human agent the transcript of the initial interaction between the caller and the GCCCAI virtual agent, (ii) acting as a "session manager" who provides the human agent with a real-time transcript, makes article suggestions, and provides step-by-step guidance and "smart replies." (*Id.* ¶¶ 27-33.) On a GCCCAI supported call, the fact that Google **[*3]** is transcribing and analyzing the customer service call is not disclosed to the caller. (*Id.* ¶¶ 27, 38.)

Each named Plaintiff alleges that they placed a customer service call and spoke with both a "virtual agent" and human representative of one of the following businesses that use the GCCCAI service: Verizon, Hulu, GoDaddy, and Home Depot. (*Id.* ¶¶ 42-108.) Plaintiffs each allege that when they placed the call, they reasonably expected their conversation to be between a representative of the business they had called and themselves, and that they did not consent to Google transcribing or analyzing the call. (*Id.*)

Google's terms of service governing GCCCAI state that "Google will not use Customer Data to train or fine-tune any AI/ML models without Customer's prior permission or instruction." *See* Service Specific Terms, https://cloud.google.com/terms/service-terms.[1] It is not in dispute that "Customers" in this context means the businesses that contracted with Google for GCCCAI services, and that under its terms of service Google is not required to seek consent of the caller to use data collected during customer service calls. (Dkt. No. 53, "Reply" at 3). Plaintiff does not allege that any **[*4]** of the businesses at issue granted Google permission to use the "Customer Data to train or fine-tune" its models.

## III. PROCEDURAL HISTORY

Plaintiff Misael Ambriz filed this action against Google on October 23, 2023 alleging that Googled wiretapped his customer service calls with Verizon in violation of *California Penal Code section 631(a)*. (Dkt. No. 1.) The Court dismissed the complaint without prejudice under CIPA's exemption from liability for telephone companies and their agents. (Dkt. No. 37.) The case was subsequently consolidated with *Barulich v. Google, LLC*, No. 24-cv-06225 (N.D. Cal.). (Dkt. No. 44.) The operative Class Action Complaint (Dkt. No. 45) adds six new named plaintiffs and alleges violations of Section 631(a)—with respect to calls made to Hulu, GoDaddy, and Home Depot—and violations of Section 637.5—with respect to calls made to Verizon.

## IV. LEGAL STANDARD

*Federal Rule of Civil Procedure 8(a)(2)* requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* *Fed. R. Civ. P. 12(b)(6)*. To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal, 556 U.S. 662 (2009)* and *Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007)*, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has **[*5]** at least a plausible chance of success.'" *Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014)*. The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008)*. But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt, 765 F.3d at 1135* (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014)*). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly, 550 U.S. at 556*).

---

[1] Cited in CAC ¶ 37 n.8. The Court may take judicial notice of documents incorporated by reference in the Complaint.

### V. DISCUSSION

#### A. ***California Penal Code Section 631(a)***

*California Penal Code Section 631(a)* punishes any person who:

> (1) by means of any machine, instrument, or contrivance, or in any other matter, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument[;]
>
> (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to **[*6]** learn the contents or meaning of any message . . . while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[;]
> (3) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[; or]
> (4) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]

*Cal. Penal Code § 631(a)*. The California Supreme Court has clarified that this provision contains three operative clauses protecting against "three distinct and mutually independent patterns of conduct": (i) "intentional wiretapping," (ii) "willfully attempting to learn the contents or meaning of a communication in transit," and (iii) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court, 22 Cal. 3d 187, 192 (1978)*. Plaintiffs seek to hold Google liable under the first two provisions of the statute. Google raises four arguments in its motion to dismiss. It argues that (i) it is not a "unauthorized" third party under the meaning of the statute; (ii) the alleged conduct was not **[*7]** taken by a "person" under the meaning of the statute; (iii) there has been no violation of clause one of the statue because Plaintiffs' alleged calls were likely made on smartphones and not via a "telephone wire, line, cable, or instrument;" and (iv) Plaintiffs have failed to allege that Google intercepted messages "in transit" as required under clause two of the statute. The Court addresses each of these arguments in turn.

