Matthew D. Pearson (SBN 294302)
Matthew.Pearson@wbd-us.com
Jack F. Altura (SBN 297314)
Jack.Altura@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-02609-JSC<br><br>The Honorable Jacqueline Scott Corley<br><br>**DEFENDANT'S STATEMENT OF RECENT DECISION IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Action Filed: November 30, 2023<br>Initial CMC: August 1, 2024 |

Pursuant to Local Rule 7-3(d)(2), Defendant Sussex Publishers, LLC submits this Statement of Recent Decision in support of its Motion to Dismiss Plaintiff's Second Amended Complaint for Damages.

Attached as Exhibit A is a March 13, 2025 decision by United States District Court Judge Dolly M. Gee in *Sonya Valenzuela v. The Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075 (C.D. Cal. March 13, 2025).

Respectfully submitted,

Dated: March 21, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

# Exhibit A

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-6382-DMG (AGRx)** | Date | March 13, 2025 |
| --- | --- | --- | --- |
| Title | **Sonya Valenzuela v. The Kroger Co.** | Page | 1 of 5 |

Present: The Honorable DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
| --- | --- |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: [IN CHAMBERS] ORDER GRANTING MOTION TO DISMISS [48]**

Plaintiff Sonya Valenzuela brings this proposed class action lawsuit against The Kroger Company for an alleged violation of section 631(a) of the California Penal Code, California's wiretapping statute. *See* Second Amended Complaint ("SAC") [Doc. # 47]. She alleges Kroger violated the fourth prong of section 631(a) when it used software provided by Emplifi, a third party accused of eavesdropping on chat-based conversations Kroger website users believed they were having with Kroger.

Kroger moves to dismiss the SAC. ("MTD") [Doc. # 48]. Because Valenzuela's allegations do not render plausible her claim of violation of section 631(a), the Court **GRANTS** the MTD and dismisses the SAC without further leave to amend.

## I.
## BACKGROUND

Valenzuela brought this lawsuit in state court on August 3, 2022. [Doc. # 1-1 at 2.[1]] Kroger removed the action to federal court on September 7, 2022. [Doc. # 1-1.] Since then, Kroger has filed three motions to dismiss, one directed toward each iteration of the complaint.

On June 23, 2023, the Court granted Kroger's initial motion to dismiss with leave to amend. [Doc. # 35.] Valenzuela's first amended complaint re-alleged her Section 631(a) claim and added a claim under Section 632.7 of the Penal Code, which the Court subsequently dismissed with prejudice in its second MTD order. [*See* Doc. # 46.]

As to the Section 631(a) claim, the Court's second MTD order dismissed her claim to the extent it arose under the first and second prongs of section 631. Valenzuela did not bring a claim under the third prong. *Id.* at 3 n.4. The Court dismissed the claim under the fourth prong because

[1] Citations to the record are to the CM/ECF pagination.

Valenzuela failed to plausibly allege that Kroger aided and abetted a Section 631(a) violation. *Id.* at 6. The Court granted leave to amend as to this claim alone. *Id.* at 7.

Valenzuela filed the SAC on April 18, 2024. Her sole remaining claim is, as noted, under the fourth prong of section 631(a). Kroger moves to dismiss, and briefing on the MTD is complete. *See* Opp. [Doc. # 50]; Reply [Doc. # 51]. Kroger additionally requests that the Court take judicial notice of certain images of webpages, an article, and a complaint in a different action. [Doc. # 49.] Valenzuela objects to certain parts of Kroger's request and moves for the Court to take judicial notice of certain court filings. [Doc. # 50-1.[2]]

## II.
## DISCUSSION[3]

### A. Section 631

Section 631(a) penalizes the following conduct:

> Any person [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within

[2] Kroger's request for judicial notice ("RJN") is **GRANTED** to the extent it is not opposed. Valenzuela objects to the Court's consideration of a webpage referenced in her complaint. *See* Valenzuela Opp. to RJN at 5 [Doc. # 50-4]. She states that the webpage shown in Kroger's RJN is not, in fact, the same webpage cited in paragraph 19 of her SAC. As such, the Court **DENIES** the RJN as to this webpage, which is Exhibit C of Kroger's RJN. The Court further **GRANTS** Valenzuela's RJN as to various court documents she relies upon in her opposition. *See* Valenzuela RJN [Doc. # 50-1]. Of course, the Court does not take judicial notice of disputed facts in such documents. *See* Fed. R. Evid. 201; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

To the extent the parties' RJNs or objections are not separately addressed, they are **DENIED** as moot, as the Court need not rely upon that evidence to reach the conclusions herein.

[3] The Court's previous MTD orders set forth the applicable legal standard. The Court need not repeat the standard here.

> this state; or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or *[4] who aids, agrees with, employes, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section*. . . .

(Emphasis added.) Valenzuela's remaining theory of liability is under prong four: that Kroger aided and abetted Emplifi's eavesdropping on Kroger's website users' chats.

The Court previously explained that Valenzuela must include plausible allegations that explain how Kroger either knew Emplifi's conduct constituted a breach of duty or how Kroger itself engaged in conduct that constituted a breach of duty. [Doc. # 46 at 7.] Specifically, the Court explained that "if Kroger believed [Emplifi] was merely using embedded software like a tape recorder to archive conversations, that would not give rise to a violation." *Id.* at 6. The Court thus focuses on whether Valenzuela's additional allegations cure these issues and render her claim plausible.

