ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

DON BIVENS (*pro hac vice*)
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
R.C. and D.G., Individuals

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.C. and D.G., individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 3:24-cv-02609-JSC<br><br>Assigned to: Hon. Jacqueline Scott Corley<br><br><u>CLASS ACTION</u><br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br><u>**DEMAND FOR JURY TRIAL**</u><br><br>Complaint Filed: November 30, 2023<br>FAC Filed:       August 12, 2024<br>SAC Filed:       October 31, 2024 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### CLASS ACTION COMPLAINT

Plaintiffs R.C. and D.G. ("Plaintiffs"), on behalf of themselves and a class of similarly situated individuals as defined below, and based on personal knowledge where applicable, information and belief, and the investigation by counsel, allege the following against Defendant Sussex Publishers, LLC.[1]

### INTRODUCTION

1.      This class action lawsuit arises out of Defendant's policy and practice of disclosing to and sharing with third parties, without users' knowledge, authorization, or consent, private and personal information, including sensitive medical information, that Defendant's website, www.psychologytoday.com, has collected while users navigate its online platform.  Defendant also has a policy and practice of aiding and abetting Google's (and possibly other third party interceptors') unauthorized (1) intercepting, reading, and learning while in transit and (2) subsequent recording, collection and use of California residents' highly personal and confidential data and communications.

2.      Sussex Publishers, LLC is a private media company that owns Psychology Today magazine and the www.psychologytoday.com website.  The Psychology Today platforms focus on behavioral science with a stated mission to cover all aspects of human behavior so as to help people better manage their own health and wellness, adjust their mindset, and manage a range of mental health and relationship concerns.  The Psychology Today website features therapy and health professional directories as well as hundreds of blogs and articles written by a variety of psychologists, psychiatrists, social workers, medical doctors, anthropologists, sociologists, and science journalists.

3.      Psychology Today content and its therapist directories are found in more than 20 countries worldwide, making it one of the most widely used directories to find a mental health

---

[1] R.C. and D.G. file their claims under pseudonyms to protect against further disclosure of the private and potentially stigmatizing nature of the mental health conditions for which they sought treatment through Defendant's online platform.  Revealing Plaintiffs' true identities would substantially cause the exact harm that they are seeking to remedy through the filing of this suit, i.e., the disclosure of their personal and sensitive health information.

professional. The online directory provides free access to a vast network of hundreds of thousands of professionals and allows users to sort providers by location, insurance accepted, the type of therapy or treatment offered, symptoms or conditions treated, mental health specialty(ies), price, and many other preferred characteristics, including age, ethnicity, sexuality, language, and faith.

4. The Psychology Today website also allows and provides a means (i.e., a button or link) for consumers to contact therapists directly through the website, via either telephone or email. Additionally, if online versus in-person therapy is chosen, Psychology Today facilitates the teletherapy appointment by (1) sending an email with the appointment date and time and a link to check-in and (2) hosting the online session on its own website or on the Psychology Today "Sessions by Psychology Today!" mobile app.

5. Plaintiffs and Class members who visited the Psychology Today website expected that their personal and sensitive medical information – including without limitation (a) their name, email address, telephone number, age and insurance information, (b) their search parameters detailing their mental health symptoms, concerns and conditions, (c) their gender, ethnicity, sexuality, and faith preferences regarding mental health providers, and (d) the type of therapy or category of treatment they sought – would be and remain private and confidential. Plaintiffs and Class members had a reasonable expectation that their interactions with and communications through Psychology Today's website, which contained personal and/or uniquely identifying information, would not be shared with *any* third parties, let alone to *undisclosed* third parties.

6. Unbeknownst to individuals using the Psychology Today online platform, Google Analytics code is embedded into the Psychology Today website. The Google Analytics JavaScript code was and is configured to capture and collect only certain communication data between the user and the Psychology Today website. Through that embedded JavaScript code, while Plaintiffs and Class members were and are interacting with the Psychology Today website, Google, ***concurrently and in real time***, did and does intercept, read, and analyze user communications and interpret the contents of those communications for Google subsequently to use for its advertising and analytics purposes. As is demonstrated in Figures 7 through 12 and the video described in paragraph 63, the user information intercepted, read, analyzed, and later selected for Google's use

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

by the embedded Google Analytics code, while the data was and is in transit to the Psychology Today website, contains website users' sensitive information, including their individually identifiable and protected mental health information.

7.    Stated another way, while Plaintiffs and Class Members are using their various electronic devices to enter or select filters reflecting their personal identifying and sensitive mental health information, Google Analytics is intercepting, reading, analyzing, and transmitting to Google their private inputted data in real time and while the information is in transit to the Psychology Today servers.  By using the Google Analytics JavaScript code that is embedded on the Psychology Today website, Google surreptitiously intercepts, reads, and analyzes users' communications with Psychology Today and selects which portions of those communications are further interpreted and processed for its advertising and analytics services.  All of this happens without the knowledge of Psychology Today website users and certainly without any choice, authorization, or consent.

8.    Moreover, because Defendant failed to turn on the IP anonymization feature on its Psychology Today website during the period that Google Analytics 3 (Universal Analytics) was embedded on its site, Google was able to identify, from the unauthorized intercepted data, individual Psychology Today website users' IP addresses[2] and to access and obtain their other uniquely identifying information, including sensitive medical information.[3]

9.    Plaintiffs are informed and believe and on that ground allege that Google views, reads, and uses, and/or has the capability to use, the information shared by the Psychology Today website not only to provide analytics services, but also to maintain and improve Google's own

---

[2] IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as individually identifying information.  *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022),    https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

[3] Google Analytics 3 (Universal Analytics) collected IP addresses by default.  On information and belief, at some point during the class period, the Google Analytics program embedded on Defendant's website changed from Google Analytics 3 (Universal Analytics) to Google Analytics 4 (GA4).  GA4 automatically anonymizes IP addresses.

services, develop new analytics and marketing services, and measure the effectiveness of advertising on Google's and its partners' sites and applications.  Plaintiffs and Class members did not consent to that undisclosed and inappropriate access, viewing, and use of their private information, including individually identifiable medical information.

10.     Defendant's unauthorized disclosure of Plaintiffs' and Class members' personal identifying information and private and sensitive mental health information, all without adequate notification to Plaintiffs and Class members regarding that data sharing, is an invasion of Plaintiffs' and Class members' privacy. It also violates multiple laws, including the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.* ("CMIA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); and the right to privacy under the Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental rights of all Californians.

### PARTIES

**A.    Plaintiff R.C.**

11.     Plaintiff R.C. is a natural person and a citizen and resident of California.

12.     On more than one occasion during the 12-month period preceding the original filing of the Complaint, Plaintiff R.C. accessed Defendant's online platform and used the therapist directory and filters to search for a mental health professional.  While navigating the Psychology Today website, Plaintiff R.C. provided personal identifying and mental health information by selecting specific filters to narrow his search.  Those filters, which reflected his symptoms and the type of therapy he was seeking, included anxiety, relationship issues, and emotionally focused therapy (EFT).  Plaintiff R.C. also selected options that disclosed that he was searching for a male therapist, near the 90211 zip code, who accepted Blue Shield insurance.

13.     After selecting various filters and disclosing the bases for his treatment needs, Plaintiff R.C. received and reviewed a list of mental health providers.  To continue his search on the Psychology Today website, he read various therapists' biographies, viewed articles, blogs and/or videos related to the therapists' specialties and/or the services they offered, and sent email communications to a number of therapists directly through the Psychology Today website.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

14.     When emailing potential therapists through the website, Plaintiff R.C. was required to fill in a form and enter his full name, email address, and telephone number.  Those email communications also included personal and sensitive medical information, such as Plaintiff R.C.'s date of birth or age, issues that he was presenting (anxiety), his mental health concerns (anxiety and relationship issues), and the type of treatment or therapy that he was seeking (EFT).  For each email that Plaintiff R.C. sent, Psychology Today then sent Plaintiff R.C. an email response that included his full name and email address as well as a copy of his personal and confidential communication to the therapist.

15.     On information and belief, as Plaintiff R.C. used the filters to select and identify his symptoms, the type of therapy he was seeking, and that he was searching for a male therapist near the 90211 zip code who accepted Blue Shield insurance, Google was able to and did intercept Plaintiff R.C.'s personal interactions with and communications through the Psychology Today website.  Those private communications related to his mental health conditions, the treatment he was seeking, and his provider preferences.  Through the Google Analytics tracking technology embedded in the Psychology Today website, Google was able to carry out that interception simultaneously as Plaintiff R.C. was transmitting his individually identifiable and sensitive mental health information to Psychology Today.

