ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

DON BIVENS (*pro hac vice admission)*
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN, A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
R.C. and D.G., Individuals

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 3:24-cv-02609-JSC<br><br>Assigned to Honorable Jacqueline Scott Corley<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br>Date: June 26, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8<br><br>Complaint Filed: November 30, 2023<br>FAC Filed: August 12, 2024<br>SAC Filed: October 31, 2024<br>TAC Filed: April 24, 2025 |



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................6

II. STANDARD ON MOTION TO DISMISS ....................................................7

III. PLAINTIFFS' PENAL CODE § 631 CLAIM IS PLEADED SUFFICIENTLY..........8

A. Defendant Improperly Raises New Arguments Outside of the Scope of Plaintiffs' Limited Amendments.................................................. 8

B. Defendant's Factual Challenges Have No Bearing on the Legal Sufficiency of Plaintiffs' Penal Code § 631 Claim.................................... 11

1. Plaintiffs plausibly have alleged that Google's embedded code intercepts users' communications while they are in transit to Psychology Today.................12

2. Defendant's misleading factual assertions are improper at the initial pleading stage and should be ignored. ...................................................15

3. *Torres* is factually distinguishable and not dispositive of Plaintiffs' claims. ........20

IV. CONCLUSION....................................................................................21

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Ambriz v. Google, LLC*
(N.D. Cal. Feb. 10, 2025) 2025 WL 830450 ........ 14

*Ashcroft v. Iqbal*
(2009) 556 U.S. 662 ........ 8

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544 ........ 8

*Caveman Foods, LLC v. Lester*
(N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 185237 ........ 12

*D'Angelo v. FCA US, LLC*
(S.D. Cal. 2024) 726 F. Supp. 3d 1179 ........ 14

*Erickson v. Pardus*
(2007) 551 U.S. 89 ........ 7

*Esparza v. UAG Escondido A1 Inc.*
(S.D. Cal. Feb. 12, 2024) 2024 WL 559241 ........ 14

*Geisler v. Petrocelli*
(2d Cir. 1980) 616 F. Supp. 2d 636 ........ 12

*Hamman v. Cava Grp., Inc.*
(S.D. Cal., Dec. 4, 2023) 2023 U.S. Dist. LEXIS 215443 ........ 8

*In re Vizio, Inc. Consumer Priv. Litig.*
(C.D. Cal. 2017) 278 F. Supp. 3d 1204 ........ 21

*James v. Walt Disney Co.*
(N.D. Cal. 2023) 701 F. Supp. 3d 942 ........ 17

*Khoja v. Orexigen Therapeutics, Inc.*
(9th Cir. 2018) 899 F.3d 988 ........ 12

*Konop v. Hawaiian Airlines, Inc.*
(9th Cir. 2002) 302 F.3d 868 ........ 19

*Lee v. City of Los Angeles*
(9th Cir. 2001) 250 F.3d 668 ........ 7, 11

*Levitt v. Yelp! Inc.*
(9th Cir. 2014) 765 F.3d 1123 .......... 7

*Licea v. Cinmar, LLC*
(C.D. Cal. 2023) 659 F. Supp. 3d 1096 .......... 19

*Licea v. Old Navy, LLC*
(C.D. Cal. 2023) 669 F. Supp. 3d 941 .......... 13

*M.G. v. Therapymatch, Inc.*
(N.D. Cal. Sept. 16, 2024) 2024 WL 4219992 .......... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
(9th Cir. 2008) 519 F.3d 1025 .......... 7

*Mata v. Zillow Grp., Inc.*
(S.D. Cal. Dec. 18, 2024) 2024 WL 5161955 .......... 21

*Niantic, Inc. v. Global*
(N.D. Cal. Sept. 2, 2020) 2020 WL 860002 .......... 8

*Revitch v. New Moosejaw, LLC*
(N.D. Cal. Oct. 23, 2019) 2019 WL 5485330 .......... 14

*St. Aubin v. Carbon Health Techs., Inc.*
(N.D. Cal., Oct. 1, 2024) 2024 U.S. Dist. LEXIS 179067 .......... 14, 21

*Tavantzis v. Am. Airlines, Inc.*
(N.D. Cal., Feb. 23, 2024) 2024 U.S. Dist. LEXIS 31474 .......... 8

*Torres v. Prudential Fin., Inc.*
(N.D. Cal. Apr. 17, 2025) 2025 U.S. Dist. LEXIS 73736 .......... 20

