UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

R.C., et al.,

              Plaintiffs,

       v.

SUSSEX PUBLISHERS, LLC,

              Defendant.

Case No.  24-cv-02609-JSC

**ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD CAUSE OF ACTION**

Re: Dkt. No. 57

Plaintiffs R.C. and D.G. bring this putative class action against Sussex Publishers, LLC claiming it disclosed and mishandled their private and medical information in violation of California law.  (Dkt. No. 55.)[1]  The Court previously denied in large part Defendant's motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"), but it dismissed Plaintiff's California Penal Code § 631 claim with leave to amend.  (Dkt. No. 51.)  Plaintiffs' third amended complaint ("TAC") realleges this claim and Defendant now moves to dismiss only this claim.  (Dkt. Nos. 55, 57.)  After carefully considering the arguments and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES Defendant's motion.

   **A.  Background**

Plaintiffs have sought to bring a Penal Code § 631 claim for aiding and abetting liability in every iteration of their complaint.  (Dkt. Nos. 1, 16, 36, 55.)  The Court granted Defendant's motion to dismiss the Penal Code § 631 claim in the first amended complaint ("FAC"), holding the FAC failed to sufficiently plead the "in transit" element of that claim.  (Dkt. No. 39 at 28-29.)  Plaintiffs' SAC realleged the claim, but the Court dismissed again:

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

> Plaintiffs do not plausibly allege Google views or reads the information while it is in transit; instead, they allege information is sent "to Google for processing" and later, "[o]nce Google Analytics receives, views, reads, and processes the data, it aggregates and organizes the data based on particular criteria." ([Dkt. No. 36] ¶ 43.) These allegations do not support a plausible inference Google reads the information "while the same is in transit." *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing section 631 claim when "[t]he timeline of the automatic recording and transcription is unclear.").

(Dkt. No. 51 at 13.)  Plaintiffs' TAC realleges this claim once more, and Defendant moves to dismiss on the grounds Plaintiffs still do not plausibly state a § 631 claim.

**B.  Whether Plaintiffs Plausibly Plead a CIPA § 631 Claim for Aiding and Abetting**

California Penal Code § 631 "prescribes criminal penalties for three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978).[2] Section 631 also imposes liability "on anyone who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." *Swarts v. HomeDepot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).  To adequately plead a § 631 civil aiding-and-abetting cause of action, a party must plead "an underlying predicate violation" by the aided party.  *B.K. Desert Care Network*, No. 23-cv-05021-SPG (PDx), 2024 WL 1343305, at *7 (N.D. Cal. Feb. 1, 2024). These possible predicate violations are:

> (1) when a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument,"

> (2) when a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," or

> (3) when a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."

*Yockey v. Salesforce*, 688 F. Supp. 3d 962, 970 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).

---

[2] California Penal Code section 637.2 provides a private right of action for violations of sections 631 and 632.  *See* Cal. Penal Code § 637.2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs previously conceded the first clause "does not apply to the internet, and so cannot

2    support [Plaintiffs'] claims." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024); (Dkt.

3    No. 43 at 26.)  And a party must allege one of the first two clauses to adequately plead the third.

4    *Tavernetti*, 22 Cal. 3d at 192 (holding the third clause proscribes "attempting to use or

5    communicate information obtained as a result of engaging in either of the previous two

6    activities.").  So, the issue is whether Plaintiffs plausibly plead a violation of the second clause.

7    Defendant argues Plaintiffs fails to do so because (1) Google does not intercept communications

8    while they are in transit, and (2) Google does not read the communications.

9        **1.  Communications in Transit**

10    To allege a predicate act under the second clause, a plaintiff must allege the eavesdropping

11    occurred "while the [communication] is in transit."  Cal. Penal Code § 631(a).  "'While' is the key

12    word here."  *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal.

