Matthew D. Pearson, SBN 294302
Matthew.Pearson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-02609-JSC<br><br>The Honorable Jacqueline Scott Corley<br><br>**MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE § 631 CLAIM**<br><br>**DATE: February 5, 2026**<br>**TIME: 10:00 A.M.**<br>**COURTROOM: 8**<br><br>Action Filed: November 30, 2023<br>Initial CMC: August 1, 2024 |

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on February 5, 2026, at 10:00 a.m. in Courtroom 8 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sussex Publishers, LLC ("Sussex") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing Plaintiffs R.C.'s and D.G.'s (collectively, "Plaintiffs") Third Cause of Action for Aiding and Abetting Unlawful Interception under California's Invasion of Privacy Act ("CIPA"), California Penal Code § 631.

This motion is made on the grounds that Plaintiffs have failed to state against Sussex a plausible claim under CIPA § 631(a) because, § 631 does not apply to Sussex, as a limited liability company.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Court's file and records in this action; and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Respectfully submitted,

Dated: December 26, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. PLAINTIFFS' ALLEGATIONS ........ 3

III. PROCEDURAL POSTURE ........ 3

IV. LEGAL STANDARD ........ 4

V. SECTION 631 DOES NOT APPLY TO SUSSEX. ........ 5

- A. The California Legislature Expressly Limited § 631(a)'s Application to "Persons." ........ 5
- B. CIPA Does Not Define "Person" As It Is Used in § 631. ........ 5
- C. There Are Two Potential Interpretations of Person, Neither of Which Incudes Sussex. ........ 6
  - 1. Interpretation No. 1: The Plain Meaning of Person. ........ 7
  - 2. Interpretation No. 2: Penal Code § 7's Definition of "Person." ........ 12
- D. The Court Cannot Rewrite § 631(a). ........ 17
- E. Any Interpretation by the Court Must Comply with the Rule of Lenity ........ 18

VI. CONCLUSION. ........ 20

## TABLE OF AUTHORITIES

**Cases** **Page**

*Aguilar v. Hartford Accident & Indem. Co.*,
No. CV 18-8123-R, 2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ........ 5

*Aguilar v. Lumenis*,
2004 Cal. App. Unpub. LEXIS 8246 (Sep. 9, 2004) ........ 17

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
933 F.3d 1088 (9th Cir. 2019) ........ 7

*Conohan v. Rad Power Bikes Inc.,*
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ........ 17

*Crandon v. United States*,
494 U.S. 152 (1990) ........ 19

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 2, 8, 19

*Esebag v. Whaley*,
No. LA CV18-08446 JAK (RAOX), 2023 WL 12007143 (C.D. Cal. Apr. 27, 2023), *aff'd*, No. 23-55440, 2024 WL 1635555 (9th Cir. Apr. 16, 2024) ........ 9

*Fourstar v. Garden City Grp., Inc.*,
875 F.3d 1147 (D.C. Cir. 2017) ........ 2, 17

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 18

*GovernmentGPT Inc. v. Axon Enter. Inc.*,
769 F. Supp. 3d 959 (D. Ariz. 2025) ........ 16

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 17

*Harris v. Harris*,
935 F.3d 670 (9th Cir. 2019) ........ 2, 17

*Ion Equip. Corp. v. Nelson*,
110 Cal. App. 3d 868 (Ct. App. 1980) ........ 10, 11

*Marshall v. MUPU Citrus Ass'n*,
No. 78-1072-HP, 1978 WL 1699 (C.D. Cal. Aug. 30, 1978) ........ 9

*Memory Integrity, LLC v. Intel Corp.*,
144 F. Supp. 3d 1185 (D. Or. 2015) ........ 4

*Ontiveros v. Constable*,
27 Cal. App. 5th 259 (2018) ........ 12

*People v. Mills*,
6 Cal. App. 4th 1278 (1992), modified (June 19, 1992) ........ 5

*People v. Nuckles,*
56 Cal. 4th 601 (Cal. 2013) ........ 18

*People v. Pac. Landmark, LLC*,
129 Cal. App. 4th 1203 (2005) ........ 12

*People v. Reynoza*,
15 Cal. 5th 982 (Cal. 2024) ........ 18

*Peters v. CJK Assocs., LLC,*
No. CIV.S 03 1388 LKK/KJ, 2003 WL 24205920 (E.D. Cal. Oct. 29, 2003) ........ 17

*Phelps v. Wellpath Mgmt., Inc.*,
641 F. Supp. 3d 966 (D. Or. 2022) ........ 17

*Radio Music License Comm., Inc. v. Glob. Music Rts., LLC,*
No. CV 16-6076, 2017 WL 8682117 (E.D. Pa. Nov. 29, 2017), *report and recommendation adopted*, No. CV 16-6076, 2019 WL 1437981 (E.D. Pa. Mar. 29, 2019) ........ 16

*Reilly v. Wozniak*,
No. CV-18-03775-PHX-MTL, 2020 WL 1033156 (D. Ariz. Mar. 3, 2020) ........ 4

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ........ 7

*Schlegel v. Wells Fargo Bank, NA*,
720 F.3d 1204 (9th Cir. 2013) ........ 5

*Serino v. Payday California, Inc.,*
No. CV0705029VBFFFMX, 2008 WL 11411407 (C.D. Cal. Dec. 12, 2008) ........ 16

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 12, 17

*Sprint Tel. PCS, L.P. v. Cty. of San Diego*,
No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) ........ 4

*Sprint Telephony PCS, L.P. v. Cty. of San Diego*,
311 F. Supp. 2d 898 (S.D. Cal. 2004) ........ 4

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 8

*Trim v. Reward Zone USA LLC,*
76 F.4th 1157 (9th Cir. 2023) ........ 7

*Tulelake Irrigation Dist. v. United States Fish & Wildlife Serv.,*
40 F.4th 930 (9th Cir. 2022) ........ 14

