Matthew D. Pearson (SBN 294302)
mpearson@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650

Peter A. Devlin (application for admission *pro hac vice* forthcoming)
pdevlin@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
28 Liberty Street, 35th Floor
New York, New York 10005
Telephone: (212) 980-01200
Facsimile: (347) 438-2106

Attorneys for Defendant
SUSSEX PUBLISHERS, LLC

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and D.G., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUSSEX PUBLISHERS, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:24-cv-02609-JSC<br><br>The Honorable Jacqueline Scott Corley<br><br>**SUSSEX PUBLISHERS, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE: September 17, 2026**<br>**TIME: 10:00 a.m.**<br>**COURTROOM: 8**<br><br>Action Filed: November 30, 2023<br>Initial CMC: August 1, 2024 |

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on September 17, 2026, at 10:00 a.m. in Courtroom 8 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sussex Publishers, LLC ("Sussex") will and hereby does move, pursuant to Fed. R. Civ. P. 56, for an order granting summary judgment in favor of Sussex and against Plaintiffs R.C. and D.G. (collectively, "Plaintiffs") on all causes of action asserted by Plaintiffs in their Third Amended Complaint ("TAC").

This motion is made on the grounds that Plaintiffs have not shown, and cannot show, that:

1. Google LLC ("Google") ever identified them on www.psychologytoday.com (the "Site") and, therefore, have not shown, and cannot show, that they suffered an injury-in-fact from anything Sussex did or did not do;
2. Google ever identified them on the Site and, therefore, have not shown, and cannot show, that they were "injured by a violation" of the California Invasion of Privacy Act ("CIPA"), which is a condition precedent to brining suit under CIPA;
3. Google read, attempted to read, or lead the contents of their electronic transmission while those transmission were in transit to Sussex, which is an element of Plaintiffs' CIPA Section 631 claim;
4. Google recorded their electronic transmission in real-time, which is an element of Plaintiffs' CIPA Section 632 claim;
5. Sussex violated any section of the California Confidentiality of Medical Information Act ("CMIA"); or
6. They had a reasonable expectation of privacy in the information collected from the Site or that Sussex's conduct was "highly offensive.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Compendium of Exhibits; the Declarations of Matthew D. Pearson and Jo Colman; the Court's file and records in this action; and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

DATED: May 26, 2026

FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Matthew D. Pearson*
Matthew D. Pearson
Peter A. Devlin
Attorneys for SUSSEX PUBLISHERS, LLC

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

# TABLE OF CONTENTS

INTRODUCTION ........ 1
FACTUAL BACKGROUND ........ 3
I. The Site, Its Directory, and How the Directory Operates. ........ 3
A. The Site Has a Public Directory, Not a Therapy Portal. ........ 3
B. Google Does Not Collect Names, Emails, Addresses, Telephone Numbers, Etc. ........ 4
C. The Information Sent to Sussex and Google Is Not Sent Concurrently. ........ 4
D. Sussex Disclosed That It Shared Non-Identifying Information. ........ 5
II. Plaintiffs Used the Site As a Directory For Non-Personal Purposes. ........ 6
A. R.C. ........ 6
B. D.G. ........ 7
III. Plaintiffs' Prior and Ongoing Relationship with Google. ........ 8
IV. Plaintiffs Have No Evidence to Support Their Claims. ........ 10
SUMMARY JUDGMENT STANDARD ........ 11
ARGUMENT ........ 11
I. Summary Judgment Is Warranted Because Plaintiffs Lack Article III Standing. ........ 11
A. Plaintiffs Cannot Prove a Harm Analogous to Publicity Given to Private Life, False Light, or Appropriation of Name or Likeness. ........ 12
B. Plaintiffs Also Cannot Show a Harm Analogous to Intrusion Upon Seclusion. ........ 13
II. Sussex Is Entitled to Summary Judgment on Plaintiffs' CIPA Claims. ........ 16
A. Plaintiffs Lack Statutory Standing to Assert a Claim Under CIPA. ........ 16
B. Plaintiffs Cannot Prove that Google Read, Attempted to Read, or Learned the Contents of a Communication While It Was "In Transit." ........ 17
C. "Communications" to Sussex Were Not "Simultaneously Disseminated." ........ 18
III. Defendant Is Entitled to Summary Judgment on Plaintiffs' CMIA Claims Because the Information Collected by Google Was Not "Medical Information." ........ 19
A. The Information Collected by Google Was Not "Individually Identifiable." ........ 19
B. Plaintiffs Were Not "Patients." ........ 21
C. The Information Google Collected Did Not Pertain to Plaintiffs' Mental or Physical History, Condition, or Treatment. ........ 22
IV. Defendant Is Entitled to Summary Judgment on the Invasion-of-Privacy Claim. ........ 23
A. Plaintiffs Lacked an Objectively Reasonable Expectation of Privacy. ........ 23
B. Plaintiffs Cannot Establish a Serious Invasion of Privacy. ........ 25
CONCLUSION ........ 25

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ..... 22

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..... 25

*In re BitTorrent Adult Film Copyright Infringement Cases*,
296 F.R.D. 80 (E.D.N.Y.), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012) ..... 20

*Boorstein v. Men's J. LLC*,
No. CV 12-771 DSF EX, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ..... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 25

*Doe v. Eating Recovery Center LLC*,
2025 WL 2983143 (N.D. Cal. Oct. 17, 2025) ..... 21

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ..... 18

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ..... 16

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ..... 18, 19

*In re Google Android Consumer Priv. Litig.*,
No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ..... 16

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ..... 17

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ..... 23, 24, 25

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ..... 18

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

*Klimas v. Comcast Cable Commc'ns, Inc.*,
465 F.3d 271 (6th Cir. 2006) ........ 20

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010) ........ 15

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 21

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........ 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........ 15

*In re Meta Android Priv. Litig.*,
No. 25-CV-04674-RFL, 2026 WL 1279416 (N.D. Cal. May 11, 2026) ........ 19

*Munday v. Avis Budget Grp., Inc.*,
No. CV 22-4807, 2025 WL 3737910 (E.D. Pa. Oct. 10, 2025) ........ 12, 14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 12, 13, 14

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ........ 12

*Sisti v. Bosley Inc.*,
No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ........ 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 11

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 12

**Statutes**

Cal. Civ. Code § 56.05(j) ........ 19, 20

Cal. Civ. Code § 56.05(j)(1) ........ 19

Cal. Civ. Code § 56.05(m) ........ 21

Cal. Penal Code §§ 632(a) ........ 18

Cal. Penal Code § 637.2(a) ........ 16

California Civil Code § 1798.84 .......... 16

**Court Rules**

Fed. R. Civ. P. 56(a) .......... 11

Fed. R. Civ. P. Rule 45 .......... 11

Fed. R. Civ. P. Rule 56(d) .......... 11

**Other Authorities**

Restatement (Second) of Torts § 652C Comment a .......... 13

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

# INTRODUCTION

Plaintiffs have consistently asserted that Sussex Publishers, LLC ("Sussex") invaded their privacy and violated California law by allowing Google to collect their confidential information via a web-analytics tool called Google Analytics that was installed on www.psychologytoday.com (the "Site"). But Plaintiffs' theory as to *how* Sussex did this has frustratingly changed over time.