##### 1. Google Is a Third Party

In order to establish Google's liability under Section 631(a), Plaintiffs must allege that Google was an unauthorized third-party listener to the communications between the named Plaintiffs and the customer service centers they called. The parties analogize to two seminal California cases in support of their respective positions. Plaintiffs claim that when Google collects and analyzes call data at the request of its business customers, it is like a third-party who received an invitation from party A to listen in on a call between party A and party B without party B's knowledge. *See* *Ribas v. Clark, 38 Cal. 3d 355 (1985)* (cited in Dkt. No. 52, "Opp." at 7, 10-11). The *Ribas* court found that the third-party's conduct violated Section 631(a). *Ribas, 38 Cal. 3d at 361-62*. Google argues that it is not a participant in the calls at all, and **[*8]** that it simply provides a software tool (like a tape recorder) that party A may use to lawfully record and analyze its own call with party B. *See* *Rogers v. Ulrich, 52 Cal. App. 3d 894 (1975)* (cited in Dkt. No. 47, "MTD" at 6). The *Rogers* court found that party A's tape recording did not violate CIPA. *Rogers, 52 Cal. App. 3d at 899*.

Ninth Circuit courts are frequently called upon to apply the guidance of *Ribas* and *Rogers* to software service cases, and a split has emerged in courts' application of Section 631(a) to these facts. Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the "extension test." Other courts require only that plaintiff allege the software vendor has the *capability* to use the data for its own purposes.

<u>The extension test</u>. In *Graham v. Noom, Inc., 533 F. Supp. 3d 823 (N.D. Cal. 2021)*, the plaintiff sued alleging that Noom used a software provided by a third-party, FullStory, to monitor visitors' interactions with Noom's website in violation of CIPA. *Id. at 827-29*. The *Graham* court held that neither company violated section 631(a), reasoning

that FullStory merely captured the user data and hosted that data on its own servers where Noom could then use the data by analyzing it. *Id. at 832-33*. Absent allegations that FullStory actually received an independent **[*9]** benefit from the collected user data, the court reasoned, Fullstory was simply acting as an extension of Noom and not as a third party. *Id.*

The capability test. In *Javier v. Assurance IQ, LLC, 649 F. Supp. 3d 891 (N.D. Cal. 2023)*, plaintiff sued alleging that Assurance used ActiveProspect's software to monitor visitor's interactions with Assurance's website. *Id. at 894-95*. The *Javier* court found that ActiveProspect was a third-party based on its capability to use user data to its benefit, regardless of whether or not it actually did so. *Id. at 900*. The *Javier* court noted that there is already a use requirement in one of section 631(a)'s discrete clauses ("us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"), and therefore it would be improper to impute a use requirement to all of section 631(a). *Id.* The court also noted that in *Ribas*, the California Supreme Court never considered the third-party listener's intentions or their use for the information obtained, and so to consider a third party's intent in obtaining data here would similarly be improper. *Id.*; *see also* *Gladstone v. Amazon Web Servs., Inc., 739 F. Supp. 3d 846, 854-55 (W.D. Wash. 2024)* (adopting the same reasoning); *Tate v. VITAS Healthcare Corp., No. 24-cv-01327, 2025 WL 50447, at *4 (E.D. Cal. Jan. 8, 2025)* (same). For the reasons described by the *Javier* court, the capability test is the better application of the statute and the California Supreme Court's **[*10]** precedent to the facts of this case, and the Court will apply it here.

Plaintiffs have adequately alleged that Google "has the capability to use the wiretapped data it collects . . . to improve its AI/ML models." (CAC ¶ 37.) Under Google's terms of service, Google may use data collected on customer service calls for its own purposes if its business clients grant it permission to do so. (*Id.*) This provision creates a plausible inference that Google has the technological capability to use the data it collects and analyzes, regardless of whether it actually makes use of that data. After all, it would be illogical for Google to grant itself the conditional right in under its own terms of service to do something it is not capable of doing.