As in the FAC, the SAC alleges that Emplifi profited by intercepting and recording chat interactions Kroger website users had with Emplifi's bot because it allowed the social media platform Meta to mine chat data for information about user interests (to use for targeted advertising). *See* SAC ¶ 20. The SAC now alleges "[u]pon information and belief, [Kroger] knew of Emplifi's practice of sharing consumer data with third parties, in part because this is what allowed Emplifi to deploy a chatbot so quickly and cheaply for Defendant." *Id.* ¶ 33. It is not a plausible inference that because Emplifi could "quickly and cheaply" deploy the bot, Kroger should have known Emplifi harvested user data. Nor do the additional allegations of the SAC render plausible that Kroger knew Emplifi's conduct was a breach of duty.

For example, the SAC relies on allegations that Emplifi advertised to customers such as Kroger that the bot "mimics the look and feel of the customer's own brand" so that users believe they are interacting with the customer (not a third-party bot). SAC ¶ 27. That Emplifi's tool mimicked Kroger's website does not equate to knowledge that Emplifi breached a duty toward users. Presumably, whatever software Kroger embedded on its website would resemble or use Kroger's own brand.

The SAC also alleges that Emplifi advertised "that its services share data with Facebook Messenger, providing information taken from chat conversations on Defendant's Website directly with meta in the process, all via the Astute Bot." SAC ¶ 28. The illustration of this occurring that Valenzuela relies upon, however, flatly controverts such a characterization. She cites a statement apparently from Emplifi's website that "Facebook Messenger users can opt in to get recurring

notifications on content they're interested in. Deliver personalized experiences to your customers, directly from Emplifi Bot." *Id.* An allegation that users can "opt in" to such communications does not show unconsented or unauthorized eavesdropping.[4]

The SAC further alleges Emplifi informs clients that it uses information from the chat bot to train new chat bots. *See* SAC ¶¶ 30–31. The example Valenzuela relies on again controverts her own claims, however, as she links a website that directs clients *to their own users' information* to author better "intents" for their own bots. *Id.* ¶ 31.

Valenzuela relies on other district court rulings as support. Her cited cases provide neither binding nor persuasive reasons to deny the motion to dismiss, as they do not discuss the sufficiency of similar allegations of aiding and abetting. *See Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (no substantive discussion beyond that the complaint adequately alleged the client enabled the third-party's wrong doing)[5]; *see also Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1282 (C.D. Cal. 2024) (similar); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (defendant was aware of software's monitoring).

In a more analogous case, the Southern District of California ruled that the following allegations showed a website owner knew a software provider's conduct constituted a breach of duty: the software provider's publicly available information included that it monitored billions of visitor sessions per month across customer websites and combined this data with other information to "develop insights . . . which lead[] to optimized campaign outcomes for sales and service transactions." *Rodriguez v. Ford Motor Co.*, No. 3:23-CV-00598-RBM-JLB, 2024 WL 4957566, at *2 (S.D. Cal. Dec. 3, 2024). In addition, the software provider's website marketed its services to clients such as the defendant by, among other things, stating that they were built on "one of the world's most extensive customer datasets." *Id.* at 3; *see also id.* at 10. The supplemental allegations in the SAC simply fall short of plausible allegations of such knowledge on Kroger's part.

[4] Valenzuela also cites what she appears to claim is a marketing statement from Emplifi's website that customers can "[v]iew existing conversations with your bots and your customers. You can also use this page to direct message a customer on their social channel without leaving Emplifi Bot." SAC ¶ 29. These allegations of customers using the bot to communicate with their own clients do not amount to activity in violation of section 631(a).

[5] Valenzuela argues that *Revitch* permits liability upon a mere showing of "enabling" a third party to eavesdrop. *Revitch* simply explains that a party to a conversation is not liable under the fourth part of section 631(a) by having a third party create a "record" of the communication.

Valenzuela argues that there is no general requirement that Kroger knew of Emplifi's violation of section 631(a). Opp. at 11. Her arguments do not compel the Court to change its prior ruling on this issue.[6] Valenzuela cites to another district judge's ruling that concluded the fourth clause of section 631(a) does not impose a knowledge or intent requirement. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023). The Court finds more persuasive those rulings that impose a scienter requirement on the statute, consistent with California law when a statute lacks an explicit scienter requirement. *See Esparza v. UAG Escondido A1 Inc.*, No. 23-CV-0102 DMS(KSC), 2024 WL 3761293, at *2 (S.D. Cal. Aug. 5, 2024) (noting that although the fourth clause of section 631(a) does not include the word "abet," it does require that one act "unlawfully," which requires knowledge or intent); *see also People v. Superior Ct. of L.A. Cnty.*, 70 Cal. 2d 123, 132 (1969) ("Eavesdropping is not one of that class of crimes that affects public health, welfare or safety for which strict liability is most often imposed without any ingredient of intent.").

In short, having carefully considered Valenzuela's arguments in opposition, the Court grants the MTD. In light of Valenzuela's inability to cure the deficiencies identified in the Court's prior order, further leave to amend is not warranted.

## III.
## CONCLUSION

The motion to dismiss is **GRANTED, without leave to amend**. This action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

[6] Similarly, the Court is not persuaded by her arguments that entering into a contract with Emplifi is enough to render Kroger liable under the fourth part of section 631(a) or that mere "companionship" with Emplifi is adequate. *See* Opp. at 24. Nor does the Court find compelling her reliance on a complaint and stipulated judgment filed in a state court case addressing different statutes. *See* Opp. at 25–29.