16.     When Plaintiff R.C. chose to seek help through the Psychology Today website, including utilizing its therapist directory and filter options and contacting mental health providers directly through the Psychology Today website, he did not consent to Google's interception, receipt or use of his personal, confidential and protected mental health information.  Further, he was unaware of and had no opportunity to opt out of Google's interception.

**B.     Plaintiff D.G.**

17.     Plaintiff D.G. is a natural person and a citizen and resident of California.

18.     Beginning in or around November 7, 2019, and continuing into 2023, Plaintiff D.G. would visit the Psychology Today website and use the therapist directory and filters to search for a mental health provider.  While navigating the Psychology Today website, Plaintiff D.G. provided personal information including but not limited to her name, email address, telephone number, city

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    and zip code, insurance carrier information, mental health concerns, and therapist preferences.

2        19.    Specifically, during her most recent search for a mental health provider in April

3    2023, Plaintiff D.G. disclosed that she was seeking help for a family crisis involving her adult son.

4    Using the provided filter options, Plaintiff D.G. selected a number of symptoms and issues

5    indicating her mental health concerns and need for treatment. Those included the following filter

6    options: addiction, ADHD, anxiety, autism, depression, drug abuse, marriage counseling, OCD,

7    relationship issues, stress, substance abuse, suicidal ideation, and trauma/PTSD.

8        20.    Plaintiff D.G. also chose additional filters indicating (a) her Anthem medical

9    insurance, (b) her preference for cognitive behavioral therapy (CBT) or family therapy, (c) with a

10   female therapist (d) within a five mile radius of 91501, (e) who spoke English and (f) specialized

11   in treating adults, and preferably (g) who was of Jewish faith.  From the list of results displayed,

12   Plaintiff D.G. clicked on and reviewed the therapists' biographies.

13       21.    On numerous occasions, Plaintiff D.G. sent email communications to potential

14   therapists directly through the Psychology Today website.  In order to do so, Plaintiff D.G.

15   completed the required online form and entered her full name, her email address, and her telephone

16   number.  Plaintiff D.G. also included a detailed message specifying her Anthem insurance and her

17   preference to stay in-network, her patient status, the additional therapy she was seeking, and her

18   reason for seeking that therapy.  For each of these email communications, Psychology Today sent

19   Plaintiff D.G. a response that was addressed to her full name and email address and included a full

20   copy of her private correspondence seeking mental health treatment.

21       22.    Plaintiff D.G. did not just email therapists directly through the Psychology Today

22   website.  She also used the website for her online teletherapy sessions.  Shortly before a scheduled

23   appointment, Plaintiff D.G. would receive an email from her therapist through Psychology Today

24   specifying the date and time of her upcoming appointment.  The email also provided Plaintiff D.G.

25   a link to check in for her appointment at https://sessions.psychologytoday.com/name-of-therapist

26   and invited her to join her teletherapy session via the "Sessions by Psychology Today!" mobile

27   app.  Plaintiff D.G. then was required to enter her name in the virtual waiting room in order to join

28   the therapy session hosted online by Psychology Today.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

23.     On information and belief, as Plaintiff D.G. used the filters to select and identify her symptoms, the type of therapy she was seeking, and that she was searching for a Jewish therapist near the 91501 zip code, Google was able, in real time through the Google Analytics tracking technology embedded in the Psychology Today website, to intercept Plaintiff D.G.'s personal interactions with and private communications through the Psychology Today website and did so.  Google was able to carry out that interception simultaneously as Plaintiff D.G. was transmitting her personal identifying and sensitive mental health information to Psychology Today.

24.     When Plaintiff D.G. decided to use the Psychology Today website, including its therapist directory and filter options, its telephone and email options, and its teletherapy session services, she did not consent to Google's interception, receipt, or use of her personal, confidential, and protected mental health information.  Further, she was unaware of and had no opportunity to opt out of Google's interception.

**C.     Defendant Sussex Publishers, LLC and Psychology Today**

25.     Defendant Sussex Publishers, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York.

26.     Defendant currently owns Psychology Today magazine, which was founded in 1967 to make psychology literature available to the general public.  The magazine has received numerous awards for both editorial and design, and is published six times a year.

27.     Defendant also owns the www.psychologytoday.com website, which publishes content written by clinicians, experts, and researchers from across the field of behavior and psychology.  In addition to a comprehensive Diagnosis Dictionary, the online platform includes a directory that lists clinical professionals, psychiatrists, and treatment centers that provide mental health services.  The providers who are registered on the Psychology Today website offer detailed profiles and video introductions to demonstrate their expertise.  They are searchable by numerous factors such as location, mental health conditions treated, and the type(s) of therapy they practice.

28.     Psychology Today also facilitates the provision of mental health services by listed therapists by, among other things, (1) providing a button and link for consumers to contact

therapists directly through the Psychology Today website via telephone or email, (2) sending consumers emails with copies of their private communications to therapists containing medical information, (3) sending consumers emails with the dates and times of their scheduled appointments and a Psychology Today website link to use to check in for their appointments, and (4) hosting teletherapy sessions on the Psychology Today website or mobile app.

29.    Psychology Today's online content, its therapist directory, and its teletherapy session services are available in 20 countries worldwide, including the United States.  Defendant systematically and continuously does business in California and with California residents and California mental healthcare providers.

30.    Defendant's Psychology Today website and Privacy Policy fail to put visitors on notice of Defendant's use of Google Analytics, Defendant's disclosure of personally identifiable and sensitive medical information to unauthorized third parties, and Defendant's decision to allow Google (and possibly other third-parties) to embed a JavaScript code that intercepts, reads, and analyzes users' communications with Psychology Today in real-time while the users are navigating the Psychology Today website.  After Google intercepts, reads, and analyzes users' communications while they are in transit to Psychology Today website servers, Google's JavaScript code then selects which part of the communications will be sent and later used by Google for its advertising and analytics purposes.  The transmission and dissemination of Plaintiffs' and other Class members' personal and private information – including protected mental health information and other health information – to Google violates the Plaintiffs' and Class members' privacy rights.

31.    Upon information and belief, Plaintiffs allege that after the initial reading, learning and capturing of users' communications while they are in transit to Psychology Today, Google later also views and uses Plaintiffs' and Class members' information not only to provide analytics services to Defendant, but also for Google's other business purposes including but not limited to (1) improving its own software, algorithms, and other technology and business activities and (2) providing marketing services and offerings, such as creating customer profiles, custom audiences, and targeted advertisements.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**D.     Doe Defendants**

32.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue those defendants by those fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and on that ground allege that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged in this Complaint and that Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

33.     Plaintiffs are informed and believe and on that ground allege that, at all relevant times, each named Defendant and the Doe Defendants were the principals, agents, partners, joint venturers, officers, directors, controlling shareholders, subsidiaries, affiliates, parent corporations, successors in interest, and/or predecessors in interest of some or all of the other Defendants, were engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants as to be liable for their conduct with respect to the matters alleged below.  Plaintiffs are informed and believe and on that ground allege that each Defendant acted pursuant to and within the scope of the relationships alleged above and that each knew or should have known about and that each authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over this action under the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.*, the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632, and the California Constitution.

35.     This Court has personal jurisdiction over the parties because Defendant has sufficient minimum contacts with this State in that it operates and markets its services throughout this State, including working with patient-clients and mental health care providers in California. Further, a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in the State of California, including Plaintiffs' accessing the Psychology Today website, Google's unauthorized intercepting and collecting of Plaintiffs' and Class members' private and sensitive data from Defendant's website, and Google's use of that data for commercial purposes.  Plaintiffs'

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    rights were violated in the State of California, and those violations arose out of their contact with

2    Defendant from and within the State of California.

3        36.    Venue is proper in this Court because Defendant removed the action from Alameda

4    County Superior Court.  Venue was proper in that Court under Code of Civil Procedure §§ 395

5    and 395.5 and case law interpreting those sections, which provide that if a foreign business entity

6    fails to designate with the office of the California Secretary of State a principal place of business

7    in California, it is subject to being sued in any county that a plaintiff desires.  On information and

8    belief, Defendant Sussex Publishers, LLC is a foreign business entity and had failed to designate

9    a principal place of business in California with the office of the California Secretary of State as of

10   the date on which the Complaint in this action originally was filed.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.    Google's Website Tracking Technology

13       37.    Google dominates online search.  One of Google's most lucrative lines of business

14   is its advertising and analytics services.  Google provides a number of tracking tools, including

15   Google Analytics, which are used to collect data from websites and mobile applications into which

16   the tools are embedded and integrated.