*U.S. v. LSL Biotechnologies*
(9th Cir. 2004) 379 F.3d 672 .......... 11

*Usher v. City of Los Angeles*
(9th Cir. 1987) 828 F.2d 556 .......... 7

*Valenzuela v. Keurig Green Mountain, Inc.*
(N.D. Cal. 2023) 674 F. Supp. 3d 751 .......... 19

*Valenzuela v. Nationwide Mut. Ins. Co.*
(C.D. Cal. 2023) 686 F. Supp. 3d 969 .......... 14, 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**STATE CONSTITUTIONAL PROVISIONS**

California Article 1
§ 1 .......... 6

**STATE STATUTES**

California Civil Code
§ 56 .......... 6, 12
California Penal Code
§ 631 .......... *passim*
§ 632 .......... 6, 21

**FEDERAL RULES**

Federal Rules of Civil Procedure
Rule 8 .......... 7
Rule 12 .......... *passim*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## I. INTRODUCTION

The Court's Order re: Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF 51, the "MTD SAC Order") gave Plaintiffs leave to amend their Third Cause of Action under California Penal Code § 631. Apart from the California Consumer Privacy Act ("CCPA") claim that Plaintiffs dismissed voluntarily, the Court denied Defendant's prior motion to dismiss on all other grounds.[1] Plaintiffs did not overhaul the entire complaint and did not update the allegations or causes of action that the Court found to be sufficient. As is proper, Plaintiffs' amendments addressed only the Court's stated concern regarding the "in transit" requirement under California's wiretapping statute.

In this regard, the Third Amended Complaint ("TAC") clearly alleges that Plaintiffs' and Psychology Today website users' communications with Defendant were intercepted by Google while those communications were in transit to Psychology Today. *See* TAC, ¶¶ 1, 6-7, 30-31, 41-46, 57-63, 134, 136. Specifically, Plaintiffs allege that Defendant embedded Google's JavaScript code on its website (*id.* ¶¶ 30, 41), which Plaintiffs accessed with their web browsers (*id.* 41-43), and the embedded code surreptitiously and instantaneously read and analyzed substantive content of their communications, which included sensitive and private medical information, as they navigated the Psychology Today website (*id.* ¶ 79). Plaintiffs demonstrate this exact process through supporting images and a video that shows Google's interceptions happening in real time.

Defendant attempts to escape liability by (a) improperly raising new arguments directed at previously asserted, unaltered allegations related to claims that are not at issue, (b) introducing new and unverified facts far outside of the pleadings, (c) ignoring the presence of the embedded JavaScript code in its description of the interception process, (d) confusing and mischaracterizing Plaintiffs' allegations of continuous interception, (e) oversimplifying the interception process to

---

[1] The Court's March 28, 2025 MTD SAC Order denied Defendant's Rule 12(b)(1) motion for lack of subject matter jurisdiction. The MTD SAC Order also denied Defendant's Rule 12(b)(6) motion and found that Plaintiffs' complaint plausibly alleged claims under (1) the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.* ("CMIA"); (2) California Penal Code § 632; and (3) the right to privacy under the Article 1, § 1, of the California Constitution.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

assert erroneously that "in transit" interception is impossible, and (f) relying on a factually distinguishable summary judgment case. Disputing Defendant's unsupported factual contentions and contradictions would require an unreasonable level of specificity from Plaintiffs regarding third parties' systems and technologies that is not possible before the benefit of discovery. In short, all of Defendant's arguments are improper factual challenges that should be rejected at this early pleading stage.

Nevertheless, for the avoidance of doubt, Plaintiffs address Defendant's improper arguments and dispute that Defendant's unverified factual contentions are accurate or applicable to what happened in this case. These "facts" have not been tested in discovery nor judicially noticed. Contrary to Defendant's misleading assertions, Plaintiffs plausibly have alleged that their communications were intercepted by Google while they were in transit to Psychology Today. There is no need to ***prove*** now, without the benefit of discovery, precisely how Google Analytics works at every step of the interception process or how it worked over different periods of time at issue in this case. Plaintiffs sufficiently have pleaded individual and putative class claims under CIPA's wiretapping statute. Defendant's motion should be denied in its entirety.

## II. STANDARD ON MOTION TO DISMISS

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In ruling on the motion, courts are required to accept all factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

A Rule 12(b)(6) motion tests only the legal sufficiency of a complaint and does not evaluate its factual allegations or the amount of support for those allegations. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). To overcome a motion to dismiss, the factual allegations in the plaintiff's complaint need only suggest that the claim has a plausible chance of success. *Levitt v.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Subject to a very few exceptions not present here, courts may not consider evidence outside of the complaint. *See id.* and *Tavantzis v. Am. Airlines, Inc.*, 2024 U.S. Dist. LEXIS 31474, at *7 (N.D. Cal. Feb. 23, 2024), holding that a defendant has a "heavy burden to make a strong showing that the motion to dismiss can be decided without discovery."