13    2023).  "[I]nterception under the meaning of the statute must occur during transmission of the

14    communication."  *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *2

15    (N.D. Cal. June 9, 2023) (cleaned up) (collecting cases).  So, "the crucial question under §

16    631(a)'s second clause is whether [Plaintiffs] ha[ve] plausibly alleged that [Google] read one of

17    [their] communications while it was still in transit, i.e., before it reached its intended recipient."

18    *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (citing *Mireskandari v. Mail*,

19    12-cv-02943-MMM (FFMx), 2013 WL 1219559, at *10 n.44 (C.D. Cal. July 30, 2013)).

20    Here, Plaintiffs plausibly allege Google intercepted communications while they were in

21    transit to Defendant.  Namely, Plaintiffs allege Defendant's website uses the "Google Analytics

22    Javascript code" which, "while Plaintiffs and Class members were and are interacting with the

23    Psychology Today website, Google, ***concurrently and in real time***, did and does intercept, read,

24    and analyze user communications and interpret the contents of those communications for Google

25    subsequently to use for its advertising and analytics purposes."  (Dkt. No. 55 ¶ 6.)  Google

26    "markets the real-time reporting capabilities of Google Analytics and boasts that 'Realtime

27    reports' allow website hosts to 'monitor activity on your website as it happens.'"  (*Id.* ¶ 40.)  And

28    Google states "you can immediately and continuously monitor the effects that new campaigns and

3

site changes have on your traffic." (*Id.*; *see also id.* ¶ 41 (alleging the code reads user inputs in Defendant's website "while those communications are in transit to the host website.").)  Further, the code "interprets and selects, in real time, which portions of the communications Google will use for further processing and analysis." (*Id.* ¶ 42.)  Unlike in previous iterations of the complaint, Plaintiffs explain in detail how Google Analytics functions while communications are in transit:

> The initial reading, interpretation, and selection by Google Analytics code occurs while the user communication is in transit to Psychology Today and even before the user hits the "Show # Therapists" button. Importantly, the filter options chosen by the user and shared with Google not only reflect that a particular button was clicked or box was checked, but also disclose to Google, in real-time, the actual content of that button click – namely the users' sensitive medical information. The intercepted information very clearly includes the user's mental health symptoms, concerns, and need for and type of treatment sought. See Figures 7-12, showing snapshots of Google Analytics intercepting, reading, analyzing, and selecting a user's interactions and communications with Psychology Today in realtime, and then displaying within a few milliseconds the captured medical information in the Inspect Tool feature on a user's browser.

(*Id.* ¶ 60.)  The TAC further supports Plaintiffs' allegations through a demonstrative video showing how Google Analytics works.  (*Id.* ¶ 63 n.10; Dkt. No. 56.)[3]  In the video, at the same time the user clicks the "Anxiety" filter, the webpage updates the number of therapists for that filter *and* the developer tools panel shows Google Analytics captures that same information.  (Dkt. No. 56 at 1:14-15.)  The same is true when the user selects "Drug Abuse," (*id.* at 2:16-17) and LGBTQ+ (*id.* at 2:48-49).  So, although previously Plaintiffs only alleged Google Analytics viewed or read the code *after* it was sent to Defendant (Dkt. No. 51 at 13), Plaintiffs now allege interception occurred "while the same is in transit."  *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023).

    Defendant dedicates most of its moving papers to a factual dispute about how Google Analytics works, but this approach misunderstands what the Court must do under Rule 12(b)(6). Defendant cites the proper standard but emphasizes the wrong words:

    The standard governing this Court is well-settled: "To survive a

---

[3] The cited video was produced as a physical USB flash drive and is not accessible on ECF.  The drive is publicly available at the Northern District courthouse.

United States District Court
Northern District of California

motion to dismiss, a complaint must contain **sufficient factual matter**, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).