*United States v. Balint*,
201 F.3d 928 (7th Cir. 2000) ........ 19

*United States v. Burnside*,
831 F.2d 868 (9th Cir. 1987) ........ 7

*United States v. Cox,*
963 F.3d 915 (9th Cir. 2020) ........ 7

*United States v. Devorkin*,
159 F.3d 465 (9th Cir. 1998) ........ 19

*United States v. Gonzalez-Mendez*,
150 F.3d 1058 (9th Cir. 1998) .......... 19

*United States v. Havelock*,
664 F.3d 1284 (9th Cir. 2012) .......... 9, 10

*United States v. Kozminski*,
487 U.S. 931 (1988) .......... 18

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 18

*United States v. Ritchie*,
342 F.3d 903 (9th Cir.2003) .......... 4

*United States v. Santos*,
553 U.S. 507 (2008) .......... 2

*United States v. Simpson*
319 F.3d 81 (2d Cir. 2002) .......... 18

*United States v. Thompson/Ctr. Arms Co.*,
504 U.S. 505 (1992) .......... 18

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG (AGRX), 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 2

*Washington v. United States Dep't of State,*
996 F.3d 552 (9th Cir. 2021) .......... 6

*Wells v. One2One Learning Found.,*
39 Cal. 4th 1164 (2006), as modified (Oct. 25, 2006) .......... 14

*Wheeler v. City of Santa Clara*,
894 F.3d 1046 (9th Cir. 2018) .......... 9

*Wisconsin Cent. Ltd v. United States*,
585 U.S. 274 (2018) .......... 7

*World Skating Fed'n v. Int'l Skating Union*,
357 F. Supp. 2d 661 (S.D.N.Y. 2005) .......... 16

*Young v. McCoy,*
147 Cal. App. 4th 1078 (2007) .......... 14

*Yucesoy v. Uber Techs., Inc.*,
No. 15-CV-00262-EMC, 2015 WL 6955140 (N.D. Cal. Nov. 10, 2015) .......... 15

**STATUTES**

15 U.S.C. § 12 .......... 15, 16

15 U.S.C. § 1692f .......... 5

15 U.S.C. § 22 .......... 15, 16

18 U.S.C. § 2518(7)(a)(i) .......... 9

Cal. Civ. Code § 52(a) ..... 17
Cal. Civ. Code § 56.10(a) ..... 5

**RULES**

Fed. R. Civ. P. 12(b)(6) ..... 2, 4

**CODES**

Cal. Pen. Code § 7 ..... 2, 12, 14, 16
Cal. Pen. Code § 11207 ..... 14
Cal. Pen. Code § 11234 ..... 14
Cal. Pen. Code § 1170(h) ..... 5, 18
Cal. Pen. Code § 12277 ..... 14
Cal. Pen. Code § 311(c) ..... 13
Cal. Pen. Code § 368(c)(1) ..... 16
Cal. Pen. Code § 374.2(b) ..... 13
Cal. Pen. Code § 498(a)(1) ..... 13
Cal. Pen. Code § 574(f) ..... 13
Cal. Pen. Code § 631 ..... 2, 1, 2, 5, 6, 7, 11, 12, 18, 20
Cal. Pen. Code § 631(a) ..... 3, 5, 6, 7, 8, 10, 12, 16, 17, 18, 19
Cal. Pen. Code § 631(c) ..... 5
Cal. Pen. Code § 632 ..... 11
Cal. Pen. Code § 632(b) ..... 6, 12, 13, 16
Cal. Pen. Code § 633.1(a) ..... 8
Cal. Pen. Code § 633.8(a) ..... 9
Cal. Pen. Code § 633.8(g) ..... 10
Cal. Pen. Code § 637.2 ..... 11
Cal. Pen. Code § 637.3(a) ..... 10, 16
Cal. Pen. Code § 637.5(f)(3) ..... 6, 12, 13, 16
Cal. Pen. Code § 637.7(a) ..... 10, 16
Cal. Pen. Code § 638(c)(1) ..... 6, 12, 13
Cal. Pen. Code § 638.51 ..... 6
Cal. Pen. Code § 639 ..... 13
Cal. Pen. Code § 653.56(c) ..... 14

Cal. Pen. Code § 653h(e) .......... 13

Cal. Pen. Code § 7(a)(1) .......... 2, 12

**OTHER AUTHORITIES**

CA LEGIS 72 (2024), 2024 Cal. Legis. Serv. Ch. 72 (S.B. 156) .......... 15

Consent and Voluntary, Black's Law Dictionary (11th ed. 2019) .......... 7

ENTITY, Black's Law Dictionary (12th ed. 2024) .......... 10

LEGAL ENTITIES—LIMITED PARTNERSHIPS, LIMITED LIABILITY COMPANIES, AND PROFESSIONAL CORPORATIONS, 1994 Cal. Legis. Serv. Ch. 1010 (S.B. 2053) .......... 13

MARRIAGE—DOMESTIC PARTNERSHIP, 2016 Cal. Legis. Serv. Ch. 50 (S.B. 1005) .......... 15

Mass. Gen. Laws ch. 149, § 148 .......... 15

PERSON, Black's Law Dictionary (5th ed. 1979) .......... 7

PERSON, Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/person (last visited: September 25, 2025) .......... 8

PERSON, Oxford English Dictionary, available at: https://www.oed.com/search/dictionary/?scope=Entries&q=Person+ (last visited: September 25, 2025) .......... 8

Voice, n.," Oxford English Dictionary, https://www.oed.com/dictionary/voice_n .......... 7

Webster's Ninth New Collegiate Dictionary .......... 7

## I. INTRODUCTION

California's wiretapping statute—California Invasion of Privacy Act ("CIPA"), Penal Code § 631(a)—reads, in full:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170. If the person has previously been convicted of a violation of this section or Section 632, 632.5, 632.6, 632.7, or 636, the offense is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

Cal. Pen. Code § 631(a).

Parties and courts alike have spent pages upon pages trying to interpret what conduct § 631(a) actually regulates, especially as applied to the internet. Indeed, as recently as October 2025, Judge Chhabria finally thew up his hands, stating:

> The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute.

*Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025).

But even in trying to untangle the statutory "mess" that is § 631(a), one crucial question has gone unanswered: to whom does § 631(a) apply?

Section 631 makes liable "[a]ny ***person***" who engages in one of four prohibited activities: "[1] wiretapping. [2] eavesdropping. [3] using information obtained by wiretapping or eavesdropping, and [4] aiding and abetting conduct that otherwise violates Section 631(a)." *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRX), 2024 WL 1336959, at *2 n. 3 (C.D. Cal. Mar. 28, 2024). Section 631 does not define "person," *see* Cal. Pen. Code § 631, and CIPA provides no generally applicable definition, *see id.* at § 630, *et seq*. Therefore, the Court has two options. It can either (1) apply the "ordinary meaning" of person at the time § 631 was enacted or (2) apply the definition of "person" in § 7 of the Penal Code. Either way, though, § 631 does not apply to Sussex Publishers, LLC ("Sussex").

The "ordinary meaning" (i.e, dictionary definition) of "person" at the time § 631 was enacted was "human being," and it still is today. Sussex is clearly not a "human being."

The definition of "person" in § 7 of the California Penal Code, which was enacted in 1872 and which is titled "Words and phrases," "includes a corporation as well as a natural person." Cal. Pen. Code § 7(a)(1). As a limited liability company, Sussex is not a corporation, either.

What the Court cannot do is rewrite § 631. As the Ninth Circuit has explained, the Court "must apply the statute as written,'" not "add to or otherwise re-mold statutory text to try to meet a statute's perceived policy objectives." *Harris v. Harris*, 935 F.3d 670, 674 (9th Cir. 2019) (quoting *Fourstar v. Garden City Grp., Inc.*, 875 F.3d 1147, 1152 (D.C. Cir. 2017)). On top of that, even if the Court were to engage in otherwise impermissible redrafting, the rule of lenity makes clear that any interpretation of § 631 adopted by the Court must be "in favor of the defendants subjected to [it]." *United States v. Santos*, 553 U.S. 507, 514 (2008). The only interpretation "in favor" of Sussex is the interpretation that § 631 does not apply to Sussex.

Ultimately, regardless of the definition the Court adopts, one thing is clear: § 631(a) does not apply to Sussex. Plaintiffs' § 631 claim must be dismissed.

## II. PLAINTIFFS' ALLEGATIONS

For purposes of this Motion, only two of Plaintiffs' allegations are relevant. First, Plaintiffs assert against Sussex a claim for violation of California Penal Code § 631(a). [*See* Dkt. No. 55, THIRD CAUSE OF ACTION, Aiding and Abetting Unlawful Interception (Violations of California Penal Code § 631).] Second, Plaintiffs admit that Sussex "is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York." [*Id*. at ¶ 25.]

## III. PROCEDURAL POSTURE

Plaintiffs filed their Complaint on November 30, 2023 in the Superior Court of California, County of Alameda. [Dkt. No. 1-1.] Sussex timely removed the case to this Court on May 1, 2024. [Dkt. No. 1.]

Following removal, Sussex filed on July 22, 2024 its Motion to Dismiss the Complaint. [Dkt. No. 14.] In lieu of opposing the Motion to Dismiss, on August 12, 2024, Plaintiffs filed their First Amended Complaint. [Dkt. No. 16.]

On August 26, 2024, Sussex filed its Motion to Dismiss the First Amended Complaint. [Dkt. No. 20.] On October 10, 2024, the Court held a hearing on Sussex's Motion to Dismiss the First Amended Complaint. [Dkt. No. 33.] The Court neither granted nor denied the Motion to Dismiss but, instead, provided Plaintiffs leave to file their Second Amended Complaint by October 31, 2025. [*Id.*]

On October 31, 2024, Plaintiffs filed their Second Amended Complaint. [Dkt. No. 37.] On December 10, 2024, Defendant filed its Motion to Dismiss the Second Amended Complaint. [Dkt. No. 42.] On February 27, 2025, the Court held a hearing on Defendant's Motion to Dismiss the Second Amended Complaint. [Dkt. No. 48.] Following the hearing, the Court took the Motion to Dismiss under submission and ordered that, on or before March 7, 2025, Plaintiffs notify the Court whether they would stipulate to remand the case to state court. [*Id.*] On March 28, 2025, the Court

issued its opinion on Defendant's Motion to Dismiss the Second Amended Complaint, dismissing, with leave to amend, Plaintiffs' § 631 claim. [Dkt. No. 51.]

On April 24, 2025, Plaintiffs filed their Third Amended Complaint. [Dkt. No. 55.] On May 8, 2025, Defendant filed its Motion to Dismiss the Third Amended Complaint. [Dkt. No. 57.] On June 23, 2025, the Court issued an order denying Defendant's Motion to Dismiss the Third Amended Complaint. [Dkt. No. 63.] And on July 11, 2025, Defendant filed its Answer to the Third Amended Complaint. [Dkt. No. 66.]

## IV. LEGAL STANDARD

"Motions to dismiss and motions for judgment on the pleadings differ in only two respects: '(1) the timing (a motion for judgment on the pleadings is usually brought after an answer has been filed, whereas a motion to dismiss is typically brought before an answer is filed), and (2) the party bringing the motion (a motion to dismiss may be brought only by the party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought by any party).'" *Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2020 WL 1033156, at *2 n. 4 (D. Ariz. Mar. 3, 2020) (quoting *Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 311 F. Supp. 2d 898, 902–03 (S.D. Cal. 2004), opinion clarified *sub nom. Sprint Tel. PCS, L.P. v. Cty. of San Diego*, No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) (internal citation omitted)).