Initially, Plaintiffs alleged that Sussex allowed Google to collect, "in real-time," "surreptitiously," and "without [their]…knowledge or consent," "their sensitive information, including…*a copy of any email communications sent to the therapists*." [Dkt. 1-1, ¶ 43.] When Sussex proved that allegation false, Plaintiffs pivoted, claiming that when they visited the Site, Google collected their public IP addresses and their "medical information" (i.e., the therapist filters they selected on the Site), associated their "medical information" with their public IP addresses, and then identified them using their public IP addresses. [Dkt. Nos. 16, 36.] The parties fully briefed the issue of whether public IP addresses could identify Plaintiffs. [Dkt. 18, 20-22, 42, 43, 46.] The Court found that whether Google identified Plaintiffs on the Site was a fact issue and, thus, allowed the case to proceed to discovery. [Dkt. 51, p. 6.]

Discovery has since exposed a fundamental contradiction in Plaintiffs' case. Plaintiffs belatedly disclosed that they are Google account holders[1], which means that if Google could identify them on the Site it was because *Plaintiffs* had affirmatively provided their name, telephone number, etc. to Google when they created their accounts, not because Google collected their IP addresses from the Site. Plaintiffs' public-IP-address theory was, therefore, never viable: *Plaintiffs* provided Google with everything Google needed to identify them on the Site.

As a result, Sussex asked Plaintiffs to search their various Google accounts for and produce all data Google had (1) collected from the Site and (2) associated with them. Despite both Plaintiffs claiming to have done so, ***neither Plaintiff could produce any documents showing that Google had associated them with any information collected from the Site***. R.C. searched Gmail,

[1] Plaintiffs concealed their identities and that they were Google account holders until September 3, 2025. [Declaration of Matthew D. Pearson ("Pearson Decl."), ¶¶ 3-4.] Their documents show that their counsel was aware they were Google account holders before they even filed suit. [*Id.* at ¶ 6.]

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Google Drive, Google Calendar, and Google Contacts across both of his accounts and found no responsive documents. D.G.'s only responsive documents were therapy-scheduling and contact emails residing in her Gmail inbox, which Google only obtained because D.G. uses Gmail. [redacted].

Plaintiffs were unable to produce any information from their Google accounts relating to the Site [redacted].

Remarkably, it took two years of litigation for Plaintiffs to disclose what they knew, or should have known, all along: they sued Sussex for allegedly allowing Google to do something they themselves had contractually prevented Google from doing. And Plaintiffs have yet to produce any documents or evidence showing that Google did not abide by its obligations.

That is not the only thing discovery revealed. It also showed (1) that R.C. is not simply an individual in search of a mental-health professional; he is a licensed marriage and family therapist who, for twelve years, maintained a profile on the Site, admits to using the Directory for reasons other than this own care, and now operates his own therapist site that uses Google Analytics; and (2) that D.G. has no evidence showing that she ever used the Directory's filters and, even if she did, that she used them in a manner that revealed anything about her mental-health conditions.

Plaintiffs have not provided, and cannot provide, any evidence that Google ever associated with them information it collected from the Site or that any information collected from the Site revealed their own medical conditions. And without that evidence, there can be (1) no privacy injury for purposes of Article III standing, (2) no injury for statutory standing purposes under the CIPA, (3) no disclosure of "medical information" for purposes of Plaintiffs' CMIA claim, and (4) no invasion of privacy. Put another way, Plaintiffs have no evidence that anything Sussex did or did not do caused them any harm. Sussex's motion should be granted, and judgment should be entered in favor of Sussex and against Plaintiffs.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

## FACTUAL BACKGROUND

### I. The Site, Its Directory, and How the Directory Operates.

#### A. The Site Has a Public Directory, Not a Therapy Portal.

The Site is a public-facing website operated by Sussex that serves two principal functions. It (1) publishes psychology-related articles and other editorial content for a general audience and (2) offers a searchable online directory through which visitors can locate therapists (the "Directory"). [Declaration of Jo Colman ("Colman Decl."), ¶¶ 1, 4.] Plaintiffs' claims are limited to information collected by Google while they were browsing the Directory. [Dkt. 55.]

Visitors to the Site can access and use the Directory without providing personal information or creating any kind of account. [Colman Decl., ¶ 5.] Only therapists, such as Plaintiff R.C. [*id.* at ¶ 36], can create accounts on the Site [*id.* at ¶ 6]; visitors looking for a therapist cannot [*id.*]. A visitor can browse the Site, review therapist listings, search the Directory, enter a city or zip code, and refine results by filtering based on therapist qualifications, specialties, and characteristics without ever having to provide Sussex with any identifying data such as name, email, address, or phone number. [*id.* at ¶ 5.] In fact, with the exception of certain pages and services not at issue in this lawsuit[2], Sussex does not collect, or allow Site visitors to provide, their names, emails, addresses, phone numbers, or other identifying information. [*Id.* at ¶ 9.]

The Directory helps visitors locate professionals whose practices match the visitor's preferences. [*Id.* at ¶ 7.] To that end, the Directory allows visitors to browse therapist listings and select from a range of therapist criteria, including specialties, treatment approaches, location, language, and other preferences. [*Id.*] Visitors are not required or given the ability to indicate whether they are searching for themselves or someone else when using the Directory. [*Id.*] The Directory can be and is used as a referral source and for persons other than the visitor. [*Id.* at ¶ 8.]

Sussex does not employ any of the professionals listed in the Directory. [*Id.* at ¶ 10.]

---

[2] When a visitor sends an email to a therapist through the Directory (i.e., using the email contact form), Sussex collects the visitor's name, email address, and phone number, but none of this information is collected by Google. [Colman Decl., ¶ 12.] Similarly, if a therapist opts to use Sussex's video-call tool, visitors are prompted to enter a name when they agree to Terms before entering the call. [*Id.* at ¶ 13.] Google does not collect that information. [*Id.* at ¶¶ 13, 20.]

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Sussex has no record of which professional, if any, a visitor receives treatment from. [*Id.* at ¶ 11.] Sussex is not involved in, and has no record of, any payments made by visitors to professionals listed in the Directory. [*Id.*] Sussex is not involved in, and has no record of, the types of treatments the visitor ultimately receives, if any. [*Id.*] Sussex does not employ any medical professionals and is not licensed to provide, nor does it provide, medical treatment. [*Id.* at ¶ 10.]

**B. Google Does Not Collect Names, Emails, Addresses, Telephone Numbers, Etc.**

Sussex has installed Google Analytics on the Site, including on the Directory. [*Id.* at ¶ 14.] Sussex utilizes Google Analytics as a measurement and reporting tool that provides Sussex greater visibility into general website activity, such as visitor traffic, page activity, and the use of particular website features. [*Id.*] The information Sussex receives from Google Analytics (1) is always in the aggregate and (2) has never identified a specific individual on the Site. [*Id.* at ¶ 15.]