Google counters that it is contractually prohibited from using data it collects from calls absent authorization from its business client, which strips it of the capability of using the data. (MTD at 9.) It further notes that Plaintiff does not allege that Google has ever been granted authorization. (Reply at 3.) But whether or not Google receives permission from a business to use the call data it collects—or, alternatively, whether Google chooses to breach **[*11]** its contract and use call data without permission—is irrelevant to the question of its capabilities. Google does not dispute that it is technologically capable of using the call data for an independent purpose, and this is what the capability test measures. *See* *Gladstone, 739 F. Supp. 3d at 854-55* (holding that capability test considers only whether the software company is "capable of creating, recording, and retaining data for purposes other than sending the data back to its business client"—not whether it actually does so).

**2. Plaintiffs Have Adequately Alleged Conduct by a "Person"**

Section 631(a) prohibits conduct by "person[s]," a term which includes LLCs. *Cal. Pen. Code § 632(b)*. Google argues that the Plaintiffs fail to state a claim because "the CAC alleges at best that the service [GC]CCAI engages in challenged conduct, but not Google," and GCCAI is not a person under the statute. (MTD at 10-11.) This appears to be a repackaging of Google's argument that it is simply providing a software tool, which the Court has already addressed above. Plaintiffs have adequately alleged that Google, through its GCCAI software, records and analyzes customer service calls "in real time" and provides transcripts and other materials to its business clients. (CAC ¶¶ **[*12]** 31-32.) Therefore, it is Google, not GCCAI, that is alleged to have engaged in the conduct at issue here. And Google does not dispute that it is a person under the meaning of the statute. (MTD at 11.) Plaintiffs have adequately alleged conduct by a "person" under Section 631(a).

**3. Plaintiffs Have Adequately Alleged the "In Transit" Requirement of Section 631(a) Clause Two**

Clause two of Section 631(a) prohibits "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message . . .

while the same is in transit" to or from the state. *Cal. Pen. Code § 631(a)*. Google argues that Plaintiffs have not alleged that "Google, as opposed to [GC]CCAI, read any communication 'in transit.'" (MTD at 12.) Once again, Google attempts to draw an artificial distinction between itself and GCCCAI, which fails for the reasons identified above. When GCCCAI "learns" the content of the call, that is the same as Google "learning" it.

Here, Plaintiffs have adequately alleged that Google learned the content of their communications while they were in transit, either before or simultaneously with the intended recipient. *Yockey v. Salesforce, Inc.*, No. 22-cv-09067-JST, 2024 WL 3875785, at *5 (N.D. Cal. Aug. 16, 2024) (in transit requirement satisfied **[*13]** where software vendor received messages "before or simultaneously with" recipient). Plaintiffs allege that Google "monitor[s] the state of the conversation," "identif[ies] [caller] intent" in "real-time," "transcribes calls in real time," and "grabs context of the conversation [to suggest] real-time . . . guidance." (CAC ¶¶ 30-32, 36.) Such allegations sufficiently plead that Google received information while the call was ongoing and thus intercepted in-transit communication. Plaintiffs have stated a claim under the second clause of Section 631(a).

**4. Plaintiffs' Allegations Satisfy the "Telephone Wire, Line, Cable, or Instrument" Requirement of Clause One**

Plaintiffs allege that Google violated the first clause of Section 631(a) which prohibits making an "unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument." *Cal. Pen. Code § 631(a)*. Google counters that Plaintiffs have failed to clarify whether they called the customer service line using a landline or a smartphone, and argues that only individuals whose landline calls were intercepted are entitle to relief under the statute. (MTD at 11; Reply at 6.) Section 631(a) is not so restrictive.

First, while Google focuses on Section 631(a)'s use of the term "telephone wire," the **[*14]** statute also covers the "unauthorized connection" with "telephone . . . instrument[s]." *Cal. Pen. Code § 631(a)*. All smartphones have a telephonic component, and Google does not explain why smartphones would not qualify as telephone instruments under the meaning of the statute. Second, the Court finds persuasive the approach of other courts analyzing the applicability of Section 631(a) that have focused on whether the conduct at issues uses the "internet capabilities" or the "telephonic capabilities" of the device, regardless of whether the device is a landline, mobile phone, or smartphone. *See* *Cody v. Ring LLC, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024)*; *Mastel v. Miniclip SA, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021)* (finding that the challenged feature related to the "portion of the iPhone that functions as a computer, not the phone."). Each of the cases Google cites in support of its argument involved the internet capabilities of a smartphone device. Here, by contrast, Plaintiffs' allegations that Google "eavesdropped" their "calls" necessarily implicate the telephonic capabilities of whatever device was used to place the call.