17       38.    In 2005, Google launched the initial version of Google Analytics, which served as

18   a tool for website traffic analysis.  In the years that followed, Google introduced various other

19   technologies with improved tracking functionality.   Examples include Google Analytics

20   Synchronous code and Google Analytics Asynchronous code, which allowed webpages to track

21   commerce transactions with improved data collection and accuracy.  Google continues to update

22   its analytics platform with the launch of additional tracking technologies, including Universal

23   Analytics and Google Analytics 4, both of which provide more in-depth information about users'

24   behavior.

25       39.    Google markets Google Analytics as a platform that offers "a complete

26   understanding of your customers across devices and platforms" to "uncover new insights and

27   anticipate future customer actions with Google's machine learning to get more value out of your

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

data."[4]  Google Analytics collects data from a website or application to create shareable reports that provide insights into a business.  It is designed to work together with other Google solutions to provide a company with a complete understanding of its marketing efforts and to enhance performance.

40.    Google also markets the real-time reporting capabilities of Google Analytics and boasts that "Realtime reports" allow website hosts to "monitor activity on your website **as it happens**."  Google further states that "with Realtime, you can **immediately and continuously monitor** the effects that new campaigns and site changes have on your traffic."[5]  According to Google, website events appear in Realtime reports within seconds after they have been read by Google Analytics and while a user's communication is still ongoing with the website.

41.    In order to get those insights and benefits, a website like Psychology Today adds or embeds a small piece of Google Analytics JavaScript measurement code into each page of its website that it wishes to track information.  When a user accesses a website hosting Google Analytics, Google's JavaScript code surreptitiously reads and analyzes the user's communications sent from the user's browser to the host website *while those communications are in transit to the host website*.  As part of the process, the Google Analytics JavaScript code analyzes and interprets the contents of a user's transmissions in order to select what portion of the communications is further processed by Google for its analytics and advertising purposes.  The initial interception and analysis by Google occurs while the entire communication from the user is being transmitted and sent to the host website.

42.    In essence, the Google Analytics JavaScript code intercepts, reads, and analyzes the substantive content of a user's interactions and communications while they are in transit to the host webpage.  The JavaScript code then interprets and selects, in real time, which portions of the communications Google will use for further processing and analysis.  The intercepted information

---

[4]  *Analytics*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/ (last visited October 5, 2023).

[5]  *Analytics Help*, Google Support, https://support.google.com/analytics/answer/9271392? (last visited April 15, 2025).

is read by Google while the entire communication travels from the user to the host website.  That simultaneous process enables Google to read and understand the information in real-time and later conduct additional analysis of the information that website users are sharing with the host.

43.    The Google Analytics measurement code also collects information from the user's browser, such as the language setting, the type of browser, and the device and operating system on which the browser is running.  It even can collect and record the "traffic source" – which is what brought the user to the site in the first place – such as a search engine, an advertisement on which the user clicked, or an email marketing campaign.[6]

44.    All the information collected by the Google Analytics JavaScript code, which first was intercepted, read, and analyzed while it was in transit to the host website, then is directed to Google for additional processing, including aggregating and organizing the data based on particular criteria.  The criteria can be customized by applying filters to the intercepted information.

45.    After the intercepted-in-transit data has been read, analyzed, and processed by Google, it is stored in the Google database for Google's later use to generate reports to help analyze the data collected.  Those reports include reports on acquisition (e.g., information about where the traffic originated and the methods by which users arrived at a site), engagement (what web pages and app screens a user visited), and demographics (a user's age, location, language, gender, and interests expressed when browsing online and engaging in purchase activities).

46.    In addition to intercepting, reading, and analyzing the data collected from website users while that data is in transit to provide its analytics services, Google also uses the information shared by sites like Psychology Today to maintain and improve Google's own services, develop new services, measure the effectiveness of its advertising, and personalize content and ads that one sees on Google's and its partners' sites and applications.

---

[6] *How Google Analytics Works*, Google Analytics Help, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=12156336,12153943,2986333,&sjid=478430351580570002-NA&visit_id=638186454308763581-3109655727&rd=1 (last visited October 5, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**B.    Defendant's Use of Google Analytics on the Psychology Today Website**

47.    According to the National Alliance on Mental Health and the Centers for Disease Control, one in five adults in the United States is affected by mental illness each year.  Equivalent to more than 52 million Americans, 55% of those affected adults receive no treatment.  While cost is one of the main reasons for the lack of treatment, it also is challenging to find a mental health provider who both specializes in a specific area of concern and provides the right type of treatment for the affected individual.

48.    Psychology Today claims that it is the world's largest mental health and behavioral science destination online and touts the motto "Here to Help."  Although its articles and blogs are not peer reviewed, Psychology Today publishes content written by clinicians, experts, and researchers from across the fields of psychology and behavior.  The website also includes a "Diagnosis Dictionary," which is a comprehensive guide to diagnosable conditions; a section for commonly used and need-to-know psychology basics; a full overview of therapy types; and a content center dedicated to numerous subjects ranging from ADHD to parenting.[7]

49.    In addition to providing behavioral science content, the Psychology Today website also offers a free online directory that lists clinical professionals, psychiatrists, treatment centers, and support groups providing mental health services in more than 20 countries.  Launched in 2003, the searchable directory connects consumers with licensed clinicians.  Under the "Get Help" link, website users can specify the type of help they are seeking, such as mental health (which encompasses listed conditions such as addiction, anxiety, depression, and eating disorders), personality, personal growth, relationships, and family life.

50.    Alternatively, website users can click and follow the "Find a Therapist" link and search for a provider by city or zip code.  After a location is chosen, the search for a mental health provider can be narrowed further by specifying a user's mental health concerns, insurance provider, gender preference, type of therapy sought, age range treated, price, and many other

---

[7] *About Psychology Today*, Psychology Today, https://psychologytoday.com/us/docs/about-psychology-today (last visited October 5, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  preferences. Some of those filters and preferences shared by a user are, by their nature, very

2  personal and confidential.

3    51.    For example, the list of mental health concerns that a user can specify and select

4  includes but is not limited to addiction, adoption, anger management, behavioral issues, bipolar

5  disorder, borderline personality, cancer,  chronic illness/pain, dementia, domestic abuse, eating

6  disorders, infertility, marriage counseling, medication management, obesity, pregnancy,

7  relationship issues, sex therapy, stress, substance abuse, suicidal ideation, trauma and PTSD, and

8  many other medical or mental health issues.  A user also can share and specify the type of therapy

9  that he or she is seeking, which can include applied behavioral analysis (ABA), brainspotting,

10  cognitive processing (CPT), couples counseling, dialectical behavior (DBT), experiential therapy,

11  family therapy, hypnotherapy, intervention, psychological testing and evaluation, rational emotive

12  behavior (REBT), trauma therapy, and many more categories of treatment.

13    52.    After sharing personal and sensitive medical information on the website, a user's

14  search yields a list of potential therapists, each of whom offers a detailed profile biography and

15  video introduction to demonstrate his or her expertise.  The Psychology Today directory also

16  provides contact information for each registered therapist with an option to call or email the

17  therapist directly through the Psychology Today website.  *See* Figure 1.

18  **Figure 1**:

53. To contact a therapist, users can click a telephone number or telephone icon to place a call or, alternatively, they can click an "Email me" button that pops up a browser window with a fillable form. *See* Figure 2. Users must enter and provide their name, email address, telephone number, subject, and a message explaining who they are and what services they are seeking.

**Figure 2**:



54. For email communications sent directly through its website, Psychology Today receives the email and then sends users an email response that is addressed to the user's full name and email address and includes a complete copy of the user's private correspondence to the therapist for the user's records.

55. In addition to facilitating communications with therapists who are listed on its website, Psychology Today also assists users with their mental health needs by hosting online teletherapy sessions on the Psychology Today website and mobile app. Before a scheduled appointment, a therapist will send an email through Psychology Today to the user detailing the date and time of the user's upcoming appointment. The email also will provide the user with a

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

link to check in for the online appointment at https://sessions.psychologytoday.com/name-of-therapist. Additionally, the email will invite the user to join the teletherapy session via the "Sessions by Psychology Today!" mobile app.