## III. PLAINTIFFS' PENAL CODE § 631 CLAIM IS PLEADED SUFFICIENTLY

### A. Defendant Improperly Raises New Arguments Outside of the Scope of Plaintiffs' Limited Amendments.

To distract from the sole issue raised by the Court in its MTD SAC Order, *i.e.* whether Plaintiffs have pleaded adequately that communications were intercepted "in transit," Defendant improperly puts forth new arguments attacking unrelated, previously asserted allegations in a prohibited successive Rule 12(b)(6) motion.

"Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). *See also Hamman v. Cava Grp., Inc.*, 2023 U.S. Dist. LEXIS 215443, at *7-8 (S.D. Cal. Dec. 4, 2023), denying defendant's motion to dismiss the second amended complaint and finding that "the factual footing has not even changed in a way that would give the Court some pause before using its discretion to ban this successive 12(b)(6) motion" because defendant could have raised its arguments in its motion to dismiss plaintiff's first amended complaint, and *Niantic, Inc. v. Global ++*, 2020 WL 860002, at *3 (N.D. Cal. Sept. 2, 2020), noting that a defendant "cannot bring a second motion to dismiss challenging a claim that is 'based on substantially the same allegations in the amended complaint and the original complaint'" (citation omitted).

Pursuant to the Court's MTD SAC Order, Plaintiffs amended only their Penal Code § 631 cause of action to provide additional details about the interception process and how Psychology Today website users' information is taken by Google while the data is in transit, focusing on the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

presence and mechanism of Google's embedded JavaScript code. Nothing more. Plaintiffs did not alter or contradict the factual basis for their allegations or "shift narratives." The arguments contained within Defendant's Introduction and Procedural Posture sections of its motion to dismiss are improper. They are completely outside the scope of the limited amendments that Plaintiffs made to address more fully the "in transit" requirement of Penal Code § 631. That cause of action is the only claim at issue and, for the reasons explained below, Defendant's unrelated arguments should be ignored.

*First*, although the Court denied Defendant's motion to dismiss as to Plaintiffs' CMIA claim, Defendant again argues that medical information was not shared with third parties. That argument already was rejected. The TAC does not raise new grounds for or add factual allegations to Plaintiffs' CMIA cause of action. Specifically, Plaintiff D.G.'s allegations that now are being challenged improperly by Defendant were asserted in the Second Amended Complaint. *Compare* SAC, ¶¶ 17-24 (ECF 36) and TAC, ¶¶ 17-24 (ECF 55). Plaintiffs' CMIA claim, including those allegations, already has been recognized as sufficient by the Court. Thus, because Defendant improperly is taking a second shot at Plaintiffs' CMIA cause of action with new arguments that Defendant could have raised in its prior motion to dismiss, Defendant's CMIA arguments should be rejected without consideration.[2]

*Second*, Defendant's new arguments regarding footnote 8 and Universal Analytics are completely off the mark. Defendant's entire argument is premised on the patently false assertion that footnote 8 is new. But footnote 8, which noted that Google Analytics 3 (Universal Analytics) collected IP addresses by default before July 1, 2023, and also noted that Google Analytics 4 (GA4) did not appear to collect or store IP addresses after that date, was included and alleged in the SAC on page 17. SAC, ¶ 56, fn. 8. The same footnote appears on page 18 of the TAC. TAC, ¶ 58, fn. 8.

---

[2] Likewise, Defendant's comments regarding the voluntarily dismissed CCPA claim are irrelevant and should be ignored. Notably, despite spending several pages on those irrelevant arguments, Defendant's footnote acknowledges the clear case law and states that it actually is not making "any dismissal arguments pertaining to Plaintiffs' CMIA, CIPA § 632, and invasion of privacy claims." Thus, Plaintiffs will not address the substance of those improper and immaterial arguments.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Similarly, footnote 3 in both the SAC and TAC recognized that "at some point during the class period, the Google Analytics program embedded on Defendant's website changed from Google Analytics 3 (Universal Analytics) to Google Analytics 4 (GA4)." *See* SAC, ¶ 8, fn. 3 and TAC, ¶ 8, fn. 3. Thus, contrary to Defendant's misleading assertion, there are no "new concessions" or "belated factual admissions" by Plaintiffs. Further, to the extent that Plaintiffs could know such information before discovery, Plaintiffs always have been upfront and consistent about Defendant's use of Google Analytics and its capturing of IP addresses over time. Indeed, footnote 8 was included for the specific purpose of explaining why "website images captured more recently and used as exemplar figures may not contain IP addresses." SAC, ¶ 56, fn. 8 and TAC, ¶ 58, fn. 8.