(Dkt. No. 62 at 4 (emphasis in original).)  The key language here is "accepted as true."  *Iqbal*, 556 U.S. at 678.  At the pleading stage, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  And "[i]f the Court 'goes beyond the pleadings to resolve an issue,' a [dismissal] is not appropriate and 'such a proceeding must properly be treated as a motion for summary judgment.'"  *Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*, 562 F. Supp. 3d 989, 993 (E.D. Cal. 2021) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989)).  So, the Court will not go beyond the pleadings to resolve factual disputes that are not now ripe for adjudication.

Defendant's reliance on other courts' recitations of how Google Analytics works is improper.  For example, Defendant claims certain "facts" are undisputed and cites *Brown v. Google LLC*, 685 F. Supp. 3d 909, 919 (N.D. Cal. 2023) (denying Google's motion for summary judgment), and *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1193 (N.D. Cal. 2024) (denying Google's motion to dismiss) as support.  But Defendant does not cite any law, and the Court is not aware of any, that supports Defendant's assertion that Plaintiffs are somehow bound by the summary judgment record in a case to which it was not a party (*Brown*), or the complaint allegations in another case to which it was not a party (*Smith*).  For this reason, alone, Defendant's motion fails.  The question here is whether ***Plaintiffs'*** allegations, assumed as true, plausibly satisfy the "in transit" requirement.

Defendant also requests, in a footnote, that the Court consider as incorporated by reference "Google's publicly available materials," (Dkt. No. 57 at 17 n.2.)  But none of the websites Defendant identifies are cited in the TAC.  (*Compare* Dkt. No. 55 at 26 n.11 *with* Dkt. No. 57 n.3.)  For example, Defendant asserts as an undisputed fact that "[w]hen the measurement code collects data, it packages that information up and sends it to Google Analytics to be processed into reports."  (Dkt. No. 57 at 19.) But the Google webpage it cites is not referred to in the Third

United States District Court
Northern District of California

Amended Complaint. So, Defendant has not established incorporation by reference is appropriate. And, even if the Court could consider the cited website material, the Court must draw all reasonable inferences in Plaintiffs' favor, and when doing so, the quoted language does not foreclose an inference that Google's "packaging" of the data occurs while the communication is in transit. And nothing Defendant cites requires that the interception or collection occur *after* data has been sent to Defendant.

Finally, on reply, Defendant argues Plaintiffs' video attachment proves Google Analytics' collection of data is asynchronous with data input. In so doing, Defendant asks the Court to parse the milliseconds between when data is sent to the site and when the page finally loads. (Dkt. No. 62 at 12-13.) On the face of the video, it is not undisputed that data reaches Defendant *before* it is allegedly intercepted by Google. Instead, Defendant's analysis of the video requires the Court draw inferences in its favor rather than Plaintiffs' favor; at this procedural posture, the Court may not do so.

So, Plaintiffs plausibly plead Google's interception occurs "while the [communication] is in transit." Cal. Penal Code § 631(a); *see also*, *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023) ("Whether that information was intercepted by TrustedForm before it was stored by Prudential as Plaintiffs allege, or vice versa, is a question for summary judgment.").

### 2. "Reads" Communications

To be liable under the second prong of § 631, the third-party must "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" while the same is "in transit." Cal. Penal Code § 631. "Though section 631 does not define 'read' or 'attempt to read,' courts generally conclude that liability under prong two of section 631 'requires some effort at understanding the substantive meaning of the message, report or communication.'" *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (quoting *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (analyzing the plain meaning of "read" based on dictionary definitions and prior case law)).