In deciding a motion for judgment on the pleadings, the Court applies "the same test" it would apply to a "motion under Rule 12(b)(6)." *Memory Integrity, LLC v. Intel Corp*., 144 F. Supp. 3d 1185, 1187 (D. Or. 2015). The Court "must draw all reasonable inferences in favor of the non-moving party and accept all well-pleaded material facts as true," but that "presumption of truth…does not extend to legal conclusions couched as factual allegations." *Id.* As with a motion to dismiss, the court's consideration is generally limited to the allegations in the complaint, except that the Court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion...into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).

Where, as here, the motion is based entirely on the interpretation of a statute, the motion is well-suited for resolution on the pleadings.

## V. SECTION 631 DOES NOT APPLY TO SUSSEX.

### A. The California Legislature Expressly Limited § 631(a)'s Application to "Persons."

Legislatures can and frequently do limit the parties to which a particular statute applies. *People v. Mills*, 6 Cal. App. 4th 1278, 1287 (1992), modified (June 19, 1992) ("[L]ong settled principles allow the legislature to limit the application of laws to a uniform class of persons…."). For example, the Fair Debt Collection Practices Act, which reads, in part, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt,"15 U.S.C. § 1692f, has been held to "apply only to 'debt collector[s]' as defined by the FDCPA," *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013). Likewise, the California Medical Information Act, which states that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient," Cal. Civ. Code § 56.10(a), has been held to apply only to "provider[s] of health care," "health care service plan[s]" or "contractor[s]", as those terms are defined by the statute, *see Aguilar v. Hartford Accident & Indem. Co*., No. CV 18-8123-R, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019).

Here, the California Legislature expressly limited § 631(a)'s application to "person[s]." *See* Cal. Pen. Code § 631(a) ("Any ***person*** who…[violates § 631(a)] is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170." (emphasis added)). The question is: who is a "person" under the statute?

### B. CIPA Does Not Define "Person" As It Is Used in § 631.

Despite defining certain terms, § 631 does not define "person." *See* Cal. Pen. Code § 631(c) (defining "telephone company" for the "purposes of this ***section***" (emphasis added)). The same is true of CIPA as a whole. While some terms are defined for purposes of CIPA generally, "person"

is not one of them. *See* Cal. Pen. Code § 638.51 (defining "wire communication," "electronic communication," "pen register," "trap and trace device," and "prohibited violation" "[f]or purposes of this ***chapter***" (emphasis added).).

That is not to say that CIPA does not include ***any*** definitions of "person." In fact, the California Legislature defined the term "person" in three different CIPA sections, each time for the purpose of that section only and each time in a slightly different manner.

| CIPA Section | Definition of "Person" |
|---|---|
| § 632(b) | For the purposes of this section, "person" means an individual, business association, partnership, corporation, limited liability company, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication. |
| § 637.5(f)(3) | As used in this section:…"Person" includes an individual, business association, partnership, corporation, limited liability company, or other legal entity, and an individual acting or purporting to act for or on behalf of any government, or subdivision thereof, whether federal, state, or local. |
| § 638(c)(1) | For purposes of this section:…"Person" includes an individual, business association, partnership, limited partnership, corporation, limited liability company, or other legal entity. |

Under the principle of *expressio unius est exclusio alterius*, therefore, the Court must conclude that the California Legislature deliberately left undefined the term "person" as it is used in § 631. *Washington v. United States Dep't of State,* 996 F.3d 552, 562 (9th Cir. 2021) (agreeing generally "that all omissions from a statute should be understood as intentional exclusions").

### C. There Are Two Potential Interpretations of Person, Neither of Which Incudes Sussex.

Faced with a term undefined by the statute in which it is found, courts have two options. They can look to the "plain meaning" of the term at the time the statute was enacted. Or they can look elsewhere within the broader code for a generally applicable definition. Regardless of the approach the Court chooses here, the answer is the same: § 631(a) does not apply to Sussex.

**1. Interpretation No. 1: The Plain Meaning of Person.**

"When a statute does not define a term, [courts] typically give the phrase its ordinary meaning." *Animal Legal Def. Fund v. United States Dep't of Agric*., 933 F.3d 1088, 1093 (9th Cir. 2019). The "ordinary meaning" of a term is the term's commonly held understanding at the time the statute was enacted. *Rittmann v. Amazon.com, Inc*., 971 F.3d 904, 910 (9th Cir. 2020) ("To ascertain the plain meaning of the statutory text, we look to the ordinary meaning at the time Congress enacted the statute." (internal quotations omitted)); *see also Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 277 (2018) ("[O]ur job is to interpret the words consistent with their 'ordinary meaning...at the time Congress enacted the statute.'").

The Ninth Circuit routinely consults both legal and non-legal dictionaries in determining the "ordinary meaning" of a word. *See, e.g., United States v. Cox,* 963 F.3d 915, 920 (9th Cir. 2020) ("To determine ordinary meaning, we consider dictionary definitions."); *United States v. Burnside*, 831 F.2d 868, 871 (9th Cir. 1987) (citing to Black's Law Dictionary for the "ordinary meanings" of "consent" and "voluntary"); *Trim v. Reward Zone USA LLC,* 76 F.4th 1157, 1162 (9th Cir. 2023) (citing to the Oxford English Dictionary and Webster's Ninth New Collegiate Dictionary for the "ordinary meaning of 'voice'").

Section 631 was enacted in 1988. Black's Law Dictionary in effect in 1988 states as follows: "***Person*** In general usage, a human being (i.e. natural person), though ***by statute*** term may include a firm, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers. National Labor Relations Act, § 2(1)." PERSON, Black's Law Dictionary (5th ed. 1979) (emphasis added). Put simply, Black's Law Dictionary in effect at the time the California Legislature enacted § 631 not only provided the "ordinary meaning" of the term person (i.e., a "human being") but also explained that if the California Legislature wanted the term "person" to include legal entities, it needed to do so "by statute." Despite this admonition, § 631(a) includes no definition of "person."

Even outside the legal field, "person" is defined as a "human being" and not a legal entity. *See, e.g.,* PERSON, Oxford English Dictionary, available at:

https://www.oed.com/search/dictionary/?scope=Entries&q=Person+ (last visited: September 25, 2025); PERSON, Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/person (last visited: September 25, 2025).