As shown in Plaintiffs' TAC, Google Analytics was configured to collect from Directory interactions page activity, configured events, and clicked filters and send them to Google. [*Id.* at ¶ 16; *see also* Dkt. 55, Figure 4.] Separately from Google Analytics' configured collection, visitors' browsers necessarily disclosed their public IP addresses to Google's servers as part of standard internet communication. [Colman Decl., ¶ 16.]

Google Analytics did not and does not collect: name, address, email, telephone number, social security number, driver's license number, or any other information ordinarily used to identify individuals. [Colman Decl., ¶ 17.] Indeed, Google prohibits Sussex from using Google Analytics to "pass information to Google that Google could use or recognize as personally identifiable information." [*Id.* at ¶ 18, Compendium of Exhibits ("CoE"), No. 1.]

**C. The Information Sent to Sussex and Google Is Not Sent Concurrently.**

Sussex implemented Google Analytics on the Directory by embedding its JavaScript code in the Site's HTML. [Colman Decl., ¶ 22.] Specifically, Sussex configured Google Analytics to work on the Directory as follows: when a user clicked on a link, ran a search, or selected a therapist filter on the Directory, (1) the user's browser would send a request to the Site's server, (2) the Site's server would respond with the requested information (HTML code), (3) the user's browser would read the Site's response and fully render the requested Directory webpage, and, if

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

the response included Google Analytics' JavaScript code, (4) the user's browser would then send a separate transmission to Google. [*Id.*] In other words, Google could not receive any transmission until *after* Sussex had received and responded to the user's browser's request. [*Id.* at ¶ 23.] Further, Sussex had Enhanced Measurement, the Google Analytics feature that automatically captures user interactions such as clicks and form entries, set to "Off." [Colman Decl., ¶ 25.] Put another way, with Enhanced Measurement off, Google had no independent ability to capture visitors' Directory interactions; the visitor's browser sent Google only what Sussex's code instructed it to and only after the browser's initial requests had been received by Sussex. Plaintiffs' own video confirms this sequence. [Dkt. 56, Ex. B.]

At 0:27 in the video, someone searches the Directory for professionals located in "San Francisco, CA." [Dkt. 56, Ex. B; Colman Decl., ¶ 24.] Less than one second later, the Site responds with professionals located in "San Francisco, CA." [Dkt. 56, Ex. B; Colman Decl., ¶ 24.] At 0:32 in the video, a separate transmission to Google is sent—five seconds after the original request was sent to Sussex and after Sussex responded. [Dkt. 56, Ex. B; Colman Decl., ¶ 24.]

The Site's configuration further protected data in transit. All transmissions between visitors' browsers and Sussex's servers occurred over HTTPS (TLS-encrypted connections), and the Site enforced this through HSTS (HTTP Strict Transport Security), which instructed browsers to connect only over HTTPS and prevented fallback to unencrypted HTTP. [Colman Decl., ¶ 27.] Because HTTPS encrypts the contents of each transmission between sender and recipient, Google could not read any visitor transmission while it was en route to Sussex's servers.

**D. Sussex Disclosed That It Shared Non-Identifying Information.**

The Directory disclosed its data collection and use through its Privacy Policy, which is publicly available on the Site. [Colman Decl., ¶ 29; CoE No. 2.] As early as 2021, the Privacy Policy informed visitors that Sussex maintains "logs of site usage" including "which and how many pages they look at, how long they stay on the website, and what Web browsers are used," that this data is "tracked in aggregate form" and is "not uniquely identifying," and that the data "may be shared with third parties." [Colman Decl., ¶ 30; CoE No. 2.] It further disclosed that third-party advertising companies "may use information (not including your name, address email

address or telephone number) about your visits to this and other Web sites" and, since at least December 2019, provided a link to the Network Advertising Initiative opt-out page (networkadvertising.org) where visitors could disable Google tracking.[Colman Decl., ¶¶ 31-32; CoE No. 2.] The Directory's contact form displayed Google's reCAPTCHA widget, identifying Google and linking to its Privacy Policy and Terms, which [redacted]. [Colman Decl., ¶ 35; CoE No. 3.]

## II. Plaintiffs Used the Site As a Directory For Non-Personal Purposes.

Although, as explained below, Plaintiffs have no evidence that Google ever identified them on the Site and D.G. has no evidence of what she did on the Site at all, Plaintiffs have filed declarations in which they attest to what they did and did not do. [Dkt. 43-2, 43-3.] Discovery has demonstrated omissions, if not outright inaccuracies, in those declarations.

### A. R.C.

R.C. claims to have "selected" on the Directory "options that disclosed that [he] was searching for a male therapist, near the 90211 zip code who accepted Blue Shield insurance" and who specialized in "anxiety, relationship issues, and emotionally focused therapy (EFT)." [Dkt. 43-2, ¶ 1.] R.C., however, could produce no document to support this claim. Indeed, the *only* document R.C. produced showing that he was on the Site contradicts R.C.'s claim. That document—his browser history—[redacted] [Pearson Decl., ¶ 13; CoE No. 4; Colman Decl., ¶ 38.]

This contradiction can be explained by R.C.'s admission that he had [redacted] [Pearson Decl., ¶ 10; CoE No. 5, Response to RFA 11.] And he had done so because ***he is a licensed marriage and family therapist who maintained a paid professional listing on Psychology Today for over twelve years across multiple accounts***. [*Id.* at ¶ 10; CoE No. 5, Responses to RFAs 1-3; Colman Decl., ¶ 36 .] [3] Indeed, R.C.'s browser history includes visits to

[3] Sussex was only able to determine that R.C. was a therapist who had paid to be listed in the Directory *after* Plaintiffs disclosed R.C.'s full name and produced his browsing history on



Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

[redacted] [Pearson Decl., ¶ 13; CoE No. 4; Colman Decl., ¶¶ 37, 38.] In those instances, R.C. was not [redacted]. [Pearson Decl., ¶ 13; CoE No. 4; Colman Decl., ¶ 38.]

**B. D.G.**

D.G. claims to have selected the following therapist filters on the Directory: "addiction, ADHD, anxiety, autism, depression, drug abuse, marriage counseling, OCD, relationship issues, stress, substance abuse, suicidal ideation, and trauma/PTSD." [Dkt. 43-3, ¶ 2.]

D.G., however, admitted that [redacted] [Pearson Decl., ¶ 27; CoE No. 6, Responses to RFAs 1-9.] D.G. admitted that she used the Directory to find "help for a family crisis involving [her] adult son," [Dkt. 43-3, ¶ 2], and even produced an email [redacted] [Pearson Decl., ¶ 30(b); CoE No. 7.] The subject lines of all of the emails [redacted] [*Id.* at ¶ 30(c); CoE No. 8.]

D.G. produced emails to or from [redacted] [Pearson Decl., ¶ 30(a)-(c); CoE Nos. 7-9.] [redacted] [*Id.* at ¶ 30(c); CoE No. 8; Colman Dec., ¶ 35], [redacted], [Pearson Decl., ¶ 27; CoE No. 6, Response to RFAs 10-11.] D.G. did not locate or contact [redacted]. Had she done so, she would have [redacted]

---

September 3, 2025. [Colman Decl., ¶ 36.]