Finally, the Court must reject Google's overly-narrow reading of Section 631(a) as inconsistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying **[*15]** statutes to new technologies. CIPA's preamble states that "[t]he Legislature by this chapter intends to protect the right of privacy of the people of this state." *Cal. Penal Code § 630*. "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (quoting *Flanagan v. Flanagan, 27 Cal. 4th 766 (2002)*). Given the increased prevalence of smartphones, limiting the protection of Section 631(a)'s first clause solely to calls made over landlines would be inconsistent with these goals. Plaintiffs have stated a claim under clause one of Section 631(a).

**B. *California Penal Code Section 637.5***

*California Penal Code Section 637.5* prohibits "any person receiving subscriber information from a satellite or cable television corporation" from "us[ing] any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence . . . without obtaining the express written consent of the subscriber." *Cal. Penal Code § 637.5(a)(1)*, (h). Plaintiff Ambriz alleges that Google

eavesdropped on his calls with Verizon customer service in violation of Section 637.5. Google contends that Ambriz has not adequately alleged (i) that Verizon is a "satellite or cable television corporation," **[*16]** that (ii) Google received "subscriber information" from Verizon, and (iii) that the call took place "inside a subscriber's residence." (MTD at 13-15; Opp. at 15; Reply at 8-9.)

With respect to the first dispute, Ambriz correctly points out that the statute is not limited to "California-licensed companies" and courts in this district have described Verizon as a "provider[] of cable or satellite television services." *Fed. Trade Commission v. DirecTV, Inc., 2016 WL 3351945, at *1 (N.D. Cal. June 9, 2016)*. At this stage, Plaintiffs have sufficiently pled that the Verizon is a provider under the statute. (CAC ¶ 135.)

Regarding the second issue, Google urges the Court to interpret "subscriber information" to mean the same thing as "individually identifiable information" as described in Section 637(a)(2). *See* *Cal. Penal Code § 637.5(a)(2)* (prohibiting a person from "providing any person with individually identifiable information regarding any of its subscribers, including, but not limited to, the subscriber's television viewing habits, shopping choices, interests, opinions, medical information, banking data or information, or any other personal or private information."). But this is not the provision of the statute that Ambriz alleges Google violated. *See* CAC ¶ 133 (alleging a violation of *Cal. Penal Code § 637.5(a)(1)*). Furthermore, there is a presumption **[*17]** against interpreting different terms to have an identical meaning within the same statute. *See* *Lao v. Wickes Furniture Co., 455 F. Supp. 2d 1045, 1056 (C.D. Cal. 2006)* ("[C]ourts do not construe different terms within a statute to embody the same meaning") (quoting Norman J. Singer, Sutherland Statutory Construction § 46:6 (6th ed. 2005)). It is more reasonable to assume that the legislature intended "subscriber information" to be a more general term than the more specific defined term "individually identifiable information." This interpretation is also consistent with the "legislative purpose of CIPA [of] giving greater protection to privacy interests." *Matera*, 2016 WL 8200619, at *19.

Under this more general definition, Ambriz has sufficiently alleged that Google received his subscriber information. Customer services calls generally require an individual to share some form of information to identify their account, such as name, phone number, or account number. They also typically involve discussions about the service on the account. Therefore, it is plausible to infer from Ambriz's allegations that he called Verizon customer service "several times" and spoke with both a virtual agent and human agent that he shared such "subscriber information" during at least one of those calls. (CAC **[*18]** ¶¶ 42, 44-45.)

Finally, Ambriz alleges that he is a Verizon "account holder" and placed a call to Verizon from his "home." (CAC ¶ 7.) His allegations therefore meet the "subscriber's residence" requirement. Ambriz has stated a claim under *California Penal Code Section 637.5*.

**VI. CONCLUSION**

Based on the foregoing analysis, Google, LLC's motion to dismiss (Dkt. No. 47) is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 10, 2025

/s/ Rita F. Lin

RITA F. LIN

United States District Judge

---

End of Document