56. Once a user checks in for the teletherapy appointment and enters the virtual waiting room, the user must provide his or her name in order to join the therapy session hosted online by Psychology Today. *See* Figure 3. The user also must grant access to Sessions by Psychology Today for the use of the user's camera and microphone to conduct the online appointment.

**Figure 3**:



57. On information and belief, while users are navigating the Psychology Today website and online platform, the Google Analytics JavaScript code is (a) intercepting, (b) reading, and (c) analyzing the contents of users' communications in real-time, and while those communications are in transit to Psychology Today, in order to select what elements of the communications between the user and Psychology Today should be captured and used for Google's advertising and analytics services. Google's code is configured to read, analyze, and interpret the private transmissions between the user and Psychology Today, which contain users' personal, identifiable, and sensitive medical information.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

58.     In addition to IP addresses[8], that personal information includes but is not limited to (1) the user's specific medical or mental health symptoms and concerns giving rise to the need for therapy; (2) the type of care or treatment that the user is requesting; (3) information concerning the user's gender, ethnicity, and faith preferences regarding the therapist; (4) the city or zip code where the user is seeking therapy sessions; (5) the user's health insurance provider; and (6) information regarding the mental health providers viewed and/or contacted if that was done directly through the website.

59.     In essence, the Google Analytics JavaScript code embedded in the Psychology Today website is configured to intercept, read, and analyze user communications and then select specific information for Google's advertising and analytics purposes, all without that user's knowledge, authorization, or consent.  Figures 4-6 show examples of Google Analytics capturing information from a Psychology Today user (a) who clicked on the profile page of Dr. X, a male psychiatrist specializing in transgender issues, who accepts LGBTQ+ teenage patients; (b) that the price of the therapy is high (more than $130); and (c) that the practice is located near the 90025 zip code.  All of those user interactions on the Psychology Today website were intercepted while in transit to Psychology Today, read and analyzed by Google Analytics code, and then selected by Google as the types of user communication data that are designated to be used for Google's advertising and analytics purposes.  If the user clicks on the telephone number or email buttons for Dr. X, the user's clicks and attempts to communicate with Dr. X also are shared with Google through the same process.  *See* Figures 4-6.

---

[8]  Before July 1, 2023, Google Analytics 3 (Universal Analytics) collected IP addresses by default and used them to help with geolocation data to determine a user's country or city.  After that date, Universal Analytics no longer processed new data, and users were required to rely on Google Analytics 4 (GA4) as their platform for analytics.  According to Google, GA4 does not collect or store IP addresses.  For that reason, website images captured more recently and used as figures may not contain IP addresses.

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    **Figure 4**:



14   **Figure 5**:

**Figure 6**:

```
Host: www.google-analytics.com
Path: /collect
PARAMETERS
    v: 1
   _v: j101
    a: 572453677
    t: event
   ni: 0
   _s: 1
   dl: https://www.psychologytoday.com/us/psychiatrists/aamir-khan-l
       os-angeles-ca/971858
   ul: en-us
   de: UTF-8
   dt: Find Transgender Psychiatrists in 90025 - Psychology Today
   sd: 24-bit
   sr: 1920x1080
   vp: 1920x961
   je: 0
   ec: ProfileOverlay
   ea: click
   el: Profile_EmailButton
   _u: SCCACEABRAAAACACIAC~
  jid:
 gjid:
  cid: 1272014801.1689159218
```

60.     Similarly, when a website user searches the Psychology Today therapist directory, the filters selected by the user to narrow his or her search for a mental health services provider are (a) intercepted by the Google Analytics JavaScript code while the user is interacting with the Psychology Today website, (b) read and analyzed for selection of which parts of the user's communications are to be used by Google for advertising and analytics, and (c) the designated data subsequently is stored for further analysis and processing.  The initial reading, interpretation, and selection by Google Analytics code occurs while the user communication is in transit to Psychology Today and even before the user hits the "Show # Therapists" button.  Importantly, the filter options chosen by the user and shared with Google not only reflect that a particular button was clicked or box was checked, but also disclose to Google, in real-time, the actual content of that button click – namely the users' sensitive medical information.  The intercepted information very clearly includes the user's mental health symptoms, concerns, and need for and type of treatment sought.  *See* Figures 7-12, showing snapshots of Google Analytics intercepting, reading, analyzing, and selecting a user's interactions and communications with Psychology Today in real-time, and then displaying within a few milliseconds the captured medical information in the Inspect Tool feature on a user's browser.

1    **Figure 7**:



**Figure 8**:



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

**Figure 9**:

2



15

**Figure 10**:



KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Figure 11**:



**Figure 12**:



61.     Once a user has selected the necessary and preferred filters and clicks the "Show #

Therapists" button, the Psychology Today server will respond to the user with a list of therapists

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

who meet the criteria established by the prior filter options.  Concurrent with the processing by Psychology Today, Google Analytics also performs an analysis of the user's information and produces a log/report with the number of filters applied, the specification code for each filter chosen with the primary filter identified by name/title, and the number of results displayed.  *See* Figure 12 above.  Hitting the "Show # Therapists" button also results in a descriptive URL being shown in the user's browser, which contains at least one personal and sensitive search term related to the user's mental health condition or treatment.  That same descriptive URL is captured by and disclosed to Google in the same manner as described above and is reflected in the Google Analytics report.  *See* Figure 13.[9]

**Figure 13**:



62.    Additionally, ***while the user is navigating the Psychology Today website***, the information submitted by users through the search bar on the Psychology Today homepage, as well as the subjects searched (see Figure 14) and the names of the articles that users view (see

---

[9]  Figures 7 through 13 were captured between October 23 and 27, 2024 from the Psychology Today website utilizing Google Analytics 4.

Figure 15), *are intercepted by the Google Analytics JavaScript code in real-time by the same interception, reading, and analysis process that is described above*.

**Figure 14**:

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
      v: 1
     _v: j101
      a: 486144573
      t: pageview
     _s: 1
     dl: https://www.psychologytoday.com/us/archive?search=anorexia&op
         =Search
     ul: en-us
     de: UTF-8
     dt: Search | Psychology Today
     sd: 24-bit
     sr: 1920x1080
     vp: 1903x961
     je: 0
     _u: QACAAAABAAAAAC~
    jid: 328568436
   gjid: 1885013502
    cid: 1272014801.1689159218
    tid: UA-2018278-8
   _gid: 956588897.1689159219
     _r: 1
```

**Figure 15**:

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
      v: 1
     _v: j101
      a: 185930079
      t: pageview
     _s: 1
     dl: https://www.psychologytoday.com/intl/blog/meaningfull/20
         2306/eating-disorders-treatment-a-new-study-offers-promi
         se
     ul: en-us
     de: UTF-8
     dt: Eating Disorders Treatment: A New Study Offers Promise |
         Psychology Today
     sd: 24-bit
     sr: 1536x864
     vp: 1019x710
     je: 0
     _u: YADAAAABAAAAAC~
    jid: 604686905
   gjid: 561808448
    cid: 2137713603.1689772514
    tid: UA-2018278-8
```

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

63.    As described above, the Google Analytics JavaScript code embedded on the Psychology Today website allows Google to (1) intercept, read, and analyze a user's communications sent from the user's browser to Psychology Today, and (2) interpret and select specified portions of the user's interactions and communications to be used for advertising and analytics, all while the transmissions are in transit to the Psychology Today website servers.  The intercepted information, which includes personal and sensitive medical information, is analyzed and interpreted by Google in real-time as users communicate with Psychology Today.  To demonstrate that instantaneous and concurrent transfer of information, Plaintiffs prepared a video recording capturing how Google Analytics works as a user interacts with the Psychology Today website.[10]

64.    Google recognized the privacy risks inherent in its Analytics services.  As one way to mitigate those risks, Google offered website owners an opt-in feature that automatically anonymized visitors' IP addresses.  According to Google, this feature was designed to help site owners comply with their own privacy policies and governing law.[11]  When enabled by website owners, the anonymization feature automatically added a parameter to communications between website visitors' computers and Google's Analytics server.  That parameter appeared on the website's back-end code as the "aip" parameter.  Figure 16 below is an example of how the "aip" parameter for Universal Analytics was displayed if the anonymization feature was turned on.

---

[10]  The video recording was prepared on or about October 27, 2024.  A USB drive containing the video recording will be filed with the Court and provided to Defendant concurrently.

[11]  *IP masking in Universal Analytics*, Google, https://support.google.com/analytics/answer/2763052?hl=en (accessed Nov. 10, 2023).  See also footnote3 3 and 9 above.