Those untouched footnotes and unaltered allegations do not undermine or contradict Plaintiffs' claims. Nor do they suggest that Plaintiffs' information was not personally identifying, an issue that is not relevant to the expanded "in transit" allegations. As noted correctly by Defendant, both Plaintiffs accessed and used the Psychology Today website ***before*** Google Analytics 4 went live in July 2023. Further, the SAC and the TAC both assert that an IP address is only one of the many ways that Google can identify the person whose sensitive data and information Google is intercepting. "Google also can identify persons via their browsers, device identifiers and cookies, among other things." *See* SAC, ¶ 69, fn. 14 and TAC, ¶ 73, fn. 16. Defendant's attempt to relitigate this issue is improper as the anonymization of IP addresses is completely irrelevant to the issue of whether data was intercepted "in transit."

*Third*, Defendant continues its unrelated IP-address argument and challenges Plaintiffs' video and Figures 7 through 13, which are identical in the SAC and TAC. *See* SAC, ¶¶ 58-59, 61 and TAC, ¶¶ 60-61, 63. Based on those ***unchanged*** figures and video, Defendant now claims erroneously that Plaintiffs are trying to "manufacture a violation based on functionality that did not exist" and based on evidence drawn from web pages they never saw and never used. That is another red-herring argument. Putting aside that Plaintiffs disagree emphatically with Defendant's aspersions, Plaintiffs emphasize again that the capturing or anonymizing of IP addresses has no bearing on whether user data was intercepted "in transit."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Further, Plaintiffs cannot go back in time to re-create exactly what they saw when the violation first occurred. As indicated plainly, and for demonstrative purposes, Figures 7-13 are exemplar snapshots of Google Analytics capturing a user's real-time interactions. SAC, ¶ 58 and TAC, ¶ 60. The figures and video demonstrate the near-instantaneous transfer of information and how Google Analytics intercepts, reads, and analyzes a user's interactions and communications with Psychology Today in real-time, and then displays the selected portions sent to Google, including captured medical information, within a few milliseconds in the Inspect Tool feature on a user's browser. *Id.* Footnotes 9 and 10 state very clearly that the figures and video were captured from the Psychology Today website between October 23 and 27, 2024. SAC, ¶¶ 59 and 61, fns. 9-10 and TAC, ¶¶ 61 and 63, fns. 9-10. Plaintiffs never represented that those images were what they saw. Nor could they. Plaintiffs were unaware that Defendant had embedded Google Analytics tracking technology on its Psychology Today website and was allowing Google surreptitiously to intercept and collect their personal and private information without consent or authorization.

In sum, Defendant's new arguments regarding pre-existing allegations and claims not at issue are irrelevant and wrong. Defendant's remaining arguments, discussed below, all are improper factual challenges at the early pleading stage and likewise should be rejected.

### B. Defendant's Factual Challenges Have No Bearing on the Legal Sufficiency of Plaintiffs' Penal Code § 631 Claim.

Defendant next argues for dismissal by mischaracterizing and improperly contradicting Plaintiffs' TAC allegations, by introducing new and unverified facts to assert that it is "impossible" for Psychology Today website users' communications to be intercepted while in transit. Defendant's argument violates the well-established doctrine that the court "is required to presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party." *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004). Defendant's opposing version or interpretation of the "facts" cannot render Plaintiffs' allegations implausible at the initial pleading stage.

"***Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)***." *Lee v. City of Los Angeles*, 250 F.3d 668,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

688 (9th Cir. 2001) (emphasis added). *See also Geisler v. Petrocelli*, 616 F.Supp.2d 636, 639 (2d Cir. 1980), holding that the purpose of a Rule 12(b)(6) motion is merely to assess the legal sufficiency of a claim, not to evaluate the factual allegations. Moreover, if a party presents matters outside of the pleadings on a motion to dismiss, and they are not excluded by the court, "the motion must be treated as one for summary judgment under Rule 56." *Caveman Foods, LLC v. Lester*, 2013 U.S. Dist. LEXIS 185237, at *4 (N.D. Cal. 2013), citing Fed. R. Civ. Proc. 12(d).