While Plaintiffs allege Google Analytics prepares reports with the data *after* the data has

United States District Court
Northern District of California

been stored, they also allege Google Analytics reads, interprets, and selects the data *while* it is in transit.  (Dkt. No. 55 ¶ 60.)  Plaintiffs allege that as users input information into the website, Google "interpret[s] and select[s] specified portions of the user's interactions and communications to be used for advertising and analytics, all while the transmissions are in transit to the Psychology Today website servers."  (*Id.* ¶ 63; *see also id.* ¶ 41 ("the Google Analytics JavaScript code intercepts, reads, and analyzes the substantive content of a user's interactions and communications while they are in transit to the host webpage.  The JavaScript code then interprets and selects, in real time, which portions of the communications Google will use for further processing and analysis.  The intercepted information is read by Google while the entire communication travels from the user to the host website.").)  These allegations, drawing all reasonable inferences in Plaintiffs' favor, plausibly plead Google performs "some effort at understanding the substantive meaning of the message."  *Torres*, 2025 WL 1135088, at *5 (cleaned up).

Defendants' reliance on *Torres v. Prudential* does not persuade the Court to the contrary. *Id.*  There, the court, on the summary judgment record, concluded there was no genuine dispute "[w]ebform inputs are collected and stored as a series of undeciphered 'events,' which are then provided to host websites to interpret using the ActiveProspect server."  *Id.*  Since no substantive meaning was being deciphered at the time of interception, the software's interception was not "reading" the communications under § 631.  *Id.*  Here, by contrast, Plaintiffs allege Google— while users are inputting information—"analyzes and interprets the contents of a user's transmissions in order to select what portion of the communications is further processed by Google for its analytics and advertising purposes."  (Dkt. No. 55 ¶ 41.)  This allegation plausibly supports an inference this initial real time process of selection for advertising purposes is an "effort at understanding the substantive meaning of the message, report or communication." *Torres*, 2025 WL 1135088, at *5 (cleaned up).

Defendants' further citation to *Williams* is inapposite.  There, also on summary judgment, the court held "the data [the third-party software] receives is automatically subjected to an algorithm that transforms the data into an incomprehensible 'hash' that has no inherent substantive meaning, and that [it] does not retain the original unhashed data in its servers."  *Williams*, 757 F.

Supp. 3d at 995.  Specifically, the software's process there involved automatic alteration of data, nearly instantaneously, which the court held "does not involve any attempt by [it] to understand the substantive meaning of the data."  *Id.*  By contrast, Plaintiffs here plausibly allege Google Analytics analyzes communications as they are sent, filtering data to be used for advertising purposes from that which will not.  And the Court "must accept as true all of the allegations contained in [the TAC]."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When accepting these allegations as true, the TAC pleads Google reads or attempts to read or understand the communications while the same are in transit.

In its reply brief, Defendant for the first time argues Google Analytics cannot read communications because it "does not have a brain of its own."  (Dkt. No. 62 at 10.)  Because this argument was raised for the first time on reply, the Court need not consider it.  Even so, Defendant does not cite any cases that have so held and indeed the Court is not aware of any case that squarely considered the issue.  *Cf. Ambriz v. Google, LLC*, No. 23-cv-05437-RFL, 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025) (rejecting argument that Google's software does not learn the contents of communication because, "[w]hen GCCCAI 'learns' the content of the call, that is the same as Google 'learning' it.").  Instead, courts have regularly held use of software to eavesdrop into communications is a basis for § 631 claims.  *See, e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198-99 (S.D. Cal. 2024) (holding the complaint properly alleged a § 631 claim when it alleged the "[d]efendant allows Salesforce 'to secretly intercept in real time' chat communications on the Website by 'embedd[ing]' code that 'directs [chat] communications to be routed directly to Salesforce.'"); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (holding the plaintiff properly pled a § 631 claim where "ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites, and that Active Prospect can use that information for other purposes, even if [the plaintiff] has not alleged that they have done so in this case.").

So, drawing inferences in Plaintiffs' favor, the TAC plausibly pleads Google "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication."  Cal. Penal Code § 631.

1

## CONCLUSION

Because Plaintiffs have plausibly pled Google "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication" while the same is "in transit," Defendant's motion to dismiss Plaintiffs' California Penal Code § 631 claim is DENIED.

This Order disposes of Docket No. 57.

**IT IS SO ORDERED.**

Dated: June 23, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

9