Therefore, under the "ordinary meaning" of person, § 631 only prevents ***human beings*** from engaging in unconsented-to wiretapping, eavesdropping, using information obtained by wiretapping or eavesdropping, aiding and abetting conduct that otherwise violates § 631(a).

Plaintiffs' own description of their theory confirms this reading. During oral argument in a prior proceeding, Plaintiffs expressly acknowledged that they are "*not alleging that the information is being read by* ***a human****.*" (Oct. 10, 2025 Tr. at 12:14–15.) Because § 631(a) applies only to conduct by a "person," and the statute uses that term in its ordinary sense, Plaintiffs' express disavowal of any allegation of human interception necessarily places their claim outside the scope of § 631(a).

Interpreting "person" to mean "human being" is consistent with both CIPA and the Penal Code generally. For example, § 631(a) makes it unlawful for "any person…[to] read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit…" Cal. Pen. Code § 631(a). In discussing this provision's application to legal entities, Judge Chhabria stated that "it's virtually impossible to understand what Section 631(a) actually means[.]" *Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6. Even Judge Breyer repeatedly referenced humans, and not legal entities, when discussing the "read, attempted to read, or learned" requirement in *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025). Specifically, Judge Breyer stated that even if "[defendant's] ***employees*** with 'superuser access' can later access these communications and even testify to their contents,…there is no evidence in the record that ***those employees (or others)*** access communications while they are in transit." *Id.* at *5 (emphasis added).

Additionally, CIPA includes numerous provisions (1) that include no definition of "person" and (2) that only make sense if "person" is interpreted as "human being." For example, § 633.1(a) provides that "[n]othing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits any ***person regularly***

***employed as an airport law enforcement officer***…acting within the scope of ***his or her*** authority, from recording any communication which is received on an incoming telephone line, for which the person initiating the call utilized a telephone number known to the public to be a means of contacting airport law enforcement officers." (emphasis added). The inclusion of the gendered pronouns "his or her" is only consistent with the interpretation of "person" as a human being and not as a business or legal entity. *Marshall v. MUPU Citrus Ass'n*, No. 78-1072-HP, 1978 WL 1699, at *3 (C.D. Cal. Aug. 30, 1978) ("The word 'his' found in the [statute] is a personal pronoun that refers to an individual."); *Esebag v. Whaley*, No. LA CV18-08446 JAK (RAOX), 2023 WL 12007143, at *15 (C.D. Cal. Apr. 27, 2023), *aff'd*, No. 23-55440, 2024 WL 1635555 (9th Cir. Apr. 16, 2024) (finding that use of "the pronoun 'it,' rather than 'he' or 'they,'" indicates an intent to reference an entity, as opposed to individuals). Further, that these gendered pronouns are included in the alternative—"his or her"—forecloses the possibility that the legislature intended person to mean a business. Businesses are neither male nor female, and under the doctrine of *expressio unius est exclusio alterius*, the Court must assume the California Legislature's omission of the pronoun "its" was intentional. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) ("[T]he doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." (internal quotations omitted)).

Another example: § 633.8(a) allows "a designated peace officer…[to] use, or authorize the use of, an electronic amplifying or recording device to eavesdrop on or record, or both, any oral communication within a particular location in response to an emergency situation involving the taking of a hostage or hostages or the barricading of a location if all of the following conditions are satisfied:…(1) The officer reasonably determines that an emergency situation exists involving ***the immediate danger of death or serious physical injury to any person***, within the meaning of Section 2518(7)(a)(i) of Title 18 of the United States Code."(emphasis added). Businesses and legal entities are rarely, if ever, described as being in "immediate danger of death or serious physical injury." *United States v. Havelock*, 664 F.3d 1284, 1291 (9th Cir. 2012) (interpreting "person" as used in

18 U.S.C. § 876(c) to mean "human" because "[i]t simply makes no sense to threaten to kidnap a corporation, or injure 'the person' of a corporation, or talk about a deceased corporation").

Also, section § 633.8(g) states that "'barricading' occurs when ***a person*** refuses to come out from a covered or enclosed position" or "when ***a person*** is held against his or her will and the captor has not made a demand." (emphasis added). Businesses do not refuse to come out from an enclosed position, nor are they held against their will. *See Havelock*, 664 F.3d at 1291. Put simply, the only way to harmonize CIPA generally is to interpret "person" as it was intended to be interpreted: as a human being.

Sections 637.3(a) and 637.7(a) provide further proof that the Legislature intended § 631(a) not to apply to legal entities. Section 637.3(a) reads: "No person ***or entity*** in this state shall use any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation." (emphasis added). The same is true for § 637.7(a), which prohibits any "person ***or entity*** in this state…[from] us[ing] an electronic tracking device to determine the location or movement of a person." (emphasis added).

The distinction between "person" and "entity" is clear when "person" is interpreted as "human being." An "entity" is "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners." ENTITY, Black's Law Dictionary (12th ed. 2024). Put another way, an "entity" is not a "human being." It, therefore, makes sense why the Legislature would choose to include both "persons" and "entities" in §§ 637.3(a) and 637.7(a). That rationale would quickly erode (and §§ 637.3(a) and 637.7(a) would become far less clear) if the Court were to assign a more expansive definition to "person."

Finally, the only court of which Sussex is aware that has considered the definition of "person" as that term is used in CIPA has suggested that unless "person" is expressly defined by the statutory section in question, "person" means "human being." In *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868 (Ct. App. 1980), a corporation filed a complaint against a former employee,

alleging that the former employee violated § 632 by recording a telephone call with another employee without the corporation's consent. *Id.* at 875. The trial court dismissed the claim, finding that CIPA does not permit corporations to institute civil actions for alleged violations. *Id.* The corporation appealed, and the Court of Appeal reversed, finding that "[a]lthough a corporation cannot bring a cause of action for common law invasion of privacy, we agree with appellant that a corporation may bring an action pursuant to Penal Code sections 632 and 637.2." *Id.* at 879.