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

[redacted] [Colman Decl., ¶ 35; Pearson Decl., ¶ 30(c); CoE No. 8.] [redacted]. Because D.G. chose not to retain her own browsing history [Pearson Decl., ¶¶ 38-39; CoE 19] and because Google has no record of D.G. being on the Site [*id.* at ¶ 36; CoE No. 11], D.G. has no evidence to support her claim.

D.G.'s emails show she had [redacted] [Pearson Decl., ¶ 30(a); Colman Decl., ¶ 34; *Compare* CoE No. 9 *with* CoE No. 8.] [redacted]. [Colman Decl., ¶ 34; CoE Nos. 12-13.] D.G. thus agreed to the Privacy Policy nine times over five months before she ever used the Directory to contact a therapist. [Pearson Decl., ¶ 30(a); Colman Decl., ¶ 34; *Compare* CoE No. 9 *with* CoE No. 8 *with* CoE Nos. 12 and 13.]

None of D.G.'s produced emails involved Google Analytics. [redacted]. [Colman Decl., ¶ 41.] [redacted]. [*Id.* at ¶ 43; Pearson Decl., ¶ 30(b); CoE No. 7.] [redacted].

## III. <u>Plaintiffs' Prior and Ongoing Relationship with Google.</u>

D.G. admits to having two accounts with Google [redacted] [Pearson Decl., ¶ 28; CoE 10, Response to ROG 5.] R.C. admits to having two, as well [redacted]. [*Id.* at ¶ 11; CoE 14, Response to ROG 5.]

As account holders, Plaintiffs agreed to Google's Privacy Policies. [*Id.* at ¶¶ 41-42.] Those Privacy Policies explained (1) that "Websites," like the Site, "that integrate Google services like… analytics share information with Google;" (2) that the information Google receives includes "the URL of the page [the account holders] [are] visiting and [their] IP address[es];" and (3) that account holders, like Plaintiffs, can "[d]ecide what types of activity [they'd] like saved in [their] account[s]." [*Id.* at ¶¶ 43-44; CoE No. 26.]

As to the last point, Google provided Plaintiffs with the ability to "Turn Off" "Web and

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

App Activity." [*Id.* at ¶¶ 20, 37; CoE Nos. 22, 24.] Disabling "Web and App Activity" prevents Google from associating information it collects on third-party sites, like the Site, with a Google account. [*Id.* at ¶ 45; CoE No. 27.] Although a Google Analytics payload necessarily reaches Google's servers as part of an internet transmission, that transmission alone does not associate the data with any individual; association requires the account-level settings that [redacted] [*id.* at ¶ 20; CoE No. 22], and [redacted] [*id.* at ¶ 11; CoE No. 14, Response to ROG 8]. [redacted]" [*Id.* at ¶ 20; CoE No. 22.]

[redacted] [Pearson Decl., ¶ 37; CoE No. 24.] [redacted] [*id.* at ¶ 28; CoE No. 10, Response to ROG 8], so [redacted], neither Plaintiff was able to produce any evidence that Google identified them while they were on the Site. [Pearson Decl., ¶¶ 19, 36; CoE Nos 11, 15.]

[redacted] [Pearson Decl., ¶¶ 21-22; CoE No. 21.] For every service and every account, he could produce no responsive documents. [*Id.* at ¶¶ 9, 19, 21; CoE Nos. 15, 16, 21.] [redacted]. [*Id.*]

[redacted]. [Pearson

Decl., ¶¶ 26, 36, 38; CoE Nos. 11, 18, 19.] The only responsive documents she located were [redacted]. [*Id.* at ¶¶ 30, 36, 38; CoE Nos. 7-9, 11, 19; Colman Decl., ¶¶ 41-43.] [redacted]. [Pearson Decl., ¶¶ 36-37; CoE Nos. 11, 24.] [redacted]. [*Id.* at ¶¶ 36-37; CoE Nos. 11, 24.] Yet not a single entry records a visit to the Site [*id.*], despite [redacted], [Dkt. 43-3, ¶ 1; Pearson Decl., ¶ 28; CoE No. 10, Response to ROG 8]. [redacted]. [Pearson Decl., ¶ 40; CoE No. 17.]

In short, Google's systems recorded what they were configured to record (internal Google service searches), and recorded nothing they were configured not to record (external website browsing). If Google had collected and associated Plaintiffs' Directory activity [redacted]. [Pearson Decl., ¶¶ 19, 36; CoE Nos. 11, 15.] [redacted] [*Id.* at ¶¶ 9, 17, 26, 34; CoE No. 16, Response to RFP 1; CoE No. 18, Response to RFP 1.]

**IV. <u>Plaintiffs Have No Evidence to Support Their Claims.</u>**

Sussex asked Plaintiffs to produce all documents supporting their claim that Google identified them on the Site. [Pearson Decl., ¶¶ 9, 26; CoE Nos. 16, 18, RFPs 6.] They responded by referring to R.C.'s *Safari* browsing history, which has nothing to do with Google; to the emails sent to D.G.'s email account, which were in Google's possession only because D.G. chose to use Gmail; and the screenshots in and video attached to their TAC, none of which shows either Plaintiffs browsing the Directory. [*Id*] Sussex asked Plaintiffs to produce all documents supporting their claim that Google read, attempted to read, or learned the contents of their communication while they were in transit to Sussex. [*Id.* at ¶¶ 9, 26; CoE Nos. 16, 18, RFPs 7.] Plaintiffs referred

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

to the same irrelevant documents. [*Id.*] Sussex asked Plaintiffs to produce all documents showing what information, if any, Google had relating to their visits to and use of the Directory. [*Id.* at ¶¶ 9, 26; CoE Nos. 16, 18; Responses to RFPs 1.] Despite [redacted], despite Google making all of [redacted], and despite Plaintiff accessing and downloading that data, Plaintiffs could not produce a single document showing that Google identified either of them on the Site. [*Id.* at ¶¶ 9, 26; CoE Nos. 16, 18; Responses to RFPs 1; Pearson Decl., ¶ 36; CoE No. 11; Pearson Decl., ¶ 10; CoE No. 19.]

Plaintiffs bear the burden of establishing that they "were injured by a violation of" CIPA, that their "medical information" was disclosed in violation of the CMIA, and that their privacy was invaded. Despite having years to do so, they have yet to identify or produce a single piece of evidence showing that any of these three things occurred. [redacted]. That they chose not to only reinforces what discovery has revealed: they have no claim against Sussex. Additional time under Rule 56(d) will not change that fact. The Court should grant this Motion.

## <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment must be granted if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For issues where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party makes such a showing, the non-movant may defeat summary judgment only by producing specific facts showing that a genuine issue of material fact exists. *See id.* at 322-23.