**Figure 16**:



65.     When the "aip" parameter does not appear, IP addresses are not anonymized.  That allows and enables Google to identify users' IP addresses and track their online actions.

66.     Significantly, IP addresses contain geographical location information from which the state, city, and zip code of a specific device can be determined.  Various services use databases to map IP addresses to physical locations in geographic areas.  They often can provide information about the country, city, and approximate latitude and longitude coordinates of a specific device. In some instances, even the ISP associated with the IP address can be determined.

67.     Given the information that it can and does reveal, an IP address is considered personally identifiable information and is subject to HIPAA protection.[12]  Under California law, an IP address also is considered an identifier and constitutes a consumer's protected personal information.[13]  Further, under Europe's General Data Protection Regulation, IP addresses are considered "personal data, as they can potentially be used to identify an individual."[14]

---

[12] *See* 45 C.F.R. § 164.514(b)(2)(i)(O).

[13] *See* Cal. Civ. Code § 1798.140(v)(1)(A).

[14] *Is an IP Address Personal Data?*, Convesio, https://convesio.com/knowledgebase/article/is-an-ip-address-personal-data/ (last visited February 6, 2025); *see also What is Personal Data*, European Commission, https://commission.europa.eu/law/law-topic/data-protection/reform/what-personal-data_en/ (last visited February 6, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

68.    As shown in Figure 17 below, Psychology Today did not enable or utilize Google's IP anonymization feature before the Complaint was filed.  The "aip" parameter was completely missing, indicating that IP anonymization was not enabled.  As a result, before the introduction of GA4, Google Analytics could see and collect Psychology Today website users' IP addresses along with information related to their mental or physical conditions, diagnosis, and treatment.

**Figure 17**:



69.    Thus, before the introduction of GA4, while Google Analytics offered website owners like Defendant an opt-in IP anonymization feature, Psychology Today did not enable that anonymization feature on its website.  By using the Google Analytics tool without the anonymized IP feature enabled, Psychology Today was disclosing to Google and sharing with Google

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Psychology Today's users' IP addresses.

70.     Defendant's Psychology Today website also was and is disclosing to Google private and personal medical information regarding its users' specific mental-health symptoms, conditions, and concerns, and their treatment for those conditions and concerns, all without the knowledge of the individual, and certainly without any choice or consent.

71.     In its Privacy Policy linked at the very bottom of its web page, Psychology Today states that it will collect "personally identifiable information," such as names and email addresses, when visitors use the website to perform certain tasks.  Those tasks can include posting or commenting on an article, calling or emailing a professional, filling out a self-assessment or taking a self-test, subscribing, purchasing a product, registering to be listed in the directory, and opening an email communication from Defendant.[15]  But Defendant fails to disclose that users' private and sensitive medical information, including users' mental health conditions and concerns, therapy and treatment preferences, and other personally identifiable information are captured and saved simply as a result of the users viewing the website and searching the free online therapist directory.

72.     The Psychology Today Privacy Policy also asserts that Defendant maintains logs of site usage "for purposes such as to evaluate users' interest level in areas of the website, which and how many pages they look at, how long they stay on the website, and what web browsers are used."  ***But the Privacy Policy falsely claims that that data is "tracked in aggregate form, not at an individual user level, and is not uniquely identifying."***

73.     By failing to turn on the IP anonymization feature on its website while Universal Analytics was running on its website, Psychology Today automatically captured personal and uniquely identifying information and simultaneously shared that information with Google in a form that was not anonymous.[16]

---

[15]  *Privacy Policy*, Psychology Today, https://psychologytoday.com/us/docs/privacy-policy (last visited October 6, 2023).

[16] An IP address is one way that Google can identify the person whose sensitive data and information Google is intercepting.  But it is not the only way.  Google also can identify persons via their browsers, device identifiers and cookies, among other things.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

74.    Psychology Today further claims that it uses information collected, and shares that information with third parties, only when needed to provide or deliver the products or services that users request on the website.

75.    But Psychology Today goes far beyond sharing information necessary to provide or deliver its products and services.  Through the tracking technology embedded on its website, Psychology Today simultaneously transmits and discloses personal and protected mental health information to Google.  Nowhere on its website does Psychology Today disclose that it is using Google Analytics, which is completely unrelated to Defendant's offered products and services and is completely unrelated to anything that Defendant needs to do in order to offer or provide those products or services.  Defendant also fails to identify Google, or any other third-party interceptor, as a recipient of users' private communications and confidential mental health information.

76.    Further, although the Privacy Policy discloses that Defendant uses third-party advertising companies to serve ads when users visit the Psychology Today website, ***it does not disclose that sensitive and individually identifiable medical information is being shared with Google to improve Google's own analytics services, software, algorithms and other technology.***  Upon information and belief, the information intercepted, read, analyzed by Google, while it was in transit to Psychology Today, also was and is used by Google's advertising offerings to create targeted advertisements and customer profiles, all to enhance Google advertising features and unrelated to any products or services offered by Psychology Today.

**C.    Plaintiffs and Class Members Did Not Consent to Defendant's Disclosure of Their Private Information and Confidential Communications; They Have a Reasonable Expectation of Privacy in Their User Data.**

77.    Psychology Today did not and does not ask its website visitors, including Plaintiffs, whether they consented or consent to having the contents of their private interactions and communications containing their personal and sensitive mental-health information disclosed to and used by third parties like Google.  Further, Google's analytics software is incorporated seamlessly – and, to users, invisibly – in the background.  That seamless and invisible incorporation gave and gives Plaintiffs and Class members no way of knowing that Google was and is intercepting their individually identifiable and protected health information.  The intercepted

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

information included and includes their IP addresses; their medical conditions and concerns; their search parameters; their preferences regarding a mental health professional; and the type of treatment they are seeking.

78.    Although Psychology Today's Privacy Policy mentions the use of cookies, which it claims cannot be used to find a user's name, email address, or anything uniquely identifying, that minimal mention does not put Psychology Today website or app users on notice of Defendant's use of invasive tracking technology like Google Analytics.

79.    Unlike first-party cookies, Google Analytics (1) simultaneously communicates information to an external server while a user navigates a website; (2) tracks users across devices, meaning that a user's actions on multiple devices all will be included in the information stored regarding that user; (3) is not easily disabled by users; and/or (4) creates a record of all of the information that users provide to and/or receive from the website.  Plaintiffs and Class members could not consent or be deemed to have consented to Google's conduct when they were unaware that their confidential communications would be intercepted, stored, read, and used by Google or any other undisclosed third party.

80.    Plaintiffs and Class members had and have a reasonable expectation of privacy in their confidential information and communications, including *and especially* information and communications related to (a) their medical symptoms, concerns and conditions, (b) their gender, ethnicity, and faith preferences regarding mental health providers, (c) the type of therapy or treatment that they are seeking, (d) their health insurance provider(s), (e) their sensitive and private communications with potential therapists, and (f) the details of their teletherapy appointments.  All of that is private, sensitive, and personal information related to Plaintiffs' and Class members' mental or physical conditions, diagnoses, and treatment.

81.    Privacy studies, such as those by *Pew Research Center*, show that a majority of Americans are concerned about how data is collected about them.[17]  Those privacy polls also

---

[17]  Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019),

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

reflect that Americans consider one of the most important privacy rights to be the need for a consumer's or individual's affirmative consent before a company collects and shares data regarding that consumer or other individual.

82. Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy. Further, 64% of Americans believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to obtain a consumer's permission before sharing the consumers' information. To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[18]

83. Users act in a manner that is consistent with those preferences. During a rollout of new iPhone operating software, for example, 94% of U.S. users who were asked for clear, affirmative consent before allowing companies to track them chose ***not*** to share their data.[19]

84. The privacy expectation is even greater when personal and sensitive medical information is at stake. Patient healthcare data in the United States is protected by federal law under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6, and its implementing regulations, which are promulgated by the Department of Health and Human Services ("HHS").

85. In December 2022, HHS issued a bulletin to "highlight the obligations" of health care providers under the HIPAA Privacy Rule "when using online tracking technologies" (such as those used by Psychology Today) that "collect and analyze information about how internet users

---

https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

[18] Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

[19] *See* https://www.wired.co.uk/article/apple-ios14-facebook ("According to Flurry Analytics, 85 per cent of worldwide users clicked 'ask app not to track' when prompted, ***with the proportion rising to 94 per cent in the US.***").

interact with regulated entities' websites or mobile applications."[20] **HHS affirmed that health care providers violate HIPAA when they use tracking technologies that disclose an individual's identifiable information even if no treatment information is included *and even if the individual does not have a relationship with the health care provider*:**

> How do the HIPAA Rules apply to regulated entities' use of tracking technologies?
>
> Regulated entities disclose a variety of information to tracking technology vendors through tracking technologies placed on a regulated entity's website or mobile app, including individually identifiable health information (IIHI) that the individual provides when they use regulated entities' websites or mobile apps. This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code. ***All such IIHI collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services. This is because, when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.***

[Emphasis added.]