In its motion, Defendant offers only a short footnote to "incorporate[] by reference" Google's publicly facing materials. It then proceeds to improperly introduce alleged facts far beyond those materials. At no point does Defendant explain how the Court can take judicial notice of complicated technical facts regarding the operation of Google's code on its website, the settings put in place by Defendant, the load times of browsers, or Defendant's characterization of how these facts intersect across different periods of time and with different versions of Google's code. Defendant's flawed arguments, which raise disputed factual issues, should be rejected by the Court. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018), explaining the differences between judicial notice and incorporation by reference and cautioning that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."

**1. Plaintiffs plausibly have alleged that Google's embedded code intercepts users' communications while they are in transit to Psychology Today.**

By focusing on the summary paragraphs in the TAC's Introduction and citing several supporting (but not the essential) paragraphs describing the overall process, Defendant misleadingly and conveniently ignores the TAC's numerous allegations describing the interception process and how the embedded Google Analytics code tracks and collects users' information while that data is in transit to Psychology Today. *See* TAC, ¶¶ 41-46, 57-63. Defendant clearly seeks to "insert [its] own version of events into the complaint to defeat otherwise cognizable claims." *Khoja*, 899 F.3d at 1002.

The TAC alleges that Defendant embeds a small piece of Google Analytics JavaScript measurement code into each page of its Psychology Today website on which it wishes to track information. TAC, ¶ 41. When a user first accesses the Psychology Today website, or any website

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

hosting Google Analytics, the embedded Google code reads and analyzes the user's communications with the host website. *Id*. Relevant here, the Google Analytics embedded code intercepts, reads, and analyzes the substantive content of a user's interactions and communications while that information is in transit to the Psychology Today website; it does so in order to interpret and select what portions of the communications, *i.e*. user data, to send to Google's external servers for further processing and analysis. TAC, ¶¶ 41-42, 44-45, 57-63.

Importantly, the interception and initial analysis by Google's embedded code occurs while the entire communication from the user and his or her browser is being transmitted and sent to Psychology Today. TAC, ¶¶ 41-42, 57, 59-60, 62-63. Stated another way, the intercepted information is read and interpreted by Google's JavaScript code, in real-time, while the user is navigating and interacting with the Psychology Today website. TAC, ¶ 42. That simultaneous process enables Google to read and understand users' information instantaneously, as demonstrated in Figures 7-13 and the video attached to the TAC. TAC, ¶¶ 57, 59-60, 63. The selected, intercepted-in-transit data subsequently is sent to Google's external servers, where it is stored in the Google database for Google's later use to analyze the information further and to generate reports and for Google's own advertising purposes. TAC, ¶¶ 44-46. Indeed, Google touts its ability to monitor activity "as it happens" and monitor website activity "immediately and continuously," which Google later uses to create "Realtime reports" for its clients. TAC, ¶ 40.[3]

Contrary to Defendant's claims, these detailed allegations do not merely parrot the statute. Rather, they fully describe and plausibly allege how Psychology Today website users' information is intercepted by the embedded Google Analytics code while that data is in transit to Psychology Today.

Numerous courts have found allegations of embedded software code like Plaintiffs' sufficient to state a Penal Code § 631 claim. *See, e.g., Licea v. Old Navy, LLC*, 669 F.Supp.3d 941, 946 (C.D. Cal. 2023), finding sufficient the plaintiff's allegations that the defendant "uses a

[3] To be clear, Plaintiffs' allegations are focused on Google's reading and analysis of the communications intercepted while in transit. Plaintiffs make no claims regarding the reports or the analysis that Google generates of stored data at some later point in time.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

third-party service to covertly 'embed[] code' into its chat feature ... to secretly intercept in real time … communications with unsuspecting website visitors"; *M.G. v. Therapymatch, Inc.*, No. 23-CV-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024), finding the plaintiffs' allegations regarding "embedded Google Analytics Code" and simultaneous interception sufficient; *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024), holding that "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' element"; *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024), finding the plaintiffs sufficiently alleged how the embedded Facebook Pixel code "written in JavaScript" intercepts communication in real time; and *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198 (S.D. Cal. 2024), holding that allegations of "embed[ing] code" to collect chat communication is sufficient at pleading stage) (collecting cases). *See also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023), finding the plaintiff's allegations of interception sufficient because, as is the case here, (i) she did not simply recite that there was real-time interception, (ii) she added detail on how it occurred (through the code Nationwide paid Akamai to embed), and (iii) she pointed to statements from Akamai regarding "[r]eal-time insights" and "[d]ata from every use event *collected as it happens*."