In reaching this opinion, the Court of Appeal made clear why Plaintiffs' claim here must be dismissed. First, the Court of Appeal acknowledged that CIPA provides no globally applicable definition of "person." *Id.* at 880 ("Section 637.2 does not define ['person'] in the context of who may bring an action for such offenses but merely states that 'any person' may do so."). Second, the Court of Appeal noted that certain sections of CIPA—including § 632—do "define[] the term 'person' to include corporations[.]" *Id.* And third, the Court of Appeal found that the "purpose" of CIPA "could be easily circumvented" if, despite § 632 arguably making it unlawful to record the confidential communications of a corporation without its consent, CIPA's private-right-of-action was interpreted to deny those corporations the right to bring suit. *Id.* As the Court of Appeal put it, "[s]ince a corporation is considered a 'person' which may be held liable for invasion of privacy ***pursuant to Penal Code section 632***, ***subdivision (a)***, we believe the Legislature intended the words 'any person' stated in section 637.2, subdivision (a), to include corporations as well." *Id.* (emphasis added).

The opposite is true here. Plaintiff is not merely asking this Court to interpret CIPA's private right of action in a manner that allows him to effectuate his rights. He is asking this Court to interpret § 631 in a manner that gives him rights the California Legislature did not intend for him to have. Thus, unlike in *Ion*, where interpreting "person" in § 637.2 to include businesses was the only way to effectuate the Legislature's clear intent in enacting § 632, here, interpreting "person" in § 631 to include businesses actually contradicts the Legislature's intent and creates both civil and criminal liability where none was intended.

The Court cannot disregard the contextual evidence that the California Legislature did not intend § 631 to apply to businesses, nor can it supplant the Legislature's judgment with its own. *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932-933 (N.D. Cal. 2024) ("The Court's task is to interpret the law as the Legislature wrote it. The pen register statute…reflects the Legislature's judgment…[T]he question of whether the statute's scope should be [broadened] ultimately rests with the Legislature, not the courts.").

Section 631 does not apply to Sussex. Plaintiffs' § 631 claim should be dismissed.

**2. Interpretation No. 2: Penal Code § 7's Definition of "Person."**

Although CIPA does not include a generally applicable definition of "person," California's Penal Code arguably does. Section 7, which was enacted in 1872 and which is titled "Words and phrases," states that "'[p]erson' includes a corporation as well as a natural person." Cal. Pen. Code § 7(a)(1). Therefore, under this definition, § 631(a) prohibitions would apply not only to human beings but also to "corporations." Sussex, however, is not a "corporation."

Under California law, "limited liability companies," like Sussex, "are not corporations." *Ontiveros v. Constable*, 27 Cal. App. 5th 259, 273 (2018). "A limited liability company is a hybrid business entity formed under the Corporations Code...[which] provides members with limited liability to the same extent enjoyed by corporate shareholders [Citation], while maintaining the attributes of a partnership for federal income tax purposes." *People v. Pac. Landmark, LLC*, 129 Cal. App. 4th 1203, 1211–12 (2005) (internal quotations and citations omitted).

The California Legislature was not ignorant of this distinction. In each of the CIPA sections in which the California Legislature defined "person," it included both "corporations" ***and*** "limited liability companies." Cal. Pen. Code §§ 632(b), 637.5(f)(3), and 638(c)(1). In fact, when amending the definitions of "person" in §§ 632(b), 637.5(f)(3), and 638(c)(1) to add limited liability companies, the California Legislature expressly admitted that limited liability companies were not otherwise included in the definitions. *See Pac. Landmark, LLC*, 129 Cal. App. 4th 1203, 1211 (2005). *See also* LEGAL ENTITIES—LIMITED PARTNERSHIPS, LIMITED LIABILITY COMPANIES, AND PROFESSIONAL CORPORATIONS, 1994 Cal. Legis. Serv. Ch. 1010 (S.B.

2053) (stating in the Legislative Counsel's Digest that the amendments would "[i]nclude limited liability companies within the definition of person in numerous statutory provisions"). Further, the Legislature did not amend just §§ 632(b), 637.5(f)(3), and 638(c)(1); it amended the Penal Code 11 times, in each instance adding "limited liability companies" to the definition of "person."

| Penal Code Section | Definition of "Person" with Additions Added Through Amendment in Bold |
|---|---|
| 311(c) | "Person" means any individual, partnership, firm, association, corporation, **limited liability company**, or other legal entity. |
| 374.2(b) | For the purposes of this section "person" means an individual, trust, firm, partnership, joint stock company, **limited liability company**, or corporation, and "deposited in commercial quantities" refers to any substance deposited or otherwise discharged in any amount greater than for normal domestic sewer use. |
| 498(a)(1) | "Person" means any individual, or any partnership, firm, association, corporation, **limited liability company**, or other legal entity. |
| 574(f) | "Person" means an individual, company, firm, association, partnership, trust, corporation, **limited liability company**, or other legal entity. |
| 639 | As used in this section and Section 639a the word "person" includes any person, firm, partnership, association, corporation, **limited liability company**, company, syndicate, estate, trust, business trust, or organization of any kind. |
| 653h(e) | As used in this section, "person" means any individual, partnership, partnership's member or employee, corporation, **limited liability company**, association or corporation or association employee, officer or director; "owner" means the person who owns the original master recording embodied in the master phonograph record, master disc, master tape, master film or other article used for reproducing recorded sounds on phonograph records, discs, tapes, films or other articles on which sound is or can be recorded, and from which the transferred recorded sounds are directly or indirectly derived; and "master recording" means the original fixation of sounds upon a recording from which copies can be made. |

| Penal Code Section | Definition of "Person" with Additions Added Through Amendment in Bold |
|---|---|
| 653.56(c) | "Person" means any individual, firm, partnership, corporation, **limited liability company**, association, other organization, or any employee or agent thereof. |
| 11207 | "Person," as used in this article, means individuals, corporations, associations, partnerships, **limited liability companies**, trustees, lessees, agents and assignees. |
| 11234 | "Person" as used in this article means individuals, corporations, associations, partnerships, **limited liability companies**, trustees, lessees, agents and assignees. |
| 12277 | As used in this chapter, "person" means an individual, partnership, corporation, **limited liability company**, association, or any other group or entity, regardless of how it was created. |