## <u>ARGUMENT</u>

### I. <u>Summary Judgment Is Warranted Because Plaintiffs Lack Article III Standing.</u>

Article III requires a plaintiff to prove a concrete injury in fact. *Spokeo, Inc. v. Robins*, 578

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

U.S. 330, 338 (2016). A statutory cause of action, standing alone, does not satisfy that requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). A "concrete" injury "must be 'real, and not abstract.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Spokeo*, 578 U.S. at 340). "[C]ourts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," asking "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo,* 578 U.S. at 341). The inquiry "look[s] to the *specific* underlying harm experienced by the plaintiff and compare[s] it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 791.

In the website-tracking context, the Ninth Circuit has rejected the notion that a plaintiff may rely on a free-floating privacy interest untethered to any historically recognized harm. *Id.* There is no generalized right to "privacy," only "four discrete torts that protected specific kinds of privacy-related harms": intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light. *Id.* at 792 (citing *TransUnion,* 594 U.S. at 425). A statutory harm confers standing only if it is "similar to those protected by these torts." *Id.* Plaintiffs cannot satisfy that standard here.

**A. Plaintiffs Cannot Prove a Harm Analogous to Publicity Given to Private Life, False Light, or Appropriation of Name or Likeness.**

Nothing in the undisputed facts resembles the common-law publicity torts: publicity given to private life and false light. Plaintiffs have no evidence that the Site disclosed any of their browsing information or that their browsing information was ever associated with them. [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15]; *Munday v. Avis Budget Grp., Inc.*, No. CV 22-4807, 2025 WL 3737910, at *1 n.1 (E.D. Pa. Oct. 10, 2025) (dismissing website-tracking action for lack of standing where no allegation information collected identified plaintiff). And even if they did, there is no evidence that such information was publicized to the world. *See Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 & n.4 (1998) (publicity given to private life and false light require public disclosure). That is not "similar" to a common-law publicity tort. *Popa*, 153 F.4th at 792.

Nor is this case analogous to appropriation of name or likeness. Plaintiffs' theory is not

that Sussex exploited their names or likenesses; Plaintiffs never once allege that Sussex used or disclosed their names. [Dkt. 55.] Instead, Plaintiffs' theory is that, by allowing Google to collect site-activity data from the Directory, Sussex invaded their privacy. [*Id.*] That is not an appropriation-like harm. Restatement (Second) of Torts § 652C cmt. a (Am. Law Inst. 1977) ("The interest protected by the rule…is the interest of the individual in the exclusive use of his own identity, *in so far as it is represented by his name or likeness* . . . ." (emphasis added)). Indeed, Plaintiffs have no evidence that Google associated their identities with their activity on the Site at all. [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15.]

**B. Plaintiffs Also Cannot Show a Harm Analogous to Intrusion Upon Seclusion.**

The only tort that remains is intrusion upon seclusion. *Popa* forecloses standing under that theory. To show intrusion upon seclusion, a plaintiff must show "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man.*" *Popa*, 153 F.4th at 791 (citations omitted and emphasis in original). Plaintiffs cannot make that showing.

As an initial matter, the web-based data collection at issue here is inherently different than the "hypotheticals set out in the Restatement." *Popa*, 153 F.4th at 791. As explained by the Ninth Circuit in *Popa,* anonymous web-based data collection is unlike a situation in which "A ... rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens," *Popa*, 153 F.4th at 791 (quoting Restatement (Second) of Torts § 652B), because, in that scenario, the injury (i.e., embarrassment) occurs regardless of whether B knows who A is. That is not true with regard to browsing information collected from a website. Without associating the browsing information with a specific individual, the information is just data on a page, and data on a page "identifies no embarrassing, invasive, or otherwise private information." *Id.*

The undisputed facts show that Google never associated Plaintiffs' activity on the Directory with their Google accounts or identified Plaintiffs. [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15.] [redacted] [*id.* at ¶ 20; CoE No. 22], [redacted] [*id.* at ¶ 36; CoE

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

No. 24], resulting in Plaintiffs' [redacted], [*id.* at ¶¶ 19, 35; CoE Nos. 11, 15]. Where no identification occurred, there can be no intrusion into Plaintiffs' "private affairs or concerns," let alone one that was "highly offensive to a reasonable person." *Munday*, 2025 WL 3737910, at *1 n.1 ("[N]on-identifying information on a widely accessible commercial website" is "not…'highly offensive to a reasonable person'").

Nor do the facts here involve the "particular circumstances" in which internet tracking "*could* be offensive" according to *Popa*: tracking "involving sensitive medical or financial information." *Popa*, 153 F.4th at 791. Even if Plaintiffs had evidence showing that (1) Google collected information from their Site visits and (2) Google associated that information with Plaintiffs—they don't—there would still be no injury because any data collected from the Site would not have disclosed Plaintiffs' *own* medical conditions or treatment. Site activity does not establish *why* a visitor was on the site, whether the visitor was searching for himself or herself, whether the selected criteria described the visitor, a family member, a friend, or another person, or whether the visitor was simply cross-checking a therapist identified through an insurance network or other referral source. [Colman Decl., ¶ 8.] This is true regardless of the number of filters selected. No matter how many filters are used, the resulting data reflects search criteria, not diagnoses. A therapist, student, or journalist could generate the same combination. Plaintiffs' own circumstances prove this: D.G. used the site for her adult son, [Dkt. 43-3, ¶ 2], and [redacted], [Pearson Decl., ¶ 10; CoE No. 5, Response to RFA 11]. The possibility that the site activity related to someone else independently defeats any claim that the data resembled an invasion into Plaintiffs' private affairs.

Courts have dismissed CIPA, CMIA, and related privacy claims in virtually identical circumstances. In *Maghoney v. Dotdash Meredith, Inc.*, the plaintiff asserted claims based on www.verywellhealth.com's use of tracking technologies to collect user activity on the site, including the "search terms [the plaintiff entered] into the search bar related to symptoms, contraction, and the treatment of chlamydia [and] genital warts and the treatment of Sexually Transmitted Infections." 2026 WL 497402, at *1 (S.D. Cal. Feb. 23, 2026). The court held that the plaintiff lacked Article III standing because he had "merely *searched* sensitive health related

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

terms" on a website that "is not a patient portal," so "nothing about Plaintiff's searches indicates those searches were tied to his personal medical history." *Id.* at *5 (emphasis in original). The very same reasoning applies here. Plaintiffs searched a public directory of therapists *that is not a patient portal* with terms concerning mental health conditions like anxiety. [Colman Decl., ¶¶ 5-7; [Dkt. 43-3, ¶ 2.] [redacted]. [Pearson Decl., ¶¶ 10, 26; CoE No. 5, Response to RFA 11; CoE No. 6, Responses to RFAs 1-9.] Consistent with *Maghoney*, that sort of activity data is not the type of deeply private information whose interception or exposure bears a close relationship to intrusion upon seclusion.