86.    The HHS bulletin expressly provided that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." ***Defendant's actions clearly violate HIPAA Rules.***

87.    In its guidance for Marketing, the HHS also provided that written authorization is required before a use or disclosure of protected health information can be made for marketing:

> The HIPAA Privacy Rule gives individuals important controls over whether and how their protected health information is used and disclosed for marketing purposes.  With limited exceptions, the Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for

---

[20] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

marketing…**_Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes._**[21]

88.     Under federal law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or a household member of a patient for marketing purposes without the patient's express written authorization.[22]  California law provides for similar protections and safeguards.

89.     Due to the highly personal and sensitive nature of the information that is input onto and shared on the Psychology Today website, Plaintiffs and Class members who used the Psychology Today online platform reasonably believed that their interactions and private communications with Psychology Today were and are confidential and would not be recorded, transmitted to third parties, or monitored for later use.  Defendant's unauthorized disclosure and sharing of highly personal information and Google's surreptitious interception, storage, reading, and use of Plaintiffs' and Class members' private medical information violate Plaintiffs' and Class members' privacy interests and rights.

**D.     Plaintiffs' and Class Members' Personal and Private Information, Including Sensitive Medical Information, Has Economic Value, and Its Unauthorized Disclosure and Interception Have Caused Economic Harm**.

90.     It is well known that there is an economic market for a consumer's personal data, with personal medical information being one of the most valuable categories of data.

91.     In a 2014 article by the Federal Trade Commission, the agency detailed the value of user data, particularly health information, and found that data brokers sell data in sensitive categories for a premium.[23]  The FTC subsequently brought a lawsuit against one of the data brokers for selling location data regarding people who visit abortion clinics for approximately

---

[21] https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/marketing.pdf (last visited November 15, 2023)[emphasis added].

[22] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502, 164.508(a)(3), and 164.514(b)(2)(i).

[23] *Data Brokers, A Call For Transparency And Accountability*, Federal Trade Commission, (May 2014), https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

$160 for a week's worth of data.[24]

92.    For years, data harvesting has been one of the fastest growing industries in the United States.  Between 2016 and 2018, the value of information mined from Americans increased by 86% for Meta and 40% for Google.  Conservative estimates suggest that in 2018, internet companies earned $202 per American user, and that value was expected to rise to $434 per user, or almost $200 billion industry-wide.

93.    In particular, the value of health data is well-known and has been reported upon extensively in the news.  For example, a 2017 article by Time Magazine titled "How Your Medical Data Fuels a Hidden Multi-Billion Dollar Industry" described the extensive market for health data and noted that the market for information was both lucrative and a significant risk to privacy.[25]

94.    More recently, a 2021 report from *Invisibly* noted that "because health care records often feature a more complete collection of the patient's identity, background, and personal identifying information (PII), health care records have proven to be of particular value for data thieves."[26]  The article further explained that "while a single social security number might go for $0.53, a complete health care record sells for $250 on average" – nearly 500 times as much.  According to the report, health care data breaches increased by 55% in 2020.

95.    Due to the difficulty in obtaining health information, illegal markets also exist for such personal and sensitive information.  NPR reported that health data can be "more expensive than stolen credit card numbers."[27]

96.    Further, individuals can sell or monetize their own data if they choose to do so.  A host of companies and applications such as Nielsen Data, Killi, DataCoup, and AppOptix offer consumers money in exchange for their personal data.

---

[24] *See* https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-sues-kochava-selling-data-tracks-people-reproductive-health-clinics-places-worship-other.

[25] *See* https://time.com/4588104/medical-data-industry/ (last visited November 15, 2023).

[26] *How Much is Your Data Worth?  The Complete Breakdown for 2021*, Invisibly, (July 13, 2021), https://www.invisibly.com/learn-blog/how-much-is-data-worth/.

[27] Aarti Shahani, *The Black Market For Stolen Health Care Data*, NPR (Feb. 13, 2015, 4:55 am), https://www.npr.org/sections/alltechconsidered/2015/02/13/385901377/the-black-market-forstolen-health-care-data (last visited June 29, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

97.     In sum, Plaintiffs' and Class members' private and personal information, including their protected medical information, is recognized to have monetary value. Psychology Today's unauthorized disclosure and Google's interception of that sensitive medical information have deprived Plaintiffs and Class members of the economic value of their personal property without proper consideration.

98.     Plaintiffs and Class members have suffered injuries and damages in the form of (i) invasion of privacy; (ii) diminution of value of their private information; (iii) statutory damages; (iv) the continued and ongoing risk to their private medical information; and (v) the continued and ongoing risk of harassment, spam, and targeted advertisements specific to their medical and mental health conditions and their other confidential information communicated and otherwise disseminated via the Psychology Today website.

## CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class (the "Psychology Today Website Class" or "the Class") defined as follows:

> All California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter and through and including the date of resolution, visited and used the Psychology Today website and whose health information and/or other personal data was intercepted by, and/or or disclosed to, Google through Google's tracking technology embedded in the Psychology Today website.

100.     Excluded from the Psychology Today Website Class are employees of Defendant and employees of Defendant's parents, subsidiaries, and corporate affiliates. Plaintiffs reserve the right to amend or modify the class definition and/or to add sub-classes or limitations to particular issues, where appropriate, based upon subsequently discovered information.

101.     This action properly may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) there is a well-defined community of interest in the litigation, (2) common questions of law and fact predominate over individual issues, and (3) the proposed Class is ascertainable.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Numerosity**

102.    The Psychology Today Website Class that Plaintiffs seek to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records and/or Google's records to determine the size of the Class and to determine the identities of individual Class members.

103.    Based on information and belief, the Psychology Today Website Class consists of at least 75 individuals.  The Class is so numerous that joinder of all members is impracticable.

**Typicality**

104.    Plaintiffs' claims are typical of the claims of all of the other members of the Psychology Today Website Class, as Plaintiffs now suffer and have suffered from the same violations of the law as other putative Class members.  Plaintiffs' claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and all of the other Class members.

**Adequacy**

105.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiffs have retained competent counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Psychology Today Website Class members and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests that are adverse to those of the other Psychology Today Website Class members.

**Commonality and Predominance**

106.    By its unlawful actions, Defendant has violated Plaintiffs' and the Class members' privacy rights under the CMIA, the CIPA, and the California Constitution.  The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact presented in this Complaint.

107.    This action involves common questions of law and fact that predominate over any questions affecting only individual Class members.  Those common questions of law and fact include, without limitation, the following:

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

(a)     Whether Defendant has or had a policy or practice of disclosing and sharing personal and private information collected on the Psychology Today website including, without limitation, individually identifiable and protected mental health information, with Google and/or other third parties;

(b)     Whether Defendant has or had a policy or practice of not disclosing to Psychology Today website users that it would share their personal and private information, including individually identifiable and protected mental health information, with Google and/or other third parties;

(c)     Whether Defendant has or had a policy or practice of not obtaining Psychology Today website users' consent to share personal and private information, including individually identifiable and protected mental health information, with Google and/or other third parties;

(d)     Whether Defendant has or had a policy or practice of allowing the duplication and simultaneous transmission of Psychology Today website users' private information and confidential communications, without users' knowledge or consent, to Google and/or other third parties;

(e)     Whether Defendant, through the website tracking technology embedded on its Psychology Today website, has or had a policy or practice of permitting or enabling third parties to intercept, read, learn, collect, record, and/or use confidential communications and information, including individually identifiable and protected mental health information, submitted and shared by or otherwise obtained from Psychology Today website users;

(f)     Whether Defendant's acts and practices violate or violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*;

(g)     Whether Defendant's acts and practices violate or violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

(h)     Whether Defendant's acts and practices violate or violated the California Constitution or individual rights arising under the California Constitution; and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

(i)    Whether Plaintiffs and Class members are entitled to actual, statutory, nominal, and/or other forms of damages and other monetary relief.

**Superiority**

108.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Psychology Today Website Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of each member of the Psychology Today Website Class. Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiffs anticipate no difficulty in the management of this case as a class action.