To the extent that Defendant is attempting to divorce Google from its embedded JavaScript code, it is mistaken. *See Ambriz v. Google, LLC*, No. 23-CV-05437-RFL, 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025), rejecting Google's attempts to draw an artificial distinction between itself and its software code and holding that the plaintiffs adequately alleged that "Google learned the content of their communications while they were in transit, either before or simultaneously with the intended recipient" and *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019), finding the "in transit" requirement of § 631 satisfied and holding that even if the browser caused a parallel signal to be sent to NaviStone, the intervention happened while the signal already was in transit from the plaintiff's device.

Accordingly, Plaintiffs' detailed interception-while-in-transit allegations – supported by

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

video evidence showing those interceptions in real time and Google's own statements – are more than sufficient at this early pleading stage. Discovery can and will provide additional details and further evidentiary support for Plaintiffs' claims.

**2. Defendant's misleading factual assertions are improper at the initial pleading stage and should be ignored.**

To overcome the clear sufficiency of Plaintiffs' allegations, Defendant attempts to create doubt by asserting contradictory factual allegations to contend that "in transit" interception is impossible on the Psychology Today website. Defendant's factual challenges are not only inappropriate at the pleading stage before discovery, they also are highly misleading and should be given no credence at this stage of the proceedings.[4]

*First*, Defendant critically ignores the user-interaction stage of the process and the presence and actions of the embedded Google code as the user navigates the website. TAC ¶¶ 30, 41-43, 57, 62, 79. Instead, Defendant introduces facts regarding the initial "GET" request, namely what happens when the user first enters the website and asks the web server for the page content. Defendant contends that when the website responds to the user's request and sends the user the requested information, the Google Analytics JavaScript code also is sent to the user and is downloaded onto the user's browser.

Inexplicably, the process stops here for Defendant, and there is little discussion about what happens after the webpage is loaded and users are communicating and sharing information with the website. Defendant conveniently focuses on the *initial* browser to server communication, *i.e.*, *before* the Google Analytics code is embedded on a user's browser. Not surprisingly, Defendant later focuses on the very end of the process in describing how Google Analytics uses the collected information for reports. Defendant effectively omits or glosses over the presence of Google's embedded code and its interception of users' inputs as described by Plaintiffs in the TAC. Once a user visits a website and, per Defendant, the first "GET" request is completed, the embedded

[4] While Plaintiffs are forced to engage with Defendant's unverified factual assertions, Plaintiffs do not concede that Defendant has correctly stated, described, or characterized any technical information outside of the TAC. Plaintiffs maintain that this information must be gathered and tested through discovery.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Google code is active and, per Plaintiffs, begins intercepting the user's interactions and communications as they are inputted by the user navigating the website. Depending on the user's actions, and as demonstrated in Plaintiffs' video, this can trigger an instantaneous transmission to Google's external servers. This is the portion of the process described by the TAC, *i.e*. the user's interactions *after* the Google Analytics code has been downloaded and activated on the user's browser.

*Second*, Defendant confuses the ongoing and continuing nature of the interception alleged in the TAC by mischaracterizing the TAC's claims as describing "a continuous conversation" or "ongoing communication" that it argues is technologically incorrect. But Plaintiffs never use those terms in the TAC. Defendant self-servingly misinterprets Plaintiffs' allegations.[5]

Defendant appears to be arguing that because there were "multiple discrete 'communications,' each one completed before the next one could begin," the sequential processing makes it impossible for any interception or reading to occur "while in transit." That ***factual argument*** is incorrect. Defendant's argument ignores the ongoing presence of the embedded code and creates an erroneous framework in which there are only "clean" GET requests every time a user interacts with the website. To the contrary, ***once Google Analytics code is activated on the user's browser during the first visit to the website, it does not simply go away; rather, the embedded code follows the user as he or she navigates the website,*** immediately intercepts the user's communications and interactions with the website, and "selects which part of the communications will be sent and later used by Google for its advertising and analytics purposes." TAC, ¶ 30. In essence, once Google's embedded code is active, it reads and collects data continuously, irrespective of a new webpage loading (as shown in the video attached to the TAC) or a new GET request as inaccurately described by Defendant.