Had the Legislature believed that limited liability companies were, in fact, corporations, its addition of "limited liability companies" to the definitions of "persons" would have been wholly unnecessary and superfluous. Therefore, were this Court to interpret "corporations" as including "limited liability companies," it would be rendering terms of these statutes superfluous, which this Court cannot do. *See, e.g., Tulelake Irrigation Dist. v. United States Fish & Wildlife Serv.,* 40 F.4th 930, 936 (9th Cir. 2022) ("When construing a statute, courts should avoid any statutory interpretation that renders any section superfluous." (internal quotations omitted)); *Wells v. One2One Learning Found.,* 39 Cal. 4th 1164, 1207 (2006), as modified (Oct. 25, 2006) ("[I]nterpretations which render any part of a statute superfluous are to be avoided.")*; Young v. McCoy,* 147 Cal. App. 4th 1078, 1084 (2007) ("To interpret the statute as Richard would have us do would render the clause concerning the trustee's discretion mere surplusage. This we may not do.").

On top of that, despite the California legislature amending the Penal Code at least 14 times in 1994 to add limited liability companies to the definitions of "person," it did not amend § 7 then, nor did it amend § 7's definition of "person" in 2016 when it added to § 7 a definition of "spouse,"

MARRIAGE—DOMESTIC PARTNERSHIP, 2016 Cal. Legis. Serv. Ch. 50 (S.B. 1005), or in 2024 when it reorganized § 7, including making the definition of "person" a stand-alone subsection, CA LEGIS 72 (2024), 2024 Cal. Legis. Serv. Ch. 72 (S.B. 156).

The Northern District of California was faced with a similar situation when considering the application of Massachusetts' "Tip Law" in *Yucesoy v. Uber Techs., Inc.*, No. 15-CV-00262-EMC, 2015 WL 6955140 (N.D. Cal. Nov. 10, 2015). There, the plaintiffs brought suit against the president and vice president of Uber, claiming that each could be held individually liable under the Tip Law. *Id.* at *1270. The plaintiffs argued that because the Tip Law defined "employer" as "any person or entity having employees in its service, including an owner or officer of an establishment employing...service employees...or any person whose primary responsibility is the management or supervision of...service employees" and because the two individual defendants were "officers" of Uber, the individuals could be held liable. *Id.* at 1270-71.

The Northern District of California disagreed, adopting a narrow definition of "establishment." According to the Court, "when the Massachusetts Legislature intended to impose individual liability more broadly on corporate officers (as opposed to the owners or officers of an 'establishment') it knew how to do so—as noted above, section 148 of the Wage Act provides for liability for officers of a 'corporation' rather than an 'establishment.'" *Id.* at 1273. In other words, the court could not ignore the fact that, despite having drafted other, related statutes to clearly impose liability on certain defendants, the legislature affirmatively chose not to do so in the statute in question. The same is true here.

Courts have reached a similar conclusion when analyzing § 12 of the Clayton Act. It reads: "[a]ny suit, action, or proceeding under the antitrust laws ***against a corporation*** may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22 (emphasis added). Plaintiffs have argued that in using the word "corporation," the legislature clearly meant business entity, which would necessarily include a limited liability company. Courts have almost universally disagreed.

For example, the Southern District of New York in *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661 (S.D.N.Y. 2005), rejected the plaintiff's argument that a foreign association should be considered a "corporation" for purposes of the Clayton Act due to it having attributes similar to a corporation. *Id.* at 664. As the court explained, "Plaintiff's argument is meritless;" "Section 12 as written, and as interpreted, does not apply to entities that simply share common attributes with corporations. It applies only to corporations." *Id.*

The rationale in *World Skating Fed'n* has been applied with equal force and effect to limited liability companies. As the District of Arizona in *GovernmentGPT Inc. v. Axon Enter. Inc.*, 769 F. Supp. 3d 959 (D. Ariz. 2025), explained, "[b]ased upon the statute's plain language, and the supporting persuasive case law, there is no question that Section 12 does not apply to [the LLC defendant]. As an LLC, and not a corporation, it is not subject to the jurisdictional hook that 15 U.S.C. § 22 provides." *Id.* at 979. *See also Radio Music License Comm., Inc. v. Glob. Music Rts., LLC,* No. CV 16-6076, 2017 WL 8682117, at *13 (E.D. Pa. Nov. 29, 2017), *report and recommendation adopted*, No. CV 16-6076, 2019 WL 1437981 (E.D. Pa. Mar. 29, 2019) ("The jurisdictional clause of Section 12 of the Clayton Act simply does not apply here. GMR is neither a foreign-country defendant nor a corporation—it is a domestic limited liability company.").

The same is true here. The language of § 7 is clear: person includes individuals and corporations. Moreover, the California Legislature clearly knew how to define "person" to include limited liability companies; it did so in three other sections. Cal. Pen. Code §§ 632(b), 637.5(f)(3), and 368(c)(1). And even beyond that, the California Legislature clearly knew how to draft the statute such that it applied to limited liability companies regardless of how "person" was defined; it did so in §§ 637.3(a) and 637.7(a). *See* Cal. Pen. Code § 637.3(a) ("No person ***or entity*** in this state shall…" (emphasis added)); *id.* at 637.7(a) ("No person ***or entity*** in this state shall…" (emphasis added). That it did not implement either of those approaches in § 631(a) demonstrates that § 631(a) does not apply to limited liability companies, like Sussex. *See Serino v. Payday California, Inc.,* No. CV0705029VBFFFMX, 2008 WL 11411407, at *2 (C.D. Cal. Dec. 12, 2008) ("Courts should generally assume that the Legislature knew what it was saying and meant what it