The undisputed facts here go further than *Maghoney*. Not only was the data not inherently personal; there is no evidence Google was even collecting it. [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15.] Neither Plaintiff has produced a shred of evidence showing that Google collected information about them while they were on Site. [*Id.*.] And they certainly haven't produced any evidence that resembles the "sensitive health related terms" the court found insufficiently private in *Maghoney*. [*Id.*] In fact, the evidence shows that D.G. [redacted]. The same is true for R.C.: [redacted]. [*Id.* at ¶¶ 13, 10; CoE No. 4; CoE No. 5, Response to RFA 11; Colman Decl., ¶¶ 37-38.] His claim is further undermined by his use of the same technology on his own professional website [redacted] [Pearson Decl., ¶¶ 10, 22; CoE No. 5, Responses to RFAs 5-6; CoE No. 23; Colman Decl., ¶ 39.]

Plaintiffs bear the burden of establishing injury-in-fact "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (internal quotations omitted). They cannot simply speculate about what data Google might possess. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than "some metaphysical doubt" as to the material facts). Plaintiffs have

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

not met and cannot meet that burden. Their claims must be dismissed.

## II. Sussex Is Entitled to Summary Judgment on Plaintiffs' CIPA Claims.

### A. Plaintiffs Lack Statutory Standing to Assert a Claim Under CIPA.

CIPA provides a private right of action to "[a]ny person who has been *injured by a violation of this chapter*." Cal. Penal Code § 637.2(a) (emphasis added). Courts have interpreted similar statutory-standing provisions to require something beyond a mere violation of the law. For example, when interpreting the statutory-standing provision under California Civil Code § 1798.84, which states that "[a]ny customer *injured by a violation of this title* may institute a civil action to recover damages," *id.* at § 1798.84(c) (emphasis added), the United States District Court for the Central District of California found that the private right of action "does not allow a cause of action based solely upon a failure to comply with the statute" but, instead, "expressly requires an injury resulting from a violation." *Boorstein v. Men's J. LLC*, No. CV 12-771 DSF EX, 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012). The same is true under CIPA.

Plaintiffs here rely on two damage theories: invasion of privacy and loss of value of data. [Dkt. 55, ¶ 98.] Both fail. As explained, there can be no invasion of privacy from the disclosure of data that is never actually associated with an individual. Plaintiffs cannot legitimately contest this; they filed this action, making public the very information they assert Sussex was legally required to protect. That they did so using only their initials demonstrates that disclosure of the information is not injurious to Plaintiffs unless associated with them, and, as Plaintiffs' discovery responses show, Google did not associate the data with them. [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15.]

As to Plaintiffs' lost-value-of-data theory, many "courts have found insufficient for [injury] purposes generalized assertions of economic harm based solely on the alleged value of personal information," *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015), and the ones who have not rejected it outright have generally required the plaintiff to "show what harm, if any, resulted from the access to and tracking of their PII," *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013). Normally, that means the plaintiff must show that "they attempted to sell their personal information, that they would do so in the future, or that they were foreclosed from entering into a

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

value for value transaction relating to their PII, as a result of the…[d]efendant['s] conduct." *Id.*

Plaintiffs can make no such showing. The information at issue only has value, if at all, when associated with them. Indeed, without the data being associated with Plaintiffs, neither Plaintiffs nor any prospective buyer of their data would have any way of knowing whether Plaintiffs' data had previously been bought or sold. *Sisti v. Bosley Inc*., No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *4 (C.D. Cal. Apr. 27, 2026) (dismissing because plaintiff's "alleged injury based on an impairment in his ability to sell his own data is purely hypothetical").

Plaintiffs cannot show that Sussex's alleged violation of CIPA injured them. They lack statutory standing to assert their CIPA claims, and summary judgment should be entered.

**B. Plaintiffs Cannot Prove that Google Read, Attempted to Read, or Learned the Contents of a Communication While It Was "In Transit."**

Plaintiffs' section 631 claim fails for two additional and independent reasons. **First,** there was no interception of a communication "in transit." Section 631(a) of CIPA is a wiretap statute, not a general prohibition on third-party website analytics. It reaches only the unauthorized reading, attempted reading, or learning of the contents or meaning of a communication *while the communication is still "in transit."* Plaintiffs, therefore, must present evidence that Google read, attempted to read, or learned the contents of Plaintiffs' communications while those communications were still *en* route. *See Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (granting summary judgment where record did not plausibly indicate vendor read or attempted to read contents in transit); *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where, at best, evidence showed that the third-party provider could read messages, not that it did read them in transit).

The undisputed facts show that Google did not intercept any communications from Plaintiffs to Sussex before they reached Sussex. Indeed, Sussex's configuration of Google Analytics on the Directory made it impossible for Google to do so. Google only received browsing data, if at all, *after* Plaintiffs clicked on a button in the Directory, *after* Plaintiffs' browsers sent requests to Sussex's servers, *after* Sussex's servers responded, *after* Plaintiffs' browsers received the responses, and *after* Plaintiffs' browser had fully rendered the pages Plaintiffs were attempting

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

to view. [Colman Decl., ¶¶ 22-24; Dkt. 56, Ex. B.] Put another way, by the time any information was sent to Google, the transmissions between Plaintiffs' browsers and Sussex's servers had long been completed. [Colman Decl., ¶ 23.] *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) ("*Doe I*") (finding a 0.2-second delay negates the "in transit" requirement).

Beyond the insurmountable timing issues, Plaintiffs' Section 631 claim fails because both Plaintiffs' request to Sussex and Sussex's response to Plaintiff were encrypted in transit. [Colman Decl., ¶¶ 27-28.] Encrypted in-transit transmissions are the opposite of a communications whose contents are being read midstream because they must be "receive[d]…and reassemble[d]…before" they can be read. *Doe I*, 806 F. Supp. 3d at 1117.

**Second**, and more fundamentally, Plaintiffs' claim fails because what Google Analytics transmits to Google is not the "contents" of a communication between Plaintiffs and Sussex. The "contents" of the user-to-Sussex exchange are the HTTP request and Sussex's HTML response. Google Analytics generates a separate data payload, page URLs, event timestamps, and session identifiers, created by JavaScript executing in the browser after the user-to-Sussex exchange is complete. [Colman Decl., ¶ 26.] That Sussex's HTML response included the Google Analytics JavaScript code does not change this analysis. The code is an instruction set delivered to the browser; it does not intercept anything. When the browser later executes that code and transmits data to Google, that transmission originates entirely from the visitor's browser, not from Sussex's servers, and is entirely separate from the user-to-Sussex exchange. [*Id.* at ¶ 26.]

Section 631 requires proof of actual in-transit reading. Plaintiffs have none.

### C. "Communications" to Sussex Were Not "Simultaneously Disseminated."

Section 632's application depends on the manner in which a conversation is recorded, not on the "content of the conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002). That is, Section 632 draws a "distinction…between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor." *Id.* at 775. The former is not a violation; the latter might be. The reason for this distinction lies in Section 632's purpose—namely, "the right to prevent a simultaneous dissemination to an unannounced listener." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1389 (2011). Because of this, courts

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

have held that "CIPA's eavesdropping provision[], Cal. Penal Code §§ 632(a),….concern[s] the contents of 'confidential' communications when *in transit*." *In re Meta Android Priv. Litig.*, No. 25-CV-04674-RFL, 2026 WL 1279416, at *7 (N.D. Cal. May 11, 2026) (emphasis added).