109.    The prosecution of separate actions by individual members of the Psychology Today Website Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to those adjudications or that would substantially impair or impede the ability of those non-party members of the Class to protect their interests.

110.    The prosecution of individual actions by members of the Psychology Today Website Class also would run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
**Violations of CMIA**
**(California Civil Code §§ 56.06, 56.101, 56.10, 56.36)**

111.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

112.    The CMIA defines "medical information" to mean "any individually identifiable information, in electronic or physical form," that is related to a person's "medical history, mental health application information, mental or physical condition, or treatment."  Medical information is "individually identifiable" if it includes or contains "any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual."  Cal. Civ. Code § 56.05(j).

113.    Section 56.05 also defines "mental health application information" to mean any "information related to a consumer's inferred or diagnosed mental health or substance use disorder" that is collected by a mental health digital service.  Cal. Civ. Code § 56.05(k).

114.    The information that is submitted and shared by Psychology Today website users and collected and maintained by Defendant, including but not limited to Psychology Today website users' personal and sensitive information such as names, email addresses, telephone numbers, mental health conditions and concerns, and mental health provider and treatment preferences, is medical information because it is individually identifiable information relating to a patient's medical condition or mental health and plan of treatment.

115.    A "mental health digital service" refers to a "mobile-based application or internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer."  Cal. Civ. Code § 56.05(l).  As discussed in detail above, Psychology Today is both an internet website (www.psychologytoday.com) and a mobile application (Sessions by Psychology Today!) that collect personal and mental health information from consumers, including their inferred or diagnosed mental health condition.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

116.    The Psychology Today website, which touts the motto "Here to Help," markets itself as facilitating mental health services to consumers.  It claims that it is the world's largest mental health and behavioral science destination online.  In addition to providing articles, blogs, and other behavioral science content, including a "Diagnosis Dictionary," the Psychology Today website also offers (1) a search-engine tool to find a mental healthcare provider based on specific symptoms, concerns, and preferences input by the user and (2) links and buttons for the user to click and, by so doing, directly call or send an email communication to a therapist of interest. Psychology Today also provides a copy of those private communications to users for their records.

117.    Psychology Today further facilitates mental health services by providing an online platform (Sessions) for users and therapists to communicate regarding appointment details and check-in information and by hosting online teletherapy sessions either directly on the Sessions by Psychology Today webpage or through its mobile app.  Based on the personal and individually identifiable medical information collected and used by Psychology Today and the mental health services it provides or facilitates, Defendant is a mental health digital service.

118.    The CMIA also defines and identifies categories of businesses that are deemed to be providers of health care and subject to the same standards of confidentiality with respect to medical information disclosure that are required of a provider of health care.  For example, California Civil Code § 56.06(b) states that any "business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or health care provider…, or for the diagnosis, treatment, or management of a medical condition of the individual, ***shall be deemed to be a provider of health care subject to the requirements of this part.***"

119.    California Civil Code § 56.06(d) further provides that "any business that offers a mental health digital service to a consumer for the purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part."

---

THIRD AMENDED CLASS ACTION COMPLAINT            41            CASE NO. 3:24-cv-02609-JSC

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

120.    Defendant offers digital services and software applications in the form of the Psychology Today website (www.psychologytoday.com) and therapist directory and its mobile application ("Sessions by Psychology Today!").  Both platforms are designed to maintain medical information, especially that which is contained within email communications, and both facilitate the diagnosis, treatment, and management of users' medical or mental health conditions. Therefore, Defendant also is deemed to be a provider of health care and is subject to the standards of confidentiality with respect to medical information disclosure that are required by the CMIA.

121.    As alleged in detail above, through the use of Google Analytics website tracking technology embedded into Psychology Today's website, Defendant intentionally and knowingly shared Plaintiffs' and Class members' medical information with and disclosed that information to third party Google (and possibly others) without Plaintiffs' and Class members' knowledge, authorization or consent.  In so doing, Defendant violated Cal. Civ. Code § 56.06(f) by failing to maintain the confidentiality of users' private and personal medical information.

122.    Defendant also violated Cal. Civ. Code § 56.101(a) by failing to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information. Instead, Psychology Today allowed and enabled third-party Google (and possibly others) to intercept, duplicate and otherwise access Plaintiffs' and Class members' private medical information, which Google used for its own purposes including improving and creating new marketing and analytics services for itself.

123.    California Civil Code § 56.10(a) further provides that a provider of health care "shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization." Defendant violated this section of the CMIA when it disclosed Plaintiffs' and Class members' medical information to undisclosed third-party Google (and possibly others) without first obtaining Plaintiffs' and the Class members' authorization to do so.  **Nowhere on its Psychology Today website does Defendant identify Google as a recipient of users' highly personal and sensitive data, including their protected mental health information, nor does Defendant ask for or obtain user consent to share or disclose information to Google.**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

124.    Defendant's conduct, as described above, violated California Civil Code §§ 56.06, 56.101, and 56.10.  Under Civil Code §§ 56.36(b)(1), Defendant is liable to Plaintiffs and the Psychology Today Website Class members for statutory damages of $1,000 per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

**SECOND CAUSE OF ACTION**
**Violations of CCPA**
**(California Civil Code § 1798.150(a)(1))**

125.    Plaintiffs voluntarily agreed to dismiss this cause of action, and this cause of action was dismissed under the Court's March 28, 2025 Order (ECF 51).

**THIRD CAUSE OF ACTION**
**Aiding and Abetting Unlawful Interception**
**(Violations of California Penal Code § 631)**

126.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

127.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  *Id*. § 630. CIPA is intended "to protect the right of privacy of the people of this state."  *Id*.

128.    To establish liability under section 631(a), Plaintiffs need only establish that Defendant, "by means of any machine, instrument, or contrivance, or in any other manner," did or does any of the following:

[i] [I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

[ii] [W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

[iii] [U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

[iv] [A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

129.    Under § 631, a defendant must show that it had all parties' consent.

130.    Defendant and Google are each a "person" for the purposes of CIPA.

131.    Defendant systematically and routinely does business in California with California residents and California mental health providers.  Google maintains its principal place of business in California, where it designed, contrived, agreed to, conspired to achieve, effectuated, and/or received the interception and use of the contents of Plaintiffs' and Psychology Today Website Class members' private and sensitive communications containing protected mental health information.    Additionally, Google intercepted Plaintiffs' and Class members' data and confidential communications in California, where Plaintiffs, Class members and Google all are located.

132.    Google Analytics website tracking technology, Plaintiffs' and Class members' web browsers, and Plaintiffs' and Class members' computing and mobile devices are a "machine, instrument, or contrivance…or other manner."

133.    At all relevant times, Defendant used Google Analytics website tracking technology on its Psychology Today website without Plaintiffs' and Psychology Today Website Class members' knowledge, consent, or authorization.

134.    As described in detail above in Paragraphs 41-46 and 57-63, Google, by using an embedded JavaScript code, is able to intercept, read, and analyze the contents of confidential communications between users and Psychology Today's website.  The interception, reading, and analyzing of users' private information and confidential communications occurs while the communications are in transit to Psychology Today website servers.  Google intercepts, reads, and analyzes the users' confidential communications and then selects which part of the communication

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

data to use for its advertising and analytics purposes. Defendant permitted Google to intercept, read, and analyze Plaintiffs' and Class members' sensitive interactions and private communications with Psychology Today while those communications were in transit to Defendant's website or were passing over any wire, line or cable, or were being received at any place within California. Plaintiffs' and Class members' communications to and through Psychology Today, which included protected mental health information, were and are being intercepted, read, and analyzed by Google in real time while being sent by the user to Psychology Today.

135. Google used and uses, or at the very least had and has the capability to use, the private communications and confidential information that it intercepted, read, and learned of through its Google Analytics product for Google's own purposes, including to improve Google's own advertising and analytics services and to create new technologies and offerings.

136. At all relevant times, Defendant willingly facilitated, aided, employed, agreed with, and conspired with unauthorized third parties like Google to track, intercept, read, analyze, and use Plaintiffs' and Class members' personal and private communications that were made via the Psychology Today website. Those communications were intercepted, read, and analyzed by Google Analytics JavaScript code while the communications were in transit to Psychology Today and without Plaintiffs' and Class members' authorization or consent.

137. By allowing Google (and possibly others), without consent or written authorization, to intercept, read, analyze, and obtain Plaintiffs' and Psychology Today Website Class Members' personal and private communications, Defendant acted intentionally or, alternatively, with knowledge that Google's unauthorized interception, receipt, reading and use of Plaintiffs' and Class members' confidential communications would be a violation of CIPA.