---

[5] Similarly, Defendant appears to confuse Plaintiffs' allegations of real-time interception with Google's marketing of its "Real-time reports." Plaintiffs did not allege that Google reports are being prepared for Defendant instantaneously. Rather, Google's use of the phrases "monitor activity on your website *as it happens*" and "immediately and continuously monitor" provides support for Plaintiffs' allegations that the interception and reading by Google's embedded code is happening instantaneously in real-time and while in transit to Psychology Today, which makes such "Real-time reports" possible. *See Valenzuela*, 686 F.Supp.3d at 977.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

In *James v. Walt Disney Co.*, 701 F.Supp.3d 942 (N.D. Cal. 2023), which Defendant cites, the court expressly rebutted the tactic Defendant is now attempting. In *Disney*, the defendant argued that there was no interception because there was a "distinct and sequential data transmission between Plaintiffs' web browsers and Oracle," offering a diagram of an HTML transmission process. The *Disney* court rejected this argument because the defendant "ignored" the allegations regarding the code on the plaintiff's device that "intercept communications when the user makes communications to the website." *Id.* at 960. Here, Defendant similarly attempts to bypass Plaintiffs' allegations regarding the embedded Google JavaScript code and focus on different facts regarding allegedly later communications.

*Third*, Defendant oversimplifies the process and claims misleadingly that Google receives data *only after* a webpage loads completely and "the browser has received and processed the page content." That sequential processing, which Defendant claims is evidenced further by the asynchronous configuration of Google Analytics on its Psychology Today website, renders "reading a communication 'while it is in transit' [] impossible." That unsupported factual argument not only relies on unverified allegations outside of the complaint, but is, even taking it at face value, inaccurate.

As above, Defendant's description of the communication process (1) focuses only on the initial GET request and response between the user's browser and server, (2) ignores the fact that the embedded JavaScript code already is implemented on the user's browser and therefore is capable of intercepting and reading user data, and (3) inaccurately describes the interception process as it applies to a user's actual interactions with the Psychology Today website. Moreover, the implementation of Google Analytics on Defendant's website is such that it follows not only pages viewed but also the buttons clicked, as they are happening, without leaving the page. This is demonstrated clearly in the video referenced in paragraph 63 and attached to the TAC where the information from the user's button clicks (selecting therapist related filters) is shared with Google instantaneously as the interaction is occurring and without loading a new Psychology Today page or triggering a new HTML download.

Further, Defendant's assertion that information is sent to Google only after the page is

downloaded completely is not just belied by watching what is actually happening on the video, it demonstrates a misunderstanding of how the internet works as well. Although the webpage may be *visible* to the user before the information is sent to Google, there are many scripts and requests running in the background that ultimately result in the full and complete download of the page and all of its functions.

This loading process usually takes a few seconds. During that time, Google's embedded code already has captured the user's information and sent it to Google's external servers before the page has fully loaded. That is evidenced by Defendant's own unverified screenshot of the loading "waterfall" on page 20 of its motion, reproduced in part below. Plaintiffs have no way to know where this screenshot comes from or verify its accuracy, but on its face, it contradicts Defendant's claim. Specifically, Defendant asserts that "the Google Analytics JavaScript is loaded last (as allegedly shown by the last line of the waterfall), by a significant margin." But Defendant conveniently ignores, in its own screenshot, that there was an earlier transmission to "analytics.google.com" that took place before the page was completely downloaded and while Psychology Today's code was, apparently, still processing. (See the line in the red box.)



Thus, Defendant is wrong when it argues that a page must load or download fully and completely before Google's embedded code begins intercepting, reading and then sending information to Google's external servers.

The same rebuttal arguments apply to Defendant's incorrect assertions regarding Figures 14 and 15 and the need for the browser to finish loading the full content of the page before any information is sent to Google. ***Defendant's improper and unsupported factual arguments in no***

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

***way prove that it is impossible to intercept a communication while it is in transit to Psychology Today.***

Notably, Defendant's motion conspicuously fails to address what the "in transit" element of CIPA actually requires. In the relevant part of its MTD SAC Order, the Court cited *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) and *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) to analyze the "in transit" element. In *Licea*, the court explained the roots of the "in transit" analysis in the difference between the federal Wiretap Act and the Stored Communications Act as articulated in *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002). *Konop* requires that the communication was "acquired during transmission" and not "while it is in electronic storage." *Id.* at 878.

Here, Plaintiffs clearly plead that the embedded Google JavaScript code instantaneously receives and reads the communication from the user and transmits it to Google's external servers – there is no identifiable or possible moment of storage. Defendant does not raise this critical test or any of this relevant case law. Nor do its "factual" assertions identify any moment of "storage" that would plausibly challenge Plaintiffs' allegations. At most, Defendant cites Google's statements about storage for its reporting capabilities, which Plaintiffs already have explained are downstream of Google's interception and reading of users' communications that are "in transit" and before any storage of the information occurs.