said.... And this is particularly true where the Legislature has omitted a provision which it has employed in other circumstances where the asserted effect is intended." (quoting *Aguilar v. Lumenis*, 2004 Cal. App. Unpub. LEXIS 8246 (Sep. 9, 2004)); *Peters v. CJK Assocs., LLC,* No. CIV.S 03 1388 LKK/KJ, 2003 WL 24205920, at *3 (E.D. Cal. Oct. 29, 2003) ("This distinction between two subsections of the same statute demonstrated…that the Legislature knew how to provide unlimited damages as a remedy when it wished to do so and consciously chose not to under Civil Code § 52(a)."); *Phelps v. Wellpath Mgmt., Inc.*, 641 F. Supp. 3d 966, 973 (D. Or. 2022) ("When a legislative body chooses to include language in one section of a bill but omits it in another section of that same act, it is presumed to be an intentional decision.").

**D. The Court Cannot Rewrite § 631(a).**

The Ninth Circuit has made clear that it is not the court's "'job to add to or otherwise re-mold statutory text to try to meet a statute's perceived policy objectives;" the Court "must apply the statute as written.'" *Harris*, 935 F.3d at 674 (quoting *Fourstar*, 875 F.3d at 1152).

Indeed, several courts have emphasized the importance of applying CIPA as written and not as the Court believes it could or should have been written. For example, in *Shah v. Fandom, Inc.*, Judge Lin explained that "[t]he Court's task is to interpret [CIPA] as the Legislature wrote it" and that "[t]o the extent that [defendant] believes the statute may impose too many burdens when applied to the realities of modern technologies, and that it is too unwieldy to obtain users' consent through disclosures of the practices at issue, the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts." 754 F. Supp. 3d at 932-33. *See also Conohan v. Rad Power Bikes Inc.,* No. CV 25-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (rejecting defendant's argument regarding scope of CIPA based on passage from *Shah* that "[t]he Court's task is to interpret the law as the Legislature wrote it"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (refusing to dismiss CIPA claims because "the Court cannot ignore the expansive language in the California Legislature's chosen definition").

If "[c]ourts interpreting CIPA have consistently treated the broad statutory language as intentional and significant," *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *5 (N.D. Cal. Oct. 9, 2025), it would be manifestly unjust to not treat as equally intentional and significant the California Legislature's decision not to apply § 631(a) to companies like Sussex. Plaintiffs' § 631 claim should be dismissed.

**E. Any Interpretation by the Court Must Comply with the Rule of Lenity.**

There is no ambiguity with regard to the parties to which § 631(a) applies. It applies to "persons," which, regardless of the two potentially applicable definitions the Court adopts, does not include Sussex. Nevertheless, to the extent the Court finds that the term "person" as used in § 631(a) is ambiguous, it must apply the rule of lenity. The rule of lenity "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *People v. Reynoza*, 15 Cal. 5th 982, 1012 (Cal. 2024) (quoting *People v. Nuckles,* 56 Cal. 4th 601, 611 (Cal. 2013).) The rule of lenity is intended to ensure that before defendants are held liable under a criminal statute, they are given reasonable notice of the consequences of their actions. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012); *United States v. Simpson*, 319 F.3d 81, 86–87 (2d Cir. 2002) ("'The purposes underlying the rule of lenity [are] to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts....'" (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)).)

CIPA is a criminal law subject to criminal punishment. *See* Cal. Pen. Code § 631 (making a violation "punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170"). The rule of lenity, therefore, applies fully to the § 631, regardless of whether it is being enforced in a criminal or civil setting. *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 (1992) (applying rule of lenity in civil action because "although it is a tax statute that

we construe now in a civil setting, the [statute] has criminal applications"); *Crandon v. United States*, 494 U.S. 152, 158 (1990) ("[B]ecause the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage.").

Under the rule of lenity, where a criminal statute "is ambiguous," courts must "resolv[e] the ambiguity strictly to apply only to conduct clearly covered." *United States v. Balint*, 201 F.3d 928, 934 (7th Cir. 2000). Put another way, "ambiguities in criminal statutes" must be construed "in favor of defendants." *United States v. Gonzalez-Mendez*, 150 F.3d 1058, 1061 (9th Cir. 1998). Judge Chhabria put it best when he said:

> As difficult as it is to apply CIPA to the physical world, it's virtually impossible to apply it to the online world. Hopefully, the Legislature will go back to the drawing board on CIPA. Indeed, it would probably be best to erase the board entirely and start writing something new. But until that happens, courts should not contort themselves to fit the type of conduct alleged in this case into the language of a 1967 criminal statute about wiretapping.

*Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *7.

Here, there should be no ambiguity, at least as it relates to Sussex. If the Court relies on the "ordinary meaning" of person—a human being—then § 631(a) does not apply to Sussex. If the Court relies on § 7's definition of person—a human being or a corporation—then it still does not apply to Sussex because Plaintiffs expressly disavow any allegation that the information at issue was read by a human

But, to the extent the Court finds that the term "person," as used in § 631(a), is ambiguous and that ambiguity remains "after consulting traditional canons of statutory construction," then the rule of lenity "requires a court to adopt the interpretation of an ambiguous statute that is most favorable to the…defendant." *United States v. Devorkin*, 159 F.3d 465, 469 (9th Cir. 1998).

The interpretation of § 631(a) most favorable to Sussex is clear; it does not apply. Therefore, regardless of how the Court interprets § 631(a), there is only one permissible outcome. Plaintiff's § 631(a) claim against Sussex must be dismissed.

## VI. CONCLUSION.

For the foregoing reasons, Defendant Sussex Publishers LLC respectfully requests that the Court grant its Motion and dismiss, with prejudice, Plaintiffs' claim for violation of California Penal Code § 631.

Respectfully submitted,

Dated: December 26, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
SUSSEX PUBLISHERS, LLC