As explained above, there was no "simultaneous dissemination" of Plaintiffs' communications with Sussex. To the extent Plaintiffs' communications were "disseminated" at all, the undisputed facts show that they were disseminated after Plaintiffs' communication had reached Sussex, Sussex had responded, and Plaintiffs' browser had read and complied with Sussex's response. [Colman Decl., ¶¶ 22-24; Dkt. 56, Ex. B.] In other words, the transmission to Google was a "secondhand repetition of the contents of a conversation," not a "simultaneous dissemination to an unannounced second auditor." *Flanagan*, 27 Cal. 4th at 775.

## III. <u>Defendant Is Entitled to Summary Judgment on Plaintiffs' CMIA Claims Because the Information Collected by Google Was Not "Medical Information."</u>

Plaintiffs have argued two CMIA theories: one under section 56.101(a) and the other under 56.10(a). Regardless of the theory asserted, Plaintiffs must establish that Sussex disclosed, or failed to protect, their "medical information," which, in turn, mandates that they establish that the information in question (1) is "individually identifiable," (2) pertains to "a patient," and (3) relates to that patient's "medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j)(1). Plaintiffs can show none of those three elements.

### A. The Information Collected by Google Was Not "Individually Identifiable."

Under the CMIA, information is "individually identifiable" only if it contains "any element of personal identifying information sufficient to allow identification of the individual" either "alone" or "in combination with other publicly available information." Cal. Civ. Code § 56.05(j). Plaintiffs' theory satisfies neither of these two pathways.

#### (1) The Data "Alone" Did Not Identify Plaintiffs.

Plaintiffs have no evidence that Google collected any information from them while browsing the Site. Between the two of them, [redacted]

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

[redacted] [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15.]

But beyond that, Plaintiffs do not allege, and certainly have no evidence to prove, that the information collected by Google from the Site, in and of itself, identified them. Plaintiffs do not claim that Google collected their names, addresses, emails, telephone numbers, social security numbers, or any other information that would otherwise identify them. [*See* Dkt. 55.] They claim that Google collected their public IP addresses, which have repeatedly been held not to identify anyone. *See, e.g.*, *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271, 275 (6th Cir. 2006). In fact, even when the subscriber to a particular IP address can be identified, courts have found that "it is no more likely that the subscriber…carried out a particular computer function…than to say an individual who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y.), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012).

Nor do Plaintiffs claim that they had to create and log into an account before using the Directory. [*See* Dkt. 55.] The Directory is not a portal that requires or even allows users to identify themselves before browsing. [Colman Decl., ¶¶ 4-7.] That matters because the activity data, standing alone, did not identify Plaintiffs. At most, it reflected that some user of the Directory selected certain filters or navigated to certain pages. [*Id.* at ¶¶ 16-17.] But search terms, filter selections, and directory clicks do not identify a particular person. The statutory question is whether the data, on its own, identifies the individual. Here, it did not. [*Id.*]

**(2) The Data "in Combination with Other Publicly Available Information" Did Not Identify Plaintiffs.**

Plaintiffs cannot satisfy the statute's alternative route either. Plaintiffs' most recent theory is that Google is able to identify them because Google collects public IP addresses and Google can use either the information Plaintiffs voluntarily provided to Google when they created their accounts or other, non-public information in Google's possession to tie those public IP addresses to them. [*See* Dkt. 55.] Not only do Plaintiffs have no evidence of this [Pearson Decl., ¶¶ 19, 35; CoE Nos. 11, 15], but, more importantly, the statute does not ask whether a third party can connect the data with its own internal, nonpublic records; it asks whether the data identifies the

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

person "in combination with other *publicly* available information." Cal. Civ. Code § 56.05(j) (emphasis added). Information Google may possess in its internal systems is not publicly available information, so a theory that depends on combining activity data with Google's own data fails.

**B. Plaintiffs Were Not "Patients."**

The CMIA defines a "patient" as "a natural person…who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(m). That definition is restrictive. It requires not just a person who visited a health-related website, but a person who received "health care services" from the relevant provider and whose information pertains to that person in that patient capacity. Plaintiffs cannot satisfy that definition.

The challenged data was generated while Plaintiffs were using the Site's public-facing directory to look for therapists. [Colman Decl., ¶¶ 14-17.] Sussex does not itself provide therapy through that search process, does not employ the clinicians listed in the directory, and does not diagnose, treat, or manage patient care when a visitor browses listings or selects filters. [*Id.* at ¶¶ 10-11.] The Site instead functions as a public resource and marketing platform through which visitors can identify potential providers; visitors can use the directory without creating an account, and only therapists—not users seeking care—create accounts on the Site. [*Id.* at ¶¶ 5-7.]

That distinction is dispositive. Searching a directory for a provider is not the receipt of "health care services," so this searching cannot make Plaintiffs "patients" with respect to the resulting search data. *Doe v. Eating Recovery Center LLC* confirms the point. 2025 WL 2983143 (N.D. Cal. Oct. 17, 2025) ("*Doe II*"). In *Doe II*, the court granted summary judgment on CMIA claims based on tracking technology deployed on a health-information website, holding that the plaintiff was not a "patient" under the CMIA. *Id.* at *1. In that case, plaintiff "browsed" pages on defendant's website, completed a "diagnostic" quiz and self-assessment form, and communicated with defendant over the phone about treatment options. The court reasoned that the site operator was "not performing any type of professional service" at the point of the online data collection at issue. *Id.*; *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (CMIA claim must implicate "substantive medical information" not just "browsing information" from a health-related site). The same reasoning applies here with even greater force:

Plaintiffs' data arose at an even earlier stage of browsing a therapist directory, before any treatment relationship with any individual therapist could have begun. [Colman Decl., ¶¶ 14-16.]

Plaintiffs' allegations and admissions reinforce that conclusion. D.G. alleges that, during one search, she was seeking help for her adult son [Dkt. 43-3, ¶ 2], which undermines any claim that the selected filters necessarily described D.G.'s own condition or treatment. R.C. is the opposite of a patient; as a licensed marriage and family therapist, he is a provider. [Pearson Decl., ¶ 10; CoE No. 5, Responses to RFAs 1-6.] R.C.'s production shows [redacted]. [*Id.* at ¶ 13; CoE No. 4; Colman Decl., ¶¶ 37-38.] R.C. cannot claim injury from a technology he simultaneously deploys on his own website's visitors. [Colman Decl., ¶ 39.] The data at issue does not show that either Plaintiff was acting as a statutory "patient" when that data was generated. The CMIA protects information about the recipient of health care services from the relevant provider; it does not transform pre-treatment, public-site browsing into information about a "patient."

### C. The Information Google Collected Did Not Pertain to Plaintiffs' Mental or Physical History, Condition, or Treatment.