138. Defendant provided substantial assistance and encouragement to Google, including but not limited to (1) installing and embedding the Google Analytics JavaScript code on the Psychology Today website without proper safeguards to preserve the confidentiality of users' communications, (2) failing to provide notice to Psychology Today website users of its use of the tracking technology and of Google's ability to intercept, read, and obtain users' personal and

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   sensitive communications, and (3) allowing Google to have direct access to, intercept, read,

2   analyze, and use Psychology Today website users' private and confidential communications

3   without those users' consent or authorization.

4       139.    By so doing, Defendant provided the means to accomplish Google's unauthorized

5   interception, reading, analyzing, selecting, and use of Plaintiffs' and Psychology Today Website

6   Class members' confidential communications.   Accordingly, the interception by Google was

7   unlawful, and Defendant aided and abetted Google's unlawful conduct.

8       140.    Defendant's conduct as described above violated California Penal Code § 631(a).

9   Under Penal Code § 637.2, Plaintiffs and Psychology Today Website Class members therefore are

10  entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual

11  damages, the amount deemed proper by the California Legislature.

**FOURTH CAUSE OF ACTION**
12
**Unlawful Recording of and Eavesdropping Upon Confidential Communications**
**(Violations of California Penal Code § 632)**
13

14      141.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and

15  further allege as follows.

16      142.    California Penal Code § 632 prohibits using "an electronic amplifying or recording

17  device to eavesdrop upon or record [a] confidential communication". . . "intentionally and without

18  the consent of all parties to a confidential communication."

19      143.    Google's tracking technology embedded into the Psychology Today website is an

20  electronic amplifying or recording device for purposes of § 632.  The Google Analytics code

21  duplicates and records a user's interaction in real-time as the user navigates the page, including

22  recording any information that the user may input or select and recording the links that the user

23  clicked.  The measurement code also collects and records information from the browser, such as

24  the language setting, the type of browser and the device and operating system on which the browser

25  is running.

26      144.    Section   632   defines   a   "confidential   communication"   to   include   "any

27  communication carried on in circumstances as may reasonably indicate that any party to the

28  communication desires it to be confined to the parties thereto."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

145.    Plaintiffs' and Psychology Today Website Class members' personal and private communications with Defendant, including their submission of sensitive medical information such as their mental health conditions and concerns, their provider and treatment preferences, and their contact with potential mental healthcare providers, were confidential communications for purposes of § 632.

146.    Because Defendant did not disclose to Plaintiffs or to the Psychology Today Website Class members that their private communications containing protected medical information were being recorded and/or eavesdropped upon by Google, Defendant did not obtain, and could not have obtained, Plaintiffs' or the Class members' express or implied advance consent to Google's recording or monitoring of those communications.  As a result, Plaintiffs and the Psychology Today Website Class members had an objectively reasonable expectation that their confidential communications were not being recorded and/or eavesdropped upon by Google.  That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording and/or eavesdropping upon people's private – and in this case medically-sensitive and mental-health-related – communications and the ease with which a disclosure or warning could have been provided.

147.    Plaintiffs and Psychology Today Website Class members expected that their personal and private communications with Defendant would not be intercepted and secretly recorded and/or eavesdropped upon by third parties, let alone *undisclosed* third parties.

148.    By (1) installing and embedding Google Analytics code on its Psychology Today website without proper safeguards to preserve the confidentiality of users' communications and (2) contemporaneously redirecting and transmitting Plaintiffs' and Class members' confidential communications through Google Analytics website tracking technology, Defendant permitted, encouraged, and gave substantial assistance to Google to eavesdrop upon and/or record Psychology Today website users' confidential communications through an electronic amplifying or recording device.  By so doing, Defendant violated § 632.

149.    At no time did Plaintiffs or Class members consent to Defendant's and Google's unlawful conduct.  Nor could Plaintiffs or Class members reasonably expect that their confidential

communications with Psychology Today would be overheard or recorded by Google, especially in the absence of any disclosure in Psychology Today's Privacy Policy.

150.     Upon information and belief, Google utilized Plaintiffs' and Class members' sensitive personal information, including their protected mental health information, for Google's own purposes, including improving Google's advertising and analytics services offerings and revenue.

151.     Defendant's conduct as described above violated California Penal Code § 632. Under Penal Code § 637.2, Plaintiffs and the Psychology Today Website Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

## FIFTH CAUSE OF ACTION
### Invasion of Privacy
### (Violations of Art. 1, § 1, California Constitution)

152.     Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

153.     "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians.  That section of the Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

154.     The right to privacy in California's Constitution creates a right of action against private entities such as Defendant.  To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

155.     Plaintiffs and Class members have a legally protected privacy interest in their private and confidential communications with Defendant, including in their individually identifiable medical information submitted and shared through their use of the Psychology Today website.  That information, including but not limited to Plaintiffs' and Class members'

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

names/identities, telephone numbers, email addresses, other personally identifiable information, patient status, health conditions and concerns, provider preferences and medical treatment, are inherently private, personal and sensitive in nature, and are protected by the right to privacy and confidentiality under the CMIA, HIPAA, CCPA, and CIPA.

156.    Plaintiffs and Class members had a reasonable expectation of privacy under the circumstances, including that: (i) the private communications disclosed by Psychology Today and intercepted and duplicated by Google include personal and sensitive information related to Plaintiffs' and Class members' mental health conditions and treatment; and (ii) Plaintiffs and Class members did not consent to Defendant disclosing or otherwise authorize Defendant to disclose their private and confidential health information to Google or other third-party interceptors, nor did they authorize Google to intercept, duplicate, store, read, or use that private information for Google's own benefit and monetary gain.

157.    Defendant's conduct constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the information disclosed by Psychology Today and allowed by Psychology Today to be intercepted, duplicated, and collected  by Google was highly sensitive and personal medical information protected by the California Constitution and numerous California statutes including the CMIA and the CCPA; (ii) Defendant did not have authorization or consent to disclose that personally identifiable and protected mental health information to any third party interceptor, including Google; (iii) Google did not have authorization to collect, duplicate, read or use that highly sensitive information; and (iv) the invasion deprived Plaintiffs and Class members of the ability to control the dissemination and circulation of that private and sensitive information, an ability that is a fundamental privacy right.  Defendant's conduct constitutes a severe and egregious breach of social norms.

158.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have had their privacy invaded and have sustained injury, including injury to their peace of mind.

159.    Plaintiffs and Psychology Today Website Class members seek appropriate relief for that injury, including but not limited to restitution, disgorgement of profits earned by Defendant

as a result of the intrusions upon Plaintiffs' and Class members' privacy, and any other equitable relief that will compensate Plaintiffs and Class members properly for the harm to their privacy interests.

160.    Plaintiffs also seek such other or further relief as the Court may deem just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for the following relief:

a.    An order certifying the Psychology Today Website Class, appointing Plaintiffs R.C. and D.G. as representatives of the Psychology Today Website Class, and appointing counsel for Plaintiffs as counsel for the Psychology Today Website Class;

b.    An order declaring that Defendant's actions, as described above, violate California Civil Code §§ 56, *et seq.*;

c.    An order declaring that Defendant's actions, as described above, violate California Penal Code § 631;

d.    An order declaring that Defendant's actions, as described above, violate California Penal Code § 632;

e.    An order declaring that Defendant's actions, as described above, violate Art. 1, § 1 of the California Constitution;

f.    A judgment for and award of statutory damages of $1,000 per violation under California Civil Code §§ 56.36(b) to Plaintiffs and each of the members of the Psychology Today Website Class;

g.    A judgment for and award of statutory damages of $5,000 per violation under California Penal Code § 637.2 to Plaintiffs and each of the members of the Psychology Today Website Class;

h.    A judgment for and award of compensatory and/or nominal damages to Plaintiffs and each of the members of the Psychology Today Website Class;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

i.      Payment of costs of the suit;

j.      Payment of attorneys' fees under California Code of Civil Procedure § 1021.5;

k.      An award of pre- and post-judgment interest to the extent allowed by law; and

l.      Such other or and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  April 24, 2025                    **KELLER GROVER LLP**

By: _/s/ Eric A. Grover_____
    ERIC A. GROVER
    *Attorneys for Plaintiffs*

### JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  April 24, 2025                    **KELLER GROVER LLP**

By: _/s/ Eric A. Grover_____
    ERIC A. GROVER
    *Attorneys for Plaintiffs*