In sum, not one of Defendant's misleading factual assertions – ***which are presented with no effort to support them with admissible evidence*** – changes the plausibility of Plaintiffs' allegations that once the Google Analytics JavaScript code is activated, ***the embedded code immediately begins intercepting, reading, and analyzing the user's communications as the user interacts with and inputs confidential medical information into the Psychology Today website.*** Google's embedded code takes users' communications with the website while they are in transit to Psychology Today, interprets that intercepted data, and sends users' data to Google's external servers, which includes the intercepted information. Google further processes and analyzes that intercepted data, prepares reports, and stores that information for later use. These allegations plausibly plead interception by Google while the data was in transit to Psychology Today.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**3. *Torres* is factually distinguishable and not dispositive of Plaintiffs' claims.**

Defendant's reliance on *Torres v. Prudential Fin., Inc.*, 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025), is misplaced. First, that case was decided on a summary judgment motion *after discovery* and the development of a full factual record. ***No discovery has occurred here.***

Further, the cases are factually distinguishable and do not involve the same tracking technology. The Google Analytics JavaScript code at issue here does not operate in the same manner as the "session replay" software in *Torres*. In fact, the court expressly distinguished cases involving similar analytics tools at issue in this case and noted that "[a]s these cases illustrate, CIPA remains perfectly viable in the context of internet communications." *Id.* at *16, n.5.

In *Torres*, the court found that the "TrustedForm software intercepts the contents of Plaintiffs' communications in real time ***and stores*** the recording on an ActiveProspect server." *Id*. at *15 (emphasis added). The court further found that "ActiveProspect employees with 'superuser access' can later access these communications and even testify about their contents." *Id*. Based on the storage of the recordings before any access, the *Torres* court held that "nothing in the record plausibly indicates that ActiveProspect reads or attempts to read the contents of the communication while they are in transit." *Id*.

Here, in contrast, the TAC asserts repeatedly that Google's embedded JavaScript code intercepts, reads, and analyzes the substantive content of a user's communications while that data is in transit to Psychology Today. TAC, ¶¶ 41-42, 57, 59-60, 62-63. The real-time interception occurs while users are interacting with and navigating the Psychology Today website. *Id.* Only after Google's embedded code has read, interpreted, and selected specific user data is that designated information sent to Google's external servers for further processing, analytics, report preparation, and storage. TAC, ¶¶ 44-46. **In sum, the intercepted information is read by Google while the entire communication travels from the user's browser to the Psychology Today website, well before any storage of the data occurs.** TAC, ¶¶ 41-42, 44-46, 57, 59-60, 63.

Thus, *Torres* has no bearing on the legal sufficiency of Plaintiffs' Penal Code § 631 claim

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

under Rule 12(b)(6). At the motion-to-dismiss stage, "a plaintiff is not required to allege how and when their communications are captured." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *15 (N.D. Cal. Oct. 1, 2024), citing *In re Vizio, Inc. Consumer Priv. Litig.*, 278 F.Supp.3d 1204, 1228 (C.D. Cal. 2017). As the *St. Aubin* court noted, "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *Id.*; *see also Mata v. Zillow Grp., Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (same). Here, Plaintiffs plausibly have alleged the unauthorized interception and reading by Google of Psychology Today website users' personal information, while that data was in transit to Defendant, in violation of Penal Code § 631. Plaintiffs' allegations are sufficient at the motion-to-dismiss stage.

## IV. CONCLUSION

In another attempt to escape liability, Defendant brings a prohibited successive Rule 12(b)(6) motion to challenge unaltered, pre-existing allegations for claims not at issue. The Court already found Plaintiffs' CMIA, Penal Code § 632, and invasion-of-privacy claims to be alleged sufficiently. Plaintiffs' limited amendments addressed only the Court's concerns regarding the "in transit" requirement under Penal Code § 631. Thus, all of Defendant's unrelated, immaterial arguments should be summarily rejected.

Further, Defendant's misleading assertions and factual challenges are improper at the motion-to-dismiss stage. Those purported contradictions have no bearing on the legal sufficiency of Plaintiffs' wiretapping claims. Based on a fair and complete reading of the Third Amended Complaint, Plaintiffs properly and plausibly have pleaded Defendant's CIPA violations under Penal Code § 631. For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion in its entirety and allow this case to proceed to discovery.

Respectfully submitted,

Dated: May 22, 2025

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*