None of the information collected from the Directory qualifies as "medical information" because it does not reveal Plaintiffs' mental or physical history, condition, or treatment. Judge Pittman explained it best in *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 789 (N.D. Tex. 2024). Faced with the very argument Plaintiffs put forth here—namely, that "if an IP address corresponds to Person A, and Person A looks up symptoms of Condition B, one might conclude Person A has Condition B," *id.* at 789—Judge Pittman succinctly stated: "Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)," *id.* at 803. The rationale behind Judge Pittman's conclusion is simple: information like that from the Directory cannot pertain to a specific individual's mental or physical history, condition, or treatment without knowing ***why*** the individual is browsing. *Id.* at 802. And Plaintiffs do not contend—nor could they—that the information allegedly collected by Google from the Site included that "why." [Dkt. 55.]

In fact, Plaintiffs' own allegations and admissions illustrate why the "why" is crucial. [redacted]



Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

[redacted] [Pearson Decl., ¶ 26; CoE 6; Responses to RFAs 1-9.] She has further declared that her searches were, at least in part, "for her adult son." [Dkt. 43-3, ¶ 2.] D.G. was not, and could not have been. identified as the subject of the searched-for conditions or treatment.

The same is true for R.C. While declaring that he used the Directory to locate "a male therapist, near the 90211 zip code who accepted Blue Shield insurance" and who specialized in "anxiety, relationship issues, and emotionally focused therapy (EFT)," [Dkt. 43-2, ¶ 1], the only records he produced relating to his activity on the Directory show otherwise. [Pearson Decl., ¶ 13; CoE 4.] Those records demonstrate that [redacted], [*Id.* at ¶ 13; CoE 4], [redacted], [*Id.* at ¶ 10; CoE 5, Response to RFA 11].

Put simply, Plaintiffs' CMIA claim fails because the statute does not reach the kind of information at issue here. The CMIA does not regulate all activity on a health-related website; it reaches only disclosures of "medical information," i.e. individually identifying information pertaining to a patient's mental or physical history, condition, or treatment. The information transmitted to Google was not "medical information." Plaintiffs cannot satisfy the CMIA's core definitional requirements; therefore, Sussex is entitled to summary judgment on the CMIA claims.

## IV. <u>Defendant Is Entitled to Summary Judgment on the Invasion-of-Privacy Claim.</u>

To prevail on constitutional privacy claim, Plaintiffs must prove a reasonable expectation of privacy under the circumstances and a serious invasion of privacy. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994). Plaintiffs cannot establish either.

### A. Plaintiffs Lacked an Objectively Reasonable Expectation of Privacy.

No reasonable jury could conclude that Plaintiffs had an objectively reasonable expectation that their website activity would not be disclosed. The nature of the activity reinforces the point. Plaintiffs' theory concerns ordinary browsing conduct—searching by city or zip code, clicking filters, viewing profile pages, and generating related website events [Dkt. 55]—on a public-facing website, not in a private treatment session or secure patient portal [Colman Decl., ¶¶ 5, 14-17]. Visitors, like Plaintiffs, could use the directory without creating accounts or providing any identifiable information to Sussex. [*Id.* at ¶¶ 5, 7.] That is not the sort of intimate or secluded

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

activity that California privacy law treats as presumptively private. And here, the activity did not even reliably communicate Plaintiffs' own personal information. Where the same browsing activity could ([redacted] [Pearson Decl., ¶¶ 13, 26; CoE No 4; CoE No. 6, Responses to RFAs 1-9]) concern a third person, Plaintiffs cannot plausibly claim that the activity objectively conveyed their own private information in the first place.

Further, California courts evaluate privacy expectations objectively and contextually, asking if the circumstances would reasonably support the claimed expectation. *Hill*, 7 Cal. 4th at 36-37. The relevant circumstances here included public disclosures, agreed to by Plaintiffs, that Google may collect activity data on websites using its services and that Plaintiffs, themselves, were in control (and did control) what Google did with that data [Pearson Decl., ¶¶ 20, 36; CoE Nos. 22, 24]. Sussex's Privacy Policy informed visitors that Sussex maintains "logs of [visitors'] site usage" including "which and how many pages they look at, how long they stay on the website, and what Web browsers are used," that this data is "tracked in aggregate form" and is "not uniquely identifying," and that the data "may be shared with third parties." [Colman Decl., ¶¶ 29-30; CoE No. 2.] It stated that third-party advertising companies "may use information (not including your name, address email address or telephone number) about your visits to this and other Web sites" and, since at least December 2019, provided a direct link to the Network Advertising Initiative opt-out page (networkadvertising.org) where visitors could disable Google's tracking. [Colman Decl., ¶¶ 29, 31-32; CoE No. 2.] [redacted]. [*Id.* at ¶ 34; Pearson Decl., ¶ 29(a), (c); *Compare* CoE No. 9 *with* CoE No. 8 *with* CoE No. 12.] [redacted] foreclose any reasonable privacy expectation in subsequent browsing on that same site.

Plaintiffs have no evidence that Sussex did not comply with its policies. [redacted]. [Pearson Decl., ¶ 19; CoE No. 15.] [redacted]. [*Id* at ¶ 35; CoE No. 11] [redacted]

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

[redacted]. [*Id.* at ¶¶ 13, 40; CoE Nos. 4, 17.] Plaintiffs cannot feign ignorance of Sussex's or Google's publicly disclosed practices, [redacted].

**B. Plaintiffs Cannot Establish a Serious Invasion of Privacy.**

California's Constitution does not redress every intrusion; it requires an invasion serious enough in "nature, scope, and actual or potential impact" to constitute an egregious breach of social norms. *Hill*, 7 Cal. 4th at 37. The alleged conduct falls well short of that standard.

The asserted intrusion was limited and only weakly connected to Plaintiffs as identifiable individuals. The challenged data arose from routine use of a public-facing directory, not from disclosure of treatment records, portal messages, diagnoses, or private provider communications. [Colman Decl., ¶¶ 5, 10, 14-15.] The alleged activity data was not inherently tied to Plaintiffs as identifiable persons or as the subjects of the searched-for conditions or treatment. [*Id.*.] Plaintiffs made no inherently highly sensitive disclosures to Sussex in confidence.

Decisions addressing analogous website-tracking allegations confirm the point. In *B.K. v. Eisenhower Medical Center*, the court held that plaintiffs had not alleged a sufficiently serious invasion of privacy where the alleged use of tracking technology was tied to routine interactions and searches on a healthcare provider's website, rather than to concrete medical information in a manner sufficiently grave to support the claim. 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024). And in *Cousin v. Sharp Healthcare*, the court likewise rejected constitutional privacy theories predicated on browsing histories on a healthcare website activity because that did not establish a *serious* invasion. 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023). Those cases involved actual healthcare providers' websites; Sussex here provides no medical treatment. [Colman Decl., ¶ 10.]

The California Constitution does not prohibit every use of analytics or every alleged disclosure of website activity. On these undisputed facts, no reasonable jury could find an actionable invasion of privacy.

**CONCLUSION**

For the reasons stated, Defendant Sussex Publishers, LLC respectfully requests that the

Court grant this motion and enter judgment in favor of Sussex and against Plaintiffs R.C. and D.G.

DATED: May 26, 2026

FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Matthew D. Pearson*

Matthew D. Pearson
Peter A. Devlin
Attorneys for SUSSEX PUBLISHERS, LLC

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600